# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE**　　　**2. PLEASE TYPE OR PRINT**　　　**3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| Superb Motors Inc., et. al., | **USDC EDNY** | **Wicks, U.S.M.J.** |
| **Plaintiffs-Appellants,** | **Date the Order or Judgment Appealed from was Entered on the Docket:** | **District Court Docket No.:** |
| **v.** | **3/21/2025 & 8/1/2025** | **2:23-cv-6188 (JMW)** |
| Anthony Deo, et. al., | **Date the Notice of Appeal was Filed:** | **Is this a Cross Appeal?** |
| **Defendants-Respondents** | **August 29, 2025** | ☐ Yes ☑ No |

| Attorney(s) for Appellant(s): | Counsel's Name:　　Address:　　Telephone No.:　　Fax No.:　　E-mail: |
|---|---|
| ☑ Plaintiff ☐ Defendant | Emanuel Kataev, Esq. 18211 Jamaica Ave, Jamaica, NY 11423, (718) 412-2421 (office), (718) 489-4155 (facsimile), emanuel@sagelegal.nyc<br>Jeffrey C. Ruderman, Esq., 420 Lexington Ave, Ste 2320, NY, NY 10170, (212) 661-6800 (office), (212) 661-5350 (facsimile), jruderman@cszlaw.com |

| Attorney(s) for Appellee(s): | Counsel's Name:　　Address:　　Telephone No.:　　Fax No.:　　E-mail: |
|---|---|
| ☐ Plaintiff ☑ Defendant | Jeffrey M. Benjamin, Esq., 250 Park Avenue, 7th Floor, New York, New York 10177 (212) 655-9536 (office); jbenjamin@nyfraudlaw.com<br>Ariel E. Ronneburger, Esq., Cullen and Dykman LLP, 333 Earle Ovington Boulevard - 2nd Floor, Uniondale, New York 11553, 516-296-9182 (office), (516) 357-3792 (Fax), aronneburger@cullenllp.com (see attached rider) |

| Has Transcript Been Prepared?<br>**N/A** | Approx. Number of Transcript Pages:<br>**N/A** | Number of Exhibits Appended to Transcript:<br>**N/A** | Has this matter been before this Circuit previously? ☑ Yes ☐ No<br><br>If Yes, provide the following:<br><br>Case Name: **Superb Motors Inc. et al v. Deo et al**<br><br>2d Cir. Docket No.: **25-1330**　　Reporter Citation: (i.e., F.3d or Fed. App.) **N/A** |
|---|---|---|---|

***ADDENDUM "A"*:** COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.

***ADDENDUM "B"*:** COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.

### PART A: JURISDICTION

| 1. Federal Jurisdiction | | 2. Appellate Jurisdiction | |
|---|---|---|---|
| ☐ U.S. a party | ☐ Diversity | ☑ Final Decision | ☐ Order Certified by District Judge (i.e., Fed . R. Civ. P. 54(b)) |
| ☑ Federal question (U.S. not a party) | ☐ Other (specify): _____ | ☐ Interlocutory Decision Appealable As of Right | ☐ Other (specify): _____ |

**IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

**FORM C** (Rev. October 2016)

## PART B:  DISTRICT COURT DISPOSITION  (Check as many as apply)

**1. Stage of Proceedings**
- [x] Pre-trial
- [ ] During trial
- [ ] After trial

**2. Type of Judgment/Order Appealed**
- [ ] Default judgment
- [ ] Dismissal/FRCP 12(b)(1) lack of subject matter juris.
- [x] Dismissal/FRCP 12(b)(6) failure to state a claim
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) frivolous complaint
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) other dismissal
- [ ] Dismissal/other jurisdiction
- [ ] Dismissal/merit
- [ ] Judgment / Decision of the Court
- [ ] Summary judgment
- [ ] Declaratory judgment
- [ ] Jury verdict
- [ ] Judgment NOV
- [ ] Directed verdict
- [ ] Other (specify):

**3. Relief**
- [x] Damages:
  - [x] Sought: $ 15,000,000
  - [ ] Granted: $ _____
  - [ ] Denied: $ _____
- [x] Injunctions:
  - [x] Preliminary
  - [ ] Permanent
  - [ ] Denied

## PART C:  NATURE OF SUIT  (Check as many as apply)

**1. Federal Statutes**
- [ ] Antitrust
- [ ] Bankruptcy
- [x] Banks/Banking
- [ ] Civil Rights
- [ ] Commerce
- [ ] Energy
- [ ] Commodities
- [x] Other (specify): RICO
- [ ] Communications
- [ ] Consumer Protection
- [ ] Copyright ☐ Patent
- [ ] Trademark
- [ ] Election
- [ ] Soc. Security
- [ ] Environmental
- [ ] Freedom of Information Act
- [ ] Immigration
- [ ] Labor
- [ ] OSHA
- [ ] Securities
- [ ] Tax

**2. Torts**
- [ ] Admiralty/ Maritime
- [ ] Assault / Defamation
- [ ] FELA
- [ ] Products Liability
- [x] Other (Specify):

**3. Contracts**
- [ ] Admiralty/ Maritime
- [ ] Arbitration
- [ ] Commercial
- [ ] Employment
- [ ] Insurance
- [ ] Negotiable Instruments
- [ ] Other Specify

**4. Prisoner Petitions**
- [ ] Civil Rights
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Parole
- [ ] Vacate Sentence
- [ ] Other

**5. Other**
- [ ] Hague Int'l Child Custody Conv.
- [ ] Forfeiture/Penalty
- [ ] Real Property
- [ ] Treaty (specify): _____
- [ ] Other (specify): _____

**6. General**
- [ ] Arbitration
- [ ] Attorney Disqualification
- [ ] Class Action
- [ ] Counsel Fees
- [ ] Shareholder Derivative
- [ ] Transfer

**7. Will appeal raise constitutional issue(s)?**
- [ ] Yes [x] No

Will appeal raise a matter of first impression?
- [ ] Yes [x] No

1. Is any matter relative to this appeal still pending below? [ ] Yes, specify: _____ [x] No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

(A) Arises from substantially the same case or controversy as this appeal? [x] Yes [ ] No

(B) Involves an issue that is substantially similar or related to an issue in this appeal? [ ] Yes [x] No

If yes, state whether ☐ "A," or ☐ "B," or ☐ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: Superb Motors Inc., et al. v Deo, et al. | Docket No. 2:23-cv-6188 (JMW) | Citation: N/A | Court or Agency: USDC EDNY |
|---|---|---|---|

Name of Appellant: Superb Motors Inc, et al. (all Plaintiffs, see caption on rider)

Date: September 19, 2025        Signature of Counsel of Record: /s/ Emanuel Kataev, Esq.

## NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**
1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.
2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.
3. Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

**FORM C** (Rev. December 2016)

UNITED STATES COURT OF APPEALS
SECOND CIRCUIT

-----------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, *individually and derivatively as a member of* NORTHSHORE MOTOR LEASING, LLC, JOSHUA AARONSON, *individually and derivatively as a member of* 189 SUNRISE HWY AUTO, LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

**Case No.: 25-2189**

**RIDER TO FORM C WITH INFORMATION REGARDING COUNSEL FOR APPELLEES**

Plaintiffs,

-against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, and J.P. MORGAN CHASE BANK, N.A.,

Defendants.

-----------------------------------------------------------------X

Anthony Carmine Valenziano & Tyler J. Kandel, Esqs.; 210 Park Avenue, Florham Park, NJ 07932, 1185 Avenue of the Americas, New York, NY 10036, T.973.302.9696, avalenziano@shermanatlas.com; tkandel@shermanatlas.com.

John Anthony Lentinello, Esq.; 1000 Woodbury Road, Suite 402, Woodbury, New York 11797; 516.870.1160; jlentinello@milbermakris.com

Harry R. Thomasson Jr.; 3820 Sunrise Highway, Box 112, Wantagh, NY 11793; (516) 557-5459 hrtatty@verizon.net

Dated:  Jamaica, New York
       September 21, 2025

Respectfully submitted,

**SAGE LEGAL LLC**
By:  */s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Plaintiff-Appellants*
*Superb Motors Inc.,*
*Team Auto Sales LLC, and*
*Robert Anthony Urrutia*

Dated:  New York, New York
       September 21, 2025

**CYRULI SHANKS & ZIZMOR LLP**
By :  */s/  Jeffrey C. Ruderman, Esq.*
Jeffrey Ruderman, Esq.
420 Lexington Avenue, Suite 2320
New York, NY 10170-0002
(212) 661-6800 (office)
(347) 379-4622 (direct dial)
(212) 661-5350 (facsimile)
jruderman@cszlaw.com

*Attorneys for Plaintiff-Appellants*
*189 Sunrise Hwy Auto LLC,*
*Northshore Motor Leasing, LLC,*
*1581 Hylan Blvd Auto LLC,*
*1580 Hylan Blvd Auto LLC,*
*1591 Hylan Blvd Auto LLC,*
*1632 Hylan Blvd Auto LLC,*
*1239 Hylan Blvd Auto LLC,*

2

*2519 Hylan Blvd Auto LLC,*
*76 Fisk Street Realty LLC,*
*446 Route 23 Auto LLC,*
*Island Auto Management, LLC,*
*Brian Chabrier,*
*Joshua Aaronson, and*
*Jory Baron*

**VIA ACMS**
All counsel of record

UNITED STATES COURT OF APPEALS
SECOND CIRCUIT

-----------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, JOSHUA AARONSON, JORY BARON, ASAD KHAN, IRIS BARON REPRESENTATIVE OF THE ESTATE OF DAVID BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

**Case No.: 25-2189**

**ADDENDUM A TO FORM C**

                           Plaintiffs,

        -against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, J.P. MORGAN CHASE BANK, N.A., 189 SUNRISE HWY AUTO LLC, and NORTHSHORE MOTOR LEASING, LLC

                       Defendants.

-----------------------------------------------------------X

<u>Description of the Nature of the Action</u>

Plaintiffs-Appellants Superb Motors Inc ("Superb"), Team Auto Sales LLC ("Team"), and Robert Anthony Urrutia ("Urrutia") (Superb, Team, and Urrutia collectively hereinafter the "Superb Plaintiffs") and 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian Chabrier, Joshua Aaronson, Jory Baron, Asad Khan, Iris Baron Representative of the Estate of David Baron, 1581 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC and Island Auto Management, LLC (collectively "IAG Plaintiffs") (Superb Plaintiffs and IAG Plaintiffs collectively hereinafter the "Appellants") brought claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") as well as the Defend Trade Secrets Act ("DTSA") and an amalgam of accompanying state law claims arising out of the Defendants' schemes to infiltrate, plunder, and loot the Appellants' dealerships. All Defendants filed motions to dismiss the First Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule"). Appellants opposed the motions and cross-moved to amend the First Amended Complaint with a Second Amended Complaint as to Defendant Flushing Bank's motion and, later, a Third Amended Complaint as to the remaining Defendants' motions.

<u>The Result Below</u>

On March 21, 2025, the District Court, the Hon. James M. Wicks, U.S.M.J. ("Judge Wicks"), designated pursuant to 28 U.S.C. § 636(c)(5), granted in part and denied in part certain of the dismissal motions and granted in part and denied in part Appellants' motion to amend the pleadings.

On August 1, 2025, following Plaintiffs' timely motion, Judge Wicks granted in part and denied in part the Appellants' motion for reconsideration of the March 21, 2025 Decision and Order.

The Appellants respectfully appeal the dismissal of certain of the Appellants' causes of action and the denial of their motion to amend certain of their causes of action, as set forth more fully in the annexed notice of appeal.

<u>Notice of Appeal & District Court Docket Sheet</u>

Plaintiff provides the Notice of Appeal, filed on August 29, 2025, as amended, and a current copy of the District Court's docket sheet, together as **Exhibit "A."**

Dated:  Jamaica, New York
      September 21, 2025

Respectfully submitted,

**SAGE LEGAL LLC**
By:  */s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Plaintiff-Appellants*
*Superb Motors Inc.,*
*Team Auto Sales LLC, and*
*Robert Anthony Urrutia*

Dated: New York, New York
    September 21, 2025

**CYRULI SHANKS & ZIZMOR LLP**
By :  */s  Jeffrey C. Ruderman, Esq.*
Jeffrey Ruderman, Esq.
420 Lexington Avenue, Suite 2320
New York, NY 10170-0002
(212) 661-6800 (office)
(347) 379-4622 (direct dial)
(212) 661-5350 (facsimile)
jruderman@cszlaw.com

*Attorneys for Plaintiff-Appellants*
*189 Sunrise Hwy Auto LLC,*
*Northshore Motor Leasing, LLC,*
*1581 Hylan Blvd Auto LLC,*
*1580 Hylan Blvd Auto LLC,*
*1591 Hylan Blvd Auto LLC,*
*1632 Hylan Blvd Auto LLC,*
*1239 Hylan Blvd Auto LLC,*
*2519 Hylan Blvd Auto LLC,*
*76 Fisk Street Realty LLC,*
*446 Route 23 Auto LLC,*
*Island Auto Management, LLC,*
*Brian Chabrier,*
*Joshua Aaronson, and*
*Jory Baron*

**VIA ACMS**
All counsel of record

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, individually and derivatively as a member of NORTHSHORE MOTOR LEASING, LLC, JOSHUA AARONSON, individually and derivatively as a member of 189 SUNRISE HWY AUTO, LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

                              Plaintiffs,

        -against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, and J.P. MORGAN CHASE BANK, N.A.,

                              Defendants.
-----------------------------------------------------------------X

Case No.: **2:23-cv-6188 (JMW)**

**NOTICE OF APPEAL**

Notice is hereby respectfully given that Superb Motors Inc. ("Superb"), Team Auto Sales LLC ("Team"), and Robert Anthony Urrutia ("Urrutia") (Superb, Team, and Urrutia collectively hereinafter the "Superb Plaintiffs"), Plaintiffs in the above-named case, respectfully appeals to the United States Court of Appeals for the Second Circuit from the Orders of the Hon. James M. Wicks, U.S.M.J. ("Judge Wicks") dated: **(i)** March 21, 2025 (ECF Docket Entry 230) solely to the extent it *(a)* granted Defendants' Thomas Jones, CPA ("Jones"), and Jones, Little & Co., CPA's LLP ("JLC CPA") (Jones and JLC CPA collectively hereinafter the "CPA Defendants") motion to dismiss in its entirety; *(b)* granted Defendant Flushing Bank's motion to dismiss in its entirety; *(c)* granted Defendant J.P. Morgan Chase Bank, N.A.'s motion to dismiss in its entirety; *(d)* granted Defendant Anthony Deo's ("Deo") motion to dismiss Plaintiffs' cause of action to pierce the corporate veil against him; *(e)* denied both of Plaintiffs' cross-motions for leave to amend the pleadings; and *(f)* denied Plaintiffs' request for leave to replead in the event of dismissal; as well as **(ii)** August 1, 2025 (ECF Docket Entry 314) to the extent that it denied the motion of *(a)* the Superb Plaintiffs for reconsideration of the March 21, 2025 Order as it pertains to the dismissal of the CPA Defendants; and *(b)* the remaining Plaintiffs for reconsideration of the March 21, 2025 Order as it pertains to the dismissal of Northshore Motors LLC ("Northshore") and 189 Sunrise Hwy Auto LLC ("Sunrise") as defendants, to have direct claims against them, if the motion court ultimately found that Deo was the true owner of those entities.

Dated: Jamaica, New York
      August 28, 2025

                           Respectfully submitted,

                           **SAGE LEGAL LLC**
                           By:   */s/ Emanuel Kataev, Esq.*
                           Emanuel Kataev, Esq.
                           18211 Jamaica Avenue
                           Jamaica, NY 11423-2327
                           (718) 412-2421 (office)
                           (917) 807-7819 (cellular)
                           (718) 489-4155 (facsimile)
                           emanuel@sagelegal.nyc

                           *Attorneys for Plaintiffs*
                           *Superb Motors Inc.,*
                           *Team Auto Sales LLC, and*
                           *Robert Anthony Urrutia*

Dated: New York, New York
      August 28, 2025

                           **CYRULI SHANKS & ZIZMOR LLP**
                                /s
                         ————————————————
                         Jeffrey Ruderman, Esq.
                         420 Lexington Avenue, Suite 2320
                         New York, NY 10170-0002
                         (212) 661-6800 (office)
                         (347) 379-4622 (direct dial)
                         (212) 661-5350 (facsimile)
                         jruderman@cszlaw.com

                         *Attorneys for Plaintiffs*
                         *189 Sunrise Hwy Auto LLC,*
                         *Northshore Motor Leasing, LLC,*
                         *1581 Hylan Blvd Auto LLC,*
                         *1580 Hylan Blvd Auto LLC,*
                         *1591 Hylan Blvd Auto LLC,*
                         *1632 Hylan Blvd Auto LLC,*
                         *1239 Hylan Blvd Auto LLC,*
                         *2519 Hylan Blvd Auto LLC,*
                         *76 Fisk Street Realty LLC,*
                         *446 Route 23 Auto LLC,*
                         *Island Auto Management, LLC,*
                         *Brian Chabrier,*
                         *Joshua Aaronson, and*
                         *Jory Baron*

**VIA ECF**
All counsel of record

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
SUPERB MOTORS INC. *et al.*,

                    *Plaintiffs*,

          -against-

ANTHONY DEO *et al.*,

                    *Defendants*.
----------------------------------------------------------X

**OPINION AND ORDER**
23-CV-6188 (JMW)

**A P P E A R A N C E S :**

    Jamie Scott Felsen, Esq.
    **Milman Labuda Law Group PLLC**
    3000 Marcus Avenue, Suite 3W8
    Lake Success, NY 11042
    *Attorneys for All Plaintiffs*

    Emanuel Kataev, Esq.
    **Sage Legal LLC**
    18211 Jamaica Avenue
    Jamaica, NY 114232327
    *Attorney for All Plaintiffs*

    Jeffrey C. Ruderman, Esq.
    Russell J. Shanks, Esq.
    **Cyruli Shanks & Zizmor LLP**
    420 Lexington Avenue, Suite 2320
    New York, NY 10170
    *Attorneys for Plaintiffs 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC,*
    *Brian Chabrier, Joshua Aaronson, Jory Baron, 1581 Hylan Blvd Auto LLC, 1580 Hylan*
    *Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 1239 Hylan*
    *Blvd Auto LLC, 2519 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23*
    *Auto LLC, and Island Auto Management, LLC*

Brian M. Levine, Esq.
**The Levine Firm, P.C.**
260 North Broadway, Suite 2a
Hicksville, NY 11801
*Attorney for Defendants Anthony and Sarah Deo, Harry Thomasson, Dwight
Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC, Inc., Gold Coast Cars
of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group
LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast
Motors of Smithtown LLC, UEA Premier Motors Corp.*

John Anthony Lentinello, Esq.
Peter Seiden, Esq.
**Milber Makris Plousadis & Seiden, LLP**
1000 Woodbury Road, Ste. 402
Woodbury, NY 11797
*Attorneys for Defendants Thomas Jones and Jones, Little & Co., CPA's LLP*

Ariel E. Ronneburger, Esq.
Thomas Baylis, Esq.
**Cullen and Dykman LLP**
333 Earle Ovington Boulevard, Ste 2nd Floor
Uniondale, NY 11553
*Attorneys for Defendant Flushing Bank*

Bonnie Rae Golub, Esq.
**Weir Greenblatt Pierce LLP**
667 Madison Ave., 5th Fl.
New York, NY 10065
*Attorney for Libertas Funding LLC*

Anthony Carmine Valenziano, Esq.
**Sherman Atlas Sylvester & Stamelman LLP**
1185 Avenue of Americas, 3rd Floor
New York, NY 10036
*Attorney for J.P. Morgan Chase Bank, N.A.*

Brooke Suarez, Esq.
**Riker Danzig LLP**
One Speedwell Avenue
Morristown, NJ 07962
*Attorney for J.P. Morgan Chase Bank, N.A.*

*No appearance for Defendants DLA Capital Partners Inc.*

## Table of Contents

BACKGROUND ........................................................................................................ 7

  **I.**   *Factual Background* ........................................................................................ 7

     **A.**  *Ownership and Operations at Northshore and Sunrise* ......................... 7

     **B.**  *Deo's Activities at Northshore and* **Sunrise** .......................................... 9

     **C.**  *Defendants' Fraudulent Scheme at* **Superb Motors** ........................... 12

  **II.**   *Procedural History* ...................................................................................... 18

DISCUSSION ........................................................................................................... 23

  **I.**   *Defendants' Motions to Dismiss: Legal Standard* ................................... 23

  **II.**   *Plaintiffs' RICO Claims* ............................................................................. 24

     **D.**  *Violation of RICO, 18 U.S.C. § 1962 – Against All Defendants* ............... 25

     **E.**  *RICO Conspiracy, 18 U.S.C. § 1962(d)—Against All Defendants* ......... 41

     **F.**  *Injunctive Relief under RICO-- 18 U.S.C. § 1964(a) – Against the Deo Defendants* 43

  **III.**  *Plaintiffs' Defend Trade Secrets Act Claims* ........................................... 44

     **A.**  *Violation of 18 U.S.C. § 1836 – Against the Deos, Merckling, Blankenship, and Thomasson* ................................................................................................ 44

     **B.**  *Injunctive relief under the DTSA -- 18 U.S.C. § 1836, et seq – Against the Deo Defendants* ................................................................................................ 52

     **C.**  *Misappropriation under the DTSA – Against the Deo Defendants* .......... 53

  **IV.**  *Unfair Competition – Against the Deo Defendants* ................................. 55

  **V.**   *Tortious Interference with Contracts, Business Relations, and Prospective* ........... 59

*Economic Advantage – Against the Deo Defendants* ............................................. 59

  **VI.**  *Conversion – Against the Deo Defendants, Thomasson, Deo, and the Bank Defendants; Aiding and Abetting Conversion – Against Thomasson* .................... 61

  **VII.**  *Unjust Enrichment Claims – Against Deo, Northshore, and Sunrise* ...................... 66

  **VIII.**  *Civil Conspiracy – Against the Deo Defendants* ................................... 68

  **IX.**  *Fraud -- Against Deo and Jones* ............................................................. 71

  **X.**   *Article 4-A of the New York UCC – against Flushing Bank* .................... 73

  **XI**   *Negligence – Against Flushing Bank and Chase Bank; Unauthorized Payments – Against Flushing Bank* ........................................................................................ 77

  **XII.**  *Drawee Liability – Against Chase Bank* ................................................. 80

  **XIII.**  *Violation of New York UCC §3-419 – Against Flushing Bank and Chase Bank* ..... 82

**XIV.**    *Professional Malpractice – Against Jones CPA LLP* ................................. 84

**XV.**    *Plaintiffs' Breach of Duty Claims* .................................................. 88

   **A.**    *Breach of Duty of Loyalty – Against Deo* ...................................... 88

   **B.**    *Aiding and Abetting Breach of Duty of Loyalty – Against Thomasson* .................. 89

   **C.**    *Breach of Fiduciary Duty – Against Deo* ....................................... 90

   **D.**    *Aiding and Abetting Breach of Fiduciary Duty – Against Thomasson* ................... 91

**XVI.**    *Accounting – Against Deo* ......................................................... 92

**XVII.**    *Violation of New York Judiciary Law § 487 – Against Thomasson* ..................... 93

**XVIII.**    *Piercing the Corporate Veil – Against Deo* ...................................... 96

**XIX.**    *Violation of NY GBL § 349 – Against Deo* ......................................... 98

**XX.**    *Permanent Injunction – Against Deo and Libertas Funding* ........................... 100

**XXI.**    *Declaratory Judgement – Against Deo* ............................................ 102

**XXII.**    *Contribution and Indemnification for Fraud, Bread of Fiduciary Duty, Breach of Loyalty and Conversion – Against Deo; Contribution and Indemnification for Conversion and Aiding and Abetting Conversion, Fraud, Breach of Fiduciary  Duty, Breach of Duty of Loyalty – Against Thomasson* .................................... 103

**XXIII.**    *Plaintiffs' Cross-Motions to Amend the Pleadings: Legal Standard* ................ 106

   **A.**    *Plaintiffs' First Motion to Amend* ............................................. 110

   **B.**    *Plaintiffs' Second Motion to Amend* ............................................ 114

     **1.**    *The Addition of Northshore and Sunrise as Defendants* ...................... 114

     **2.**    *Allegations Pertaining to Piercing the Corporate Veil* ...................... 116

     **3.**    *Violation of Judiciary Law § 487* .......................................... 116

     **4.**    *Misappropriation* ......................................................... 117

     **5.**    *Tortious Interference; Negligence and Conversion Against the Bank Defendants* ................................................................................118

     **6.**    *Fraud – Against Deo and Jones* ............................................. 118

     **7.**    *Standing – Urrutia and Team Auto* .......................................... 119

**CONCLUSION** ....................................................................... 119

**WICKS**, Magistrate Judge:

This is an action brought by various auto dealerships and their owners against their former business partners, bank and other accounting entities, alleging that Defendants engaged in various frauds and schemes to both pocket proceeds from car sales in violation of the Civil RICO Act, as well as misappropriating the dealerships' trade secrets in the car sales market at other competing dealerships. (*See generally*, ECF No. 65.) Specifically, Plaintiffs[1] bring this action against Defendants[2] for: (i) violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"); (ii) violations of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 ("DTSA"); (iii) misappropriation of trade secrets; (iv) unfair competition; (v) tortious interference with contractual relations, business relations, and prospective economic advantage; (vi) unjust enrichment; (vii) conversion; (viii) fraud; (ix) breach of fiduciary duty; and (x) civil conspiracy. (*See generally*, ECF No. 65.)

Before the Court are the following pleadings motions filed by the parties:

(1) Defendant Libertas Funding's Motion to Dismiss for Failure to State a Claim (ECF No. 164);

---

[1] "**Plaintiffs**" are Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (the "Superb Plaintiffs"), 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian Chabrier, *individually and derivatively as a member of* Northshore Motor Leasing, LLC, Joshua Aaronson, *individually and derivatively as a member of* 189 Sunrise Hwy Auto, LLC, Jory Baron, 1581 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC and Island Auto Management, LLC (collectively "IAG Plaintiffs"). IAG is a group of franchised new car dealerships in New York and New Jersey in which Plaintiffs allege David Baron had certain direct or family ownership. (ECF No. 65 at ¶ 81.)

[2] "**Defendants**" are Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp. (collectively the "Deo Defendants"), DLA Capital Partners Inc. ("DLA Capital"), Jones, Little & Co., CPA'S LLP, Thomas Jones, CPA, (collectively the "CPA Defendants"), and Flushing Bank, Libertas Funding LLC, and J.P. Morgan Chase Bank, N.A. (collectively the "Bank Defendants"). The Deo Defendants, DLA, CPA Defendants, and the Bank Defendants are collectively hereinafter the "Defendants."

(2) Defendant Jones and Jones, Little & Co. CPA's LLP's Motion to Dismiss for Failure to State a Claim (ECF No. 168)

(3) Defendant Flushing Bank's Motion to Dismiss for Failure to State a Claim (ECF No. 175)

(4) The Deo Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 176)

(5) Defendant Chase Bank's Motion to Dismiss for Failure to State a Claim (ECF No. 177)

(6) Plaintiffs' Motion for Leave to Amend the Pleadings and Opposition to Flushing Bank's Motion to Dismiss (ECF No. 178)

(7) Plaintiff's Motion for Leave to Amend the Pleadings and Oppose the Remaining Defendants' Motions to Dismiss (ECF No. 181).

For the reasons set forth below, the Deo Defendants' Motion to Dismiss (ECF No. 176) is **GRANTED** *in part* and **DENIED** *in part*, the Bank Defendants' Motions to Dismiss (ECF Nos. 164, 175 and 177) is **GRANTED** *in part* and **DENIED** *in part,* and the CPA Defendants' Motions to Dismiss (ECF No. 168) is **GRANTED**; and Plaintiffs' Motions for Leave to Amend (ECF Nos. 178 and 181) are **GRANTED** *in part* and **DENIED** *in part*.

## **BACKGROUND**

### I.    *Factual Background*

####    A.    *Ownership and Operations at Northshore and Sunrise*

The following allegations are taken from the First Amended Complaint at ECF No. 65 and are assumed true for the purposes of the Motions to Dismiss. Plaintiffs Northshore Motor Leasing, LLC ("Northshore") and 189 Sunrise Hwy Auto, LLC ("Sunrise") each operate a retail used car dealership from their respective locations in Syosset and Amityville. (ECF No. 65 at ¶¶ 67-72.)  Chabrier, David Baron's estate, and Khan each have a one-third (⅓) membership interest in Northshore, whereas Deo was never an owner. (*Id*. at ¶¶ 48-52.) The Articles of the Northshore Operating Agreement hold that only a majority in interest of the members or the

members' unanimous consent can approve decisions, transfers, or assignments of membership interests. (*Id.* at ¶¶ 53-56.) Similarly, Aaronson, David Baron's estate, J. Baron, and Raymond Phelan each have a twenty-five percent (25%) membership interest in Sunrise, whereas Deo was never an owner. (*Id.* at ¶¶ 57-62.) The Articles of the Sunrise Operating Agreement hold that only a majority in interest of the members or the members' unanimous consent can approve decisions, transfers, or assignments of membership interests. (*Id.* at ¶¶ 63-66.) Additionally, David Baron had direct or familial ownership interests in IAG, a group of franchised new car dealerships across New York and New Jersey. (*Id.* at ¶ 81.) Because of the relationship between David Baron, Northshore, Sunrise, Chabrier, Aaronson, and J. Baron, IAG financially backed much of the dealerships' operations. (*Id.* at ¶ 85.)

New York law requires a license issued by the Department of Motor Vehicles ("DMV") to operate such a dealership. Chabrier holds this license as Northshore's applicant; Aaronson and J. Baron hold it as applicants for Sunrise. (*Id.* at ¶¶ 67-72.) This DMV license lets dealerships like Northshore and Sunrise issue both "dealer" license plates and those of New York State. The DMV license holder is responsible for the protection and proper issuance of these plates. (*Id.* at ¶¶ 109-10.)

To purchase inventory, Northshore and Sunrise maintained a "Floor Plan" credit line with Ally Bank. Under the Floor Plan, Ally Bank kept a lien on vehicles that Northshore and Sunrise purchased through the Floor Plan until the dealerships repaid Ally Bank the amount initially borrowed to buy those vehicles. (*Id.* at ¶¶ 77-85.) IAG and Ally Bank required monthly financial reports from Northshore and Sunrise to justify continued Floor Plan provisions. (*Id.* at ¶ 127.) As for the financing arrangements between lending institutions and the dealerships' customers, Northshore and Sunrise placed liens upon the titles of any financed vehicles to protect those

lenders were the customer to default. (*Id*. at ¶¶ 99-101.) If the dealerships failed to perfect such a lien, they would have to repurchase the lender's loan to the customer. (*Id*.) Customers could "trade in" vehicles as part of a purchase, and Northshore and Sunrise had the responsibility of satisfying any existing loan or lease balance on these traded-in vehicles. (*Id*. at ¶¶ 92-93.) Northshore and Sunrise also issued extended warranties to customers, and, in doing so, accrued fees due to third-party warranty companies and vendors. (*Id*. at ¶ 105.)

The failure to satisfy any of these loans or obligations could leave the dealerships with civil and criminal liability as well as risking the loss of both the DMV licenses and the ability of the licensees Chabrier, Aaronson, and J. Baron to obtain a license for any other dealership. (*Id*. at ¶¶ 96-97, 103-04.) The unpaid loans also jeopardize the goodwill between the lenders and the dealerships and the dealerships' reputation at large. (*Id*.) Until December 2022, both Northshore and Sunrise employed Deo as the general manager of each dealership. (*Id*. at ¶¶ 74-76.) As general manager, Deo was responsible for ensuring the dealership satisfies financing plans for both its own inventory and its customers, providing accurate monthly financial reports for the Floor Plan, repaying any vendor or warranty fees, completing the necessary documentation for out-of-state customers, and accounting for vehicle titles. (*Id*. at ¶¶ 87-88, 94, 102, 106-08, 128-29.)

**B.** *Deo's Activities at Northshore and* **Sunrise**

While Deo was the manager of Northshore and Sunrise overseeing these operations, Plaintiffs allege he "took numerous actions for his own benefit, causing damage to Northshore and Sunrise and the other IAG Plaintiffs and jeopardizing the [DMV] licenses." (*Id*. at ¶ 76.) Using the Floor Plan, Deo purchased "many vehicles" on behalf of Northshore and Sunrise, but then sold these vehicles for "less than their purchase price," allegedly incurring a deficiency of

over $3,000,000. (*Id*. at ¶¶ 86-89.) IAG had to pay Ally Bank this deficiency to cure the Floor

Plan's shortcomings. (*Id*.) In a subsequent inspection and audit of floor-planned inventory,

neither IAG nor Ally Bank could locate several vehicles, and other assets appeared to be

damaged. (*Id*. at ¶¶ 90-91.) Under Deo's management, Plaintiffs additionally allege the

dealerships failed to perfect liens in the financing process of "numerous [sold] vehicles," leaving

the dealerships (and, vicariously, IAG) with over $850,000 owed to the lenders as part of the

loan-repurchase agreements. (*Id*. at ¶¶ 102-04.) Plaintiffs assert Deo failed to have the

dealerships pay off the existing loan or lease balances "on numerous [t]rade-ins," leaving the

vehicles' prior owners liable on those debts despite their lack of ownership or possession of the

vehicle, and, while issuing extended warranties, Northshore and Sunrise, under Deo's control,

accrued $158,000 due to warranty companies and vendors. (*Id*. at ¶¶ 92-95.) Plaintiffs allege Deo

did not complete out-of-state customer documentation and "refused to account for the dealer

license plates and a number of unissued New York State license plates" designated for customer

use. (*Id*. at ¶¶ 111-12.) Deo sent unsold Northshore vehicles to various garages for repair but,

"[d]espite due demand," would not disclose the garages' locations or identities. (*Id*. at ¶ 113-14.)

At least one of the garages placed a lien on at least one of the missing vehicles resulting from

Deo's failure to satisfy that lien, and that garage has since sold the vehicle off in auction. (*Id*. at

¶¶ 115-17.)

Plaintiffs assert that "Deo has been treating [the dealerships] and their respective assets as

his own." (*Id*. at ¶ 118.) Deo has allegedly taken for himself over $230,000 in customers' cash

deposits and has been issuing and signing checks from Northshore's bank accounts, despite

having no signatory authority under the Operating Agreement. (*Id*. at ¶¶ 63-66, 119-20.) For

example, Deo issued a $60,000 check from Northshore to his own corporation Car Buyers NYC,

Inc. (*id.* at ¶ 121), used Sunrise's American Express card to pay for personal expenses, and failed to terminate over $300,000 of lender financing for canceled purchases. (*Id.* at ¶¶ 122-23.) Plaintiffs allege Deo took these loans for himself (*id.* at ¶ 124), and note that Deo's son still drives an $80,000 Maserati that IAG paid for but without the group's consent. (*Id.* at ¶ 125.) 126. In order for Deo to perpetuate his financial wrongdoings he needed the IAG Plaintiffs and their Floor Plan lender, Ally Bank, to continue to provide the Floor Plan to Northshore and Sunrise. (*Id.* at ¶ 126.) Deo enlisted the help of Thomas Jones and Jones CPA LLP to "manipulate[]" and "falsif[y]" Northshore's and Sunrise's monthly financial reports "with an intent to defraud the [sic] IAG Plaintiffs and Ally Bank." (*Id.* ¶¶ 130-35.) These alleged financial fabrications induced IAG and Ally Bank to sustain the dealerships' Floor Plan. (*Id.* at ¶¶ 136-37.) Deo then used these financial records to present himself as the true owner of Northshore and secured a loan from Flushing Bank "and/or" Flushing Financial Solutions, all without the consent or knowledge of Northshore's members. (*Id.* at ¶¶ 169-72.)

Shortly after David Baron's death in 2021, Deo, on behalf of Northshore, applied through the Small Business Association ("SBA") for a $ 196,425.00 COVID-19 Economic Injury Disaster Loan ("EIDL"), wherein he claimed to be a fifty percent (50%) owner of Northshore. (*Id.* at ¶¶ 50, 142-43.) He also applied for an EIDL in Sunrise's name, claiming to be the facility's full owner. (*Id.* at ¶ 145.) Between both applications, he allegedly evaded the true owners' oversight. (*Id.* at ¶¶ 144, 146.) Finally, around November 15, 2022, purportedly representing himself as a full owner of Northshore but without the knowledge of its members, Deo agreed to sell $997,500.00 of the dealership's future receipts to Libertas in exchange for $735,000 (hereafter, the "Libertas Funds"). (*Id.* at ¶¶ 148-50.) IAG confronted Deo, who claimed to be a full owner of both Northshore and Sunrise. (*Id.* at ¶ 153.) A dispute arose over the

Libertas Funds, and Aaronson, under duress from retired and active police officers Blankenship and Merckling pressuring the Nassau County Police Department to arrest him, arranged to place the Funds into the trust account of Harry Thomasson, who represented himself as the attorney for Northshore, Sunrise, and Deo, pending the dispute's resolution. (*Id*.) Despite the IAG Plaintiffs' appeals that the Funds be kept in escrow, Thomasson "did as he pleased and immediately disbursed the Libertas Funds to Deo." (*Id*. at ¶ 163.) Libertas had levied counterclaims against the IAG plaintiffs in state court to recover the value of the future receipts or the Libertas Funds; those claims have been discontinued without prejudice for the purpose of raising them here. (*Id*. at ¶¶ 166-68.)

C.    ***Defendants' Fraudulent Scheme at* Superb Motors**

Since its inception in June 2021, Robert Anthony Urrutia was the President and majority shareholder of Superb Motors. (*Id*. at ¶ 173.) In addition to Superb, Urrutia owns Volkswagen of Freehold, Team-Mitsubishi Hartford, and Team Nissan of Pittsfield Massachusetts. (*Id*.) Shortly after their first meeting in November 2022, Deo and Urrutia entered into a Cross-Purchase Agreement, which stipulated that Deo, presenting himself as the sole owner of Northshore and Sunrise, would pay Urrutia $500,000 and in turn issue him a twenty-five percent (25%) interest in Northshore and Sunrise, and that Urrutia would grant to Deo a forty-nine percent (49%) interest in Superb. (*Id*. at ¶¶ 175-77.) In the Cross-Purchase Agreement, Deo made representations and warranties to Urrutia: (i) that he was the sole owner of Northshore and Sunrise, (ii) that he had the power and right to transfer Northshore's and Sunrise's assets, (iii) that he had no pending action against him, that he would deliver units of Northshore and Sunrise free of liens and encumbrances, and (iv) that none of his representations were materially false or omitted material fact. (*Id*. at ¶ 177.)

12

On November 21, 2022, after Blankenship and Merckling had intervened with the Nassau

County Police to pressure Aaronson, Aaronson wired $735,000 into Thomasson's escrow

account. (*Id*. at ¶ 181.) Deo then wired $300,000 to Urrutia on November 22 and another

$200,000 on November 29, fulfilling the Cross-Purchase Agreement's $500,000 price. (*Id*. at ¶

182.) Deo issued both these wires from his Car Buyers NYC corporation, "despite the fact those

funds obviously came from Thomasson's escrow account." (*Id*.)  Thomasson's "direct

participation" and his release of the "stolen funds" from escrow enabled Deo to pay Urrutia

funds fraudulently obtained from Libertas, and execute the Cross-Purchase Agreement on

December 1, 2022. (*Id*. at ¶¶ 180, 183.)

After the Cross-Purchase Agreement, Urrutia and Deo executed a Shareholders'

Agreement on December 22, 2022, pursuant to which Urrutia held a fifty-one percent (51%)

interest in Superb while Deo owned a forty-nine percent (49%) interest. (*Id*. at ¶¶ 184-85.) The

Shareholders' Agreement: (i) provided that Urrutia, as Superb's President, had the independent

right to make all decisions regarding the dealership's day-to-day operations, or to delegate that

authority at his discretion; and the right to hire or terminate all employees, save for the right to

terminate a Shareholder (*id*. at ¶ 186); (ii) provided that "the grant of any mortgage, lien, or other

security interest in the assets of Superb" required the written consent of at least a majority of the

voting shares, and only the majority of voting shares could sell stock (*id*. at ¶¶ 187-88); (iii)

granted Urrutia the "final say on hiring and firing of employees…, including but not limited to

third party vendors, agents and/or contractors," "review and final approval of financing

agreements with lending institutions" for Superb to use in financing vehicle sales, and

"supervision and complete control of the accounting department of Superb," including "sole

check authorization and sole control of bank accounts owned by Superb." (*Id.* at ¶ 189.) By

contrast, Deo as a minority shareholder could only propose who would serve as General Manager of the day-to-day operations, whom Urrutia would either approve or reject. (*Id*. at ¶ 190.)

Superb, like Northshore and Sunrise, also operated with the help of a bank that provided floor plan financing, where vehicles available for sale at the dealership served as collateral for the plan. (*Id*. at ¶ 197.) The bank that issues this financing arrangement also perfects a security interest in the vehicle, and the dealership must, with limited exceptions, make that financed vehicle present and available for sale at the dealership. (*Id*. at ¶ 198.) Dealerships that use one vehicle as collateral for multiple loans and thus receive twice the funding for that single asset engage in an illegal practice known in dealership lexicon as "double flooring." (*Id*. at ¶ 199-200.) Superb set up its floor plan agreement with Nissan Motor Acceptance Corporation ("NMAC"). (*Id*. at ¶ 199.) Superb facilitated these operations and others with its "unique DMS [(Dealer Management System)] system" Tekion, "specifically customized for Superb." (*Id*. at ¶ 228.) Urrutia taught Deo how to manage Superb with Tekion and used the DMS "to streamline dealership operations, inventory management, cash flow management, and reporting features that identify areas of improvement." (*Id*. at ¶ 229; 38-2 at 1, 38.) Urrutia spent over $120,000 to weave Tekion into Superb's business model, claiming it "contained the blueprint for Urrutia's success at his dealerships" because he knew how to give his business "a unique competitive advantage" through the DMS' features. (*Id*. at ¶¶ 231-32, 265.)

Urrutia partnered with Bobby Clarke ("Clarke") and his radio station Irie Jam, 93.5 FM, in $1.5 million worth of advertising "to over 2 million listeners in the Caribbean community," generating a "substantial customer list[.]" (*Id*. at ¶¶ 237-38.) "Due to the unique nature of Urrutia's partnership with Clarke," this customer list could not possibly be reverse engineered or

independently generated without also substantially investing in Irie Jam. (*Id.* at ¶ 239.) Urrutia went to great efforts in creating both this advertising list and Superb's business model premised on the Tekion DMS, using his decades of experience in the automotive industry, relationships forged in that industry, "and the unique know-how he has in how to successfully operate automobile dealerships." (*Id.* at ¶ 260.) Superb "took many reasonable measures to keep its confidential information secret" by restricting this information's access to only employees who were required to maintain its confidentiality in a computer system secured with firewalls, usernames, and passwords. (*Id.* at ¶ 266.)

About five days after Deo warranted in the Cross-Purchase Agreement that he was the sole member of Northshore and Sunrise, those dealerships' true owners brought action against Deo in New York Supreme Court, Nassau County, alleging "financial improprieties and massive fraud…strikingly similar to the conduct complained of with respect to Superb." (*Id.* at ¶¶ 191-93.) To this end, Plaintiffs allege Deo misrepresented not only his member status of the dealerships, but also whether he anticipated or had pending litigation against him and whether he had the power and right to transfer and deliver shares of the dealerships to Urrutia and Superb. (*Id.* at ¶¶ 194-95.) In preparation to abscond with Superb's earnings and assets, Deo made further misrepresentations to Flushing Bank, presenting himself as Superb's sole owner to open a bank account under Superb's name in blatant violation of the Shareholders' Agreement, which delegated authority over Superb's accounts and checks solely to Urrutia. (*Id.* at ¶ 209-11.)

Plaintiffs allege Flushing Bank participated in this scheme by letting Deo illicitly open the Superb account "when [the bank] knew that he had no authority to do so," since Flushing apparently "was in possession of documentation indicating that Deo had no such authority." (*Id.* at ¶ 315.) Plaintiffs assert Deo deposited approximately $455,000 of customer payments into this

unauthorized account only to transfer those payments into his own accounts and, "upon information and belief," those of Thomasson, Blankenship, Merckling, Jones, S. Deo, and DLA Capital owner Michael Laurie (*id*. at ¶¶ 212-15), and that Deo logged cash payments into Superb's DMS but pocketed those funds for himself – and even had Merckling and Blankenship pilfer Superb's safe. Plaintiffs contend this cash scheme further cost Superb over $400,000. (*Id.* at ¶¶ 216-19.) In further contravention of his inability to authorize checks as a minority shareholder under the Shareholders' Agreement, Deo signed and issued multiple checks from Superb's Chase Bank accounts under Urrutia's control, made payable to Thomasson, Laurie, Northshore, and other entities owned by Deo. (*Id*. at ¶¶ 220-21.)[3] Plaintiffs assert Chase additionally permitted "Deo to process checks from Superb's bank account when it knew that he had no authority to sign checks," because "Deo was not an authorized signatory on Superb's account at Chase Bank." (*Id*. at ¶ 316.)

Plaintiffs further allege Merckling and Blankenship used their power as "former or active police officers" to encumber an investigation into Deo when Urrutia sought to have police remove his former partner when their relationship deteriorated. (*Id*. at ¶¶ 205, 243; 38-2 at 55-56.) S. Deo managed and controlled the Flushing Bank account (*id*. at ¶ 241), and Thomasson as counsel endowed the operation with a veneer of legitimacy and conspired with Deo and agreed to his directives. (*Id.* at ¶¶ 247-50.) All four of these Deo Defendants are alleged to have aided and abetted Deo by delivering the unauthorized checks to banks for payment. (*Id*. at ¶ 254.) Moreover, Laurie used his business DLA Capital and its connections to help Deo open the Flushing account, with knowledge that this breached the Shareholders' Agreement "because he

---

[3] Plaintiffs contend Urrutia made this discovery during a top-down audit of Superb, but do not proffer specific check numbers or financial statements in exhibit. (*Id*. at ¶ 221.)

had sat in on meetings with Urrutia and Deo and knew that Urrutia… [held] sole check authorization and sole control of all Superb bank accounts." (*Id*. at ¶ 244.) Jones also "knew Superb was operating at a loss," yet "nonetheless altered journal entries" to make it seem as though Superb was profitable, procuring Urrutia's ill-gotten confidence in Deo. (*Id*. at ¶ 245.) Laurie and Jones are alleged to have "enabled wire fraud" by submitting "false tax returns, false bank applications, and false loan applications[.]" (*Id*. at ¶ 255.)

On July 31, 2023, NMAC contacted Superb's Chief Operating Officer ("COO") Bruce Novicky ("Novicky") to inform the dealership that it discovered the vehicles NMAC had been financing served as collateral for additional loans from another bank and thus were illegally double-floored, costing Superb $760,868.75 in default to NMAC. (*Id*. at ¶¶ 199-201.) This Court found that Superb had demonstrated irreparable harm caused by the Defendants' conduct, notably in the termination of the floor plan between Superb and NMAC. (*Id*. at ¶ 204) (citing to ECF No. 55, Memorandum & Order on Preliminary Injunction). Deo, S. Deo, Thomasson, Blankenship, Merckling, Laurie, and Jones effectuated the double-flooring scheme by "filling out applications for financing and making material misrepresentations in said applications[.]" (*Id*. at ¶ 203.)

After the double-flooring incident came to light, Urrutia ordered Novicky on August 3, 2023 to conduct a physical inventory at Superb to ensure all financed vehicles were present at the dealership as per the floor plan, and that all vehicles entered into the DMS were on site, as well. (*Id*. at ¶ 205.) The inventory review found that Superb was missing "over one hundred (100) vehicles," even though these vehicles were listed on both the DMS and the general ledger. (*Id*. at ¶ 206.) Novicky confronted Deo, who "demonstrably lied as to certain vehicles" and "failed to adequately explain" others. (*Id*.) For example, Deo said a particular vehicle was sold, but the

customer listed on the purchase denied buying that vehicle, and Deo could not supply documents of the alleged sale. (*Id*. at ¶ 207.) Urrutia subsequently removed Deo from Superb and initiated a top-down audit, the findings of which "included incontrovertible proof of Deo's duplicity and clear breaches of his fiduciary obligations." (*Id*. at ¶ 208.) The top-down audit "soon made Deo's intentions very clear." (*Id*. at ¶ 225.)

During his tenure at Superb, Deo had been building up his own dealerships – GCC Syosset, GCC Sunrise, GGC LIC, GCC Roslyn, and GCC Smithtown – all under the Gold Coast Motors Automotive Group. (*Id*. at ¶ 226.) There, Deo put Urrutia's own "dealership processes and know-how" to use and implemented the "unique, confidential, and proprietary" Tekion DMS and "the exact customization used by Superb" in his own dealerships. (*Id*. at ¶¶ 227-28, 230, 233-34.) Plaintiffs further allege Deo poached Superb employees for the Gold Coast dealerships and trained them in Tekion's use. (*Id.* at ¶¶ 235-36.) Deo and these employees used their time at Superb and familiarity with its customer list to redirect Caribbean listeners of Irie Jam to Gold Coast dealerships. (*Id.* at ¶¶ 237-40.) As such, Plaintiffs allege Deo effectively and illicitly channeled Urrutia's decades of experience, the Irie Jam customer list, and the Tekion DMS customized for Superb into his own Gold Coast dealerships. (*Id*. at ¶ 258-60.)[4]

## II.    *Procedural History*

Plaintiffs originally filed their complaint on August 17, 2023.  (ECF No. 1.)  Plaintiffs amended, by subsequently filing the operative Amended Complaint (ECF No. 65) on October 13, 2023, alleging: (i) RICO violations,  (ii) DTSA violations, (iii) misappropriation of trade secrets;

---

[4] Plaintiffs claim Defendants are currently benefitting from the confidential information Urrutia developed and sourced over thirty years in the automobile dealership industry, and since 2020, when he came to own his first dealership, which Defendants stole from the Superb Plaintiffs. (*Id*. at ¶ 258.) This information includes Superb's customer lists, Urrutia's contacts, including Tekion and Superb's customized DMS system from Tekion, and other proprietary information. (*Id*. at ¶ 269.)

(iv) unfair competition; (v) tortious interference with contractual relations, business relations, and prospective economic advantage; (vi) unjust enrichment; (vii) conversion; (viii) fraud; (ix) breach of fiduciary duty; and (x) civil conspiracy. (*Id*. at ¶ 4.)

> Specifically, Plaintiffs seek damages and injunctive relief related to Defendants' alleged:
>
> unlawful conspiracy and scheme to engage in wire fraud by, among other things, signing checks they had no authority to sign, opening bank accounts by providing false and misleading information to financial institutions and depositing into those accounts, in the name of Superb Plaintiffs but controlled by Defendants, checks made payable to the Superb Plaintiffs, then to be diverted to Defendants' own use, improper poaching of Superb Plaintiffs' employees, and misappropriating Superb Plaintiffs' confidential information and trade secrets.

(*Id*.)

Plaintiffs' Amended Complaint asserts a catalogue of claims, alleging no less than 52 causes of action:

- (1) Violation of RICO, 18 U.S.C. § 1962 – Against All Defendants
- (2) Conspiracy Under 18 U.S.C. § 1962(d) – Against All Defendants
- (3) Injunctive Relief Under RICO, 18 U.S.C. § 1964(a) – Against Deo Defendants
- (4) Violation of Defend Trade Secrets Act of 2016, 18 U.S.C. §1836 – Against Deo, S. Deo, Merckling, Blankenship, and Thomasson
- (5) Injunctive Relief under the DTSA (18 U.S.C. § 1836, *et seq.* – Against Deo Defendants
- (6) Misappropriation – Against Deo Defendants
- (7) Unfair Competition – Against Deo Defendants
- (8) Tortious Interference with Contracts, business relations, and prospective economic advantage – Against Deo Defendants
- (9) Conversion – Against Deo Defendants
- (10) Civil Conspiracy – Against Deo Defendants
- (11) Professional Malpractice – Against Jones CPA LLP
- (12) Fraud – Against Deo and Jones
- (13) Permanent Injunction – Against Libertas Funding
- (14) Article 4-A of the New York UCC – Against Flushing Bank
- (15) Negligence – Against Flushing Bank
- (16) Declaratory Judgment – Against Deo
- (17) Declaratory Judgment –Against Deo
- (18) Conversion – Against Deo
- (19) Unjust Enrichment – Against Deo
- (20) Breach of Duty of Loyalty – Against Deo

- (21) Breach of Fiduciary Duty – Against Deo
- (22) Permanent Injunction – Against Deo
- (23) Conversion – Against Deo
- (24) Unjust Enrichment – Against Deo
- (25) Breach of Duty of Loyalty – Against Deo
- (26) Breach of Fiduciary Duty – Against Deo
- (27) Permanent Injunction – Against Deo
- (28) Contribution and Indemnification for Fraud, Breach of Fiduciary Duty, Breach of Loyalty and Conversion – Against Deo
- (29) Conversion – Against Thomasson
- (30) Aiding and Abetting Conversion – Against Thomasson
- (31) Contribution and Indemnification for Conversion – Against Thomasson
- (32) Contribution & Indemnification for Aiding & Abetting Conversion – Against Thomasson
- (33) Contribution and Indemnification for Aiding and Abetting Fraud – Against Thomasson
- (34) Aiding and Abetting Breach of Fiduciary Duty – Against Thomasson
- (35) Contribution and Indemnification for Aiding and Abetting Breach of Fiduciary Duty – Against Thomasson
- (36) Aiding and Abetting Breach of Duty of Loyalty – Against Thomasson
- (37) Contribution and Indemnification for Aiding and Abetting Breach of Duty of Loyalty – Against Thomasson
- (38) Unjust Enrichment – Northshore
- (39) Piercing the Corporate Veil – Against Deo
- (40) Unjust Enrichment – Against Sunrise
- (41) Piercing the Corporate Veil – Against Deo
- (42) Violation of NY GBL § 349 – Against Deo
- (43) Accounting – Against Deo
- (44) Accounting – Against Deo
- (45) Violation of New York Judiciary Law § 487 – Against Thomasson
- (46) Violation of New York Uniform Commercial Code §3-419 –Against Flushing Bank and Chase Bank
- (47) Conversion – Against Flushing Bank and Chase Bank
- (48) Negligence – Against Flushing Bank and Chase Bank
- (49) Unauthorized Payments – Against Flushing Bank
- (50) Drawee Liability – Against Chase Bank
- (51) Professional Malpractice – Against Jones CPA LLP
- (52) Fraud – Against Deo and Jones

(*See generally*, ECF No. 65.)

On October 17, 2023, the parties consented to the undersigned's jurisdiction for all

purposes. (ECF No. 70.) Following the filing of the Amended Complaint, Defendants filed pre-

motion letters for the dismissal motions (*see* ECF No. 73; 101, 114, 126, and 127).   After various extensions to the briefing schedule (Electronic Order dated Mar. 3, 2024 and Apr. 10, 2024), all motion papers were finally filed by May 15, 2024. (ECF Nos. 164, 168-171,175-194.)

On May 14, 2024, Plaintiffs filed a motion for leave to amend the pleadings (ECF No. 178, 181), which Defendants vehemently oppose. (*See* ECF Nos. 184, 187-189, 191.) Specifically, Plaintiffs' proposed Third Amended Complaint ("TAC") seeks to further amend the claims as follows:

- Counts 16, 17, 18, 21, 23, 26, and 42: The TAC adds the prerequisite demand to the derivative claims and adds the necessary plaintiffs and Northshore and Sunrise as defendants.  (*Id*. at 38-39.)

- Count 22: In the TAC, Northshore now asserts the corporate waste claim. Plaintiffs further argue that it is "nonsensical" to dismiss Chabrier's claim against Deo, as Deo's mismanagement of Northshore cost Chabrier the DMV license.  (*Id*. at 39.)

- Count 27: Like Count 22, Sunrise now asserts the corporate waste claim, and Plaintiffs argue that Aaronson's and J. Baron's claims have merit because Deo's mismanagement of Sunrise cost those Plaintiffs the DMV license.  (*Id*. at 40.)

- Count 28: *First*, the TAC asserts the prerequisite demand and adds Northshore as a nominal defendant.  (*Id*. at 40.)  *Second*, Plaintiffs note that Libertas Funding has discontinued its claim against IAG Plaintiffs in state court to pursue the claim in this Court; thus in the interest of judicial economy, the claim should stand.  (*Id*. at 41.)

- Counts 29 to 37: In TAC, Counts 29, 20, 34, and 36 are now brought against Northshore directly, and Counts 31, 32, 33, and 35 as standard indemnification claims "should be successful against any indemnified party."  (*Id*. at 41.)

- Counts 38 and 40: The TAC alleges a contractual relationship between IAG and Northshore and Sunrise, such that an agreement obligated the former to cover the duties of the latter.  (*Id*. at 42.)

- Counts 39 and 41: The TAC omits these counts.  (*Id*. at 42-43.)

- Counts 43 and 44: The TAC addresses the prerequisite demand and joins Northshore and Sunrise as nominal defendants.  Moreover, it alleges that Deo owed Northshore and Sunrise accurate accounting through his role as manager.  (*Id*. at 43.)

- Count 45: The FAC "adequately allege[s]" Thomasson's knowledge of the scheme surrounding the Libertas Funds, and, therefore, Plaintiffs assert he is guilty of lying in open court when he claimed there was nothing wrong with using his attorney escrow account to transfer the funds from IAG Plaintiffs to Deo. (*Id*. at 44.)

- Count 52: While the FAC shows Aaronson, a member of Sunrise, had obligations between IAG and Northshore and Sunrise, the TAC goes into further detail about that relation, such that IAG needed accurate information to continue the Floor Plan. (*Id*. at 46.) Further, Aaronson is an executive at IAM, and IAM manages all the IAG Plaintiffs. (*Id*.)  Thus, Plaintiff contend the IAG Plaintiffs are not "merely unaffiliated guarantors" of the obligations between Ally and Northshore and Sunrise; rather, the IAM "umbrella" keeps these parties in privity. (*Id*. at 46.)

- Count 13: Plaintiffs have changed this to Declaratory Judgment, and it is Count 15 in the TAC seeking relief for Northshore and Sunrise only. (*Id*. at 47.)

- Urrutia and Team Auto's Standing: Between the TAC and FAC, Plaintiffs argue they have made a case for Urrutia's and Team Auto's standing. Plaintiffs assert Urrutia has standing because he is "President of Superb Motors" and "has been harmed by the Defendants' conduct." (*Id*. at 48-49.)  Team Auto has standing because it is an auto wholesaler that owned 13 cars Deo allegedly absconded with. (*Id*. at 49.)

- Misappropriation: Plaintiffs rehash much of the same arguments they proffered for the DTSA claim. (*Id*. at 49-52.)

- Unfair Competition: Plaintiffs assert that Defendants' misappropriation of trade secrets and employees sufficiently demonstrates this claim. (*Id*. at 53.)  Furthermore, Plaintiffs maintain that this claim just needs to show the misappropriation of "the fruits of Superb Plaintiffs' labor." (*Id.* at 53.)

- Tortious Interference: Plaintiffs reason that, because they had a business relation with NMAC and Deo "intentionally interfered" with that relation to harm Superb and caused harm, they have successfully stated this claim. (*Id*. at 55.)

- Conversion: Plaintiffs argue that IAG Plaintiffs have a conversion claim over the Maserati and Libertas funds, despite Northshore's rightful ownership of those assets and their unfulfilled, insistent demands on return. (*Id*. at 56.)  As for the Superb Plaintiffs, the FAC sufficiently alleges conversion regarding the Floor Plan inventory (over 100 missing cars), the missing customer payments, and the misappropriated trade secrets. (*Id*. at 57.)

- Negligence and Conversion Against Chase: Plaintiffs contend that their claim here is not preempted because it only has to do with conduct preceding and following the processing of checks. (*Id*. at 58.)

- Civil Conspiracy: Plaintiffs claim that their two illustrations of fraud (double flooring and forged instruments to open a Superb account in Flushing Bank) coupled with the allegations of the enterprise and their knowing participation towards the fraudulent conduct sufficiently constitute a civil conspiracy.  (*Id*. at 59-60.)

- Fraud: Since Jones could only commit fraud "by and through" Deo, Plaintiffs believe these allegations properly cover both Defendants.

(*Id*. at 60-61.)

## DISCUSSION

### I.    *Defendants' Motions to Dismiss: Legal Standard*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. "[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  A claim has facial plausibility when the plaintiff pleads sufficient facts allowing the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556–57 (internal citations omitted)).

When considering a motion to dismiss, the Court assumes all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  However, this tenet does not apply to legal conclusions or

"threadbare recitals of a cause of action's elements." *Iqbal*, 556 U.S. at 663. Pleadings that offer

only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will

not do." *Twombly*, 550 U.S. at 555. More is required. *See id.*; *see also Rozz v. Town of*

*Hempstead*, No. 20-CV-1812 (JMA) (AYS), 2023 U.S. Dist. LEXIS 56996, at *9-10 (E.D.N.Y.

Mar. 31, 2023) (citing *Iqbal* and *Twombly* as the standard cases for deciding a motion to

dismiss); *Solomon v. Flipps Media, Inc.*, No. 22-cv-5508 (JMA) (JMW), 2023 U.S. Dist. LEXIS

176480, at *3-4 (E.D.N.Y Sept. 30, 2023) (same).

## II.   *Plaintiffs' RICO Claims*

"RICO provides a civil remedy to persons injured in their business or property by a

violation of the statute." *Alkhatib v. New York Motor Grp. LLC*, No. CV-13-2337 ARR, 2015

WL 3507340, at *8 (E.D.N.Y. June 3, 2015), *report and recommendation adopted in part*, No.

13CV2337 (ARR)(SMG), 2016 WL 5660372 (E.D.N.Y. Sept. 30, 2016) (citing 18 U.S.C. §

1964(c)); *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004)

("*Satinwood*") (quoting 18 U.S.C. § 1962(c)) ("The RICO statute makes it unlawful 'for any

person employed by or associated with any enterprise to conduct or participate, directly or

indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'").

As stated, Plaintiffs assert RICO and RICO conspiracy claims pursuant to 18 U.S.C. §§ 1961(c)

and (d) against all Defendants – distinguished by group as the Deo Defendants, DLA, the CPA

Defendants, and the Bank Defendants.

"To state a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18

U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the

violation of § 1962." *Jordan v. Pierre*, No. 18-CV-8528 (JGK), 2021 WL 2581444, at *3

(S.D.N.Y. June 22, 2021), *aff'd sub nom. Jordan v. Tilzer*, No. 21-1938, 2022 WL 16544335 (2d

Cir. Oct. 31, 2022) (quoting *De Falco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001)). "A defendant may be liable for violating RICO if the defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participated in the affairs of an enterprise involved in interstate commerce." *Alkhatib*, 2015 WL 3507340, at *8.

### D. *Violation of RICO, 18 U.S.C. § 1962 – Against All Defendants*

"A RICO enterprise 'includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *Alkhatib,* 2015 WL 3507340, at *9 (quoting 18 U.S.C. § 1961(4)). "An 'association-in-fact' enterprise must have 'at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *Id*. (quoting *Boyle v. United States,* 556 U.S. 938, 956 (2009) ("*Boyle*")); *see also United States v. Turkette,* 452 U.S. 576, 583 (1981) (an enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct.").

The Supreme Court's decision in *Boyle* "establishes a low threshold for pleading such an enterprise." *Delgado v. Ocwen Loan Servicing, LLC,* 2014 WL 4773991, at *16 (E.D.N.Y. Sept.24, 2014) (internal citations omitted). "Formal hierarchy, role differentiation, regular meetings, or established procedures are not required; rather, an informal group may constitute an enterprise as long as 'the group ... function[s] as a continuing unit and remain[s] in existence long enough to pursue a course of conduct.'" *Alkhatib*, 2015 WL 3507340, at *9 (quoting *Boyle,* 556 U.S. at 948). Relevant here:

> A RICO enterprise must have an ascertainable structure distinct from the pattern of racketeering activity in which its members engage. Nevertheless, the evidence used to prove the pattern of racketeering activity, and the evidence establishing an enterprise may in particular cases coalesce. Finally, the enterprise as alleged must be distinct from the person or persons alleged to be conducting the affairs of the enterprise. This requirement

is satisfied when an owner or employee of a corporation is the person alleged to be conducting the affairs of the enterprise and the enterprise is the corporation itself.

*Alkhatib*, 2015 WL 3507340, at *9 (internal citations omitted) (cleaned up); *see also Palatkevich v. Choupak*, No. 12 CIV. 1681 (CM), 2014 WL 1509236, at *15 (S.D.N.Y. Jan. 24, 2014) (emphasis in original) ("[W]ithin the meaning of § 1962(c), a *natural person* named as the defendant 'person' is inherently distinct from a corporate entity 'enterprise' for which he acts as an agent; in such a case, the distinctness requirement is met. But where a *corporate entity* is named as the defendant 'person,' it is not distinct from any alleged 'enterprise' consisting of that corporate defendant together with related companies, employees, or agents.").

RICO liability does not extend to all "persons" associated with an enterprise but is limited to those who 'conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Racketeering activity is defined as "(A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical ... which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code[,]' including 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud)." *Jordan v. Pierre*, No. 18-CV-8528 (JGK), 2021 WL 2581444, at *3 (quoting 18 U.S.C. § 1961(1)).

A "pattern of racketeering activity" requires at least two predicate acts of racketeering activity enumerated in § 1961(1) and (2) committed within a ten-year period. 18 U.S.C. § 1961(5); *Alkhatib*, 2015 WL 3507340 at *11; *GICC Cap. Corp. v. Tech. Fin. Grp.*, 67 F.3d 463, 465 (2d Cir. 1995). Predicate acts are comprised of at least two racketeering activities, both related to each other and proximate to the enterprise that an enterprise member engages in. *U.S.*

*v. Delgado*, 972 F.3d 63, 79 (2d Cir. 2020). To establish a pattern, a plaintiff must also make a

showing that the predicate acts of racketeering activity by a defendant are 'related, and they

amount to or pose a threat of continued criminal activity.'" *Alkhatib*, 2015 WL 3507340 at *11

(quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir.

1999) quoting *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d

195 (1989))). The predicate acts cannot be isolated or sporadic instances. *U.S. v. Indelicato*, 865

F.2d 1370, 1383 (2d. Cir. 1989).

Predicate acts must have both horizontal relatedness, wherein the acts are related to each

other, and vertical relatedness, wherein the acts are related to the whole enterprise. *Reich v.*

*Lopez*, 858 F.3d 55, 60-61 (2d Cir. 2017); *U.S. v. Cain*, 671 F.3d 271, 284 (2d Cir. 2012).

Vertical relatedness means either (1) the defendant was able to commit the acts because of his

control over or position in the enterprise, or (2) the act is related to the enterprise's activities.

*U.S. v. Burden*, 600 F.3d 204, 216 (2d Cir. 2010). As to horizontal relatedness, the activities of a

business whose purpose is racketeering, like an organized crime family, are horizontally related

if the activities are simply connected to that enterprise. *U.S. v. Cappola*, 671 F.3d 220, 243 (2d

Cir. 2012). However, where the enterprise is primarily a lawful business, its predicate acts must

evince interrelatedness among themselves through "similar purposes, results, participants,

victims, or methods of commission." *H.J.*, 492 U.S. at 240. The Second Circuit has adopted the

legitimate business / illegitimate business distinction for the purposes of establishing continuity,

as well: where an otherwise legitimate business engages in illicit predicate acts, those acts must

be sufficiently related to each other for there to be a threat of such conduct in the future. *Reich*,

858 F.3d at 61-62.

"The latter so-called 'continuity' requirement can be satisfied either by showing a 'closed-ended' pattern—a series of related predicate acts extending over a substantial period of time—or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 183 (2d Cir. 2008).  Regarding close-ended continuity, the Second Circuit looks for crimes extending at least over two years. *Reich*, 858 F.3d at 60; *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008).  Courts can find open-ended continuity where the illicit predicate acts are the regular way of operating a particular business, even if the nature of that business is lawful.  *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 243 (2d Cir. 1999).

Relevant here, 18 U.S.C. §§ 1341 and 1343 prohibit any person engaging or intending to engage in a fraudulent scheme or planning to use fraud to illicitly gain another's money or property, from using the mail or interstate or foreign wire services to further or execute that scheme. 18 U.S.C. §§ 1341, 1343; *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 488 (2d Cir. 2014).  Mail and wire fraud require "(1) a scheme to defraud, (2) money or property that is the object of the scheme, and (3) use of wires [or mail] to further that scheme."  *Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 137 (2d Cir. 2018).  The scheme to defraud is a question of a fair and civil exchange (or lack thereof) in business transactions; the monies or property at the center of the scheme must be the victim's own; and the use of wires or mail must further the fraudulent scheme "as conceived by the perpetrator at the time."  *Bayshore Capital Advisors, LLC v. Creative Wealth Media Finance Corp.*, 667 F.Supp.3d 83, 124-25 (S.D.N.Y. 2023) (internal quotations and citations omitted).

Claims of fraud are subject to a heightened pleading standard. *Alkhatib*, 2015 WL 3507340 at *11. Where the RICO claims allege fraudulent predicate activity, courts require that plaintiffs plead with particularity in accordance with Rule 9(b). *Saintwood, Inc.*, 385 F.3d at 178; Fed. R. Civ. P. 9(b). To this end, plaintiffs must identify: (1) the specific content or statements of the alleged fraudulent communication, (2) the speaker, (3) where and when the statements were made, and (4) *why* the content or statement is fraudulent. *Spool*, 520 F.3d at 185. That is, there must be a factual basis manifesting a strong inference of fraudulent intent. *O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991). Plaintiffs can establish that strong inference either by proffering facts showing the defendant had motive and opportunity to defraud, or by proffering strong circumstantial evidence of the defendant's knowing misbehavior or recklessness. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006). Notably, in the Second Circuit, if the plaintiff alleges the defendant used wire or mail to further a fraudulent scheme, while *not* alleging that the wire or mail *itself* contained anything fraudulent, then the plaintiff must only plead with specificity the circumstances of the scheme at large, and not the "'temporal or geographic particulars of each mailing or wire transmission'" furthering that scheme. *Angermeir v. Cohen*, 14 F.Supp.3d 134, 145-46 (S.D.N.Y. 2014) (quoting *In re Sumitomo Copper Litig.* 995 F.Supp. 451, 456 (S.D.N.Y. 1998)).

In order to hold a defendant civilly liable under RICO, he or she must be demonstrated to have participated in the conduct of the charged enterprise's affairs through a pattern of racketeering activity. *Alkhatib*, 2015 WL3507340 at *14. To establish that a defendant committed mail or wire fraud, the plaintiff must allege "facts giving rise to a strong inference that the defendant knew the statements to be false and intended to defraud the plaintiff at the time they were made." *Id.* If a plaintiff alleges that a defendant participated in conducting the

affairs of an enterprise, the plaintiff must allege that the defendant "participated in the operation or management of the enterprise itself." *Id.* (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1995) ("*Reves*")).  For an individual to be subject to RICO liability, they "must have some part in directing [the enterprise's] affairs" but that is not to say that only those with primary responsibility will be culpable; RICO liability may very well apply to "lower rung participants in the enterprise who are under the direction of upper management." *Id.* (quoting *Reves*, 507 U.S. at 179, 184).  However simply taking direction and performing tasks helpful or necessary to the enterprise's purpose "without more, is insufficient to bring a defendant within the scope of § 1962(c)." *Diaz*, 176 F.3d at 92 (citing *United States v. Viola*, 35 F.3d 37, 41 (2d Cir. 1994)).

An enterprise must be distinct from the person or persons alleged to be conducting the affairs of the enterprise, such as when an owner or employee of a corporation is the person alleged to be conducting the affairs of the enterprise.  *Alkhatib*, 2015 WL 3507340 at *9.  A complaint satisfies RICO's distinctness requirement if it alleges an enterprise comprised of a corporation and names as defendants "natural persons who own or work for the corporation and participated in the corporation's affairs through a pattern of racketeering." *Id.* at *10.

For a plaintiff to have standing to pursue RICO claims, the RICO violation must be the proximate cause of the plaintiff's injury, meaning there was a direct relation between the purported injury and supposed misconduct.  *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992); *Nygard v. Bacon*, No. 19-CV-1559 (LGS)(KNF), 2021 WL 4312581, at *10 (S.D.N.Y. Mar. 31, 2021); *In re Conte*, at *32-33.  Moreover, the RICO violation must be the but-for cause of the injury, "meaning that but for the RICO violation, he would not have been injured." *Zou v. Han*, 2024 WL 4450781 at *17 (E.D.N.Y. 2024) (quoting *Alix v. McKinsey & Co.*, 23 F.4th 196, 203 (2d Cir. 2022)).

Here, as to the Superb Plaintiffs' allegations against the Deo Defendants, the Court finds Amended Complaint adequately alleges wire fraud. Deo and Urrutia, the President of Superb Motors Inc., both executed a shareholder's agreement, with Urrutia as the majority shareholder (51% interest) and Deo as minority shareholder (49% interest). *See* ECF No. 65 at ¶¶ 184-85. Urrutia the majority shareholder had, among other responsibilities, the power to review and approve financing agreements with lenders, as well as control over Superb's accounting department. *Id*. at ¶ 189. Conversely, Deo as a minority shareholder could only propose who would serve as General Manager of the day-to-day operations, whom Urrutia would either approve or reject. *Id*. at ¶ 190. However, Deo signed multiple checks from Superb's Chase bank accounts under Urrutia's control; none of the checks were authorized, but Deo signed each of them in contravention to his limited power under the shareholder agreement, inferably between the time of Urrutia's and Deo's signing of the shareholder agreement, effective December 22, 2022, and up to or before August 3, 2023, when Superb's accounting uncovered Deo's activity. *Id*. at ¶¶ 185, 199, 205, 220-21, 640.

Thus, the Complaint facially charges the defrauder (Deo), the content of his defrauding (the forged checks), where and when the defrauding occurred (between December 2022 and August 2023, at Superb's accounts in Chase), and why the activity was fraudulent (the unauthorized signing of checks in breach of the shareholder agreement). *See e.g., BC Liquidating, LLC*, 519 B.R. at 423 (finding mail and wire fraud alleged where defendant concealed transfers, made misrepresentations to other people and paid off other defendants to conduct false audits); *see also Ideal Steel Supply Corp. v. Anza*, 02 Civ. 4788 (RMB) (AJP), 373 F.3d 251, 264 (S.D.N.Y. July 2, 2004) (stating that the Second Circuit has found that "mail fraud

based upon the mailing of fraudulent sales tax returns constitutes a predicate act" under RICO).

Accordingly, the Court finds that mail and wire fraud have been adequately pled.

The Deo Defendants contend that the Complaint does not properly illustrate a RICO

enterprise because it fails it identify the structure, roles, and activities of the alleged enterprise

and the distinct participation of each defendant in it, and, that the purpose is not clear. *See* ECF

No. 176-1 at 5-6. However, this contention is unavailing because "an established hierarchy is not

essential to the existence of an enterprise." *Alkhatib*, 2015 WL 3507340 at *10 quoting *Boyle v.

U.S.*, 556 U.S. 938, 948 (2009)). Plaintiffs' allegations describe actions taken by each of the

individual Deo Defendants from "which their roles in the enterprise may be logically inferred."

*Id.*

The Deo Defendants further contend that the Complaint's "broad, conclusory allegations"

of fraudulent misrepresentations lack the necessary specificity. *See* ECF No. 176-1 at 4.

However, the Court finds Plaintiffs' Complaint "describes in exhaustive detail a sophisticated

scheme" comprising all four of the Deo Defendants engaged in wide-ranging schemes to defraud

the Superb Plaintiffs. *See* ECF No. 65 at ¶ 253; *see Alkhatib*, WL 3507340 at *11. Shortly after

their first meeting in November 2022, Deo and Urrutia entered into a Cross-Purchase

Agreement, which stipulated that Deo, presenting himself as the sole owner of Northshore and

Sunrise would pay Urrutia and issue him twenty-five percent interest in Northshore and Sunrise,

and that Urrutia would grant to Deo a forty-nine percent interest in Superb (ECF No. 65 at ¶¶

175-177) essentially "treating [the dealerships] and their respective assets as his own." *Id.* at ¶

118.

Furthermore, Laurie used his business DLA Capital and its connections to help Deo open

accounts with knowledge that this breached the Shareholders' Agreement because he had been in

attendance in a meeting with Urrutia and thus knew Urrutia held sole check authorization and control of Superb's bank accounts. *Id.* at ¶ 244. And Deo, with the help of other Deo Defendants such as S. Deo, Thomasson, Blankenship, Merckling and Laurie, are alleged to have organized a double-flooring scheme by "filling out applications for financing and making material misrepresentations in said applications" (*id.* at ¶ 203), costing Superb $760,868.75 in default to NMAC. *Id.* at ¶¶ 199-201.

Plaintiffs specifically allege that around November 15, 2022, Deo agreed to sell almost one million dollars of the dealership's future receipts to Libertas for $735,000. *Id.* at ¶¶ 148-50. However, when a dispute arose over the Libertas Funds – shortly after Deo was confronted by Urrutia for lying about his true role at Northshore and Sunrise – Blankenship and Merckling, retired and active police officers, used their connections with the Nassau County Police Department to shield Deo from being arrested. *Id.* at ¶ 243.

Plaintiffs allege that at all relevant times, Thomasson claimed to be the attorney for Northshore, Sunrise, and Deo and was aware that the Libertas Funds were paid by Libertas to Northshore for the purported sale of future receipts. *Id.* at ¶¶ 155-156. When a dispute arose concerning the rights to the Libertas funds, the IAG Plaintiffs agreed to place the funds in Thomasson's attorney trust account pending resolution allegedly because Blankenship and Merckling once again abused their authority to threaten to have Aaronson arrested if he refused. *Id.* at ¶¶160-61. Plaintiffs claim that despite his knowledge of the ongoing dispute, Thomasson distributed the Libertas Funds to Deo declaring he would not be told what to do regarding his own escrow accounts, thus furthering Deo's scheme. *Id.* at ¶¶ 163-65.

Blankenship and Merkling's intervention with the Nassau County Police to pressure Aaronson into wiring money to Thomasson's account (*id.* at ¶ 181) enabled Thomasson's "direct

participation" and his release of the "stolen funds" which enabled Deo to pay Urrutia funds fraudulently obtained from Libertas on December 1, 2022.  *Id.* at ¶ 180, 183.  It is further alleged that Deo misrepresented not only his member status of the dealerships, but also whether he anticipated or had pending litigation against him and whether he had the power and right to transfer shares of the dealerships to Urrutia.  *Id.* at ¶ 194-95.

Here, the Court finds Plaintiffs sufficiently allege that the Deo Defendants, S. Deo, Thomasson, Blankenship, Merckling, and Laurie each substantially assisted Deo in carrying out his unlawful schemes, most notably in diverting and misappropriating Superb funds.  *Id.* at ¶¶ 241-244.  When Urrutia, upon becoming aware of Deo's conduct, informed NCPD to remove him, Blankenship and Merckling allegedly used their positions to hinder the investigation and protect Deo.  *Id.* at ¶ 243.  Plaintiffs sufficiently allege not only Deo's wrongful conduct, but that Merckling and Blankenship used their power to block any investigation and intimidate those who caught on to further Deo's fraudulent objectives.  *Id.* at ¶ 160, 161, 243.  Plaintiffs further allege that Thomasson provided the operation with a veneer of legitimacy posing as counsel for the dealership but also aided and abetted Deo by delivering the unauthorized funds directly to Deo.  *See* ECF No. 65 at ¶¶ 205, 241, 243, 254.

Ultimately, it is not always reasonable to expect a plaintiff to have available sufficient factual information regarding the inner workings of a RICO enterprise to determine if a defendant was "substantially involved" in the enterprise or participated in the operation or management.  *Aiu Ins. Co. v. Olmecs Med. Supply, Inc.*, 2005 WL 3710370, at *8 (E.D.N.Y. Feb. 22, 2005) (citing *Friedman v. Hartmann*, 1994 WL 376058, at *2 (S.D.N.Y. July 5, 1994)).  Therefore, "where the role of the particular defendant in the RICO enterprise is unclear, plaintiffs may well be entitled to take discovery on this question."  *Aiu Ins. Co. V. Olmecs Med. Supply*

*Inc.,* 2005 WL 3710370, at *8 (E.D.N.Y. Feb 22, 2005) (citing *Friedman v. Hartmann,* 1994 WL

376058, at *2 (S.D.N.Y. July 15, 1994)).  Plaintiffs' allegations give rise to a strong inference

that the Deo Defendants played a significant part in directing the affairs of the enterprise and

advancing the goals of the scheme to defraud.  *Alkhatib*, 2015 WL 3507340 at *15.

    As to the CPA and Bank Defendants, Plaintiffs asserting RICO claims against outside

service professionals like banks, law firms and accounting firms (or "outsider defendants") have

been held sufficient after *Reves* only when they have alleged more substantial involvement by

the outsider defendant in the charged racketeering activity than Plaintiffs attribute to the CPA

Defendants and Bank Defendants here.  *See Alkhatib,* 2015 WL 3507340 at *18.  Where a party

deals in an ordinary way with its agents and others who owe the party a professional obligation,

so that their role in an entity's illicit activities is purely incidental as a course of ordinary

business, and. where there is no evidence that these agents acted with the intent to effectuate

those illicit activities, the party plus its agents do not constitute an associated-in-fact enterprise

for the purposes of a RICO claim.  *See in re: General Motors LLC Ignition Switch Litigation*,

No. 14-MD-2543 2016 WL 3920353 at *15 (S.D.N.Y. July 15, 2016).

    With respect to the CPA Defendants, Plaintiffs fail to allege two or more predicate acts

sufficient to constitute a pattern of racketeering activity, proximate causation, or specific

participation in or knowledge of the RICO operation to find the CPA Defendants liable.  *See*

ECF No. 168 at 10-11. Furthermore, Plaintiffs cannot use negligence or accounting malpractice

or general fraud as the predicate acts for their RICO claims.  *See id*. at 14.  Plaintiffs' Amended

Complaint merely alleges that the CPA Defendants "aided and/or assisted the so-dominated Deo

Defendants' alleged wrongful actions by falsifying financial statements, altering financial

records, altering journal entries, and creating and submitting forged instruments or false

financials to create the illustration that Superb was profitable[,]" which does not meet the requirement elements to state a RICO claim. *Id.* at 11.

Plaintiffs emphasize that Deo directed Superb accountants to alter journal entries to further the floor plan fraudulent scheme such that they only performed limited financial services for Superb. *See* ECF No. 182 at 21. However, the Supreme Court has established that "mere drafting of statements based on misinformation supplied by the defendants' clients did not rise to the level of *directing the enterprise's affairs* and therefore does not constitute sufficient participation in the operation or management of the enterprise to be liable under RICO statutes. *Reves,* 507 U.S. at 170 (emphasis in orginal). Furthermore, "an accountant's audit reports... are always 'integral to the continuing operation' of the enterprise in the sense that professional services are essential to the continued existence of the business" but "provision of services – even essential services – to a RICO enterprise is not the same as controlling the enterprise's affairs." *Dept. Of Economic Development v. Arthur Anderson & Co. (U.S.A.),* 924 F.Supp. 449, 467-68 (S.D.N.Y. 1996) (explaining that electricity is also essential to the continued existence of a business, but "it would be absurd to say that the public utility that provides the electricity participates in the operation or management of the enterprise"); *Univ. Of Maryland at Baltimore v. Peat, Matwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) ("[S]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result.").

For all these reasons, the allegations against the CPA Defendants are simply insufficient to give rise to a strong inference of a knowing or intentional participation in a fraudulent scheme or to establish their participation in the conduct of the affairs of an enterprise through a pattern of racketeering.

With respect to the Bank Defendants, as stated above, claims against outside professionals that agreed to provide important services to a racketeering enterprise is not the same as *directing* the affairs of the enterprise. *Dept. Of Econ. Dev.,* 924 F.Supp. at 466. Here, the Superb Plaintiffs allege that the Bank Defendants "directly assisted in (and aided and abetted) the Deo Defendants in carrying out their schemes" since the Vice President of Flushing Bank "must have known that only Urrutia, and not Deo, has the authority to open a bank account on Superb's behalf" such that letting him do so, aided and abetted the Deo Defendants' enterprise. *See* ECF No. 179 at 12-13. These accusations rest only on an alleged conversation between Deo and the Chief Operating Officer of Superb whereby Deo claimed the Vice President at Flushing Bank could secure a $500,000.00 line of credit for Superb and that the credit underwriter and Flushing were "in his pocket." *Id.* at 3. Plaintiffs took this to mean that Deo requires Flushing to act outside of normal banking procedures but allege no sufficient basis for such an allegation aside from this conversation. *Id.*

Plaintiffs' RICO claims with respect to the Bank Defendants consist of baseless conclusory factual allegations, for example, that "Flushing knew that Deo was not the 100% owner of Superb and had no authority to open a bank account[,]" without any specific factual allegations to corroborate this supposed knowledge. *See* ECF No. 184 at 16. Plaintiffs' only supported allegation with respect to Flushing Bank was that it substantially assisted Deo in opening a bank account. *Id.* at 9. Plaintiffs do not claim any interpersonal relationship between Flushing and the Deo Defendants or that Flushing Bank shared any nefarious intention, nor had any knowledge of Deo's scheme nor means of benefitting from it. *Id.*; *see also Moss v. BMO Harris Bank, N.A.*, 258 F.Supp.3d 289, 298 (E.D.N.Y. 2017) (explaining that a plaintiff must specifically allege "that members of an association-in-fact enterprise share a wrongful intent to

violate RICO.")  Plaintiffs have not substantiated a claim that Flushing Bank shared a common illicit interest with the Deo Defendants. *See* ECF No. 184 at 9.

Ultimately, the facts alleged here with respect to the banks fail to demonstrate that they deliberately disregarded earmarks of fraud or had any authority or responsibility to intervene on Plaintiffs' behalf.  *See Alkhatib*, 2015 WL 3507340 at *17.  These allegations are plainly insufficient to survive the very difficult "operation and management" test set forth by the Supreme Court in *Reves*; the mere fact that a bank provided banking services, without more, is insufficient to state a claim under Section 1962(c)).  *See e.g.*, *Zhu v. First Atlantic Bank,* 2005 WL 275736, at *5 (S.D.N.Y. Oct. 25, 2005) (holding that plaintiffs fail to sufficiently allege banks were involved in the "operation and management" of an alleged enterprise even though the money transferred "eventually benefitted the alleged extortionist" that had no bearing on the banks' limited roles which consisted of each bank simply transferring funds that the plaintiff requested they transfer.)  Similarly, here, Flushing Bank purely provided banking services when Deo misrepresented himself and opened accounts in the name of Superb.  *See* ECF No. 65 at ¶ 612.  Likewise, Chase, performed banking services as requested by what they understood to be an authorized user and permitted Deo to draw checks on Superb's account.  *Id.* at ¶ 613.  As mentioned, Plaintiffs asserting RICO claims against outside professionals like banks are only sufficient when they allege substantial involvement by the outsider defendant in the racketeering activity.  *Alkhatib*, 2015 WL 3507340 at *18.  The Court finds Plaintiffs fail to sufficiently allege that the banks were involved in the "operation and management" of the alleged fraudulent enterprise of the Deo Defendants, aside from performing standard bank services.  *See Zhu*, 2005 WL 2757536 at *5 (finding no existence of an enterprise when the only "pattern of activity" alleged by the plaintiff is that of banks complying with their customers' requests).

As to Libertas Funding, Plaintiffs Amended Complaint fails to establish a RICO claim against it and thus must be dismissed. *See* ECF No. 164-1 at 11. Plaintiffs did not specifically allege an enterprise as required by the RICO statute pertaining to Libertas Funding specifically but rather broadly stated that Libertas and the Bank Defendants participated with Deo and the Deo Defendants to further the alleged scheme, without alleging any way in which Libertas benefitted from said scheme. *Id.* at 12.

Similarly, with respect to claims against Chase, Plaintiffs fail to properly allege facts demonstrating that Chase participated in the operation and management of the RICO enterprise. *See Reves,* 507 U.S. at 180. Plaintiffs allege Chase was negligent in allowing Deo to open an account in Superb's name and withdraw checks using the account (ECF No. 177-1 at 8), but these allegations are insufficient as well because they are merely incidental to the Deo Defendants' scheme. *See e.g., Ifill v. West,* 1999 WL 690144, at *8 (E.D.N.Y. Aug. 24, 1999) (holding that it constituted more than merely incidental to the fraudulent scheme when the defendant bank was shown to have recruited prospective victims sufficient to be charged with racketeering activity). As stated above, merely providing important services to a racketeering enterprise, such as opening accounts or failing to flag fraud, without more, is not the same as directing the affairs of the enterprise. *See Dep't of Econ. Dev.,* 924 F.Supp. at 466.

Plaintiffs allege the Bank Defendants' participation enterprise consisted primarily of opening bank accounts and allowing Deo to draw checks from such accounts, thus failing to act reasonably to uncover he was not the authorized signer he purported to be. *See* ECF No. 65 at ¶¶ 612-15. While these banking services may have been an integral part of the enterprise's function, these acts still fall short of satisfying the "operation and management" test. *See generally, Reves,* 507 U.S. at 179 (emphasis in original) (explaining that "RICO liability is not

limited to those with a formal position in the enterprise's affairs… but *some* part in directing the enterprise's affairs is required.")  It is not enough for Plaintiffs to allege merely that the enterprise could not function without the banks, even if that is the case.  *See Dept. of Econ Develop.,* 924 F.Supp. at 476 (reasoning that whether the conduct was "integral to the continuing operation of the enterprise" is not equivalent to *Reves'* more demanding operation or management test which requires "some part in directing the enterprise's affairs.").

Notably*, Reves* is a difficult standard to satisfy.  *See Burke v. Dowling*, 944 F.Supp. 1036, 1055 (E.D.N.Y. 1995) ("*Burke*") (explaining that in *Reves* although a jury found the account defendants engaged in securities fraud, "mere drafting of statements based on information supplied by the board did not constitute sufficient participation in the operation or management of the enterprise" such that "even if the defendants had engaged in intentional fraud, they could not be held liable under RICO").  In *Burke,* the bank defendant was found to have met this standard because it not only helped to initiate the scheme but also was shown to have "exerted substantial control over the enterprise" given other defendants owed debts to the bank.  *Id.* at 1055 (holding that based on these facts plaintiffs could proceed to discovery to determine the extent of the role but that the bank "will not be liable if it merely performed routine services for the RICO enterprise.")  Unlike the allegations in *Burke*, here, only routine services are alleged to have been completed by the banks. *See id.* Specifically, it is asserted that Flushing Bank, at Deo's request while misrepresenting his true role, opened an account in the name of Superb (ECF Nos. 65 at ¶ 609; 184. at 9) and Chase permitted Deo to draw checks on Superb's account. *Id.* at ¶ 613. Neither of these actions rise to the level of operation or management of the enterprise because Plaintiffs have not alleged the Bank Defendants played any part in "directing the enterprise's affairs."  *See Dept. of Econ Develop.,* 924 F.Supp. at 476.

For the reasons stated above, the Deo Defendants' motion to dismiss the RICO claims asserted against them is *denied*, and the CPA Defendants, the Bank Defendants, Libertas Funding's motion to dismiss the RICO claims asserted against them is *granted*.

### E.  *RICO Conspiracy, 18 U.S.C. § 1962(d)—Against All Defendants*

To establish a RICO conspiracy under § 1962(d), a plaintiff must show that there was an agreement to violate RICO's substantive provisions. *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 244 (2d. Cir. 1999) (citing *U.S. v. Sessa*, 125 F.3d 68, 71 (2d Cir. 1997)). Specifically, to find conspiratorial intent, courts look for (1) facts implying the existence of an agreement (2) involving each of the defendants (3) to commit two or more predicate acts, (4) as well as facts indicating each defendant understood the enterprise's scope, and (5) was aware the acts were part of a racketeering pattern, continuous and related. *Dornberger v. Metropolitan Life Ins. Co.*, 961 F.Supp. 506, 527 (S.D.N.Y. 1997); *Hecht v Commerce Clearing House, Inc*., 897 F.2d 21, 25-26 (2d Cir. 1990). However, as is the case in criminal conspiracies, agreements in civil conspiracies are not always easily shown by direct evidence, but may be inferred from circumstantial evidence. *Cofacredit*, 187 F.3d at 239 (reasoning that conspiracy may be shown with circumstantial evidence to support a finding that each defendant joined the conspiracy and committed an overt act in furtherance thereof).

With respect to the RICO conspiracy claim, the Deo Defendants argue that Plaintiffs did not provide any facts that show each of the Defendants had a "meeting of the minds" with respect to the alleged violations. *See* ECF No. 188 at 12. However, taking the Plaintiffs allegations as true, there are sufficient facts to support an inference that the Deo Defendants understood the scope of the scheme and agreed to further it, and, therefore, the Court finds Plaintiffs state a valid § 1962(d) claim.

In *Dornberger,* the plaintiff met this standard when the plaintiff alleged that the defendants reached an agreement to commit predicate acts of fraud, and that the defendants were aware of the fraudulent nature of the representations and omissions. *Dornberger*, 961 F.Supp. at 527. Here, as in *Dornberger*, Plaintiffs set forth the role each of the Deo Defendants played in the conspiracy. With respect to Deo, Plaintiffs assert that he treated the dealerships as his own, taking over $230,000 in customers' cash deposits and issuing and signing checks from Northshore bank accounts with any signatory authority whatsoever. *See* ECF No. 65 at ¶¶ 118-120. Deo allegedly purchased vehicles on behalf of Northshore and Sunrise then sold them allegedly incurring a deficiency of over $3,000,000. *Id.* at ¶¶ 86-89.

Most notable to the conspiracy, Deo, misrepresenting himself as the full owner of Northshore, allegedly agreed to sell $997,500.00 of the dealership's future receipts to Libertas for $735,000. *Id.* at ¶¶ 148-50. Deo and his wife, Sarah Deo, employed retired police officer Blankenship and active police officer Merckling, and, when a dispute arose over these funds, Deo allegedly enlisted retired and active police officers Blankenship and Merkcling to pressure the Nassau County Police Department to arrest Aaronson, who, under duress, arranged to place such funds in the trust account of Thomasson. *Id.* at ¶¶ 26, 153. Thomasson – who represented himself as the attorney for Northshore, Sunrise, and Deo, pending the dispute's resolution and despite requests from IAG Plaintiffs that the funds be kept in escrow – went ahead and disbursed these funds to Deo. *Id.* at ¶ 163. Taking these allegations are true, there are sufficient facts to support an inference that the Deo Defendants understood the scope of this scheme and agreed to

further it.  *See Dornberger*, 961 F.Supp. at 527.  Therefore, Plaintiffs have stated a RICO conspiracy against the Deo Defendants as a matter of law.[5]

### F.  *Injunctive Relief under RICO-- 18 U.S.C. § 1964(a) – Against the Deo Defendants*

Injunctive relief is available under RICO.  *See* 18 U.S.C.S. § 1964(a).  Section 1964(a) authorizes courts to "prevent and restrain violations" of RICO by "issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in the enterprise; imposing reasonable restrictions on the future activities or investments of any person, or ordering dissolution or reorganization of any enterprise."  18 U.S.C.S. § 1964(a).  However, § 1964(c) states that private litigants may seek monetary damages, and "whether private litigants may obtain injunctive relief under § 1964(a) is an open and questionable proposition" to an extent.  *Kerik v. Tacopina*, 64 F.Supp.3d 542, 558-59 (S.D.N.Y. 2014).

It is important to note that § 1964(a) vests federal courts with jurisdiction to hear RICO claims and sets out general remedies, including injunctive relief.  *Chevron Corp. v. Donziger*, 833 F .3d 74, 138 (2d Cir. 2016).  It is widely accepted and understood that § 1964(a) is not purely a jurisdictional section, but also a section that "grant[s] district courts authority to hear RICO claims and then… spell[s] out a non-exhaustive list of the remedies district courts are empowered to provide in such cases."  *Id.* However, § 1964(a) does not state explicitly state that any category of persons may not obtain relief nor specify the persons in whose favor the courts are authorized to exercise the powers there granted.  *Id.* The Second Circuit has interpreted the

---

[5] Given that the RICO claim fails with respect to the Bank Defendants and the CPA Defendants, the RICO conspiracy claim as against them is dismissed for Plaintiffs' failure to plead the substantive RICO claim.

ambiguity to mean "that Congress did not intend to limit the court's subsection (a) authority by reference to the identity or nature of the plaintiff." *Chevron,* 833 F.3d at 138-39 (reasoning that, "while subsections (b) and (c) limit the categories of plaintiffs to which the relief they respectively specify may be granted, we do not interpret those subsections as limiting the authorized relief to the types they mention"). To this end, given that the Second Circuit interpreted the limited categories of relief provided in subsections (b) and (c) not necessarily as limiting the authorized relief to the types they mention, it is possible that the Plaintiffs may seek injunctive relief under 18 U.S.C.S. § 1964(a) against the Deo Defendants for their alleged RICO violations.

### III.    *Plaintiffs' Defend Trade Secrets Act Claims*

#### A.    *Violation of 18 U.S.C. § 1836 –*
#### *Against the Deos, Merckling, Blankenship, and Thomasson*

The Defend Trade Secrets Act ("DTSA"), codified in 18 U.S.C. § 1831, "created a federal cause of action for the misappropriation of trade secrets used in interstate commerce." *Core SWX, LLC v. Vitec Group US Holdings, Inc.*, 2022 WL 3588081 at *4 (E.D.N.Y. July 14, 2022) (quoting *Elsevier Inc. v. Doctor Evidence, LLC*, 17-cv-5540(KBF), 2018 WL 557906, at *3 (S.D.N.Y. Jan. 23. 2018). For a DTSA claim, plaintiff must show (1) the existence of a trade secret, (2) that "is related to a product or service used in, or intended for use in, interstate or foreign commerce," and (3) misappropriation of the trade secret. *Id.*

Trade secrets include "all forms and types of business information" but only if (1) the owner has taken reasonable measures to keep such information a secret and (2) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *Id.* ((quoting *TRB Acquisitions*

*LLC v. Yedid*, No. 20-CV-0552 (JMF), 2021 WL 293122, at \*2 (S.D.N.Y. Jan. 28, 2021) (citing

18 U.S.C. § 1833(3))).  Defining a trade secret is often a fact-dependent analysis by which the

court will consider the following factors:

> (1) The extent to which the information is known outside of the business; (2) the extent to which is it known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Univ. Processing LLC v. Weile Zhuang*, No. 17 CV 10210-LTS, 2018 WL 4684115, at \*3

(S.D.N.Y. Sept 28, 2018); *see also Iacovacci v. Brevet Holdings, LLC*, 437 F.Supp.3d 367, 380

(S.D.N.Y. 2020); *Uni-Sys., LLC v. U.S. Tennis Assoc., Inc.*, 350 F.Supp.3d 143, 172 (E.D.N.Y.).

The plaintiff need not allege all factors to establish the existence of a trade secret.  *Core SWX,*

*LLC v. Vitec Group US Holdings, Inc.*, 2022 WL 3588081, at \*4 (E.D.N.Y.) July 14, 2022).

Furthermore, "general and vague references to methods, processes, interpretation, programs, and

data configuration protocols do not plausibly support the existence of a trade secret without

supportive facts explaining, for example, how such strategies, techniques or models function, the

[the party] derives value from them, or what [the party] specifically does to ensure their

secrecy." *Id.* at \*5 (quoting *Intrepid Fin. Partners, LLC v. Fernandez*, No. 20 CV 9779-LTS,

2020 WL 7774478, at \*4 (S.D.N.Y. Dec. 30, 2020)).

     A business that invests substantial amounts of time and money into advertising to procure

a particular list of customers or the patronage of a certain class of customers, either of which are

otherwise unknown to industry competitors, has likely done enough to create a trade secret.

*Garvey v. Face of Beauty LLC*, 634 F.Supp.3d 84, 97 (S.D.N.Y. Oct. 6, 2022); *Expert Connect,*

*L.L.C. v Fowler*, 2019 WL 300461 at \*2-3, 5 (S.D.N.Y. July 10, 2019).  Courts do not

automatically qualify non-disclosure agreements standing alone as reasonable protection against

misappropriation and would rather see NDAs coupled with password protections, employee policies detailing the use of specific information, or confidentiality amendments to licenses. *Zabit*, 540 F.Supp.3d at 424-25; *Expert Connect, L.L.C.* at *4. However, the most important consideration in determining whether information constitutes a trade secret is dependent on whether the information was secret. *See Zabit v. Brandometry, LLC*, 540 F.Supp.3d 412, 421 (S.D.N.Y. May 18, 2021). Furthermore, "if an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." *Id.* at 422 (quoting *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1002 (1984)).

Notably, trade secrets are not one and the same as confidential information. *Core SWX, LLC*, 2022 WL 3588081 at *5 (citing *Elsevier Inc.* 2018 WL 557906, at *5). The secrecy surrounding a trade secret need be sufficient but not absolute such that "except by use of improper means, there would be difficulty acquiring the information." *Id.* at *7 (citing *Zabit,* 540 F.Supp.3d at 427) (finding that where numerous other individuals had access to the purported trade secret and that the information that the plaintiff licensed to defendant was done without confidentiality agreements, nor any instructions to keep the information secret or other security measures was insufficient to allege the secrecy required for a trade secret under the DTSA).

"Courts in the Second Circuit generally look to whether confidentiality or nondisclosure agreements are in place and whether the information is guarded by physical- or cyber-security protections." *Id.* at *7 (quoting *Turret Labs USA, Inc. V. Cargo Spring, LLC,* 19-CV-6793, 2021 WL 535217, at *4 (E.D.N.Y. Feb. 12, 2021). Reasonable measures include, but are not limited to "confidentiality agreements, password protection, sharing information with employees only on

a need-to-know basis, emphasizing the need to keep the information confidential and frequently reminding employees of the need to maintain confidentiality." *Id.* at *7. However, a mere duty of loyalty "does not somehow transform freely shared information into a *secret*." *Zabit*, 540 F.Supp.3d at 427 (to hold otherwise "would risk expanding the limited category of 'trade secrets' to cover any confidential information.").

Relevant here, a customer list is likely a trade secret if (1) it enumerates specific customers with particular tastes, (2) the defendant can use that list to divert customers to a competing business to the material and reputational detriment of the business seeking trade protection, and (3) where the defendant could not have obtained the list but for the novel efforts of the business seeking protection. *Expert Connect, L.L.C. v Fowler*, 2019 WL 300461 (S.D.N.Y. July 10, 2019) at *2-3, 5. Furthermore, a customer list has been found not to be a trade secret when it was "not under lock and key, and there [was] no evidence of any effort on the part of the plaintiff to insure that [the list] should be considered secret or confidential." *Defiance Button Machine Co. v. C&C Metal Products Corp*, 759 F.2d 1053, 1063-64 (2d. Cir. 1985) (holding that information left in the memory of a computer, from which it could be retrieved by using a file name or password readily available was sufficient to show plaintiffs did not take adequate measures to ensure the secrecy of the lists."). Further, security measures such as password are not sufficient without any confidentiality agreements or instruction or policy to keep the items secret. *Zabit*, 540 F.Supp.3d at 426 (holding that plaintiffs did not meet the threshold for sufficient secrecy when they licensed the information to another party, without confidentiality agreements, instructions to keep it secret, or other protective measures).

Here, there are two purported trade secrets at issue: (i) the Irie Jam Customer List (the "Customer List"), and (ii) the Tekion DMS system (hereafter, "Tekion DMS system" or

"DMS").  Plaintiffs successfully set forth that the information derives independent economic value from not being generally known and not being readily ascertainable by others.  *See TRB Acquisitions LLC v. Yedid*, No. 20-CV-0552 (JMF), 2021 WL 293122, at *2 (S.D.N.Y. Jan. 28, 2021).  However, Plaintiffs far fall short in alleging the existence of a trade secret in that the complaint is devoid of any information that they took reasonable measures to guard such information a secret. *Id.*

With respect to economic value portion of the test, Superb used the Tekion DMS system to set up its floor plan agreement with Nissan Motor Acceptance Corporation, and facilitated these operations with its unique DMS that was specifically customized for Superb by Tekion. *See* ECF No. 65 at ¶¶ 199, 228.  Pursuant to factor (5), Superb expended effort and money to develop this information; Urrutia spend over $120,00 to weave Tekion into Superb's business model. *Id.* at ¶ 231-32; *see also, Univ. Processing LLC*, 2018 WL 4684115, at *3.  Pursuant to factor (4), this information is objectively valuable, not just financially, but in the competitive marketplace; Urrutia described this tool as "the blueprint for Urrutia's success at his dealerships" such that it also gave his business "a unique competitive advantage."  *Id.* at ¶ 231-32, 265; *see also, Univ. Processing LLC*, 2018 WL 4684115, at *3.  DMS enabled Superb to effectively "streamline dealership operations, inventory management, cash flow management, and reporting features that identify areas of improvement" at their dealership.  *Id.* at ¶ 269; ECF No. 38-2 at 1, 38.

Similarly, the Customer List derives independent economic value from not being generally known. Courts have held that when a business invests substantial amounts of time and money into advertising to procure a particular list of customers or the patronage of a certain class of customers, either of which are otherwise unknown to industry competitors, said business has

likely done enough to create a trade secret.  *See, e.g.*, *Garvey v. Face of Beauty LLC*, 634 F.Supp.3d 84, 97 (S.D.N.Y. 2022).  Whether a customer list constitutes a trade secret may depend on whether customers are readily ascertainable outside the employer's business such that they are discoverable only with extraordinary efforts secured by years of effort and advertising effected by the expenditure of substantial time and money.  *Id.* at 97 (citing *24 Seven, LLC v. Martinez,* No. 19-CV-7320, 2021 WL 276654, at *7 (S.D.N.Y. Jan. 26, 2021)).  Here, Urrutia partnered with Bobby Clarke ("Clarke") and his radio station Irie Jam, 93.5 FM in $1.5 million worth of advertising targeting over 2 million listeners from the Caribbean community which in turn generated a "substantial customer list[.]" *Id.* at ¶¶ 237-38.

Pursuant to factor (5), the amount of effort expended to generate the Customer List is alleged to be extensive and attributable solely to Urrutia who created it using his decades of experience in the industry, relationships he established along the way and his own "unique know-how" in operating automobile dealerships.  *Id.* at ¶ 260; *see also, Univ. Processing LLC*, 2018 WL 4684115, at *3.  Pursuant to factor (6), the Customer List could not easily be acquired or duplicated because it was a direct result of "the unique nature of Urrutia's partnership with Clarke" such that it "could not possibly be reverse engineered or independently generated without also substantially investing in Irie Jam." *Id.* at ¶ 239; *see also, Univ. Processing LLC*, 2018 WL 4684115, at *3; *Iacovacci, v. Brevet Holdings, LLC*, 437 F.Supp.3d 367, 380-81 (S.D.N.Y. 2020) (holding non-public sourcing information for over 2,000 clients constituted a trade secret).

Plaintiffs allege Deo illicitly channeled Urrutia's decades of experience, the Customer List, DMS customized for Superb, and other proprietary information into his own Gold Coast Dealerships. *See* ECF No. 65 at ¶¶ 258-60, 269.  Plaintiffs claim this enabled the Deo

Defendants to benefit from the confidential information Urrutia developed and sourced over thirty years in the automobile dealership industry, essentially stealing from the Superb Plaintiffs. *Id.* at ¶ 269. Plaintiffs allege that Deo implemented the confidential and proprietary DMS and the "exact customization used by Superb" in such dealerships of his own. *See* ECF No. 65 at ¶¶ 227-28, 230, 233-32. This allegation is corroborated by the fact that Deo poached Superb employees for his own dealerships and trained them to utilize the DMS. *Id.* at ¶¶ 235-36. Furthermore, Deo and his staff used their history at Superb and familiarity with the Customer List to redirect listeners to the Gold Coast dealerships. *Id.* at ¶¶ 258-60.

Although Plaintiffs have sufficiently alleged that both DMS and the Customer List have substantial economic value, they cannot show that they took sufficient measures to keep them secret or confidential, and, therefore, do not sufficient allege violation of the DTSA. Plaintiffs do not sufficiently allege reasonable measures taken to keep their confidential information secret. *Id.* Superb alleges that it restricted this information's accessibility only to employees that were required to maintain its confidentiality in a computer system secured with firewalls, usernames and passwords. *See* ECF No. 65 at 266; *see also, Univ. Processing LLC*, 2018 WL 4684115, at *3. However, Deo Defendants successfully push back that there are no instances of non-disclosure agreements or contractual obligations binding employees to secrecy over either DMS or the Customer List sufficient to allege reasonable measures were taken to protect its secrecy, and further, that Superb did not claim their employees did not have access to the customer lists nor were they under any contractual obligation to keep same confidential. *See* ECF No. 176-1 at 10.

For example, in *Core SWX LLC*, the plaintiff alleged that the information at issue was only accessible to employees and that the employee "understood" the confidential nature of the

information, however, the Court found such claims lacked any specificity regarding why the individual would understand the information's proprietary and confidential nature, such as instructions in an employee handbook and/or whether the individual was reminded of the information's confidential status. *Core SWX, LLC*, 2022 WL 3588081 at *8-9 (finding that the claimant did not plausibly state the existence of a trade secret). The Superb Plaintiffs' similar restriction of the information's accessibility only to employees that were required to maintain its confidentiality in a computer system secured with firewalls, usernames and passwords (ECF No. 65 at ¶ 266) is not sufficient to establish secrecy sufficient for a DTSA claim against defendants.

The Deo Defendants successfully argue that Plaintiffs failed to allege a DTSA violation claiming they did not assert a trade secret, but only "generalized categories of information." ECF 176-1 at 8; *see also Elsevier Inc.,* 2018 WL 557906, at *6 (holding that "alleging the existence of general categories of confidential information, without providing any details to generally define the trade secrets at issue does not give rise to a plausible allegation of a trade secret's existence."). Superb does not allege any of these specifics but only that Urrutia partnered with Irie Jam in $1.5 million worth of advertising "to over 2 million listeners in the Caribbean community," generating a "substantial customer list" but without specifying why this list could not possibly reverse engineered or independently generated without such an investment. *See* ECF No. 65 at ¶¶ 237-38.

Ultimately, while Plaintiffs likely demonstrated enough factors to show the economic value of both the DMS and the Customer List, especially given the substantial investment's Urrutia made on behalf of Superb to secure this information, Plaintiff's did not proffer sufficient facts to show they took reasonable measures to keep the information a secret. While they may have been confidential in the sense that Plaintiffs expected its use to be only by their employees,

there is scant evidence to suggest Plaintiffs took reasonable measures to ensure both the DMS and the Customer List information remained a secret.  *See e.g., Zabit, LLC*, 540 F.Supp.3d at 424.  Thus, applying the above six factors to assess the purported trade secrets, the Court finds that Plaintiffs did not plausibly state the existence of a trade secret.  Therefore, Plaintiffs' trade secret misappropriation claims under New York and federal law are dismissed.

**B.**   ***Injunctive relief under the DTSA --***
   ***18 U.S.C. § 1836, et seq – Against the Deo Defendants***

The DTSA and the VUTSA also permit an award of permanent injunctive relief. *See* 18 U.S.C. § 1836(b)(3)(A); *see also Smart Team Global, LLC v. HumbleTech LLC,* No. 19-CV-4873 (AJN), 2022 WL 847301, at *11 (S.D.N.Y. Feb. 18, 2022).  Injunctive relief must, however, be "narrowly tailored to fit specific legal violations" to "avoid unnecessary burdens of lawful commercial activity."  *Id.* at 12 (quoting *Faivley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 119 (2d. Cir. 2009)).  The DTSA cautions against injunctions that "prevent a person from entering an employment relationship" or "otherwise conflicts with an applicable state law prohibiting restraints on the practice of a lawful profession, trade or business."  *Id.; see also* 18 U.S.C. § 1836(b)(3)(A). "The DTSA expressly provides for injunctive relief. 18 U.S.C. 1836(b)(3)(A)." *Syntel Sterling Best Shores Mauritius Limited v. TriZetto Group, Inc.*, No. 15 Civ. 211 (LGS), 2021 WL 1553926, at *6 (S.D.N.Y. Apr. 20, 2021) (explaining plaintiffs are permitted to seek "damages for actual loss caused by misappropriation; and...damages for any unjust enrichment caused by the misappropriation... that is not addressed in computing damages for actual loss; or... in lieu of damages measured by [those] methods, the damages... measured by imposition of liability for a reasonable royalty for the mis appropriator's unauthorized disclosure or use of the trade secret.").

Given that the DTSA claim against the Deo Defendants fails as a matter of law, Plaintiffs' claim for injunctive relief is likewise dismissed for failure to plead the substantive trade secret under DTSA's requirements, specifically relating to the reasonable measures taken to ensure the information was kept secret.

### C.   *Misappropriation under the DTSA – Against the Deo Defendants*

To allege misappropriation under the DTSA, "a complaint must plead that the defendant misappropriated a trade secret (1) by acquiring a trade secret by improper means, or (2) disclosing or using the trade secret without consent." *JAPNA, Inc. V. SELFX Innovations Inc.*, No. 22-cv-10753 (ALC) (RWL), 2024 WL 1250269 at *7 (Mar. 22, 2024) (quoting *ExpertConnect, L.L.C.*, 2019 WL 3004161, at *6 (citing *AUA Private Equity Partners, LLC* v. Soto, No. 17-cv-8035, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018)).  In other words, the DTSA "contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use." *AUA Priv. Equity Partners*, 2018 WL 1684339, at *4 (citation omitted).  Under the DTSA, improper means includes "theft, bribery, misrepresentation, and breach or inducement of a breach of a duty to maintain secrecy, but excludes reverse engineering, independent derivation, or any other lawful means of acquisition." *Core SWX*, 2022 WL 3588081 at *9 (quoting *Altman Stage Lighting, Inc. V. Smith*, 20-CV-2575 (NSR), 2022 WL 374590 at *4 (S.D.N.Y. Feb. 8, 2022) and 18 U.S.C. § 1839(6)).

Under New York common law, "[a] plaintiff claiming misappropriation of a trade secret must prove: [i] it possessed a trade secret, and [ii] defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means.'" *JAPNA, Inc.* 2024 WL 1250269 at *7 (quoting *Catalyst Advisors, L.P. v. Catalyst Advisors Investors Global Inc.*, 602 F. Supp. 3d 663, 671 (S.D.N.Y. May 10, 2022)).  Given the elements for a

misappropriation claim under New York law are fundamentally the same as elements required to sufficiently state a DTSA claim courts have found that if a plaintiff's complaint sufficiently pleads a DTSA claim, then it "also states a claim for misappropriation of trade secrets under New York law." *Catalyst Advisors, L.P.* 602 F.Supp.3d at 671 (quoting *Iacovacci v. Brevet Holdings, LLC.,* 437 F.Supp.3d 367, 380 (S.D.N.Y. 2020)).

As stated above, the Court finds that the Plaintiffs have not set forth sufficient facts to plausibly state that a trade secret exists here with respect to the Customer List or DMS, let alone that the purported trade secret was acquired through improper means, or disclosed or used without their consent. Plaintiffs allege that Urrutia, using his many years of experience and connections, taught Deo how to manage Superb with Tekion and used DMS to streamline dealership operations, inventory management, cash flow management, and reporting features that identify areas of improvement. *See* ECF No. 65 at ¶ 229; ECF No. 38-2 at 1, 38. Further, Plaintiffs allege that the DMS system was protected by password protection, firewalls and "other measures." *See* ECF No. 65 at ¶¶ 36-37. With respect to the Customer List, Plaintiffs contend it was the result of material effort between Superb, Clarke, and Irie Jam which they claim to be evidence of the list's value in secrecy. *Id.*

Ultimately, Plaintiffs' vague assertions that their alleged trade secrets were only accessible to employees who had a need for the information for work purposes are entirely vague and not enough to state a claim. *See e.g., Trahan v. Lazar*, 457 F.Supp.3d 323, 344 (S.D.N.Y. 2020) (finding that misappropriation by improper means is not adequately alleged when the subject information is willingly given, or where defendant acquired information in course of official duties while employed).

IV.    _**Unfair Competition – Against the Deo Defendants**_

"The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another with some element of bad faith." _ML Genius Holdings LLC v. Google LLC_, No. 20-3113, 2022 WL 710744 at *4 (2d. Cir. Mar. 10, 2022) (quoting _Universal Instruments_, 924 F.3d 32, 50-51 (2d Cir. 2001)); _see also Telecom Int'l Am., Ltd. v. AT&T Corp._, 280 F.3d 175, 197 (2d Cir. 2001) ("The essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship.").  There is no explicit list of activities which constitute unfair competition; the general principle is that unfair competition occurs when there has been a misappropriation, for the commercial advantage of one person of a benefit or property right belonging to another.  _Telecom Int'l Am., Ltd._ 280 F.3d at 197.  New York's unfair competition law is a "broad a flexible doctrine that depends more upon the facts set forth" than in other causes of action and has been said to encompass "any form of commercial immorality." _Id._

However, a claim for unfair competition by misappropriation "will fail where a plaintiff cannot demonstrate the bad faith misappropriation of a commercial advantage which belonged exclusively to him." _Big Vision Private Ltd. V. E.I. du Pont de Nemours and Co._, 610 F.App'x 69, 70 (2d Cir. 2015) (quoting _LoPresti v. Mass. Mut. Life Ins. Co.,_ 920 N.Y.S.2d 275, 277 (N.Y. App. Div. 2d Dep't 2006)) (a claim of unfair competition does not require a finding of breach of contract or misappropriation of a trade secret).  Some courts also require a plaintiff to allege special damages by showing "direct financial loss, lost dealings, or an accounting of the profits resulting from the anticompetitive acts at issue." _Barbagallo v. Marcum_ LLP, 820 F.Supp.2d

429, 446 (E.D.N.Y. Oct. 25, 2011) (quoting *Coca-Cola N. Am.*, Nos. 09 CV 3259(JG)(RML), 09 CV 3279 (ERK)(RML), 2011 WL 1882845 at *6 (May 17, 2011)); *but see Fairfield Financial Mortg. Group, Inc. v. Luca*, 584 F. Supp.2d 479, 487 (E.D.N.Y. 2008) ("The Court is unaware of any New York federal or state court that has held that special damages is an element of an unfair competition claim."). To show special damages, it is sufficient to simply allege that defendant diverted plaintiff's customers and business. *Barbagallo,* 820 F.Supp.2d at 447 (citing *CA, Inc. V. Simple.com*, 621 F. Supp. 2d 45, 54 (E.D.N.Y. 2009)); *Out of the Box Promotions, LLC v. Koschitzki*, 866 N.Y.S.2d 677, 681 (N.Y. App Div. 2d Dep't 2008)).

Although unfair competition often involves misappropriation of trade secrets pursuant to the DTSA, a claim may also be based on misappropriation of client lists, internal company documents, and business strategies "if wrongful or fraudulent tactics [are] employed." *Barbagallo*, 820 F.Supp.2d at 447; *see also Berman v. Sugo LLC*, 580 F.Supp.2d 191, 209 (S.D.N.Y. 2008) (explaining that an unfair competition claim may arise from the misappropriation of client lists, internal company documents, and business strategies). Specifically, solicitation of an employer's customer by a former employee can be actionable if there was wrongful conduct by the employee such as taking or copying the employer's files or using the employer's confidential information. *Barbagallo*, 820 F.Supp.2d at 447.

Here, while DMS and the Customer List do not rise to the level of a trade secret, Urrutia and Superb "invested significant labor, skill and money" in developing this technology for Superb's use. *See Barbagallo,* 820 F.Supp.2d at 447. Plaintiffs allege that Urrutia's partnership with Clarke in $1.5 million worth of advertising generated the substantial customer list which could not possibly reverse engineered or independently generated without also substantially investing in Irie Jam. *See* ECF No. 65 at ¶ 239. With respect to DMS, Urrutia similarly used his

own decades of experience in the industry to create Superb's business model premised on the
Tekion DMS.  *Id.* at ¶ 260.  In addition to labor and skill invested in the business model, Urrutia
customized the system for Superb's function and invested $120,000 to acquire this unique
competitive advantage for the dealerships.  *See* ECF No. 193 at 26. Although this information
was not found to meet the requirements of a trade secret, Plaintiffs are alleged to have
maintained the information's confidentiality, as is evidenced by it being kept on a computer
system secured with firewalls, usernames, and passwords accessible only to employees. *See* ECF
No. 65 at ¶ 266.

Regarding the necessary bad faith component, wrongful tactics were allegedly employed
to acquire this confidential client information since Plaintiffs allege Deo poached Superb
employees for his own Gold Coast dealerships and trained them in the Tekion DMS system.  *Id.*
at ¶¶ 235-36.  Furthermore, Deo and these employees allegedly used their time at Superb and
familiarity with its Customer List to redirect Caribbean listeners of Irie Jam to Gold Coast
dealerships.  *Id.* at ¶¶ 237-40; *see also Barbagallo,* 820 F.Supp.2d at 447 (finding that
solicitation of an employer's customer by a former employee may be actionable if there was
wrongful conduct by the employee such as taking or copying the employer's files or using the
employer's confidential information).

As such, Plaintiffs allege Deo effectively and illicitly channeled Urrutia's decades of
experience, the Customer List, and DMS customized for Superb into his own Gold Coast
dealerships.  *Id*. at ¶¶ 258-60.  Thus, Plaintiffs have pled sufficient facts to support their claim
that the Deo Defendants engaged in unfair competition, especially given other Courts have held
special damages to be sufficient when a plaintiff only alleges that defendant diverted plaintiff's

customers and business.  *See Barbagallo,* 820 F.Supp.2d at 447 (citing *CA, Inc. V. Simple.com*,

621 F. Supp. 2d 45, 54 (E.D.N.Y. 2009); *Out of the Box Promotions, LLC*, 866 N.Y.S.2d at 681.

## V.   *Tortious Interference with Contracts, Business Relations, and Prospective Economic Advantage – Against the Deo Defendants*

To establish intentional interference with contract under New York law, a plaintiff must show: (1) "the existence of a valid contract between the plaintiff and a third party[;]" (2) "defendant's knowledge of that contract[;]" (3) "defendant's intentional procurement of the third-party's breach of the contract without justification[;]" (4) "actual breach of the contract[;]" and (5) "damages resulting therefrom."  *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 424, 668 N.E.2d 1370, 1375 (N.Y. 1996).  The New York Court of Appeals has explained:

> [T]he degree of protection available to a plaintiff for a competitor's tortious interference with contract is defined by the nature of the plaintiff's enforceable legal rights. Thus, where there is an existing, enforceable contract and a defendant's deliberate interreference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior.

*NBT Bancorp v. Fleet/Norstar Fin. Group*, 664 N.E.2d 492, 496 (N.Y. 1996).

Here, to purchase inventory, Northshore and Sunrise maintained a "Floor Plan" credit line with Ally Bank under which the Bank kept a lien on vehicles purchased through the Floor Plan until the dealerships repaid Ally Bank the amount initially borrowed to buy the vehicles. *See* ECF No. 65 at ¶¶ 77-85.  Northshore and Sunrise placed liens on titles of any financed vehicles to protect lenders in the event the customer was to default, and, if the dealerships failed to perfect any of these liens, they would have to repurchase the lender's loan to the customer.  *Id.* at ¶¶ 99-101.  Furthermore, the failure to satisfy any of these loans or obligations could leave the dealerships with both civil and criminal liability as well as risk losing their DMV licenses and the ability of the licensees to obtain a license for other dealerships. *Id.* at ¶¶ 96-97, 103-04. Plaintiffs allege that Deo acted as manager of Northshore and Sunrise, overseeing these operations, and acted in a way that jeopardized their relationships and licenses. *Id.* at ¶ 76.

Specifically, it is alleged that Deo purchased then sold vehicles for "less than their purchase price," incurring a deficiency of over $3,000,000. *Id.* at ¶¶ 86-89. As a result of this conduct, IAG had to pay Ally Bank this deficiency to cure the floor plan's shortcomings. *Id*. Deo's failure to have the dealerships pay existing loan and lease balances left vehicles' prior owners liable despite their lack of ownership or possession. *Id*. at ¶¶ 92-95. Deo also sent out vehicles to various garages for repair, and at least one garage placed a lien on at least one vehicle resulting from Deo's failure to satisfy the lien, resulting in the garage selling the vehicle off in auction. *Id.* at ¶¶ 77-85. Deo is further alleged to have engaged in "double flooring" whereby he used one vehicle present and available for multiple loans to illegally receive twice the funding for that single asset (*id.* at 99) by filling out applications for financing and making material misrepresentations in said applications. *Id.* at ¶ 203.

In support of their claim for tortious interference with contracts, business relations, and prospective economic advantage, Plaintiffs vaguely claim, "Deo Defendants were at all relevant times aware of these agreements between Superb Plaintiffs and their banks, vendors, customers and employees" and further that "Deo Defendants engaged in conduct designed to damage those relationships." *See* ECF 176-1 at 386-87. However, Plaintiffs do not set forth sufficient facts to support the Deo Defendant's actual knowledge nor intention to breach the Plaintiff's contracts by their actions. Ultimately, even if the double flooring scheme were true and possibly caused Superb to breach agreements with its lenders, nothing in the Amended Complaint alleges that the Deo Defendants acted intentionally to interfere with the relation between Superb and its third-party lenders without justification as is required. *See* ECF No. 176-1 at 13.

Furthermore, Plaintiffs do not explicitly allege an actual breach of the contract occurred although they were required to compensate for deficiencies found on the Floor Plan managed by

Deo. *See Lama Holding Co.,* 668 N.E.2d 1370, 1376 (N.Y. 1996) ("*Lama*") (finding no tortious interference claim was stated when that there was no allegation that the defendant intentionally procured the plaintiff's breach of its contract with a third party, nor that the plaintiff in fact breached its contract at all). In *Lama,* the plaintiffs, much like Plaintiffs here, charged that the defendants' actions "wrongfully interfered with and frustrated the performance" of their agreements. *Id.* However, that did not suffice to support their claim of tortious interference because there was no allegation made that the defendant intentionally procured a breach, nor that a breach ever occurred as a result of the actions. Furthermore, given tortious interference requires intentional and improper interference in the business relationship between a third party and the Plaintiffs, and that Plaintiffs have not sufficiently alleged the Deo Defendants' intent to do so, and, therefore, Plaintiffs do not state a sufficient claim of tortious interference, and this claim is dismissed.

## VI.    *Conversion – Against the Deo Defendants, Thomasson, Deo, and the Bank Defendants; Aiding and Abetting Conversion – Against Thomasson*

Conversion is defined as the "unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession." *LoPresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir. 1997) (internal quotation marks and citation omitted). To succeed on a conversion claim, New York law requires a plaintiff to show that (1) the defendant acted without authorization; (2) the defendant exercised dominion or a right of ownership of property belonging to plaintiff; (3) the plaintiff made a demand for the property; and (4) defendant refused the demand for the return of the property. *Pac. M. Int'l Corp. v. Raman Int'l Gems, Ltd.*, 888 F. Supp. 2d 385, 396 (S.D.N.Y. 2012); *see Clark St. Wine & Spirits v. Emporos Sys. Corp.*, 754 F. Supp. 2d 474, 484 (E.D.N.Y. 2010).

However, New York makes a distinction between conversion claims where a person wrongfully takes property and conversion claims where a person did not take the property but wrongfully retains it, such that where the original possession is lawful, conversion does not occur until the defendant refuses to return such property after demand. *Newbro v. Freed*, 409 F.Supp.2d 386, 402 (S.D.N.Y. 2006); *see also Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 54 (2 Cir. 1993). It follows necessarily that, where the defendant holds the property unlawfully from the start, such that demand would be futile because the circumstances show the defendant knows it has no right to the goods, a demand for the return of the property is not required. *New York v. Seventh Regiment Fund, Inc.*, 774 N.E.2d 702 (N.Y. 2002).

To state a claim for conversion under New York law, "a plaintiff must show: (1) legal ownership or an immediate superior right of possession to a specific identifiable thing and (2) that the defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Ancile Inv. Co. Ltd. V. Archer Daniels Midland Co.*, 784 F.Supp.2d 296, 312 (S.D.N.Y. 2011). A plaintiff does not need to show that the defendant had knowledge that he acted wrongfully, "but merely an intent to exercise dominion or control over property in a manner inconsistent with the rights of another." *LoPresti*, 126 F.3d at 41. Conversion requires the defendant to exclude the true owner from exercising her rights over the goods at issue. *Pac. M. Int'l Corp.*, 888 F.Supp.2d at 396 (citing *Seventh Regiment Fund*, 774 N.E.2d at 702).

To state a claim for aiding and abetting conversion under New York law, plaintiffs "must allege (1) the existence of a primary violation; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation." *Berman v. Morgan Keegan & Co., Inc.*, No. 10 Civ.

5866 (PKC), 2011 WL 1002683 at *13 (S.D.N.Y. Mar. 14, 2011).

Money of course can be the subject of a conversion claim but "where the property is money, it must be specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in a particular manner." *Cruz v. TD Bank, N.A.*, 855 F.Supp.2d 157, 174 (S.D.N.Y. 2012) (quoting *Republic of Haiti v. Duvalier*, 626 N.Y.S.2d 472 (N.Y. App. Div. 1st Dep't 1995). With respect to bank defendants, funds in a bank account are generally "not sufficiently specific and identifiable to support a claim for conversion against the bank." *Id.* (citing *Fundacion Museo de Arte Contemporaneo de Caracas v. CBI-TDB Union Bancaire Privee*, 160 F.3d 146, 148 (2d Cir.1998) (quoting *Chem. Bank v. Ettinger*, 602 N.Y.S.2d 332 (N.Y. App. Div. 1st Dep't 1993)). However, conversion can arise where a specific amount of funds in a bank is withdrawn or transferred. *Id.* (citing *Payne v. White*, 477 N.Y.S.2d 456 (N.Y. App. Div. 3d Dep't 1984).

Additionally, a "conversion claim may only succeed if the party alleges a wrong that is distinct from any contractual obligations." *Ultra Dairy LLC v. Kondrat*, 514 F.Supp.3d 452, 459 (N.D.N.Y. 2021). A plaintiff must properly allege that defendants "actively participated in a fraud or conversion." *FDIC v. Concordia*, 2024 WL 4362783 at *4 (S.D.N.Y. Sept. 30, 2024) (citing *Scottenstein v. Lee,* No. 22-CV-1197 (DLC), 2023 WL 3363002 at *3 (S.D.N.Y. July 6, 2023)) (holding that plaintiffs failed to state a claim for conversion against the defendant when third parties made all the fraudulent wire transfers, plaintiffs set forth no facts explaining the defendant's purported involvement in the conversion scheme other than his control of an account that received stolen funds and no facts to suggest the defendant otherwise knew he wrongfully possessed the plaintiff's property).

When an underlying act is alleged to be fraudulent, a claim of conversion must be pled

with specificity under Fed. R. Civ. P. 9(b). *See Silverman Ptnrs., L.P. v. First Bank*, 687 F. Supp. 2d 269, 288 (E.D.N.Y. 2010) ("[T]he heightened pleading standards of Rule 9(b) apply to torts that are premised on the defendant's alleged fraudulent actions. Thus, breach of fiduciary duty, conversion, and unjust enrichment must be pled with specificity when the underlying acts are allegedly fraudulent."). In addition, where the underlying wrong with respect to the aiding and abetting conversion claim is fraud, actual knowledge must also be alleged with particularity pursuant to Rule 9(b). *In re Agape Litigation*, 773 F.Supp.2d 298, 307 (E.D.N.Y. 2011).

Here, Plaintiffs allege that Deo treated Northshore, Sunrise, and their respective assets as his own. *See* ECF No. 65. at ¶ 118. Plaintiffs have sufficiently stated numerous allegations, which if true, would suffice to show that Deo exercised unauthorized dominion over Superb's personal property in interference with their legal title. *See Lopresti,* 126 F.3d at 41. Plaintiffs allege Deo has taken over $230,000.00 in customer cash deposits, rather than depositing them in Northshore's account as well as issued and signed checks from such accounts to pay for his personal expenses, such as $60,000.00 from Northshore to a corporation formed and owned by Deo. *Id.* at ¶¶ 119-121. Plaintiffs also allege that Deo employed the asserts of Nortshore to secure loans from Flushing Bank for the purpose of personally taking the proceeds all without the knowledge or approval of Northshore's members. *Id.* at ¶¶ 170-72.

Plaintiffs also specifically allege that on or about November 15, 2022, Deo falsely purported himself as the sole owner of Northshore to enter an agreement with Libertas Funding to sell $997,500.00 of Northshore's future receipts to Libertas for the purchase price of $735,000.00 all without the consent of Northshore's members. *Id.* at ¶¶ 148-50. Plaintiffs allege that Deo arranged for these funds to be deposited into Sunrise's bank account, from

which he was able to withdraw the funds and complete the scheme to wrongfully convert for himself the funds rightfully belonging to Northshore. *Id.* at ¶¶ 150-52.

With regard to the same Libertas Funding transaction, Deo fell under suspicion by the IAG Plaintiffs who suspected he did not have the right to act on Northshore's behalf which led to a dispute over where to deposit the funds. *Id.* at ¶¶ 157-58. At this point, Thomasson, who Plaintiffs allege was aware of the dispute and falsely presented himself as the attorney for Northshore, Sunrise, and Deo, arranged for the Libertas Funds to be placed in his attorney trust account for safekeeping pending resolution. *Id.* at ¶¶ 155, 157-59. The IAG Plaintiffs transferred the funds to Thomasson's attorney trust account, whereby Thomasson immediately disbursed the funds to Deo. *Id.* at ¶¶ 162-63.

Ultimately, Plaintiffs allege that the Deo engaged in conversion by enabling the transfer of the Libertas Funds paid by Libertas to Northshore for the purported sale of future receipts to instead be disbursed to Deo for his own personal use (*id.* at ¶¶161-66), and, in direct interference of Plaintiffs' rightful ownership. Plaintiffs also allege that despite due demand, Deo and Thomasson have refused to return to Northshore the assets converted, although such demand is not necessary because Deo knew the property did not belong to him as he purported the transaction as between Northshore and Libertas, not himself. *Id.* at ¶¶ 469, 475, 510. To this, the Court finds Plaintiffs have successfully alleged conversion as against the Deo Defendants and aiding and abetting conversion against Thomasson.

With respect to the Bank Defendants, Plaintiffs allege that the cash, checks, and wire transfer deposited into an account at Flushing Bank in the name of Superb by Deo without authority, in fact belong to Superb and that the funds in the account Superb maintained with Chase Bank belong to Superb. ECF No. 176 at ¶¶ 620-621. Plaintiffs broadly claim that both

Flushing Bank and Chase Bank "each exercised unauthorized dominion over the funds of Superb to the exclusion of Superb's rights." *Id.* at ¶ 622.

Here, the Court finds Plaintiffs fail to state a claim for conversion, because Plaintiffs set forth no facts explaining the Bank Defendants' purported involvement in the Deo Defendants' scheme, other than control of the account by which fraudulent wire transfers were made and funds were deposited. *See Schottenstein*, 2023 WL 4363002 at *3 (holding that without facts to demonstrate the defendant's involvement in the conversion scheme, facts that show his control of an account that received stolen funds was insufficient). Furthermore, Plaintiffs have not suggested that the Bank Defendants knew they wrongfully possessed the Plaintiff's property, especially given Deo falsely claimed to be the sole owner of the dealerships in order to open accounts and transfer funds without Superb's approval. *See id.* (holding plaintiff failed to state a conversion claim when the plaintiffs failed to show they made a demand for the return of their money from the defendant or that the defendant otherwise knew he wrongfully possessed their property in the account he controlled); *see also* ECF No. 176 at ¶¶ 209-210. Therefore, Plaintiffs have failed to set forth sufficient facts to support a sufficient conversion claim as it pertains to the Bank Defendants, and the conversion claim as against them is dismissed.

**VII.** ***Unjust Enrichment Claims – Against Deo, Northshore, and Sunrise***

Under New York law a claim for unjust enrichment has elements of (1) the defendant was enriched; (2) enrichment was at the plaintiff's expense; and (3) the defendant's retention of the benefit would be unjust." *Bartfield v. Murphy*, 578 F.Supp.2d 638, 648-49 (S.D.N.Y. 2008). In New York, unjust enrichment is an equitable remedy available in cases where there is no contract between the parties. *Marathon Enterprises, Inc. V. Schroter GMBH & Co.*, No. 01 Civ.

0595 (DC), 2003 WL 355238 at *9 (S.D.N.Y Feb. 18, 2003). It is rooted in the concept that a person should not be allowed to unjustly enrich themselves at the expense of another and will depend on "broad considerations of equity and justice." *Columbia Mem. Hosp. V. Hinds,* 192 N.E.3d 1128 (N.Y. 2022). Essentially, courts will determine if it goes against equity to permit a party to retain what is sought to be recovered by assessing whether "a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent." *Id.*

Where, as here, there is no contract between the parties, privity is not required for an unjust enrichment cause of action. *Financial Assistance, Inc. v. Graham*, 143 N.Y.S.3d 380 (N.Y. App. Div. 2d Dep't 2021).  However, an unjust enrichment cause of action will not stand where the connection between the parties is too attenuated; such a claim requires a showing of reliance and is based on an "obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." *Id.* Notably, an unjust enrichment claim is not a "catchall cause of action to be used when others fail." *Hesse v. Godiva Chocolatier, Inc.*, 463 F.Supp.3d 453, 473 (S.D.N.Y. 2020) (quoting *Stoltz v. Fage Dairy Processing Industry, S.A.*, 2015 WL 5579872, at *26 (E.D.N.Y. Sept. 22, 2015). Unjust enrichment claims will not survive a motion to dismiss "where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Id.* at 474 (quoting *Nelson v. MillerCoors, LLC*, 246 F.Supp.3d 666, 679 (E.D.N.Y. 2017)).

Here, Plaintiffs allege, and this Court agrees, that if these allegations are taken as true, Deo's retention of assets of Northshore and Sunrise have caused him to be unjustly enriched at Northshore's expense, and the circumstances are such that equity and good conscience require

Deo to make restitution. *See* ECF No. 65 at ¶¶ 473-474; 479-480. Plaintiffs also assert numerous

instances where Deo took and used dealership assets for his own purposes, and at the expense of

the Plaintiffs' dealerships. *Id.* at ¶¶ 118-125. Plaintiffs allege that Deo treated Northshore and

Sunrise and their respective asserts as his own:

> For example, Deo allegedly took over $230,000.00 in customers' cash deposits, rather
> than rightly deposit the money in Northshore's accounts, issued and signed checks from
> Northshore bank accounts to be sent to his own corporation for his own personal
> expenses, used credit cards in Sunrise's name to pay for personal expenses and lastly,
> Deo's son  continues to drive, for personal use, a luxury Maserati, valued at almost
> $80,000 and paid for by IAG Plaintiffs' all of which was done without Plaintiffs' consent.

*Id.*

The Court finds Plaintiffs have sufficiently showed evidence that Deo was enriched at

Plaintiff's expense, which is the necessary component for a claim of unjust enrichment. *See*

*Marathon Enterprises, Inc.*, 2003 WL 355238 at *9 (finding plaintiffs did not have a claim for

unjust enrichment because the plaintiff was unable to show any evidence that the defendant was

enriched at the plaintiff's expense). With respect to the claims for unjust enrichment against

Northshore and Sunrise, Northshore and Sunrise are not named defendants in this action.

Therefore, those causes of actions must be dismissed.

**VIII.**   *Civil Conspiracy – Against the Deo Defendants*

New York law does not recognize a substantive tort of civil conspiracy. *Pope v. Rice*, No.

04 Civ. 4171 (DLA), 2005 WL 613085 at *13 (S.D.N.Y. Mar. 14, 2005) (citing *Durante Bros. &*

*Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 251 (2d Cir. 1985). Rather, a claim for civil

conspiracy requires is "evidence of an underlying actionable tort." *Id.* (quoting *Missigman v. USI*

*Northeast, Inc.*, 131 F. Supp. 2d 495, 517 (S.D.N.Y. 2001)). The independent underlying tort

must be any "unlawful" act, or a "lawful" act done "in an unlawful manner." *Dell's Maraschino*

*Cherries Co., Inc. v. Shoreline Fruit Growers, Inc.*, 887 F.Supp.2d 459, 482 (E.D.N.Y. 2012)

(citing *Arlinghaus v. Ritenour*, 622 F.2d 629, 639 (2d Cir. 1980)). Ultimately, a plaintiff's

allegations of conspiracy must serve to connect a defendant's conduct "with an otherwise

actionable tort." *UniCredito Italiano SPA v. JPMorgan Chase Bank*, 288 F.Supp.2d 485, 504

(S.D.N.Y. 2003).

Once an underlying tort is established, a claimant must demonstrate the elements of civil

conspiracy which are: "(1) the corrupt agreement between two or more persons, (2) an overt act,

(3) their intentional participation in the furtherance of a plan or purpose, and (4) the resulting

damage." *Pope*, 2005 WL 613085 at \*13. (quoting *Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d

Cir. 1986) (applying New York law). As is the case with criminal conspiracies, civil conspiracy

agreements are not easily shown by direct evidence, "but may be inferred from circumstantial

evidence." *Dell's Maraschino Cherries Co.,* 887 F.Supp.2d at 482 (quoting *Cofacredit S.A. v.

Windsor Plumbing Supply Co.*, 187 F.3d 229, 240 (2d Cir. 1999)).

Here, Plaintiffs allege that the Deo Defendants entered into a civil conspiracy to engage

in, *inter alia,* misappropriation, unfair competition, unjust enrichment, and tortious interference

with contract. *See* ECF No. 65 ¶¶ 400. As stated above, Plaintiffs failed to allege the underlying

torts of misappropriation of trade secrets and tortious interference. However, Plaintiffs also

allege the Deo Defendants entered into a civil conspiracy to engage in unfair competition and

unjust enrichment (ECF No. 65 at ¶¶ 400-405), which have been sufficiently pled as shown

above.

Since an underlying actionable tort has been sufficiently plead, Plaintiffs must

demonstrate the elements of civil conspiracy. *See Pope,* 2005 WL 613085 at \*13. Plaintiffs

allege that the Deo Defendants conspired with each other for an unlawful purpose, to wit: to

obtain Plaintiffs' confidential information and develop a business to compete using Plaintiffs'

confidential information and property obtained through fraud. ECF No. 65 at ¶ 399. Plaintiffs further allege that the Deo Defendants each agreed to this common goal to obtain Plaintiffs' confidential information and create a business to compete with Superb using such information obtained through fraud with the specific purpose of harming the Superb Plaintiffs for their own personal gain. *Id.* at ¶ 401.

Plaintiffs allege Deo poached Superb employees for his own Gold Coast dealerships and trained them in the Tekion DMS system customized by Superb. *Id.* at ¶ 235-36. Furthermore, Plaintiffs allege that Deo and such employees used their experience at Superb and familiarity with its customer list to redirect Superb customers to Gold Coast dealerships. *Id.* at ¶ 237-240. The very essence of unfair competition claim under New York law is that the defendant misappropriates the labors and expenditures of another with some element of bad faith, which is established by these facts and overt acts committed by the Deo Defendants. *See ML Genius Holdings LLC*, 2022 WL 710744 at *4. The Deo Defendants' intentional participation of this purpose to obtain and utilize confidential information from Superb's dealership, resulted in damage to the Plaintiffs. *See Barbagallo*, 820 F.Supp.2d at 447 (citing *CA, Inc. V. Simple.com*, 621 F.Supp.2d at 54) (special damages are sufficient when a plaintiff alleges that a defendant diverted the plaintiff's customers and business).

Therefore, Plaintiffs' allegations of conspiracy serve to connect the Deo Defendants' conduct with an otherwise actionable tort such that this claim may survive a motion to dismiss.

IX.    _**Fraud -- Against Deo and Jones**_

"The elements of fraud are a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to plaintiff." *Zurich Am. Life Ins. Co. v. Nagel,* 590 F. Supp. 3d 702, 723 (S.D.N.Y. 2022) (citing *Chanayil v. Gulati*, 169 F.3d 168, 171 (2d Cir. 1999)). These elements must be proven by clear and convincing evidence. *Goodman v. Waugh,* 882 F. Supp. 64, 65 (S.D.N.Y. 1995). To survive a motion to dismiss under Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud claims, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent[;] (2) identify the speaker[;] (3) state where and when the statements were made[;] and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (citation omitted). Under New York law, the elements of a common-law fraud claim are (1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity; (3) intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff. *MetLife Invs. USA Ins. Co. v. Zeidman*, 734 F. Supp. 2d 304, 312 (E.D.N.Y. 2010) (citing *Crigger v. Fahnestock & Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006)).

The necessary intent can be shown where a plaintiff establishes that an intentional or reckless misstatement was made with the intent that the plaintiff relies on it or by showing that the defendant had motive and opportunity to commit fraud. *Zurich American Life Ins. Co.*, 590 F. Supp.3d at 723. Merely alleging that an individual had access to the information by which it could have discovered the fraud is not enough. *See Meridian Horizon Fund, LP v. Tremont Group Holdings, Inc.*, 747 F.Supp.2d 406, 413 (S.D.N.Y. 2010) (reasoning that elements of common law fraud are "essentially the same" as those that must be pleaded to establish a claim under Section 10(b) and Rule 10b-5); *In re aaiPharma Inc. Secs. Litig.*, 521 F.Supp.2d 507, 513

(E.D.N.C. 2007) (noting that "merely because a person has broad access to every book in a

library does not mean that the person has read and chosen to ignore facts contained in a

particular book in the library").

With respect to 9(b)'s heightened pleading standard for fraud claims, Plaintiffs assert that

Deo enlisted the help of Thomas Jones and Jones CPA LLP to manipulate and falsify

Northshore's and Sunrise's monthly financial reports with an intent to defraud the IAG Plaintiffs

and Ally Bank. *See* ECF No. 65 at ¶¶ 130-35. With respect to elements (1), (2), and (3),

Plaintiffs specify that these monthly statements compiled by Jones were fraudulent. *See*

*Rombach*, 355 F.3d at 171. Plaintiffs allege that Deo, as general manager, was responsible for

ensuring the dealership satisfied financing plans for its own inventory, its customers, and to

provide accurate monthly financial so they could continue to receive the Floor Plan. ECF No. 65

at ¶¶ 87-88, 94, 102, 106-08, 128-29. During Deo's tenure overseeing and managing Northshore

and Sunrise, Jones was engaged and paid by the dealerships to assist Deo in preparing the

information to create the monthly financial reports. *Id.* at ¶132.

With respect to element (4), Plaintiffs allege that the monthly financial reports were

fraudulent because they falsely showed Superb was profitable because according to Plaintiff's,

the Defendants' conduct caused Superb substantial losses causing Superb to operate at a loss. *Id.*

¶¶ 424-25. Furthermore, Plaintiffs allege that these fabricated financial statements induced IAG

Plaintiffs and Ally Bank to sustain the dealerships' Floor Plan (*id.* at ¶¶ 136-37) and Deo used

these records to present himself as the true owner of Northshore to secure loans without the

consent or knowledge of Northshore's true owners. *Id.* at ¶¶ 169-72. Plaintiffs also claim that

had Deo provided IAG Plaintiffs and Ally Bank with the accurate monthly financial reports, IAG

and Ally Bank would have discontinued providing the Floor Plan. *Id.* at ¶ 129.

Plaintiffs have adequately pleaded the elements of common-law fraud. The statements were made by Deo with knowledge of the falsity and with intent to defraud, however, not so with Jones. *See MetLife Invs. USA Ins. Co. v. Zeidman*, 734 F. Supp. 2d at 312. Plaintiffs broadly state that Jones "knew or should have known that the information provided or reviewed by him was false and nonetheless reported to Superb Plaintiffs that the dealership bank accounts were balanced and that there were no discrepancies or issues." ECF No. 65 at ¶¶ 427.  Plaintiffs also sweepingly conclude that Jones submitted such financials "with an intent to defraud Superb Plaintiffs as he stood to gain compensation for engaging in fraud" without any more detail as to how. *Id.* at ¶ 428. These conclusory allegations are not sufficient to sustain a common law fraud claim.  The paucity of allegations to support conclusions of an intent to defraud and knowledge of falsity, with the requisite particularity, fail to sustain a plausible claim against Jones.  But, as to Deo, given his job duties and in light of the other claims at issue, the allegations are sufficiently plausible to survive a motion to dismiss as to him.

**X.**    ***Article 4-A of the New York UCC – against Flushing Bank***

Article 4-A "governs the procedures, rights, and liabilities arising out of commercial electronic fund transfers," including wire transfers. *Niram, Inc. v. Sterling National Bank*, 697 F.Supp.3d 15, 21 (S.D.N.Y. 2023) (quoting *Grain Traders, Inc. V. Citibank, N.A.*, 160 F.3d 97, 100 (2d Cir. 1998); *see also* N.Y. U.C.C. § 4-A-102 & comment. Article 4-A "creates a scheme to set clear rules as to who bears the loss for unauthorized transactions. *Id.* (quoting *123RF LLC v. HSBC Bank USA, N.A.*, No. 21 CIV. 8519 (NRB), 663 F.Supp.3d 391, 400 (S.D.N.Y. Mar. 23, 2023). Section 4-A-204 of Article 4-A provides that a bank is obligated to refund a customer for a wire transfer issued in the customer's name that was unauthorized. *Niram*, 697 F.Supp.3d at 21

(explaining that § 4-A-102 "establishes that a bank must refund a payment it issued if the payment was not authorized and not effective as the order of the customer.")

The most common issue that arises in analyzing these claims is whether the transfers at issue were "authorized" or not. *Id.* at 22 (explaining that a payment order is "authorized" if the sender authorized the order or is otherwise bound by it under the law of agency). Furthermore, "ineffective transfers are those in which the bank has not properly executed security procedures." *Id.* at 23 (explaining that a security feature is "effective" if it is "commercially reasonable," and second, if the bank acted "in good faith" and "in compliance with the security procedure and any other written agreement or instruction"). However, if the bank follows commercially reasonable security procedures, the loss for an unauthorized transaction falls on the customer. *123RF LLC*, 663 F.Supp.3d at 400. Whether the security procedures are commercially reasonable is a question of law decided by the court which considers, "the wishes of the customer expressed to the bank, the circumstances of the customer known to the bank, including the size, type and frequency of payment orders normally issued by the customers to the bank, alternative security procedures offered to the customer, and security procedures in general use by customers and receiving banks similarly situated." *Id.*

An agent must have authority, whether actual or implied, to bind his principal. *Highland Capital Management LP v. Schneider,* 607 F.3d 322, 327 (2d Cir. 2010). Under New York law, an agent has actual authority if the principal has granted the agent power to enter contracts on its behalf, subject to whatever specified limitations are in place, either explicitly or implicitly. *Id.* (citing *Ford v. Unity Hosp.*, 299 N.E.2d 659, 664 (N.Y. 1973)). When an agent lacks actual authority to initiate or authorize a transfer, "he may nonetheless bind his principal to a contract if he has created the appearance of authority, leading the other contracting party to reasonably

believe the actual authority exists." *Niram*, 697 F.Supp.3d at 27. To assert apparent authority, it is essential to show words or conduct of the principal, communicated to the third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction. *Highland Capital Management*, 607 F.3d at 328. Furthermore, a party may not claim an agent acted with apparent authority when it "knew or should have known that the agent was exceeding the scope of its authority." *Id.* (quoting *Sphere Drake Ins. Ltd. V. Clarendon Nat'l Ins. Co.,* 263 F.3d 26, 33 (2d Cir. 2001)).

Relevant here, Article 4-A encourages banks to adopt appropriate security procedures such that a bank may not disclaim its liability for unauthorized transfers unless a commercially reasonable security procedure is in place or at least has been offered to the customer. *Regatos v. North Fork Bank*, 838 N.E.2d 629, 632-33 (N.Y. 2005). This Article was also intended to promote the finality of banking operations and to spare banks from unknown liability of potentially indefinite duration. *Id.* at 403, 633, 717. Article 4-A may preclude common law claims when such claims would impose liability inconsistent with the rights and liabilities expressly created by Article 4-A. *123RF LLC*, 663 F.Supp.3d at 401. In deciding if a claim is preempted by Article 4-A, "the critical inquiry is whether the provisions protect against the type of underlying injury or misconduct alleged in a claim." *Id.* (quoting *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 89 (2d. Cir. 2010).

Article 4-A's text strong suggests that it applies to claims asserting the existence of unauthorized wire transfers regardless of what the claim may be called, and, in any event, the accompanying commentary is pellucid on the issue. *Ma*, 597 F.3d at 90. Article 4-A governs electronic fund transfers which are "series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order" and are

completed "by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order." *Ma*, 597 F.3d at 87. Under this definition, the Flushing Bank wire transfers constitute electronic fund transfers governed by Article 4-A. *Id.* at 88.

Here, Plaintiffs allege that the fraudulent transfers at issue were not authorized, and the Deo Defendants did not have authority to make transfers or sign checks on behalf of Superb, Northshore, or Sunrise dealerships. ECF No. 65 at ¶ 439. Plaintiffs maintain, and the Shareholders' Agreement corroborates, that Deo and the remaining Defendants lacked authority to enter into the fraudulent transfers. *Id.* at ¶ 441; *see also Highland Capital Management LP*, 607 F.3d at 327. Even if the Deo Defendants lacked the actual authority to initiate or authorize a transfer, they may nonetheless be capable of binding their principal to a contract they are shown to have created the appearance of authority leading the other contracting party, in this case, the Bank Defendants, to reasonably believe the actual authority exists. *See Niram*, 697 F.Supp.3d at 27. For the Bank Defendants to assert Deo had apparent authority, they would need to show words or conduct of the principal, in this case the Superb Plaintiffs, communicated to them, that gave rise to the appearance and belief that the Deo Defendants possessed authority to enter a transaction. *See Highland Capital Management*, 607 F.3d at 328. Furthermore, there are no facts to suggest that Plaintiffs communicated to Flushing Bank any information that would give cause for them to believe Deo possessed authority to enter a transaction. *See Highland Capital Management,* 607 F.3d at 328.

Plaintiffs allege that Flushing Bank knew, or should have known, that Deo had no membership interest in Northshore or Sunrise to authorize such transactions or at the very least that a commercially reasonable actor, or in this case a sophisticated bank, would have been

alerted to the fact that the transfers were fraudulent and thus unauthorized. ECF No. 65 at ¶¶

442-444. Plaintiffs allege that if those inquiries had been made, then Flushing would have been

able to confirm that Deo lacked actual authority. *Id.* at ¶¶ 444-445. In addition, Plaintiffs allege

that Flushing Bank had actual knowledge that Urrutia, not Deo, was the majority shareholder of

Superb and sole member of shareholder of his remaining dealerships because Urrutia had

previously provided Flushing Bank with all information concerning his ownership interest in

Superb. *Id.* at ¶ 454.

Accordingly, these allegations sufficiently state a claim pursuant to Article 4-A against

Flushing Bank to withstand a motion to dismiss.

## XI     *Negligence – Against Flushing Bank and* *Chase Bank; Unauthorized Payments – Against Flushing Bank*

The elements of a negligence under New York law claim are well settled: (1) a duty owed

by the defendant to the plaintiffs; (2) breach of that duty; and (3) injury substantially caused by

that breach. *Cheeseboro v. Little Richie Bus Servs., Inc.*, 254 F. Supp. 3d 485, 490 (E.D.N.Y.

2017) (quoting *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002)).  At

issue here is the threshold question of whether Defendant owed a duty to the Plaintiffs in

undertaking the 1031 Exchange and filing tax paperwork and paying taxes on Plaintiffs'

beAccordingly, alf.  "The existence of duty is an essential element of a negligence claim

because, '[i]n the absence of a duty, as a matter of law, no liability can ensue.'"  *Farash v. Cont'l*

*Airlines, Inc.*, 574 F. Supp. 2d 356, 367 (S.D.N.Y. 2008) (quoting *McCarthy v. Olin Corp.*, 119

F.3d 148, 156 (2d Cir. 1997)).  Determining the existence and contours "of an alleged

tortfeasor's duty is usually a legal, policy-laden declaration reserved for Judges to make prior to

submitting anything to fact-finding or jury consideration." *Palka v. Servicemaster Mgmt. Servs.*

*Corp.*, 634 N.E.2d 189 (N.Y. 1994).

The breadth of one's duty to another depends on the relationship of the parties, whether the injured party was within the zone of foreseeable harm, and whether that harm fell within a category of reasonably foreseeable harms that the duty exists to prevent. *Id.* (citing *Di Ponzio v. Riordan*, 679 N.E.2d 616 (N.Y.1997). This of course is the lesson of *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99 (N.Y. 1928)).

Here, Plaintiffs allege that Flushing Bank owed Superb Plaintiffs a duty of care to act in a manner consistent with commercially reasonable standards and that they failed to do so by following their own "Know Your Customer" procedures, which resulted in enabling Deo to fraudulently open an account with the bank when he falsely stated he was the sole shareholder of Superb. *See* ECF No. 65 at ¶¶ 452-455. Furthermore, Plaintiffs claim both Flushing Bank and Chase Bank are liable for negligence because each failed to conduct "proper due diligence" into whether Deo had the authority to open a new account in Superb's name and sign checks on Superb's existing account which Plaintiffs allege to be a breach of duty of care to the Superb Plaintiffs. *See id.* at ¶¶ 627-630.

However, Article 4-A controls how electronic funds transfers are conducted and specifies certain rights and duties related to the execution of such transactions. *Ma*, 597 F.3d at 89. Article 4-A calls for banks to adopt certain security procedures, controls the timing for executing payments, and assigns responsibility for reporting erroneous electronic debits. *Id.* Article 4-A's principal purposes are to protect against erroneous and unauthorized electronic transfers and to cabin banks' liability for unreported errors. *Id.* at 90. Plaintiffs' negligence claims with respect to the Bank Defendants are preempted by Article 4-A because any common law claims regarding the existence of unauthorized wire transfers and the mechanics of how those transactions were

conducted fall within the regime of Article 4-A and are therefore precluded. *123RF LLC v. HSBC Bank USA, N.A.*, 663 F.Supp.3d 391, 401 (S.D.N.Y. 2023).

To be sure, courts in this Circuit have found that claims that defendant "violated its duty of care by negligently honoring" unauthorized transfers, "fall entirely within the coverage of Article 4-A, which creates a comprehensive risk allocation for unauthorized fund transfers," and are thus preempted. *See 123RF LLC*, 663 F.Supp.3d at 401 (citing *Banco del Austro v. Wells Fargo Bank, N.A.*, 215 F.Supp.3d 302, 306-07 (S.D.N.Y. 2016)). In other words, the negligence claims here against the Bank Defendants cover the same territory as Article 4-A, because the predicates for the negligence and breach of Article 4-A claims are the same. *Id.* The negligence claim here concerns the unauthorized transactions and the way in which they occurred which is the same type of claim covered by Article 4-A and thus precluded against with respect to the Bank Defendants. *Id.*

Superb Plaintiffs also seek to hold Flushing liable for unauthorized payments in the amount of "at least $500,000." ECF No. 65 at ¶ 635. Once the Bank accepted Deo's deposits, it let these funds be disbursed from accounts in Superb's name; however, these funds belonged to Superb. ECF No. 65 at ¶¶ 632-33. Moreover, Superb Plaintiffs maintain Chase is liable as the drawee bank for the full amount ("at least $250,000") of checks Deo signed and issued from Superb's account. ECF No. 65 at ¶¶ 640-41. Although Chase supposedly had on file the authorized signatories on Superb's account, which did not include Deo, the Bank still paid checks Deo signed from the dealership's accounts. ECF No. 65 at ¶¶ 637-39.

With respect to the unauthorized payment claim against Flushing Bank, the claim covers the same territory as Article 4-A as it concerns the same unauthorized transactions and the way in which the occurred. *See 123RF LLC*, 663 F.Supp.3d at 401. This unauthorized payment claim

with respect to Flushing Bank is similarly preempted by Article 4-A. Put simply, it is yet a common-law claim arising out of the existence of unauthorized wire transfers and the mechanics of how those transactions were conducted, which, like the negligence claim, falls squarely within the coverage of Article 4-A, and therefore is precluded. *See id.*

## XII.    *Drawee Liability – Against Chase Bank*

Most forged check endorsements are ineffective, meaning the instrument will not authorize the drawee bank to pay it from the drawer's account. *Underpinning & Foundation Constructors, Inc. v. Chase Manhattan Bank, N.A.*, 46 N.Y.2d 459, 464-65 (N.Y. 1979) ("*Underpinning*"). That, in turn, means any payment on the check comes from the property of the drawee, and not the drawer – thus, whatever the depository bank does with that payment, it is not a conversion of the drawer's property. *Id*. at 465. To this end, in most drawer/drawee conversion actions, the drawee bears the losses, and naturally, the payee has the cause of action, rather than the drawer, against that drawee. *Sony Corp America v. American Exp. Co.*, 455 N.Y.S.2d 227, 229-30 (N.Y. Civ. Ct. 1982).

However, where there is an effective endorsement (and thus authorization), the drawee pays on that instrument with the *drawer's* funds, and the drawer's interest may be the basis against the depositary bank that wrongfully obtains that money. *Underpinning*, 46 N.Y.2d at 466. Naturally, when an indorsement is effective, no action would lie against the depository bank for payment over the forged indorsement because the drawee is deemed to be paying out its own money because it cannot charge the drawer's account without authorization. *Id.* In summary, a drawer may directly sue a depository bank which has honored a check in violation of a forged restrictive indorsement in situations in which the forgery is effective. *Id.* at 468. In most forged indorsement cases, the party who first took the check from the forger will ultimately be liable

because it is the party who takes from the forger first who is in the best position to verify the indorsement. *Id.* However, that will not always be the case; for example, if the forgery is the result of some other interested party's negligence, the burden may ultimately be placed on that party. *Id.*

Of course, a "tainted check" puts the drawee on constructive notice of an ineffective authorization, but in those "rare instances" where the depository bank has acted wrongfully while the drawee has proceeded diligently, the drawer may proceed against the depositary bank. *Id.* For a forged instrument to be effective, courts look for whether: (1) an imposter has induced the maker or drawer to issue him the instrument, (2) one signing as or on behalf of the maker or drawer intends the payee to have no interest in the instrument, or (3) an agent or employee of the maker or drawer has supplied him with the name of the payee, but intending that the payee have no such interest. *See Leigh Co. v. Bank N.Y.*, 617 F.Supp. 147, 151 (S.D.N.Y. 1985); *see also* N.Y. U.C.C. § 3-405. With respect to (3), the indorsement is deemed to be effective, and the drawer is thus precluded from recovering solely on the basis of the forgery from banks which honor the check. *Underpinning*, 46 N.Y.2d at 468 (reasoning that "as a practical matter the drawer is in a better position to prevent the fraud by utilizing proper accounting methods, than is even the first party to take from the forger"). In instances where it is clear that the loss could have been most readily prevented by the drawer, the code may place the loss upon the drawer as a matter of law. *Id.*

Here, Plaintiffs allege that Chase Bank is liable for the full amount ("believed to be at least $250,000") of checks paid from Superb's account and signed by Deo because the bank had authorized signatories on file and Deo was not one of them, yet Deo still signed checks from Superb's account and Chase Bank paid them. *See* ECF No. 65 at ¶¶ 636-641. Because ordinarily,

a drawer of a check has no cause of action against a depository bank for acceptance of and payment on a forged indorsement since that bank is deemed not to have dealt with any valuable property of the drawer, Plaintiffs have not sufficiently stated a claim for drawee liability against Chase Bank. *See Leigh Co.*, 617 F. Supp. at 151.

Even if the indorsement was forged, yet effective, and the indorsement validly authorizes the drawee bank to withdraw funds from the drawer's account, the Code views the drawer himself or herself as in the best position, among all innocent parties to the transaction, to prevent or detect the forger's deception. *Leigh Co.*, 617 F. Supp. at 151. Plaintiff has a cause of action against Chase Bank only if the bank (1) dealt with the checks in violation of their restrictive indorsements, or, (2) did not deal with the checks or their proceeds in accordance with reasonable commercial standards. *See id.* at 152. However, the complaint does not allege that the bank committed either of these errors; therefore, no matter who's agent Deo was, Plaintiffs cannot defeat Chase Bank's motion to dismiss on drawee liability. *See id.*

**XIII.** ***Violation of New York UCC §3-419 – Against Flushing Bank and Chase Bank***

UCC § 3-419 provides that:

(1) An instrument is converted when (a) a drawee to whom it is delivered for acceptance refuses to return it on demand; or (b) any person to whom it is delivered for payment refuses on demand either to pay or return it; or (c) it is paid on a forged indorsement

(2) In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument.

(3) Subject to the provisions of this Act concerning restrictive indorsements, a representative, including a depository or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.

*Kaplan v. Valley Nat. Bank*, 41 N.Y.S.3d 719, 52 Misc.3d 1210(A), 2016 WL 3939922 at *3 (N.Y. Supp. Ct. 2016) ("*Kaplan*"). In *Kaplan,* the plaintiff contended, but failed to sufficiently plead, that the bank violated this statute by accepting a check without an indorsement, obtaining payment from the payor bank, and allowing third parties to draw against the funds which was not commercially reasonable under the circumstances. *Id.*

Depository and collecting banks are absolved from liability to payees or true owners of negotiable instruments unless (1) they pay out over a restrictive indorsement, (2) they actually retain proceeds of the instrument in the customer's account, or (3) they failed to act in good faith or in accordance with reasonable commercial standards. *Id.* "Good faith" is defined as "honest in fact in the conduct or transaction concerned." *Id* at *4. The common law rule in New York before enactment of the Code was that "a drawer had no direct action against a depository bank; its remedy was against the drawee bank," and "the Code did not change the rule." *Lesser v. TD Bank, N.A.*, 463 F.Supp.3d 438, 447 (S.D.N.Y.) (quoting *Prudential-Bache Sec., Inc. V. Citibank, N.A.*, 536 N.E.2d 1118 (N.Y. 1989)). Rather, the Code added defenses that make it even more difficult for a drawer to recover against a depository bank. *Id.*

Here, Plaintiffs allege that Flushing opened an account in the name of Superb, when it knew or had reason to know Deo was not, as he represented, the owner of Superb, and thus did not act in a commercially reasonable manner. *See* ECF No. 65 at ¶ 609. Furthermore, Plaintiffs allege that Flushing Bank did not employ reasonable due diligence when Deo opened this account since they had documentation to contradict Deo's claim. *Id.* at ¶ 611. Plaintiffs assert that Flushing Bank, as a depository or collecting bank, is liable, pursuant to UCC § 3-419(3) to Superb, the true owner of any cash deposits from Superb deposited by Deo into an account opened by him at Flushing Bank for the full amount of any such cash deposits as well as any

checks made payable to Superb deposited in these accounts *Id.* at ¶ 612. Similarly, Plaintiffs assert that Chase Bank committed similar infractions by permitting Deo to draw checks on Superb's account when it knew or had reason to know Deo was not an authorized signer on Superb's account, such that it did not act in a commercially reasonable manner.

However, none of the three situations which would allow a depository or collecting bank to be held liable to payees have occurred because Plaintiffs have failed to allege that the Bank Defendants were not acting in "good faith" or in accordance with reasonable commercial standards when they carried out these transactions. *See Kaplan,* 2016 WL 3939922 at *4. The record does not reflect any dishonesty of the Bank Defendants' handling of this money, nor did the Bank Defendants retain any of the proceeds of the money deposited. *See id.* Aside from Plaintiffs' broad conclusory allegations, there are not facts sufficient to allege that the Bank Defendants here dealt with the accounts in a manner that did not comport with good faith and in accordance with reasonable commercial standards. *See id.* Therefore, the Bank Defendants are not liable under UCC § 3-419, and this claim asserted against them is dismissed.

## XIV. *Professional Malpractice – Against Jones CPA LLP*

Under New York law, professional malpractice requires a showing of three elements: (1) negligence (2) which is the proximate cause of (3) damages. *MF Global Holdings Ltd. V. Pricewaterhouse Coopers LLP*, 199F.Supp.3d 818, 829 (S.D.N.Y. 2016). In other words, a *prima facie* case of negligence, gross negligence, or professional malpractice requires the plaintiff to show: (1) a duty to the plaintiff; (b) a breach of duty; (c) a reasonably close causal connection between the contact and the resulting injury; and (d) actual loss, harm or damage. *Cromer Finance Ltd. v. Berger*, 137 F.Supp.2d 452, 495 (S.D.N.Y. 2001) (explaining that New York labels "professional malpractice" a "species of negligence").

To prove liability for professional negligence, a plaintiff must show: (1) the plaintiff contracted for the service, or the service ordinarily would be performed in the course of professional performing its obligations under the contract; (2) the defendant's professional services "departed from accepted standards of practice in the relevant field[;]" and (3) the departure proximately caused the plaintiff's injuries. *MF Global Holdings Ltd*., 199 F.Supp.3d at 829. The Second Circuit has held that to establish negligent misrepresentation under New York law against a professional when there is no contractual relationship – and thus no privity to give rise to a duty – the plaintiff must specifically establish: (1) that the accountant was aware that the reports would be used for a particular purpose; (2) in furtherance of which a known party was intended to rely; and (3) some conduct by the accountant "linking" him or her to that known party. *Cromer Finance Ltd.*, 137 F.Supp.2d at 495-96.

The standard of care required of a professional demand he or she will "exercise the skill and knowledge normally possessed by members of his or her trade or profession in good standing in similar communities." *MF Global Holdings Ltd*., 199 F.Supp.3d at 830. Like any other negligence action, a plaintiff must show "beyond the point of speculation and conjecture, a causal connection between its losses and the defendants' actions" such that but for the alleged malpractice, it would not have sustained the damages. *Id.* Furthermore, proof of proximate cause is an essential element in accountant malpractice claims because a defendant is only liable to "those with respect to whom his acts were a substantial factor in the sequence of responsible causation." *Id.* An intervening act may not relieve an actor of responsibility, where the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence. *Id.*

Relevant here, an accountant owes a duty of care for services relied upon by plaintiffs who are part of a specific and identifiable group rather than a "faceless or unresolved class of persons." *Cromer Finance Ltd.*, 137 F.Supp.2d at 496 (quoting *White v. Guarente,* 372 N.E.2d 315, 318-319 (N.Y. 1977)). Conduct is "linking conduct" if there is some form of direct contact between the accountant and the plaintiff, such as face-to-face conversations, exchanging of documents, or other "substantive communication" between the parties. *Id.*

A representation certified as true to the knowledge of the accountants when they do not have such knowledge, a reckless misstatement, or an opinion made on flimsy grounds such that the conclusion must be there was no genuine belief in its truth, are all sufficient upon which to base liability. *In re Allou Distributors, Inc.* 395 B.R. 246, 259, 15 N.E.2d 416 (E.D.N.Y. 2008) (quoting *State Street Trust Co.,* 278 N.Y. 104, 112 (N.Y. 1938)). Gross negligence has been found where "several acts of negligence with foreseeably cumulative effect." *In re Allou Distributors, Inc.*, 395 B.R. at 260. Furthermore, the refusal or inability to see or investigate an obvious doubt among finances may warrant an inference of fraud. *See id.* (explaining that "a refusal to see the obvious, a failure to investigate the doubtful, if sufficiently gross, may furnish evidence leading to an inference of fraud so as to impose liability for losses suffered by those who rely on the balance sheet.").

Here, Defendant Jones CPA LLP is an accounting firm consisting of Certified Public Accountants. *See* ECF No. 65 at ¶ 407. Plaintiffs allege that in or before March 2023, Superb engaged the services of Jones CPA LLP, by and through the conduct of Deo, to perform various accounting services for Superb such as monthly reconciliation of bank accounts, including general ledger, profit and loss, and inventory, as well as preparation of monthly financial statements required to be sent to Superb's lenders, such as Ally Bank, for the Floor Plan. *Id.* at ¶¶

408-409, 643-645. Plaintiffs maintain that under the standards of care prevailing in the

accounting industry, Jones CPA LLP had an affirmative duty to Superb Plaintiffs to undertake

such tasks with caution and care, and to be vigilant for discrepancies or irregularities and to

report any such findings accordingly (*id.* at ¶ 411) and a duty under Article V of the Principles of

Professional Conduct of the AICPA Code of Professional Conduct to identify and inform

Plaintiffs of any red flags. *Id.* at ¶ 412. Furthermore, Plaintiffs allege that Jones CPA LLP failed

to exercise independence and due professional care "in a variety of ways" including failing to

notice, investigate and/or report to Urrutia the existence of Deo's scheme to create a false record

that he is the 100% owner of Superb Plaintiff's dealerships and to fail to report missing cash

never deposited into Superb Plaintiffs' dealership bank accounts despite seeing cash receipted in

the DMS systems. *Id.* at ¶ 413. Plaintiffs allege that the negligence and wrongful and deficient

conduct proximately caused them to suffer damages that would be reasonably foreseeable. *Id.* at

¶¶ 419-420, 655-657.

     However, Plaintiffs have failed to show that "but for" Jones CPA LLP's alleged

malpractice, they would not have sustained some actual ascertainable damages. *See e.g., Herbert*

*H. Post & Co. V. Sidney Bitterman*, 639 N.Y.S.2d 329 (N.Y. App. Div. 1st Dep't. 1996).

Therefore, Plaintiffs have not stated a cause of action for professional malpractice because the

operative Complaint fails to set forth the requisite allegation that, "but for" the accountants'

alleged malpractice, the plaintiff would not have sustained some actual ascertainable damages.

*See Franklin v. Winard*, 606 N.Y.S.2d 162, 164 (N.Y. App. Div. 1st Dept. 1993). Plaintiffs have

also failed to set forth conduct grossly departing from generally accepted accounting standards

aside from broad and conclusory allegations of "failing to notice, investigate and/or report" the

fraud committed by Deo. *See* ECF No. 65 at ¶ 413.  Plaintiffs specifically failed to set forth any

facts to show, with any degree of specificity, how Jones' conduct fell below standards of care prevailing in the accounting industry. Therefore, Plaintiffs' allegations do not state a sufficient claim to support professional malpractice against Jones CPA LLP.

XV.   _**Plaintiffs' Breach of Duty Claims**_

    A.   _**Breach of Duty of Loyalty – Against Deo**_

New York law mandates that an agent "be loyal to his employer and [is] prohibited from acting in any manner inconsistent with [their] agency or trust and [is] at all times bound to exercise the utmost good faith and loyalty in the performance of [their] duties. _Calderon v. Mullarkey Realty, LLC,_ No. 14-CV-2616 (PKC)(RLM), 2018 WL 2871834 at *7 (E.D.N.Y. June 10, 2018) (quoting _Phansalkar v. Andersen Weinroth & Co., L.P.,_ 344 F.3d 184, 200 (2d Cir. 2003)). The duty of loyalty applies to cases "where the employee acts directly against the employer's interests" such as embezzlement. _Pozner v. Fox Broadcasting Co_., 59 Misc. 3d 897, 900 (N.Y. Sup. Ct. 2017) (internal citations omitted). Employees owe to their employer a duty of good faith and loyalty while performing their duties. _Qosina Corp. v. C & N Packaging, Inc_., 948 N.Y.S.2d 308, 310 (N.Y. App. Div. 2d Dep't 2012).

Employees may not act in ways contrary to the interests of their employer. _Id_. Furthermore, "when one who owes a duty of fidelity to a principal is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary." _Phansalkar v. Andersen Weinroth & Co., L.P.,_ 344 F.3d 184, 200 (2d Cir. 2003). In addition, absent an agreement that states otherwise, "an employee who makes a profit or receives a benefit in connection with transactions conducted by him on behalf of his employer is under a duty to give such profit or benefit to his employer, whether or not it was received by the employee in violation of his duty of loyalty." _Phansalkar_, 344 F.3d at 203 (quoting _Western_

*Elec. Co.,* 360 N.E.2d 1091 (N.Y. 1977)). When an employee violates this duty, "not only must
the employee or agent account to his principal for secret profits but he also forfeits his right to
compensation for services rendered by him if he proves disloyal." *Id.*

Here, Plaintiffs allege that, as an employee and general manager of Northshore and
Sunrise, Deo owed duties of loyalty and good faith to Northshore and Sunrise which he
breached. *See* ECF No. 65 at ¶¶ 477, 483-484. Plaintiffs allege that Deo, through fraudulent
means, and without the knowledge and consent of Northshore's members, sold the Future
Receipts and acquired the Libertas Funds for himself and to the damage of Northshore and
Plaintiffs. *Id.* at ¶¶ 498-501. Accepting all the facts alleged as true, Plaintiffs have presented
sufficient facts to support that Deo acted in ways contrary to the interests of his employer and
even has been alleged to act directly against his employer's interests. *See Pozner,* 59 Misc.3d at
900 (finding that as an employee of the company, the employee owed the company a duty of
loyalty, which bound him to exercise "the utmost good faith and loyalty in the performance of
his duties" and was "prohibited from acting in any manner that was inconsistent with his
agency."). The operative Complaint thus adequately states a cause of action for breach of duty of
loyalty with respect to Deo.

      **B.**    ***Aiding and Abetting Breach of Duty of Loyalty – Against Thomasson***

Under New York Law, a claim for aiding and abetting a breach of fiduciary duty requires
the following elements: "(1) a breach by a fiduciary of obligations to another, (2) that the
defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage
as a result of the breach." *Tilebar v. Glazzio Tiles*, 723 F.Supp.3d 164, 205 (E.D.N.Y. 2024).
Furthermore, the claimant must show that the alleged aider and abettor provided "substantial
assistance" to the breaching party which can be shown when the aider and abettor affirmatively

assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur. *Id.* However, the mere inaction of an alleged aider and abettor will only constitute substantial assistance if the defendant owes a fiduciary directly to the plaintiff. *Id.*

Here, Plaintiffs allege that, as set forth above, Thomasson aided and abetted Deo's breach of the duty of loyalty in selling the Future Receipts so as to acquire the Libertas Funds for Deo's own personal benefit. *See* ECF No. 65 at ¶ 540. Plaintiffs allege that Thomasson falsely claimed himself to be the rightful attorney for Northshore to induce the IAG Plaintiffs to transfer the funds to Thomasson's escrow account for the benefit of Northshore. *Id*. at ¶¶ 506-510. Plaintiffs further allege that Thomasson not only failed to safeguard the Libertas Funds, when he knew they were in dispute, but that he intentionally and without authority, disbursed the funds to Deo, knowing they belonged to Northshore, interfering with Northshore's right of possession. *Id.* Thomasson's alleged involvement in the transfer of the funds provided Deo with "substantial assistance" in his fraudulent endeavors and thereby enabled the breach to occur. *See Tilebar,* 723 F.Supp.3d at 205. Given that: (i) Deo's breach of his fiduciary obligations to Plaintiffs, these facts are sufficient to state a claim, that (ii) Thomasson knowingly participated in the breach, and (iii) that Plaintiffs' suffered damage as a result, *see e.g., Tilebar*, 723 F.Supp.3d at 205, the Court finds the operative Complaint adequately stated a cause of action for aiding and abetting a breach of duty of loyalty with respect to Thomasson.

### C.     ***Breach of Fiduciary Duty – Against Deo***

To state a claim for breach of fiduciary duty under New York law, a plaintiff must satisfy three elements: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Leighton v. Poltorak*, No. 17-cv-3120 (LAK) (KNF), 2018 WL 2338789 at *7 (S.D.N.Y. May 23, 2018). A fiduciary relationship exists "between two persons

when one of them is under a duty to act for or to give advice for the benefit of another upon

matters within the scope of the relation." *Boston Consulting Group, Inc. V. NCR Corporation*,

No. 19 Civ. 10156 (LGS), 2020 WL 5731963 at *2 (S.D.N.Y. Sept. 24, 2020). In other words, it

exists "when confidence is reposed on one side and there is a resulting superiority and influence

over the other." *Id.* (quoting *Eurycleia Partners, LP v. Seward & Kissel, LLP,* 910 N.E.2d 976,

980 (N.Y. 2009)). Whether a fiduciary relationship exists will be a fact-specific inquiry and is

not entirely dependent upon an agreement or contractual relation. *Id.* However, in general,

officers and directors owe fiduciary duties to their corporation. *Id.* at *4. This duty bars not only

"blatant self-dealing, but also requires avoidance of situations in which a fiduciary's personal

interest possibly conflicts with the interest of those owed a fiduciary duty." *Id.* at *3.

Here, Plaintiffs allege that as an employee and general manager of Northshore and

Sunrise, Deo had a fiduciary duty to act in the best interests of the dealerships and Plaintiffs. *See*

ECF No. 65 at ¶¶ 480-481, 487-488.  Plaintiffs allege various instances of Deo's blatant self-

dealing including that Deo, in breach of his fiduciary duties, and without the knowledge or

consent of Northshore's members, sold the Future Receipts of Northshore and acquired Libertas

Funds for himself. *Id.* at ¶ 498-500. That example, taken with all the information set forth with

respect to Deo's actions above, are sufficient to conclude that Plaintiffs have stated a claim for

breach of fiduciary duty with respect to Deo.

### D.  *Aiding and Abetting Breach of Fiduciary Duty – Against Thomasson*

Here, it is undisputed that Deo owed Plaintiffs a fiduciary duty which includes a duty of

loyalty as the general manager of Northshore and Sunrise. *See* ECF No. 65 at ¶¶ 480-481, 487-

488. As set forth above with respect to aiding and abetting a breach of duty of loyalty, the same

allegations with respect to Thomasson, if taken as true, are sufficient to support a claim that

Thomasson aided and abetted a breach of fiduciary duty when he provided Deo with substantial assistance in receiving the funds then disbursing the funds to Deo at his request, while knowing the facts were at the very least in dispute by the parties. *Id*. at ¶¶ 506-510, 540. Thomasson portrayed himself as the attorney for Northshore in this transaction which is sufficient to indicate that he knowingly participated in Deo's scheme and Plaintiffs lost these funds as a result. *Id.* Therefore, Plaintiffs' claim against Thomasson for aiding and abetting the breach of a fiduciary duty is sufficient to withstand the motion to dismiss.

## XVI.   *Accounting – Against Deo*

The elements of a claim for an accounting are: "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him the burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." *In re Science, Language, and Arts International School*, No. 22-40065-ess, 2024 WL 2036101 at *24 (E.D.N.Y. May 7, 2024). Under New York law, a plaintiff seeking an accounting, which is an equitable remedy, must specifically allege: (a) that a fiduciary relationship existed between the parties, and (b) that the defendant breached his or her fiduciary duty. *Soley v. Wasserman*, 823 F.Supp.2d 221, 237 (S.D.N.Y. 2011) (citing *Bezuszka v. L.A. Models Inc.,* No. 04 cv. 7703, 2006 WL 770526, at *17 (S.D.N.Y. Mar. 24, 2006). The purpose of an equitable accounting is to require a fiduciary to show what he did with the principal's property. *Id.*

Here, the Court finds that Plaintiffs have adequately alleged the elements of their accounting claim. Specifically, they have sufficiently asserted that Deo had a fiduciary relationship with the Plaintiffs sufficient to satisfy element (1) as a minority shareholder of Superb. *See* ECF No. 65 at ¶ 275.  Furthermore, Deo had a fiduciary duty, as an employee and

general manager of Northshore and Sunrise, to act in the best interest of Northshore and Sunrise. *Id.* at ¶¶ 73-75; 487; 480. As stated above, Plaintiffs have sufficiently demonstrated facts to support allegations that Deo breached his fiduciary duty, such that it is an equitable remedy that Deo be required to show what he did with Plaintiff's property. *See e.g.*, *Soley*, 823 F.Supp.2d at 237. As to element (2), "money or property entrusted to the defendant imposing upon him the burden of accounting," and, here, Plaintiffs have adequately alleged that Deo had a role in the management of Superb's assets such as floor planned vehicles. *See* ECF No. 65 at ¶ ¶206-208. With respect to element (3), Courts have held that in the case of a fiduciary relationship, that relationship alone "gives rise to a claim for accounting" and this is an absolute right "notwithstanding the existence of an adequate remedy at law." *In re Science, Language, and Arts International School*, 2024 WL 2036101 at *25. To this end, Plaintiffs have sufficiently stated a claim for accounting to withstand a motion to dismiss.

## XVII.  *Violation of New York Judiciary Law § 487 – Against Thomasson*

Judiciary Law Section 487 prohibits attorneys "(1) engaging in any deceit or collusion, or consenting to any deceit or collusion, with intent to deceive the court or any party; or (2) willfully delaying a client's suit with a view to his own gain, or willfully receiving any money or allowance for or on account of any money which he has not laid out, or becomes answerable for." N.Y. Jud. Law § 487; *see also Musah v. Houslanger & Associates, PLLC*, No. 12 Civ. 3207, 2012 WL 5835293, at *4 (S.D.N.Y. Nov. 16, 2012). A plaintiff must allege his claim with particularity and show "at a bare minimum, that defendants: (1) are guilty of deceit or collusion, or consent to any deceit or collusion; and (2) had an intent to deceive the court or any party." *Ray v. Watnick*, 182 F. Supp. 3d 23, 28 (S.D.N.Y. 2016). "Allegations regarding an intent to deceive

must be stated with particularity." *Id.* (quoting *Brake v. Slochowsky & Slochowsky, LLP*, 504 F. Supp. 3d 103, 116 (E.D.N.Y. 2020)).

To demonstrate a violation of Section 487, a plaintiff must meet a very high burden of proof, because "relief under the statute must be carefully reserved for the extreme pattern of legal delinquency." *King v. Fox*, No. 97cv4134 (RWS), 2004 WL 68397, at *7 (S.D.N.Y. Jan. 14, 2004); *see also Ray v. Watnick*, 182 F. Supp. 3d 23, 29 (S.D.N.Y. 2016), *aff'd*, 688 F. App'x 41 (2d Cir. 2017) ("New York State courts interpreting the statute, as well as federal courts construing the state court decisions, have concluded that liability attaches under these Statutes only if the deceit is 'extreme' or 'egregious.'"). The plaintiff must allege "a chronic, extreme pattern of legal delinquency." *King*, 2004 WL 68397, at *7. In other words, "even egregious misconduct" will not be sufficient to show a violation "if there is no pattern of intentional deceit or wrongdoing." *Id*. This high standard for misconduct "affords attorneys wide latitude in the course of litigation to engage in written and oral expression consistent with responsible, vigorous advocacy." *O'Callaghan v. Sifre*, 537 F. Supp. 2d 594, 596 (S.D.N.Y. 2008).

Here, Plaintiffs allege that Thomasson committed a section 487 violation because he "intended to deceive this Court" when he argued the escrow transactions were legitimate and requested the submission of letters related to transactions to perpetuate his "deceitful misrepresentation" all of which caused IAG Plaintiffs harm. *See* ECF No. 65 at ¶¶ 593-607. However, the Court finds Plaintiffs' allegations fall short of meeting the high burden of proof required under this statute and the complaint is devoid of sufficiently particular allegations to state a section 487 claim. *See King*, 2004 WL 68397, at *7 (explaining that "relief under the statute must be carefully reserved for the extreme pattern of legal delinquency"); *see also Brake*,

504 F.Supp.3d at 116 (holding that allegations regarding intent under this statute "must be stated with particularity.").

With regard to intent, Plaintiffs allege that Thomasson made "misrepresentations to deceive Justice Gianelli" regarding use of his escrow account in transactions involving Plaintiffs and Plaintiffs further allege that "Thomasson knew or should have known the monies received and taken from his escrow account were impermissibly taken from the IAG Plaintiffs fraudulently to provide the Superb Plaintiffs." ECF No. 65 at ¶¶ 597-99. However, this assertion, devoid of any particularity concerning the attendant circumstances, such as why Plaintiffs believe Thomasson knew this to be the case, would scarcely meet the plausibility standard, let alone the heightened pleading standard that New York imposes to satisfy a Section 487 claim. *See e.g., Brake*, 504 F.Supp.3d at 117. Even if these allegations are sufficient for alleging deceitful intent, Thomasson's conduct, as pled, is not sufficiently extreme, outrageous or egregious to satisfy the high threshold requirements imposed by New York courts. *Brake*, 504 F.Supp.3d at 117 (citing *Ray*, 182 F.Supp.3d at 29-31) (finding liability attaches only if the deceit is "extreme" or "egregious.").

Plaintiffs loosely allege a pattern of this behavior by referencing an instance whereby Thomasson was ordered to show cause for why he should not be sanctioned because of arguments raised on appeal that appeared to be "completely without merit in law." ECF No. 65 at ¶¶ 604-605. However, this instance alone, in addition to Plaintiffs' allegations, does not suffice to meet the requirement set by New York state courts, that a plaintiff allege "a chronic and extreme pattern of delinquency." *See O'Callaghan*, 537 F. Supp. 2d at 596 (holding that under this threshold, an action grounded on claims that an attorney had made meritless or unfounded allegations in prior state court proceedings is insufficient to sustain a violation of Section 487).

Plaintiffs further contend, "despite the knowledge of the false information" that "Thomasson decided to continue to advocate for the Deo Defendants." *Id.* at ¶ 601. However, the very purpose of the high standard for misconduct is that it affords attorneys a wide degree of latitude in the course of litigation to vigorously and responsibly represent their client with what they believe to be true. *See O'Callaghan*, 537 F. Supp. 2d at 596. Accordingly, Plaintiffs' Judiciary Law § 487 claim is dismissed.

## XVIII. *Piercing the Corporate Veil – Against Deo*

A corporate veil, that a parent corporation is not liable for the acts of its subsidiaries, may be pierced, and the shareholder held liable for the corporation's conduct when, "the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf." *Citibank, N.A. v. Aralpa Holdings Limited Partnership*, 714 F.Supp.3d 416, 433 (S.D.N.Y. 2024) (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). Piercing the corporate veil allows a plaintiff, under certain appropriate circumstances, to hold a corporation's owner liable for actions taken by the corporation. *Id.* Under New York law, a plaintiff may also "reverse-pierce" the veil and hold a corporation liable for actions taken by its owner. *Id.* (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.,* 122 F.3d 130, 134 (2d Cir. 1997)). The standard for piercing the corporate veil under New York law requires the essential elements of domination and fraud: "(1) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (2) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Id.* at 438.

New York courts and courts in this Circuit have found that under New York law, the tests for piercing the corporate veil and alter ego liability are the same. *See Noryb Ventures, Inc. v. Mankovsky,* No. 650378/2009, 47 Misc. 3d 1220(A) (N.Y. Sup. Ct. May 7, 2015) (stating that

the applicable standards for piercing the corporate veil and alter ego theories of recovery "are virtually identical"). "Alter ego liability exists when a parent or owner uses the corporate form to achieve fraud, or when the corporation has been so dominated by an individual or another corporation (usually a parent corporation), and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own." *OOO v. Empire United Lines Co.*, 557 F. App'x 40, 45–46 (2d Cir. 2014). Treating the corporation as the "alter ego" of a shareholder or director is just one of the theories in which a court can pierce the corporate veil or otherwise hold the individual defendant personally accountable for the corporation's actions or debts. *Highcap Group LLC v. Jam Equities, LLC,* No. 655120/2017, 2022 WL 835046, at *1 (N.Y. Sup. Ct. Mar. 21, 2022).

New York courts look at the following factors when determining whether veil-piercing is warranted and whether there is sufficient control established:

> C]ourts have considered factors such as disregard of corporate formalities; inadequate capitalization; intermingling of funds; overlap in ownership, officers, directors and personnel; common office space or telephone numbers; the degree of discretion demonstrated by the alleged dominated corporation; whether the corporations are treated as independent profit centers; and the payment or guarantee of the corporation's debts by the dominating entity.

*Highcap Group LLC,* 2022 WL 835046 at *6 (internal citations omitted). The plaintiff's burden is heavy – "mere conclusory alter ego allegations are insufficient to survive a motion to dismiss." *Id.* In other words, conclusory statements of domination and control and failure to allege particularized facts are insufficient to impose alter ego liability and piercing the corporate veil liability for that matter. *Id.* Additionally, "even in the presence of domination and control, the corporate form cannot be disregarded without a showing of fraud or that the misuse of the corporate form led to avoidance of obligations." *226 Fifth Ave. LLC v. SBF Intern., Inc.,* No. 6513272011, 2012 WL 10008060 (N.Y. Sup. Ct. June 06, 2012). Further, the mere claim that the

97

corporation was completely dominated by the owners, or conclusory allegations that the corporation acted as their "alter ego," without more, does not suffice to support the equitable relief for piercing the corporate veil. *Id.*

Here, Plaintiffs allege that in the event the Court determines Deo is an owner of, or sole owner of Northshore or Sunrise, then IAG Plaintiffs allege he failed to adequately capitalize Northshore and Sunrise, intermingled his personal assets with Northshore and Sunrise's assets, used Northshore and Sunrise assets for his own personal use, and overall abused the privilege of doing business in the limited liability form to perpetuate a wrong or injustice such that the IAG Plaintiffs seek to pierce the veil of Northshore and enter judgement against Deo for Northshore and Sunrise's obligations to IAG. *See* ECF No. 65 at ¶¶ 552-558, 566-572. The Court finds Plaintiffs have failed to meet the heavy burden of showing a corporation was dominated by Deo and thus have failed to show the presence of domination and control with any factual allegations beyond mere conclusory statements. *See e.g., 226 Fifth Ave. LLC,* No. 6513272011, 2012 WL 10008060 (finding that the amended complaint was devoid of any specific facts demonstrating that the defendant exercised complete domination and control over the remaining defendants for the purpose of defrauding plaintiff and noting that the complaint only asserts, "in a conclusory manner, and 'upon information and belief,'" which is insufficient). Therefore, Plaintiffs' conjectural conclusions are insufficient to establish alter ego liability against Deo.

## XIX.   *Violation of NY GBL § 349 – Against Deo*

New York law prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service. *See* N.Y. Gen. Bus. Law § 349. For a cause of action under § 349, a plaintiff must show: "(1) the defendant's conduct was consumer-oriented; (2) the defendant's act or practice was deceptive or misleading in a material way; and (3) the

plaintiff suffered injury as a result of the deception." *Paradowski v. Champion Petfoods USA, Inc.*, No. 22-962-cv, 2023 WL 3829559 at *2 (2d. Cir. June 6, 2023). New York courts apply an objective standard when assessing if an act was deceptive or misleading which focuses on whether the representation or omission is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* (citing *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611-12 (N.Y. 2000)). A reasonable consumer is interpreted as someone who, when making purchases, does not stop to analyze but is instead governed by appearances and general impressions. *Id.* (citing *Guggenheimer v. Ginzburg*, 372 N.E.2d 17, 19 (N.Y. 1977)). A plaintiff must prove actual injury to recover under the statute, though not necessarily pecuniary harm. *Eidelman v. Sun Products Corp.*, No. 21-1046-cv, 2022 WL 1929250, at *1 (2d. Cir. June 6, 2022). One method of demonstrating actual injury in the consumable goods context is by showing a price premium, that being that the plaintiff paid more for a product than he otherwise would have as a result of the defendant's deception. *Id.*

Here, Plaintiffs allege that "many of Deo's practices described herein were specifically directed to consumers" such as "accepting Trade-ins whereby Deo represented and was required but failed to satisfy the consumer's existing loan." ECF No. 65 at ¶¶ 576-577. However, Plaintiffs fail to explain why a reasonable consumer, acting reasonably under the circumstances, would have been misled by these practices. *See e.g., Paradowski*, 2023 WL 3829559 at *2 (holding that the standard employed by New York courts when assessing an action is whether the representation or admission was "likely to mislead a reasonable consumer acting reasonably under the circumstances."). Therefore, because Plaintiffs' operative Complaint fails to show that Deo's act or practice was deceptive or misleading in a material way, *see Paradowski*, 2023 WL 3829559 at *2, Plaintiffs' claim under the NYGBL is dismissed.

99

**XX.**    ___Permanent Injunction – Against Deo and Libertas Funding___

    The requirements for a permanent injunction are "essentially the same" as for a preliminary injunction, except that the moving party must demonstrate "actual success" on the merits. *NY Civil Liberties Union v. NYC Transit Authority*, 684 F.3d 286, 294 (2d Cir. 2012). To obtain a permanent injunction, a plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *EMA Financial, LLC*, No. 1:19-cv-01545 (ALC), 2020 WL 1233608 at *3 (S.D.N.Y. Mar. 13, 2020) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). To obtain a permanent injunction, "a plaintiff must succeed on the merits and show the absence of an adequate remedy at law and irreparable harm if the relief is not granted." *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006). The decision of whether to grant or deny permanent injunctive relief is an act of equitable discretion by the Court. *EBay Inc.*, 547 U.S. at 391.

    Here, the IAG Plaintiffs assert that Libertas claims ownership over Northshore's Future Receipts, but that claim to ownership is illegitimate, and thus Plaintiffs seek a judgment permanently enjoining Libertas from exercising any rights over Northshore's Future Receipts. *See* ECF No. 65 at ¶¶ 436-438. With respect to Libertas, the Court finds Plaintiffs fail to demonstrate the required elements to obtain a permanent injunction. Plaintiffs only assertions are that Libertas claims illegitimate ownership of the Northshore Future Receipts (*id.* at ¶ 436-437), which may suffice to show an injury, but does not explain how it constitutes an "irreparable injury." *See e.g., EMA Financial, LLC,* WL 1233608 at *3 (reasoning that an injury compensable

by money damages is insufficient to establish irreparable harm). Furthermore, Plaintiffs fail to assert element (2): how remedies available at law, such as monetary damages, are inadequate to compensate for this injury. *See id.* Lastly, Plaintiffs provide no analysis as to the balancing of hardships with respect to themselves and the defendant which renders a remedy in equity warranted under the circumstances. *See id.* Therefore, Plaintiffs have not sufficiently alleged it is entitled to a permanent injunction with respect to Libertas.

The IAG Plaintiffs additonally allege that Deo has misrepresented his ownership of Northshore, engaged in illegal and fraudulent conduct towards its members, and used the License issued to Chabrier to continue to operate Northshore in a matter to perpetuate his wrongful activities. *See* ECF No. 65 at ¶¶ 491-493. Plaintiffs further allege that Deo's actions had harms and will continue to harm Chabrier and other members of Northshore and thus seek a permanent injunction restraining Deo from participating in the continued management and operation of Northshore. *Id.* at ¶¶ 494-497. Plaintiffs make similar allegations with respect to Sunrise and Deo's misrepresentations, fraudulent actions, and use of the License issued to Aarsonson and J. Baron to operate Sunrise in a manner to perpetuate his wrongful activities, and likewise seek a permanent injunction restraining Deo's participation in the continued management and operation of Sunrise. *Id.* at ¶¶ 484-490. These allegations alone are not sufficient to demonstrate "actual success" on the merits. *See e.g., NY Civil Liberties Union*, 684 F.3d at 294.

The Deo Defendants respond to these allegations with the notion that Plaintiffs have only set forth conclusory allegations that Deo, acting on behalf and for Northshore and Sunrise, is utilizing a license purportedly owned by Chabrier and Aaronson and Baron respectively. *See* ECF No. 176-1 at 20-21. Deo contends that if Chabrier, Aaronson and Baron have any cause of action at all for permanent injunction, it would be against Northshore and Sunrise, who are not

named as defendants. *Id.* Given these inconsistencies, and the fact that Plaintiffs have only vaguely asserted that Deo's actions will continue to harm members of Northshore and Sunrise and that they have no adequate remedy at law, Plaintiffs have also not sufficiently alleged the elements set forth above to demonstrate it is entitled to a permanent injunction with respect to Deo. Therefore, Plaintiffs' claims for permanent injunction as against Deo and Libertas Funding are dismissed.

## XXI.    *Declaratory Judgement – Against Deo*

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy," a federal court "may declare the rights . . . of any interested party seeking such declaration." 28 U.S.C. §2201(a). Second Circuit courts apply a two-pronged test to determine if an actual controversy exists in a declaratory judgment action. *Beacher v. Estate of Beacher,* 756 F.Supp.2d 254, 272 (E.D.N.Y. 2010). The ripeness standard for a declaratory judgement action is that there must be "substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005). *First*, "the defendant's conduct must have 'created a real and reasonable apprehension of liability on the part of the plaintiff.'" *Ritz Hotel, Ltd. v. Shen Mfg. Co.*, 384 F. Supp. 2d 678, 682 (S.D.N.Y. 2005) (quoting *Starter Corp. V. Converse, Inc.*, 84 F.3d 592, 595 (2d Cir. 1996)). *Second*, "the plaintiff must have 'engaged in a course of conduct which has brought it into adversarial conflict with the defendant.'" *Id.*

Once it has been established that an actual controversy exists, federal courts have discretion in issuing a declaratory judgment and among relevant considerations in exercising this discretion is "whether the judgement will serve a useful purpose in clarifying or settling the legal

issues involved." *Id.* (quoting *Duane Reade, Inc.* 411 F.3d at 389). A decision should be made on

the merits of the parties' dispute only with regard to pure questions of law. *Duane Reade, Inc.*,

411 F.3d at 388. However, relevant here, Courts often reject declaratory judgment claims when

other claims in the suit will resolve the same issues because under those circumstances, a

declaratory judgment does not serve any useful purpose. *Brunckhorst v. Bischoff*, No. 21 Civ.

4362 (JPC), 2024 WL 4277788 at *20 (S.D.N.Y. Sept. 24, 2024). For example, Courts in the

Second Circuit "routinely dismiss requests for declaratory judgment when the parties' rights will

be adjudicated through a breach of contract claim in the same action." *Id.* (citing *StandardAero*

*Aviation Holdings, Inc. v. Signature Aviation Ltd.*, No. 22 Civ. 7515 (AT), 2024 WL 125574, at

*5 (S.D.N.Y. Jan. 11, 2024) (quoting *Com Lubricants, LLC v. Safety-Kleen Sys., Inc.*, No. 14

Civ. 7483 (MKB), 2017 WL 343 2073, at *17 (E.D.N.Y. Aug. 8, 2017)).

Here, Plaintiffs assert that there exists a justiciable controversy which is ripe for

judgment, and necessary to resolve the rights and obligations of each of the parties to each other,

with respect to determination of the ownership of Northshore and Sunrise. *See* ECF No. 65 ¶¶

458-463, 465-470.  Given the extensive causes of action set forth by Plaintiffs related to these

issues and rights, the Court dismisses this request for declaratory judgment given other claims in

the suit will likely resolve the same issues set forth here.

**XXII.** ***Contribution and Indemnification for Fraud, Bread of Fiduciary Duty, Breach***
***of Loyalty and Conversion – Against Deo; Contribution and Indemnification for***
***Conversion and Aiding and Abetting Conversion, Fraud, Breach of Fiduciary***
***Duty, Breach of Duty of Loyalty – Against Thomasson***

Generally, contribution involves a situation in which several tort-feasors can share

liability for a plaintiff's injury, while indemnification "involves a complete shifting of the loss"

stemming from a "contractual or other relationship between the actual wrongdoer and another,

such as that of [an] employer and employer."  *Sherleigh Assocs. v. Patron Sys.*, No. 04 Civ. 907

(JFK), 2005 WL 1902844, at *2 (S.D.N.Y. Aug. 9, 2005) (quoting *Riviello v. Waldron*, 47

N.Y.2d 297, 306 (1979)). The right to contribution does not arise from contract and only ratable

or proportional reimbursement is sought in an action for contribution. *McDermott v. City of New

York*, 406 N.E.2d 460 (N.Y. 1980).

In New York, indemnification claims "must be grounded in contract either express or

implied." *Cohen v. Elephant Wireless, Inc.*, 03 Civ. 4058 (CBM), 2004 WL 1872421, at *11

(S.D.N.Y. Aug. 19, 2004). A classic indemnity claim exists in favor of a person held vicariously

liable for the tort of another, such as when an employer who has been forced to pay damages, by

virtue of *respondeat superior*, may obtain indemnity from his employee. *McDermott*, 406 N.E.2d

460, n.4. Indemnification is a restitution concept which "allows shifting of loss to avoid unjust

enrichment of one party at the expense of another." *Lewis v. Rosenfeld*, 00 CIV. 5368 (SAS),

2002 WL 441185, at *4 (S.D.N.Y. Mar. 20, 2002). However, until payment is made to the

claimant, or a third-party action is filed, there is no cause of action for indemnification. *Mars

Assoc. v. New York City Educ. Constr. Fund*, 126 A.D.2d 178, 191 (N.Y. App. Div. 1st Dep't

1987) (explaining that "technically a claim for indemnity does not arise until the prime

obligation to pay has been established" however, the CPLR "allows third-party actions to be

commenced in certain circumstances before they are technically ripe, so that all parties may

establish their rights and liabilities in one action.").

Here, Plaintiffs assert a cause of action for contribution and indemnification for fraud,

breach of fiduciary duty, breach of loyalty and conversion against Deo. *See* ECF No. 65 at ¶¶

491-504.  Plaintiffs additionally assert several causes of action for contribution and

indemnification with respect to Thomasson for conversion (ECF No. 65 at ¶¶ 518-521) and for

aiding and abetting conversion (*id.* at ¶¶ 522-525), fraud (*id.* at ¶¶ 526-530), breach of fiduciary

duty (*id.* at ¶¶ 534-538), and breach of duty of loyalty *(id.* at ¶¶ 541-545). Plaintiffs' claims for indemnification and contribution with respect to both Deo and Thomasson rest on the assertions that:

> If it is determined that Libertas sustained damages, as alleged in its Libertas Claims, then such damages were necessarily caused by Deo; Libertas shall have recourse against Deo who, fraudulently and without authority and in breach of his fiduciary duties and duty of loyalty, sold the Future Receipts in exchange for the Libertas Funds and was unjustly enriched thereby and/or converted same. As such, Deo would ultimately be liable to Libertas for the damages arising out of the causes of action alleged by Libertas in its Libertas Claims.

> If it is determined that Libertas sustained damages, as alleged in its Libertas Claims, then such damages were necessarily caused by Thomasson; and/or Libertas shall have recourse against Thomasson as the party who converted the Libertas Funds, and as such, Thomasson would ultimately be liable to Libertas for the damages arising out of the causes of action alleged by Libertas in its Libertas Claims.

*Id.* at ¶ 502, 519. Specifically, the IAG Plaintiffs request that they "shall have judgment over and against Deo [and Thomasson] for any damages assessed against IAG Plaintiffs arising out of Deo [and Thomasson's] actions chargeable to IAG Plaintiffs running in favor of Libertas and/or for any liability arising out of the aforesaid causes of action." *Id.*

Plaintiffs contend that "if Libertas recovers from IAG Plaintiffs, then Plaintiffs will have been injured" and would therefore be entitled to "indemnification and/or contribution" from Thomasson and/or Deo. *Id.* at ¶ 504. However, "Libertas is neither a plaintiff in this action, nor have they asserted any claims against" the IAG Plaintiffs[;]" rather, the IAG Plaintiffs "are [seemingly] trying to prematurely assert, on Libertas' behalf, claims that have yet to be asserted or raised." ECF No. 176-1 at 28.[6] Because Plaintiffs do not allege how or why either Deo or

---

[6] Defendants further contend that "even if it was determined that Northshore was liable to Libertas for the 'Libertas Funds,' and even if it was determined that Deo breached his duty to Northshore in borrowing said funds, the [IAG Plaintiffs] fail to plead any basis for their conclusory allegation that they would be personally liable and suffer damages distinct that would be sustained by Northshore." *Id.* Moreover, "based on the factual allegations set forth in the Complaint, any rights to the 'Libertas Funds,' were solely Northshore's [,and] [t]o the extent that the Complaint alleges that the funds were converted by

Thomasson has an obligation – express or implied – for contribution or indemnification to the IAG Plaintiffs in the instant case, Plaintiffs' claims for contribution and indemnification with respect to both of these defendants are therefore dismissed.

## XXIII.    *Plaintiffs' Cross-Motions to Amend the Pleadings: Legal Standard*

Motions to amend pleadings are governed by Federal Rule of Civil Procedure 15(a). Rule 15(a)(2) provides that "[t]he court shall freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  Generally, "[u]nless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend." *Adlife Mktg. & Communs Co. V. Best Yet Mkt., Inc.*, No. 17-CV-02987 (ADS) (ARL), 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018) (citing *Forman Davis*, 371 U.S. 178, 182 (1962)).

The party opposing the proposed amended pleading has the burden of establishing that amendment would be prejudicial or futile.  *Jipeng Du v. Wan Sang Chow*, No. 18-CV-01692 (ADS) (AKT), 2019 WL 3767536, at *4 (E.D.N.Y. Aug. 9, 2019) (internal quotations and citations omitted).  The moving party must attach the proposed amended complaint to the motion, as was done here, specifying the new claims and/or parties intended to be added.  *See Nabatkhorian v. County of Nassau*, No. 12-CV-1118 (JS) (GRB), 2012 WL 13113646, at *1 (E.D.N.Y. Aug. 9, 2012).

The Second Circuit has clarified the standard District Courts should apply in considering motions for leave to amend dependent upon the timing of the proposed amendment:

---

Thomasson, or that Thomasson's conduct aided and abetted in the conversion of said funds, in the breach of a fiduciary duty, in the breach of a duty of loyalty, or in fraud, the property rights, duties, and harm would have been Northshore's, and not the [IAG Plaintiffs] (since they had no direct ownership interest or possessory right in the 'Libertas Funds,' as their interest would arise solely out of their purported membership interest in Northshore)." *Id*. at 29.

The ability of a plaintiff to amend the complaint is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure which, when read together, set forth three standards for amending pleadings that depend on when the amendment is sought. At the outset of the litigation, a plaintiff may freely amend her pleadings pursuant to Rule 15(a)(1) as of right without court permission. After that period ends—either upon expiration of a specified period in a scheduling order or upon expiration of the default period set forth in Rule 15(a)(1)(A)—the plaintiff must move the court for leave to amend, but the court should grant such leave "freely . . . when justice so requires" pursuant to Rule 15(a)(2). This is a "liberal" and "permissive" standard, and the only "grounds on which denial of leave to amend has long been held proper" are upon a showing of "undue delay, bad faith, dilatory motive, [or] futility." The period of "liberal" amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted. It is still possible for the plaintiff to amend the complaint after such a deadline, but the plaintiff may do so only up [to] a showing of the "good cause" that is required to modify a scheduling order under Rule 16(b)(4).

*Sacerdote v. NYU*, 9 F.4th 95, 115 (2d Cir. 2021); *Johnson v. Barnett Outdoors, LLC*, No. 21-CV-6311 (MJP), 2023 WL 8050236, at *2 (W.D.N.Y. Nov. 20, 2023) (stating that Rule 15(a)'s standard must be balanced with Rule 16(b)'s good cause standard).

To this end, under Rule 16(b), "good cause" is required to modify a scheduling order implemented by the Court. Fed. R. Civ. P. 16(b)(4); *Sacerdote,* 9 F.4th at 115 ("[T]he period of 'liberal' amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted. It is still possible for the plaintiff to amend the complaint after such a deadline, but the plaintiff may do so only up a showing of the 'good cause' that is required to modify a scheduling order under Rule 16(b)(4)"). Furthermore, "district courts wishing to evaluate motions for leave to amend under Rule 16 after a particular date need only write their scheduling orders consistent with that intent, and state that no amendment will be permitted after that date in order to trigger the Rule 16 standard." *Id.* at 116.

A finding of good cause is largely dependent on whether the moving party can demonstrate diligence, however, the court may consider other relevant factors such as whether the amendment at this stage would prejudice the defendants. *Johnson*, 2023 WL 8050236 at *2

(reasoning that a plaintiff does not meet the burden of showing good cause or diligence to amend if "the proposed amendment rests on information" he knew, "or should have known, in advance of the deadline" for motions to amend); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340-41 (2d Cir. 2000) (holding that the district court properly denied the leave to amend where the plaintiff "had all the information necessary" to support his claim, "and nothing he learned in discovery or otherwise altered that fact.").

With respect to the "futility" factor, "where the amended portion of the complaint would fail to state a cause of action," the district court may deny the party's request to amend. *Parker*, 204 F.3d at 338. In other words, when determining whether a proposed pleading is futile, courts will analyze whether it would withstand a motion to dismiss. *Agerbrink v. Model Service LLC*, 155 F.Supp.3d 448, 456 (S.D.N.Y. 2016). Leave to amend may be denied based on futility if the proposed amendment still "fails to state a legally cognizable claim or fails to raise triable issues of facts." *AEP Energy Services Gas Holding Co. V. Bank of America, N.A.*, 626 F.3d 699, 726 (2d Cir. 2010); *see also, Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face.").

However, "if a proposed amendment is not clearly futile, then denial of leave to amend is improper." *See Brawer v. Egan-Jones Ratings Company*, 347 F.R.D. 650, 654 (S.D.N.Y. 2024) (citing Fed. Prac. & Proc. Civ. § 1487); *see also Dougherty v. Town of North Hempstead Board of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (reversing the district court's denial of amendment as futile because, although defendants "vigorously disputed" plaintiff's version of events, "proposed amended complaint adequately set forth specific facts, which if proven, could support a finding of [defendants' liability"). In deciding whether an amended complaint is futile, "the Court is required to accept the material facts alleged in the amended complaint as true and

draw reasonable inferences in the plaintiff's favor." *Alkhatib v. NY Motor Group LLC*, Nos. CV-13-2337 (ARR), CV-13-5643 (ARR), 2015 WL 3507340, at *7 (E.D.N.Y. June 3, 2015) (quoting *Chan v. Reno*, 916 F.Supp. 1289, 1302 (S.D.N.Y. 1996)).

"In the Second Circuit, 'mere delay, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend.'" *Agerbrink*, 155 F.Supp.3d at 452 (citing *State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)). However, where a significant amount of time has passed prior to filing a motion to amend, the moving party must provide an explanation for the delay. *Id.* (citing *Park B. Smith v. CHF Industries Inc.*, 811 F.Supp.2d 766, 779 (S.D.N.Y. 2011). A "motion to amend will not be denied by reason of plaintiffs' delay in alleging facts that were previously within their knowledge." *Id.* at 453 (quoting *Dilworth v. Goldberg*, 914 F.Supp.2d 433, 460 (S.D.N.Y. 2012)). However, the court may deny leave to amend if the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, in addition to the fact that the amendment would prejudice other parties. *Id.* (quoting *Grace v. Rosenstock*, 228 F.3d 40, 53-54 (2d Cir. 2000)).

Finally, prejudice "has been described as the most important reason for denying a motion to amend. *Id.* at 454. (citing *Frenkel v. New York City Off-Track Betting Corp.*, 611 F.Supp.2d 391, 394 (S.D.N.Y. 2009) (quoting *Turkenitz v. Metromotion, Inc.*, 97 Civ. 2513, 1997 WL 773713, at *8 (S.D.N.Y. Dec. 12, 1997))). In deciding whether prejudice exists, courts will assess the following factors as to whether the amendment would "(i) require the opponent to expend significant additional resources or to conduct disocvery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Id.* (citing *Monahan v. New York City Department of*

*Corrections*, 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Block v. First Blood Associates*, 988 F.2d

344, 350 (2d Cir. 1993))).  The inquiring requires the court to balance and weigh "any potential

prejudice to the opposing party against the prejudice that the moving party would experience if

the amendment were denied." *Id.* (citing *Oneida Indian Nation of New York State v. County of

Oneida*, 199 F.R.D. 61, 77 (N.D.N.Y. 2000)).

     Courts may be more likely to find an amendment prejudicial if a discovery has already

closed, however, an amendment that warrants additional discovery may be permitted so long as it

does not significantly prolong the resolution of the action.  *Id* at 454-55 (citing *Scott v. Chipotle

Mexican Grill, Inc.*, 300 F.R.D. 193, 200 (S.D.N.Y. 2014)).  The non-moving party bears the

burden of showing that "substantial prejudice would result were the proposed amendment to be

granted. *Id.* at 454 (citing *Oneida Indian Nation of New York*, 199 F.R.D. at 77.) Under this lens,

the Court reviews Plaintiffs' first and second requests motion to amend.

### A.    *Plaintiffs' First Motion to Amend*

     Plaintiffs now set forth additional allegations with respect to Flushing Bank's

involvement in the Deo Defendants' fraudulent scheme in their first Cross-Motion for Leave to

Amend the Pleadings. *See* ECF No. 180-1 at ¶¶ 211-228.  Plaintiffs allege these facts to further

demonstrate that Flushing Bank knowingly participated in the Deo Defendants' fraudulent

schemes by permitting him to open an account with Superb, all while lacking the actual authority

to do so and further that Deo opened this account to divert Superb's funds to an account he could

control "with assistance from Flushing Bank." *Id.* at ¶¶ 222.  However, the Court finds

Plaintiffs' proposed amendments to the pleadings are futile, as their allegations against Flushing

Bank and its involvement in the Deo Defendants' fraudulent schemes still could not survive a

motion to dismiss, and thus the motion must be denied for this reason alone.  *See Kiarie v.*

*Dumbstruck, Inc.,* 473 F.Supp.3d 350, 356-58 (S.D.N.Y. 2020) (holding that the motion to amend must denied based purely on its futility, such that its allegations still could not survive a motion to dismiss, and it was doubtful that the evidence would even allow a jury to find for the plaintiff on that issue).

Plaintiffs allege that Deo successfully opened a bank account for Superb on or about April 4, 2023, but that a month prior, Urrutia began the process of opening an account with Flushing in March 2023 and submitted various documents and records, including his tax returns and other documents which indicated her was the majority shareholder of Superb. *Id.* at ¶¶ 211-13. Furthermore, Plaintiffs allege that Urrutia spoke directly with David Weinstein, the Vice President and Branch Manager of Flushing's Borough Park branch and that Weinstein knew Urrutia was the majority shareholder of Superb. *Id.* at ¶ 214. However, Plaintiffs allege that around the same time, on March 31, 2023, Deo had contacted Robert Puccio, the Vice President of Flushing Bank's Business Banking Group located at 99 Park Avenue in Manhattan, who Deo represented was his "personal banker" to open an account. *Id.* at ¶ 215.

On that same day, Weinstein asked Urrutia whether Urrutia wanted to share his personal tax returns with Puccio, and Weinstein also asked Urrutia for the name of Urrutia's partner at Superb, which Plaintiffs assert as sufficient to establish that both Weinstein knew Deo was not the sole shareholder of Superb and that Puccio knew given that Weinstein was in contact with Puccio about opening an account at Superb. *Id.* at ¶ 217. Deo subsequently informed Novicky that he has a personal banker ready to open an account for Superb with Flushing Bank and that he could obtain a $500,000.00 line of credit as well adding "[t]his guy and the Credit underwriter are in my pocket. Get me the info and 2021 taxes and I will bring it home[,]" which Plaintiffs

contend establishes that Flushing Bank and its agents were in on the Deo Defendants' schemes.
*Id.* at ¶¶ 218-20.

Plaintiffs further allege Flushing Bank knew and had reason to know the Deo Defendants
were using the account for fraudulent purposes because the transactions should have raised red
flags for Flushing Bank given the nature of the transaction which consisted of money coming in,
then immediately being transferred out, and the lack of expenses or payroll paid out of the sole
checking account for the dealership.  *Id.* at ¶¶ 226-27.  Finally, Plaintiffs assert, in a conclusory
fashion, that "Flushing Bank's agents benefitted from assisting the Deo Defendants" purely on
the basis that Deo said they were "in his pocket."  *Id.* at ¶ 228.

Plaintiffs' proposed amendments are insufficient because they do not permit the Court to
infer more than the mere possibility of Flushing Bank's misconduct.  *See e.g., Kiarie*, 473
F.Supp.3d at 354; *see also, Iqbal*, 556 U.S. at 678 (explaining that the plausibility standard is not
akin to a probability requirement, but it asks for "more than a sheer possibility that a defendant
has acted unlawfully."). As mentioned, with respect to the RICO claims, *Reves* provides that
RICO claims against outside services professionals, like banks, are insufficient unless they allege
more substantial involvement by the outsider defendant in the charged racketeering activity than
is set forth here.  *See Alkhatib*, 2015 WL 3507340 at *18.  Where a party, like Flushing Bank,
deals in an ordinary way with its agents and others who owe the party a professional obligation,
like opening bank accounts, such that their role in Deo's illicit activities was purely incidental as
a course of ordinary business, and, where there is no evidence that these agents acted with intent
to effectuate those illicit activities, the party does not constitute an associated-in-fact enterprise
for RICO purposes.  *See in re: General Motors LLC Ignition Switch Litigation*, 2016 WL
3920353 at *15.

Even considering Plaintiffs' additional allegations about Weinstein's knowledge of Urrutia as the majority shareholder, Plaintiffs do not dispute that it was Puccio who opened the account for Deo, and Plaintiffs' only assert conclusory allegations that "Puccio knew given that Weinstein was in contact with Puccio about opening an account at Superb." ECF No. 180-1 at ¶ 217.

Plaintiffs also broadly claim Deo's own communications of "[t]his guy and the Credit underwriter are in my pocket" establish that Flushing Bank and its agents were "in" on the Deo Defendants' schemes. *Id.* at ¶ 220. While these allegations may suffice to show the mere possibility of wrongful conduct, they do not establish that Flushing Bank shared in the Deo Defendants' nefarious intention, aside from the accusation that "Flushing Bank's agents benefitted from assisting the Deo Defendants because they were in Deo's 'pocket.'" *Id.* at ¶ 228. For the same reasons the operative Complaint was insufficient to survive the very difficult "operation and management" test set forth by the Supreme Court in *Reves*; the mere fact that Flushing provided services, such as opening the account, without more, remains insufficient to state a claim under Section 1962(c). *See e.g., Zhu*, 2005 WL 275736, at *5.

Therefore, Plaintiffs' First Motion to Amend is ***denied*** for reason of futility: even with these additional allegations, Plaintiffs fail to sufficiently allege that Flushing Bank was involved in the "operation and management" of the fraudulent enterprise of the Deo Defendants, aside from performing standard bank services, mere conjecture as to their fraudulent intentions, and an utter lack of factual allegations showing how they benefitted from the scheme. *See Zhu*, 2005 WL 2757536, at *5 (finding no existence of an enterprise when the only "pattern of activity" alleged by the plaintiff is that of "banks complying with their customers' requests").

## B.    *Plaintiffs' Second Motion to Amend*

### 1.    *The Addition of Northshore and Sunrise as Defendants*

Plaintiffs' second motion to amend the operative Complaint claim seeks to add Northshore and Sunrise as defendants for the alternative claims, correcting the alleged deficiency in the previously submitted complaint. *See* ECF No. 182 at 42.  With respect to Counts 16, 17, 18, 21, 23, 26, and 42, the Plaintiffs' proposed Third Amended Complaint ("TAC") adds the prerequisite demand to the derivative claims and adds the necessary plaintiffs and Northshore and Sunrise as defendants.  *Id.* at 38-39.  Furthermore, with respect to Count 22, Northshore now asserts the corporate waste claim. Plaintiffs further argue that it is "nonsensical" to dismiss Chabrier's claim against Deo, as Deo's mismanagement of Northshore cost Chabrier the DMV license.  *Id.* at 39. Similarly, with respect to Count 27, Sunrise now asserts the corporate waste claim, and Plaintiffs argue that Aaronson's and J. Baron's claims have merit because Deo's mismanagement of Sunrise cost those Plaintiffs the DMV license.  *Id.* at 40.

 With respect to Count 28, the TAC asserts the prerequisite demand and adds Northshore as a nominal defendant.  *Id.* at 40.  Further, Plaintiffs note that Libertas Funding has discontinued its claim against IAG Plaintiffs in state court to pursue the claim in this Court; us, in the interest of judicial economy, the claim should stand.  *Id.* at 41.  With respect to Counts 29 to 37, Plaintiffs now seek to have Counts 29, 20, 34, and 36 brought against Northshore directly, and Counts 31, 32, 33, and 35 as standard indemnification claims "should be successful against any indemnified party."  *Id.* at 41.  Regarding Counts 38 and 40, the TAC alleges a contractual relationship between IAG and Northshore and Sunrise, such that an agreement obligated the former to cover the duties of the latter. *Id*. at 42.  Lastly, with respect to Counts 43 and 44, the TAC addresses the prerequisite demand and joins Northshore and Sunrise as nominal defendants.

Moreover, it alleges that Deo owed Northshore and Sunrise accurate accounting through his role as manager. *Id.* at 43.

These above-mentioned requests with respect to joining Northshore and Sunrise as nominal defendants, and the proposed claims that follow on their behalf and against them, are ***denied***. Aside from the fact that the scheduling order set a deadline of April 5, 2024 (ECF No. 142 at 3) for motions to join new parties or amend the pleadings, and Plaintiffs did not file this until May 14, 2024, Plaintiffs fail to provide any explanation that would excuse this delay given Plaintiffs have been aware of Northshore and Sunrise as the dealerships which are largely at the center of these claims since the initial complaint was filed on August 17, 2023. *See* ECF No. 1 at 9-11); *see also Shi Ming Chen v. Hunan Manor Enterprise, Inc.*, 437 F.Supp.3d 361, 366 (S.D.N.Y. Feb. 3, 2020) (reasoning that reopening the case to add new defendants "would certainly risk a re-do of the entire discovery process inasmuch as each new defendant would be entitled to obtain discovery from the plaintiffs and potentially from co-defendants.").

Furthermore, this is Plaintiffs' Third Amended Complaint and "prejudice is generally found where the motion to amend comes after many months or years of pre-trial activity" and "adds new parties." *See Antrobus v. N.Y.C. Dep't of Sanitation*, 2016 WL 5394697, at *11 (E.D.N.Y. Feb. 25, 2016). Furthermore, prejudice is also found when "permitting an amendment at this late juncture would unduly delay the resolution of this litigation." *See Aguilar v. Connecticut*, 2013 WL 657648, at *8 (D. Conn. Feb. 22, 2013). In sum, Plaintiffs' request to amend their complaint to add additional defendants, Northshore and Sunrise, and claims with respect to those entities is ***denied***, even applying Rule 15(a)(2)'s lenient standard. *See Shi Ming Chen*, 437 F.Supp.3d at 367.

**2.**    **_Allegations Pertaining to Piercing the Corporate Veil_**

With respect to Counts 39 and 41, asserting a claim for piercing of the corporate veil,

Plaintiffs TAC omits these counts as unnecessary and instead asserts them as an alternative

method of recovery under Counts 38 and 40. *See* ECF No. 182 at 42-43. For the reasons stated

above with respect to Northshore and Sunrise, Plaintiffs' request to assert these claims as an

alternative method of recovery still fail for the same reasons the claims were initially dismissed,

because these conjectural conclusions are insufficient to establish that the Deo exercised

complete domination and control over Northshore and Sunrise to perpetuate fraud against the

IAG Plaintiffs as well as a lack of capitalization and intermingling of funds. *See e.g., 226 Fifth*

*Ave. LLC,* No. 6513272011, 2012 WL 10008060 (finding that the complaint only asserts, "in a

conclusory manner, and 'upon information and belief,'" which is insufficient to show the

presence of domination and control with any factual allegations beyond mere conclusory

statements).

**3.**    **_Violation of Judiciary Law § 487_**

With respect to Count 45, Plaintiffs' claim the FAC "adequately allege[s]" Thomasson's

knowledge of the scheme surrounding the Libertas Funds, and, therefore, Plaintiffs assert he is

guilty of lying in open court when he claimed there was nothing wrong with using his attorney

escrow account to transfer the funds from IAG Plaintiffs to Deo, constituting a violation of the

Judiciary Law § 487. *See* ECF No. 182 at 44. For the same reasons that this claim fails to

survive a motion to dismiss, the proposed amended pleading fails as well. Plaintiffs allege in the

TAC that "Thomasson knew the funds were the product of Deo Defendants' fraudulent schemes

because he was complicit in them, actively conspired with the Deo Defendants to carry them out

and even maintained an office inside the dealership that the Deo Defendants operated out of." *Id.*

In the TAC, once again, Plaintiffs allege Thomasson made misrepresentations to deceive Justice Gianelli regarding the use of his escrow account. *Id.*

Even if these allegations were sufficient to allege deceitful intent, which, given the lack of particularity as to how Thomasson knew this, they are likely not, they remain insufficient to show a pattern that was either extreme or egregious as required by the statute. Again, the standard for § 487 is a high one, and Courts afford attorneys a wide degree of latitude during litigation to vigorously and zealously advocate on behalf of their client. *See O'Callahan*, 537 F.Supp.2d at 596. Plaintiffs' request to amend the pleadings with respect to this claim is ***denied***, because it is futile and would not withstand a motion to dismiss even with these proposed allegations. *See Agerbrink*, 155 F.Supp.3d at 456.

### 4. *Misappropriation*

With respect to their misappropriation claim, the Court finds Plaintiffs have failed to plead a cause of action for misappropriation under New York law in the TAC, because Plaintiffs have failed to allege a trade secret pursuant to the DTSA. In the TAC, Plaintiffs rehash much of the same arguments they proffered for the DTSA claim. *See* ECF No. 182 at 49-52. Once again, Plaintiffs have set forth sufficient information to show the customer list and DMS system derive independent economic value and are not readily ascertainable through proper means in the marketplace, yet these allegations would still fall short in a motion to dismiss because Plaintiffs fail to allege the extent of measures taken by Plaintiff to guard the secrecy of the information, which is required for a valid trade secret and thus a misappropriation claim. *See Core SWX, LLC,* 2022 WL 3588081 at, *4. Therefore, Plaintiffs' request to amend their misappropriation claim is ***denied*** on futility grounds.

### 5.   *Tortious Interference; Negligence* <u>*and Conversion Against the Bank Defendants*</u>

With respect to Plaintiffs' Tortious Interference claim, in Plaintiffs' TAC, Plaintiffs reason that, because they had a business relation with NMAC and Deo "intentionally interfered" with that relation to harm Superb and caused harm.  ECF No. 182 at 55.  Even if Plaintiffs have identified the Superb Plaintiffs' business relationship with the Floor Plan lenders, and showed the resulting harm and issues it caused with the Floor Plan, they still fail to show the ways in which the Deo Defendants *intentionally* interfered with such relationship to cause such harm, and, therefore, Plaintiffs' request to amend the pleadings with respect to this claim is also ***denied*** on futility grounds. *See Agerbrink*, 155 F.Supp.3d at 456. Likewise, Plaintiffs' request to amend the pleadings with respect to these negligence and conversion claims against the Bank Defendants – particularly Chase (ECF No. 182 at 58) – is ***denied*** on futility grounds. As mentioned, Article 4-A precludes common law claims asserting the existence of unauthorized wire transfers regardless of what the claim may be called, and, therefore, Plaintiffs' proposed negligence and conversion claims fall within the regime of Article 4-A and are precluded.  *See e.g., Ma*, 597 F.3d at 89.

### 6.   <u>*Fraud – Against Deo and Jones*</u>

Further, Plaintiffs' motion for leave to amend their complaints with respect to Deo and Jones' fraud set forth in Count 52 (ECF No. 182 at 60-61) is ***granted*** with respect to additional factual assertions pertaining to Deo and ***denied*** with respect to Jones.  In the TAC, Plaintiffs reiterate the allegation that "Jones provided Urrutia, *by and through Deo,* with monthly financials and falsely showed Superb was profitable." *Id.* at 60.  However, these new assertions still do not support a showing that Jones made such statements with knowledge of its falsity nor

with any intent to defraud Plaintiffs outside of the ordinary course of business they were paid to provide. *See MetLife Invs. USA Ins. Co. v. Zeidman*, 734 F.Supp.2d 304, 312 (E.D.N.Y. 2010).

**7.    *Standing – Urrutia and Team Auto***

Finally, between the TAC and FAC, Plaintiffs have made a case for Urrutia's and Team Auto's standing such that those Plaintiffs should be permitted to pursue their claims against the Defendants accordingly. Plaintiffs assert Urrutia has standing because he is "President of Superb Motors" and "has been harmed by the Defendants' conduct." ECF No. 182 at 48-49. Team Auto has standing because it is an auto wholesaler that owned 13 cars Deo allegedly absconded with. *See* ECF No. 182 at 49. Plaintiffs' motion for leave to amend their complaints to include facts to further support their standing is ***granted***.

In conclusion, Plaintiffs' motion for leave to amend their complaints is ***granted***, except with respect to those claims already dismissed.[7]

## CONCLUSION

For the foregoing reasons:

(i)    the Deo Defendants' Motion to Dismiss (ECF No. 176) is **GRANTED** *in part* and **DENIED** *in part*. The following claims are dismissed ***with prejudice***:

(a)    Tortious Interference with Contracts, Business Relations, and Prospective Economic Advantage against the Deo Defendants;

(b)    Defend Trade Secrets Act Claims, including Misappropriation under the DTSA against the Deo Defendants;

(c)    Violation of New York Judiciary Law § 487 against Thomasson;

---

[7] Plaintiffs are permitted to amend the operative Complaint to include the proposed further factual allegations regarding the surviving claims. For example, Plaintiffs are permitted to amend the operative Complaint to incorporate further factual allegations regarding the conversion and civil conspiracy claims against the Deo Defendants. *See* ECF No. 182 at 56-58, 59-60.

(d)     Piercing the Corporate Veil against Deo;

(e)     Violation of New York GBL § 349 against Deo;

(f)     Permanent Injunction against Deo; Libertas Funding

(g)     Declaratory Judgment against Deo

(h)     Contribution and Indemnification for Fraud, Breach of Fiduciary Duty, Breach of Loyalty and Conversion against Deo; and

(i)     Contribution and Indemnification for Conversion and Aiding and Abetting Conversion, Fraud, Breach of Fiduciary Duty, Bready of Fiduciary Duty against Thomasson.

(ii)     the Bank Defendants' Motions to Dismiss (ECF Nos. 164, 175 and 177) are

**GRANTED** *in part* and **DENIED** *in part*. The following claims are dismissed

*with prejudice*:

(a)     Permanent Injunction against Libertas Funding;

(b)     Plaintiffs' RICO Claims against Bank Defendants;

(c)     Conversion claims against the Bank Defendants;

(d)     Negligence and Unauthorized Payments against the Bank Defendants;

(e)     Drawee Liability against Chase Bank;

(f)     New York UCC §3-419 against the Bank Defendants;

(iii)     the CPA Defendants' Motions to Dismiss (ECF No. 168) is **GRANTED.** The

following claims are dismissed *with prejudice*:

(a)     Plaintiffs' RICO Claims against CPA Defendants;

(b)     Plaintiffs' Fraud Claims against Jones; and

(c)     Professional Malpractice against the CPA Defendants.

(iv)     Plaintiffs' Motions for Leave to Amend (ECF Nos. 178 and 181) are **GRANTED**

*in part* and **DENIED** *in part*, consistent with this Order.  Plaintiffs are directed to

file an Amended Complaint consistent with the rulings in the Order on or before

April 4, 2025.

Dated: Central Islip, New York
       March 21, 2025

**S O   O R D E R E D:**

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge

121

FILED
CLERK

8/1/2025

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

SUPERB MOTORS INC. *et al.*,

       *Plaintiffs*,

    -against-

ANTHONY DEO *et al.*,

       *Defendants*.

-------------------------------------------------------------X

**ORDER**

23-CV-6188 (JMW)

**A P P E A R A N C E S :**

Emanuel Kataev
**Sage Legal LLC**
18211 Jamaica Avenue
Jamaica, NY 11423
*Attorneys for Plaintiffs Superb Motors Inc.,*
*Team Auto Sales LLC and Robert Anthony Urrutia*

Jeffrey Ruderman
**Cyruli Shanks & Zizmor LLP**
420 Lexington Avenue, Suite 2320
New York, NY 10170
*Attorneys for Plaintiffs 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC,*
*1581 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC,*
*1632 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hylan Blvd Auto LLC, 76*
*Fisk Street Realty LLC, 446 Route 23 Auto LLC, Island Auto Management, LLC, Brian*
*Chabrier, Joshua Aaronson, and Jory Baron*

Jeffrey Benjamin
**The Linden Law Group, PC**
250 Park Avenue
Ste 7th Floor
New York, NY 10177
*Defendants Anthony and Sarah Deo, Dwight Blankenship, Marc Merckling, Michael*
*Laurie, Car Buyers NYC, Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of*
*Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC*
*LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA*
*Premier Motors Corp.*

**Harry R. Thomasson**
3280 Sunrise Highway, Ste Box 112
Wantagh, NY 11793
*Defendant Appearing Pro Se*

John A. Lentinello
**Milber Makris Plousadis & Seiden, LLP**
1000 Woodbury Road, Suite 402
Woodbury, New York 11797
*Attorneys for Defendants Thomas Jones, CPA and Jones, Little & Co., CPA's, LLP*

*No appearances by other Parties*

**WICKS**, Magistrate Judge:

On March 21, 2025, this Court issued an Opinion and Order that addressed several

Motions to Dismiss (ECF Nos. 164, 168, 175, 176, and 177), and Motions to Amend (ECF Nos.

178, 181). (ECF No. 230.) In relevant part, the Court concluded as such:

> Deo Defendants' Motion to Dismiss (ECF No. 176 ) is **GRANTED** *in part* and **DENIED** *in part*. The following claims are dismissed with prejudice: (a) Tortious Interference with Contracts, Business Relations, and Prospective Economic Advantage against the Deo Defendants;(b) Defend Trade Secrets Act Claims, including Misappropriation under the DTSA against the Deo Defendants; (c) Violation of New York Judiciary Law § 487 against Thomasson; (d) Piercing the Corporate Veil against Deo;(e) Violation of New York GBL § 349 against Deo; (f) Permanent Injunction against Deo; Libertas Funding (g) Declaratory Judgment against Deo (h) Contribution and Indemnification for Fraud, Breach of Fiduciary Duty, Breach of Loyalty and Conversion against Deo; and (i) Contribution and Indemnification for Conversion and Aiding and Abetting Conversion, Fraud, Breach of Fiduciary Duty, Bready of Fiduciary Duty against Thomasson. (ii)the Bank Defendants' Motions to Dismiss (ECF Nos. 164, 175 and 177) are **GRANTED** *in part* and **DENIED** *in part*. The following claims are dismissed with prejudice: (a) Permanent Injunction against Libertas Funding; (b) Plaintiffs' RICO Claims against Bank Defendants; (c) Conversion claims against the Bank Defendants; (d)Negligence and Unauthorized Payments against the Bank Defendants; (e) Drawee Liability against Chase Bank; (f)New York UCC §3-419 against the Bank Defendants; (iii) the CPA Defendants' Motions to Dismiss (ECF No. 168) is **GRANTED**. The following claims are dismissed with prejudice: (a) Plaintiffs' RICO Claims against CPA Defendants; (b)Plaintiffs' Fraud Claims against Jones; and (c)Professional Malpractice against the CPA Defendants. (iv) Plaintiffs' Motions for Leave to Amend (ECF Nos. 178 and 181) are **GRANTED** *in part* and **DENIED** *in part*, consistent with this Order. Plaintiffs

2

are directed to file an Amended Complaint consistent with the rulings in the Order on or before April 4, 2025.

(*Id.* at 119-121.)

Now before the Court is Plaintiffs'[1] Motion for Reconsideration (ECF Nos. 240-41), Thomas Jones', CPA, and Jones, Little & Co., CPA's LLP's (the "CPA Defendants") Opposition (ECF Nos. 247-48), Harry Thomasson's Opposition (ECF No. 310), Deo Defendants'[2] Opposition (ECF No. 311), and Plaintiffs' Reply (ECF Nos. 312). For the reasons that follow, Plaintiffs' Motion for Reconsideration (ECF No. 240) is **GRANTED** and, upon reconsideration, the Court adheres to its original decision in part and modifies it in part.

## LEGAL FRAMEWORK

Motions for reconsideration may be filed pursuant to Fed. R. Civ. P. 59(e) or 60(b), as well as Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. Under Local Rule 6.3, a party has fourteen (14) days following the entry of a court order to serve a notice of motion with an accompanying memorandum, that sets forth succinctly the issues, facts, or laws that were overlooked. Loc. Civ. R. 6.3. Failure to comply with these requirements warrants denial of the motion. *See R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 509 (S.D.N.Y. 2009) ("A court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent Rule 6.3 from being used to advance different theories not previously argued, or as a substitute for appealing a final judgment."). The standards for reconsideration under Local Rule 6.3 and Fed.

---

[1] All Plaintiffs jointly filed the instant motion. (*See* ECF No. 240.)

[2] "Deo Defendants" are Anthony Deo, Sarah Deo, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, and UEA Premier Motors Corp.

R. Civ. P. 59 are one of the same. *NEM Re Receivables, LLC v. Fortress Re, Inc.*, 187 F. Supp. 3d 390, 394 n.2 (S.D.N.Y. 2016).

Even if considered, a motion for reconsideration "is appropriate when the moving party can demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." *Herschaft v. N.Y.C. Campaign Fin. Bd*., 139 F. Supp. 2d 282, 283 (E.D.N.Y. 2001) (internal quotation marks and citation omitted).  Notably, "[a] party may not advance new facts, issues, or arguments not previously presented to the Court on a motion for reconsideration." party may not advance new facts, issues[,] or arguments not previously presented to the Court on a motion for reconsideration." *Superior Site Work, Inc. v. NASDI, LLC*, No. 14-CV-01061 (ADS) (SIL), 2017 WL 2242872, at *2 (E.D.N.Y. May 22, 2017) (quoting *Steinberg v. Elkman*, 2016 WL 1604764, at *1 (S.D.N.Y. Apr. 6, 2016))  (internal quotations omitted); *see also Analytical Surveys, Inc. v. Tonga Partners, L.P*., 684 F.3d 36, 52 (2d Cir. 2012) (citations omitted) (noting that a motion for reconsideration is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple).  Put simply, a reconsideration motion is not appropriate to simply secure a "do-over."  *See Schansman v. Sberbank of Russia PJSC*, No. 19-CV-2985 (ALC) (GWG), 2025 WL 1288670, at *2 (S.D.N.Y. May 5, 2025) (collecting cases) (Parties are "barred from making for the first time in a motion for reconsideration an argument it could readily have raised when the underlying issue was being briefed but chose not to do so.")

All that said, reconsideration is warranted only when: (i) the moving party points to an intervening change in controlling law, (ii) newly available evidence is identified, (iii) clear error is established, or (iv) reconsideration is necessary to avoid a manifest injustice. *See Cho v.*

*Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021); *Kolel Beth Yechiel Mechil of Tartikov, Inc. v.*
*YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (same); *T.Z. v. City of New York*, 634 F.
Supp. 2d 263, 268 (E.D.N.Y. 2009) (same). The question, therefore, is whether any of these
grounds have been met. And, it is also within the sound discretion of the district court to decide
whether or not to grant a motion for reconsideration. *See Gupta v. Attorney Gen. of United*
*States*, 52 F. Supp. 3d 677, 679-80 (S.D.N.Y. 2014); *Rivas v. Melecio*, No. 23-CV-05718 (JMA),
2024 WL 1096065, at *1 (E.D.N.Y. Feb. 21, 2024).

Reconsideration "must be narrowly construed and strictly applied so as to avoid
duplicative rulings on previously considered issues." *In re Bouka*, 654 F. Supp. 3d 283, 286
(S.D.N.Y. 2023) (quoting *Merced Irrigation Dist. v. Barclays Bank PLC*, 178 F. Supp. 3d 181,
183 (S.D.N.Y. 2016)). Thus, "[a] narrow application of the rule not only 'helps [] to ensure the
finality of decisions,' but also 'prevent[s] the practice of a losing party examining a decision and
then plugging the gaps of a lost motion with additional matters.'" *Id.* (quoting *Henderson v.*
*Metro. Bank & Tr. Co.*, 502 F. Supp. 2d 372, 376 (S.D.N.Y. 2007)).

Keeping these principles in mind, the Court considers the instant motion.

## **DISCUSSION**

Plaintiffs seek reconsideration of this Court's March 21, 2025 Opinion & Order (*see* ECF
No. 230) that granted *in part* and denied *in part*, the numerous motions filed (ECF Nos. 164,
168, 175-78, 181). Plaintiffs seek reconsideration specifically to the dismissal with prejudice of
(i) the causes of action related to Northshore and Sunrise, (ii) professional malpractice claim
against the CPA Defendants, and (iii) the fraud claims as against Jones individually. (ECF No.
240 at 1.) Lastly, Plaintiffs request an extension of time to file the amended complaint, as the
original deadline was April 4, 2025, for either two weeks following the Court's decision on this

application or "an extension of time *sine die* pending resolution of the instant motion." (*Id.* at 6.) The Court analyzes each request accordingly.

## I.    <u>Reconsideration</u>

Here, Plaintiffs move the Court for reconsideration under Local Rule 6.3. (ECF No. 240.) Local Rule 6.3 states "a notice of motion for reconsideration must be served within 14 days after the entry of the court's order being challenged," which is complied with here. *See* Loc. Civ. R. 6.3.[3] Likewise, under Fed. R. Civ. P. 59(e), the Motion is procedurally proper. *See* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment"); *see also Sigmon v. Goldman Sachs Mortg. Co.*, 229 F. Supp. 3d 254, 256 (S.D.N.Y. 2017) (internal citations omitted) (collecting cases) ("Sigmon's motion papers state that his motion arises under Local Civil Rule 6.3. The Court will consider case law arising under both Local Civil Rule 6.3 and Federal Rule of Civil Procedure 59(e), because the standards for both are identical"). Since Rule 59 outlines the same standard for reconsideration as Local Rule 6.3 requires, the undersigned analyzes this motion under these rules together. *See Naiman v. New York Univ. Hosps. Ctr.*, No. 95-CV-6469 (RPP), 2005 WL 926904, at *1 (S.D.N.Y. Apr. 21, 2005)

---

[3] Plaintiffs aver that rather than a formal motion, they request leave to make this letter motion due to the "emergency nature of the relief requested." (ECF No. 240 at 1 n.2.) Plaintiffs also cite Fed. R. Civ. P. 1 for the proposition that the federal rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." *See id.* (citing Fed. R. Civ. P. 1). The undersigned's rules explicitly state "[a]ny motion seeking (i) a stay of discovery; (ii) the sealing of court documents; or (iii) other non-dispositive relief, such as motions for leave to amend, shall be made in accordance with Rule 3, *infra*, and not by letter motion under this rule." *See* Rule 3(A). Likewise, Loc. Civ. R. 6.3 states "a notice of motion for reconsideration must be served within 14 days after the entry of the court's order being challenged. There must be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which the moving party believes the court has overlooked." *See* Loc. Civ. R. 6.3. However, for purposes of judicial economy and not having the parties resubmit the moving papers, the Court permits this letter motion as a one-off occasion. *See Mikhaylova v. Bloomingdale's Inc.*, No. 19-CV-8927 (GBD) (SLC), 2022 WL 17986122, at *2 (S.D.N.Y. Dec. 29, 2022) (allowing reconsideration motion in the form of a letter motion). And, interestingly, none of the other parties argue procedural deficiencies.

("Motions for reconsideration pursuant to Rule 59(e) of the Federal Rules of Civil Procedure are governed by the same standards as those governing motions under Rule 6.3 of the Local Civil Rules of the U.S. District Courts for the Southern and Eastern Districts of New York."); *Henderson*, 502 F. Supp. 2d at 375 (same); *Levitant v. Workers Comp. Bd. of New York*, No. 16-CV-6990 (ER), 2019 WL 5853438, at *1 (S.D.N.Y. Nov. 8, 2019) ("'The standards for relief' under Rule 59(e) are 'identical' to those for motions for reconsideration under Local Civil Rule 6.3.")

Having determined that procedure was followed, the Court proceeds to analyze the merits of the motion. "The standard for granting a motion for reconsideration is strict: 'reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Cuomo v. Off. of the New York State Att'y Gen.*, 727 F. Supp. 3d 231, 234 (E.D.N.Y. 2024) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

### A. *Northshore and Sunrise Claims*

First, Plaintiffs ask the Court to reconsider its dismissal of the causes of action related to Plaintiffs Northshore and Sunrise. As an initial matter, all oppositions to the underlying Motion to Amend (ECF No. 181) relate to other causes of action that are not at issue here, namely, the racketeering and trade secret claims. (*See generally* ECF Nos. 184-88.) Accordingly, the Court declines to assess futility once again as to these causes of action.

Plaintiffs set out the issues they perceived to be overlooked in the Court's Order (ECF No. 230). Plaintiffs argue that Counts 18 and 19 of the proposed Third Amended Complaint ("TAC") request declaratory judgment and were not derivative claims contrary to the Court's

characterization.[4] (ECF No. 240 at 5.) Next, Plaintiffs allege that Counts 20 through 39, though formerly brought as derivative claims, were amended in the TAC to instead assert direct claims by Plaintiffs Northshore and Sunrise, asserting no prerequisite demand nor adding Northshore and Sunrise as nominal defendants. (*Id.*) With respect to Counts 22, 31, 36, and 38, Plaintiffs argue that though the Court characterized these Counts as being brought against Northshore, while they were in fact brought by Northshore. (*Id.*) Further, Plaintiffs aver that Counts 43 and 44 are for accounting, and "do not address the prerequisite demand nor join Northshore and Sunrise as nominal defendants." (*Id.*) Finally, Plaintiffs contend that Counts 40 and 41 assert alternative claims in which Northshore and Sunrise are actual defendants. (*Id.*)

Upon reconsideration, the Court agrees that its previous Order mischaracterized the above counts as alleged in Plaintiffs' motion. Under New York law, courts use the state of incorporation to determine whether a claim is direct or derivative. *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 772 F.3d 740, 743 n.2 (2d Cir. 2014) (citations omitted). Here, Sunrise and Northshore appear to be incorporated in New York, so New York law applies. (ECF No. 65 at ¶¶ 8-9.) New York courts have adopted the *Tooley* test to determine if a shareholder's claim is derivative. *See In re 305 E. 61st St. Grp. LLC*, 130 F.4th 272, 279 (2d Cir. 2025) (collecting New York cases adopting this test). The *Tooley* test asks the Court to look at "(1) who suffered the alleged harm (the corporation or the stockholders); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders individually)" *Yudell v. Gilbert*, 949 N.Y.S.2d 380, 384 (N.Y. App. Div. 1st Dep't 2012) (citing *Tooley v. Donaldson, Lufkin & Jenrette, Inc.,* 845 A.2d 1031, 1039 (Del. 2004)).

---

[4] The Court will refer to the counts as numbered in the TAC (ECF No. 183-1) and as discussed in Plaintiff's letter motion. Some of the counts in the TAC differ from the counts in the Operative Complaint as described in Plaintiff's motion. (*See* ECF No. 240 at 5 nn. 5-6.)

Moreover, "[i]t is the general rule that, because a shareholders' derivative suit seeks to vindicate a wrong done to the corporation through enforcement of a corporate cause of action, any recovery obtained is for the benefit of the injured corporation. Where, however, the plaintiff sues in an individual capacity to recover damages resulting in harm, not to the corporation, but to individual shareholders, the suit is personal, not derivative, and it is appropriate for damages to be awarded directly to those shareholders." *Glenn v. Hoteltron Sys., Inc.*, 547 N.E.2d 71, 74 (N.Y. 1989) (internal citations omitted).

However, here, Sunrise and Northshore are corporations bringing the causes of action formerly characterized as derivative. Because these corporations are not shareholders, the causes of action may not be deemed derivative. *See* Fed. R. Civ. P. 23.1(a) (explaining that rule for derivative actions apply when "one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce"); *see also Silver v. Chase Manhattan Bank*, 374 N.Y.S.2d 8, 8 (N.Y. App. Div. 1st Dep't 1975) (stating where an entity sues on its own, that is not a derivative claim); 15 N.Y. Jur. 2d *Business Relationships* § 1141 (noting that "there cannot be a derivative action where the corporation decides to sue in its own right"). Additionally, Counts 22, 31, 36, and 38, are evidently brought by, not against, Northshore. (ECF No. 183-1 at 115, 121, 125-27.)

As for Counts 40 and 41, where Northshore and Sunrise are named defendants, Plaintiffs must bring such claims in the form as a crossclaim. In general, a party may not operate as both a defendant and a plaintiff within the same action. *See BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 498, 500 (S.D.N.Y. 2013) (noting the "established rule that a party may not generally bring claims against itself," and that this extends to parties that are suing and

defending in different capacities (citing *Globe & Rutgers Fire Ins. Co. v. Hines*, 273 F. 774, 777 (2d Cir. 1921))); *United States v. I.C.C.*, 337 U.S. 426, 430 (1949) (finding that the principle that "no person may sue himself" is sound because "courts only adjudicate justiciable controversies," but noting that "courts must look behind names that symbolize the parties to determine whether a justiciable case or controversy is presented"); *see also* Fed. R. Civ. R. 13(g)  (permitting a party to bring a crossclaim "against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim …"); *Mura v. Thomas*, No. 19-CV-8699 (AEK), 2021 WL 4481346, at *8 (S.D.N.Y. Sept. 30, 2021) (citing *Luyster v. Textron, Inc.*, 266 F.R.D. 54, 63-64 (S.D.N.Y. 2010) (""A 'coparty' means any existing party to an action that is not an opposing party")). As Counts 40 and 41 are procedurally incorrect, they may not proceed.

Accordingly, the motion for reconsideration is granted as to the aforementioned counts. Having reviewed the characterization of these claims, the Court now analyzes whether the proposed amendment as to these claims should be allowed.

Motions to amend pleadings are governed by Federal Rule of Civil Procedure 15(a). Under Rule 15—which applies here since the motion to amend was filed before any deadline passed—"the court should grant such leave 'freely… when justice so requires'" pursuant to Rule 15(a)(2). Generally, "[u]nless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend." *Adlife Mktg. & Commc'ns Co., Inc. v. Best Yet Mkt., Inc.*, No. 17-CV-02987 (ADS) (ARL), 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (citations omitted) ("This is a 'liberal' and 'permissive' standard, and the only 'grounds on which denial of leave to amend has

long been held proper' are upon a showing of 'undue delay, bad faith, dilatory motive, [or] futility.'")

"Mere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (citation omitted); see also *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (emphasizing prejudice and bad faith over delay). Although mere delay is insufficient to deny a motion to amend, the moving party has the burden to "provide satisfactory explanation for the delay." *United States v. Inc. Village of Island Park*, No. CV-90-0992, 1995 WL 669936, at *1 (E.D.N.Y. Nov. 6, 1995). Ordinarily, where the moving party's fails to provide a detailed explanation as to why the proposed amendments could not have been alleged previously, a court will assume there was undue delay. *Perez v. Escobar Construction, Inc.*, 342 F.R.D. 378, 381-82 (S.D.N.Y. 2022).

Here, the Court granted an extension to the parties, requiring that "Plaintiffs' reply to the second cross-motion for leave to amend shall be served on or before May 13, 2024" and that "all motion papers . . . be electronically bundle filed on or before May 14, 2024." (Electronic Order dated April 30, 2024.) Because the Court permitted the motion to amend to be filed on or by May 14, 2024, and the motion was filed on that day in compliance with the order (*see* ECF No. 183), the Court finds no undue delay here.

Next, "[w]hile not much case law exists in this Circuit about what constitutes bad faith for the purposes of denying a motion for leave to amend a pleading, a finding that a party is seeking leave to amend solely to gain a tactical advantage supports a finding that such an amendment is made in bad faith." *Feuer v. Cornerstone Hotels Corp.*, No. 14-CV-5388 (JFB) (SIL), 2017 WL 3841841, at *5 (E.D.N.Y. Aug. 4, 2017), *report and recommendation adopted*,

2017 WL 3842350 (E.D.N.Y. Aug. 31, 2017) (citations omitted). The burden is on the party

opposing the amendment to establish bad faith. *Contrera v. Langer*, 314 F. Supp. 3d 562, 567

(S.D.N.Y. 2018) ("While the party seeking to amend its pleading must explain any delay, the

party opposing the amendment 'bears the burden of showing prejudice, bad faith, and futility of

the amendment.'") (citations omitted).

      Here, Plaintiffs' TAC contains substantive changes, including no longer asserting

derivative claims, and there is no indication or argument that Plaintiffs "seek [] leave to amend

solely gain a tactical advantage." *Feuer* 2017 WL 3841841, at *5. Further, Defendants do not

carry their burden of establishing bad faith. (*See generally* ECF Nos. 184-188, 190-191.)

Accordingly, the Court finds no bad faith here.

      Finally, prejudice to the nonmoving party is perhaps the most important factor when

determining whether to grant a claimant's leave to amend and is often the "most frequent reason

for denying leave to amend." *Ruotolo*, 514 F.3d at 191 (citations omitted). When considering

whether the opposing party may be prejudiced, courts consider whether the new claim would:

"(i) require the opponent to expend significant additional resources to conduct discovery and

prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff

from bringing a timely action in another jurisdiction." *Block*, 988 F.2d at 350. "The degree of

potential prejudice a motion to amend may cause is evaluated against the overall progress of the

litigation: the closer to the end of discovery or the closer to trial a motion to amend is filed, the

more likely that it will cause prejudice and delay to the nonmoving party." *Mohegan Lake

Motors, Inc. v. Maoli*, No. 16-CV-6717 (NSR)(LMS), 2018 WL 4278352, at *5 (S.D.N.Y. June 8,

2018).

Defendants do not argue that the motion to amend would be prejudicial, instead emphasizing perceived substantive issues in Plaintiffs' causes of action, futility as to the racketeering and trade secret claims, and the like. (*See generally* ECF Nos. 184-188, 190-191.) Plaintiffs, likewise, spend little time addressing prejudice with respect to the claims at issue in this motion. (*See generally* ECF Nos. 193-194). Though it is Defendants' burden to show undue prejudice, the Court will nevertheless evaluate whether there is any undue prejudice *See Perez*, 342 F.R.D. at 382 (citing *United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, 567 F. Supp. 3d 429, 441 (S.D.N.Y. 2021)).

It is possible that amending the claims here will result in Defendants expending additional resources to address the claims. However, the mere "possibility that an amendment will require the expenditure of additional time, effort, or money [does] not constitute undue prejudice." *Baker v. Saint-Gobain Performance Plastics Corp.*, No. 16-CV-0917 (LEK) (DJS), 2023 WL 2388727, at *4 (N.D.N.Y. Mar. 7, 2023) (alteration in original) (internal quotations omitted) (quoting *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 455 (S.D.N.Y. 2016)). Further, the claims at issue here involving Northshore and Sunrise existed as purportedly derivative claims in Plaintiffs' First Amended Complaint (*see generally* ECF No. 65) and are merely changed to assert non-derivative claims in the TAC (*see generally* ECF No. 183-1).

The factual assertions as to these causes of action are substantially the same in the TAC, there is little reason to believe that, even if Defendants incur some additional expenditure of time and money, this expenditure would be unduly prejudicial. It is likely that the discovery and resource expenditure to address the Northshore and Sunrise claims in the TAC would substantially comport with the discovery the parties have already undergone to address the corresponding claims in the First Amended Complaint. Further, discovery is still ongoing until

October 31, 2025. (*See* Electronic Order dated July 2, 2025.) Accordingly, this does not weigh strongly for a finding of undue prejudice for Defendants. *See Blake Marine Grp., LLC v. Frenkel & Co.*, 425 F. Supp. 3d 330, 335 (S.D.N.Y. 2019) (finding no undue prejudice where discovery was ongoing and additional discovery to address amendments would overlap with the ongoing discovery); *see also Khan v. K1 Inv. Mgmt. LLC*, No. 24-CV-07860 (JMW), 2025 WL 1808725, at *6 (E.D.N.Y. July 1, 2025) (collecting cases) (finding no undue prejudice where added claims involving a contract would overlap substantially with existing claims involving that contract and thus "not significantly expand discovery efforts.") However, even if there is some additional delay that would accompany an amendment, that is not sufficient to establish undue prejudice. *Hossain v. Unilever United States, Inc.*, No. 21-CV-2833 (FB) (TAM), 2023 WL 4405654, at *6 (E.D.N.Y. July 7, 2023) (finding that "some limited, additional discovery and delay are not sufficient grounds to preclude granting Defendant permission to amend").

The third factor, regarding the effect on a party bringing a timely action in another jurisdiction, appears irrelevant here, since neither party has raised this issue. *See Thomas v. JPMorgan Chase Bank N.A.*, No. 21 CIV. 8477 (JHR) (SLC), 2023 WL 11892332, at *6 (S.D.N.Y. Feb. 27, 2023), *report and recommendation adopted*, No. 21 CIV. 8477 (JHR), 2024 WL 3373373 (S.D.N.Y. July 11, 2024) (finding this factor "inapplicable" where neither party argued that denying the motion would cause this issue). The above does not weigh in favor of finding undue prejudice.

Accordingly, upon a weighing of the factors, Plaintiffs may include the above counts in their amended complaint.

### B. *Malpractice and Fraud Claims*

Next, as to the professional malpractice against the CPA Defendants and fraud claims against Jones, Plaintiffs allege that as the CPA Defendants, Deo Defendants, and Defendant Flushing Bank produced their documents on April 16, 2024, April 17, 2024, and April 26, 2024, respectively, Plaintiffs were not able to use this discovery as part of their opposition to the motion to dismiss. (ECF No. 240 at 2.) That is because the opposition was due by March 29, 2024. (*Id.*) Plaintiffs further allege that the production established the fraudulent financial statements made and the malpractice therein. (*Id.* at 2-3.) Plaintiffs attach the documents produced as exhibits. (*See* ECF Nos. 241-1-5.)

The arguments made as to this portion of the requested relief do not satisfy grounds for reconsideration. Specifically, there are no grounds to change or modify the Court's earlier Order. *See* Loc. Civ. R. 6.3 ("There must be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which the moving party believes the court has overlooked."); *see Blue Castle (Cayman) Ltd. v. Jones*, No. 24-CV-953 (NJC) (ARL), 2025 WL 51215, at *1 (E.D.N.Y. Jan. 8, 2025) ("Plaintiff has not identified any intervening change in controlling law, new evidence, mistake, or the need to correct clear error that would warrant reconsideration under Rules 59, 60, or Local Rule 6.3.") A review of the exhibits attached, which Plaintiffs contend is "new evidence" demonstrates that the information provided to the CPA Defendants is that of what was given or assisted by Plaintiffs' own employee, Kendra Kernizant, as CPA Defendants correctly indicate. (*See* ECF Nos. 241-1; 241-5; 248 at 2-3.) Moreover, as the first set of production in discovery was not completed until after the underlying motion was due, the Court did not overlook any matters.

Thus, since "[r]econsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources[,]'" the court declines the instant request. *Levitant*, 2019 WL 5853438, at *1 (quoting *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003)). This is because Plaintiffs fail to identify how the Court overlooked facts that would change the previous outcome. *See Shrader*, 70 F.3d at 257 ("The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."); *B & R Supermarket, Inc. v. Visa Inc.*, No. 17-CV-2738 (MKB), 2025 WL 510041, at *2 (E.D.N.Y. Feb. 14, 2025) (same). The absence of any allegations that the Court overlooked any material facts, misapplied the law, or that circumstances have changed, leads to denial as to this portion of the application.

## II.    Extension of Time to File the Amended Complaint

Lastly, Plaintiffs request an extension of time to file the amended complaint, as the original deadline was April 4, 2025, for either two weeks following the Court's decision on this application or "an extension of time *sine die* pending resolution of the instant motion." (ECF No. 240 at 6.) "It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Da Silva Plastic & Reconstructive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, No. 22-CV-07121 (NCM) (JMW), 2025 WL 240917, at *13 (E.D.N.Y. Jan. 17, 2025) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)). Whether to grant or deny leave to amend is within the Court's sound discretion. *Id.* (citing *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019)). As the undersigned is modifying the March 21, 2025 Order *in*

*part*, the Plaintiffs are to adhere to the original directive and file an Amended Complaint consistent with the rulings set forth in ECF No. 230 and herein on or before **August 8, 2025**.[5]

## CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Reconsideration (ECF No. 240) is **GRANTED**, and Plaintiff is to file the Amended Complaint by **August 8, 2025**, consistent with the rulings herein as well as those in the March 21, 2025 Order (ECF No. 230).

Dated: Central Islip, New York
        August 1, 2025

S O   O R D E R E D:

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge

---

[5] The Court is cognizant of the appeal before the Second Circuit currently. However, that appeal is not related to the instant motion or that of this Court's March 21, 2025 Order (ECF No. 230).

17

**2:23-cv-06188-JMW** Superb Motors Inc. et al v. Deo et al
James M. Wicks, presiding
**Date filed:** 08/16/2023
**Date of last filing:** 09/04/2025

# History

| Doc. No. | Dates | Description |
|---|---|---|
| | *Filed & Entered:*        08/17/2023 | Filing Fee Received |
| | *Docket Text:* FILING FEE: $ 402, receipt number ANYEDC-16999229 (LJ) | |
| | *Filed & Entered:*        08/17/2023 | Incorrect Case/Document/Entry Information. |
| | *Docket Text:* Incorrect Case/Document Entry Information. Corrected defendants Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC and Gold Coast Motors of Smithtown LLC on the docket to conform to the Complaint. Deleted Document Entry No. 1 (Complaint) and re-entered as against all Defendants. (LJ) | |
| | *Filed & Entered:*        08/17/2023 | Case Assigned/Reassigned |
| | *Docket Text:* Case Assigned to Judge Diane Gujarati and Magistrate Judge Steven Tiscione. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (LJ) | |
| | *Filed & Entered:*        08/17/2023 | Quality Control Check - Summons |
| | *Docket Text:* Your proposed summons was not issued for the following reason: **The full case caption must appear on the summons.**<br><br>Please correct and resubmit using the event Proposed Summons/Civil Cover Sheet. (LJ) | |
| [1](#) | *Filed & Entered:*        08/17/2023 | Complaint |
| | *Docket Text:* COMPLAINT against All Defendants Was the Disclosure Statement on Civil Cover Sheet completed -Yes,, filed by Joshua Aaronson, Team Auto Sales LLC, Island Auto Management, LLC, Superb Motors Inc., 446 Route 23 Auto LLC, 2519 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, Brian Chabrier, Robert Anthony Urrutia, 1581 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, Jory Baron, 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC. (LJ) | |
| [2](#) | *Filed & Entered:*        08/17/2023 | Proposed Summons/Civil Cover Sheet |
| | *Docket Text:* Civil Cover Sheet.. by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel) | |
| [3](#) | *Filed & Entered:*        08/17/2023 | Proposed Summons/Civil Cover Sheet |
| | *Docket Text:* Proposed Summons. by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel) | |

| 4 | *Filed & Entered:* | 08/17/2023 | Notice of Appearance |
|---|---|---|---|

*Docket Text:* NOTICE of Appearance by Jamie Scott Felsen on behalf of Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (aty to be noticed) (Felsen, Jamie)

| 5 | *Filed & Entered:* | 08/17/2023 | Quality Control Check - Attorney Case Opening |
|---|---|---|---|

*Docket Text:* This attorney case opening filing has been checked for quality control. See the attachment for corrections that were made. (LJ)

| 6 | *Filed & Entered:* | 08/17/2023 | Clerks Notice of Rule 73 |
|---|---|---|---|

*Docket Text:* In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if all** parties wish to consent. The form may also be accessed at the following link: http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences**. **Do NOT return or file the consent unless all parties have signed the consent.** (LJ)

| 7 | *Filed & Entered:* | 08/17/2023 | Notice of Appearance |
|---|---|---|---|

*Docket Text:* NOTICE of Appearance by Jeffrey C. Ruderman on behalf of 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC (aty to be noticed) (Ruderman, Jeffrey)

| 8 | *Filed & Entered:* | 08/18/2023 | Proposed Summons/Civil Cover Sheet |
|---|---|---|---|

*Docket Text:* Proposed Summons. by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel)

| 9 | *Filed & Entered:*<br>*Terminated:* | 08/20/2023<br>08/25/2023 | Motion for TRO |
|---|---|---|---|

*Docket Text:* Emergency MOTION for Temporary Restraining Order , Emergency MOTION for Preliminary Injunction , Emergency MOTION for Permanent Injunction by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| 10 | *Filed & Entered:* | 08/20/2023 | Memorandum in Support |
|---|---|---|---|

*Docket Text:* MEMORANDUM in Support re [9] Emergency MOTION for Temporary Restraining Order Emergency MOTION for Preliminary Injunction Emergency MOTION for Permanent Injunction filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| 11 | *Filed & Entered:* | 08/20/2023 | Affidavit in Support of Motion |
|---|---|---|---|

*Docket Text:* AFFIDAVIT/DECLARATION in Support re [9] Emergency MOTION for Temporary Restraining Order Emergency MOTION for Preliminary Injunction Emergency MOTION for Permanent Injunction filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - Cross-Purchase Agreement dated December 1, 2022, # (2) Exhibit B - Bounced Check from Deo, # (3) Exhibit C - Screenshot of Funds on Hold from Deo, # (4) Exhibit D - Screenshot of Deo's Stolen Funds Taken From Deo, # (5) Exhibit E - Proof of Wires Sent by Deo to Urrutia, # (6) Exhibit F - Shareholders' Agreement Executed by Deo, # (7) Exhibit G - Indemnity Agreement for Northshore Signed by Deo, # (8) Exhibit H - Indemnity Agreement for

Sunrise Signed by Deo, # (9) Exhibit I - Forged Instrument Signed by Deo for Flushing Bank account for Superb with Statements from Flushing Bank, # (10) Exhibit J - Forged Instrument Signed by Deo for NESNA Credit, # (11) Exhibit K - Signature Cards for Superb's Bank Account, # (12) Exhibit L - Cash Reconciliations for April May & June 2023 with Cash Receipts, # (13) Exhibit M - Correspondence from Jones with False Accounting Entries, # (14) Exhibit N - Correspondence with NMAC Regarding Deo's Fraud, # (15) Exhibit O - List of Missing Vehicles & Dealer Plates, # (16) Exhibit P - Copies of Unauthorized Checks Signed by Deo with Summary, # (17) Exhibit Q - List of Five Additional Vehicles Stolen by Deo, # (18) Exhibit R - Letter Demand to Deo to Return Vehicles, etc., # (19) Exhibit S - Second Letter Demand to Deo to Return Vehicles & Cooperate with NMAC and Next Gear) (Kataev, Emanuel)

| | | | |
|---|---|---|---|
| 12 | *Filed & Entered:* | 08/20/2023 | Affidavit in Support of Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Support re [9] Emergency MOTION for Temporary Restraining Order Emergency MOTION for Preliminary Injunction Emergency MOTION for Permanent Injunction filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - Thomasson August 9, 2023 Letter (FRE 408 Material Redacted), # (2) Exhibit B - Thomasson August 11, 2023 Letter, # (3) Exhibit C - Thomasson August 15, 2023 Letter) (Kataev, Emanuel) | | |
| | *Filed & Entered:* | 08/21/2023 | Order of Recusal |
| | *Docket Text:* ORDER OF RECUSAL. Judge Diane Gujarati recused. Case reassigned to Judge Orelia E. Merchant for all further proceedings. Type of Recusal: party.Ordered by Judge Diane Gujarati on 8/21/2023. (BBM) | | |
| 13 | *Filed & Entered:* | 08/21/2023 | Letter |
| | *Docket Text:* Letter *re the proposed Order to Show Cause* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Attachments: # (1) Exhibit Nassau Supreme Court Order in a related action) (Thomasson, Harry) | | |
| 14 | *Filed & Entered:* | 08/21/2023 | Letter |
| | *Docket Text:* Letter *response in opposition to Defendants' letter request for extension of time* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Attachments: # (1) Exhibit A - Letter from NMAC dated August 9, 2023, # (2) Exhibit B - Letter from NMAC dated August 15, 2023) (Kataev, Emanuel) | | |
| | *Filed & Entered:* | 08/24/2023 | Quality Control Check - Summons |
| | *Docket Text:* Your proposed summons was not issued for one of the following reasons: **If multiple defendants, there must me a rider attached to the summons with the name and addresses of all defendants included.,**<br><br>Please correct and resubmit using Proposed Summons/Civil Cover Sheet. (IH) | | |
| 15 | *Filed & Entered:* | 08/25/2023 | Order on Motion for TRO |
| | *Docket Text:* ORDER: For the reasons stated in the attached ruling, Superb Plaintiffs' request for a TRO is GRANTED in part and DENIED in part.<br>The TRO is GRANTED in part only to the extent that Defendants are enjoined from "disposing of any automobiles in" in their "possession belonging to Superb" or the Superb Plaintiffs, as agreed to by Attorney Thomasson in his letter. (See ECF [13]).<br><br>For clarity's sake this TRO binds only defendants: Anthony Deo, Sara Deo, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, and UEA Premier Motors Corp. | | |

All other requests for injunctive relief in the TRO are **DENIED**.

The deadline for opposition to preliminary injunction motion is September 13, 2023; the deadline for reply, if any, is due September 20, 2023; a hearing on the preliminary injunction is set for September 27, 2023. The [9] motions for preliminary and permanent injunctions are taken under advisement. Ordered by Judge Orelia E. Merchant on 8/25/2023. (CS)

| | | |
|---|---|---|
| *Filed & Entered:* | 08/26/2023 | Order |

*Docket Text:* ORDER re [15] Order on Motion for TRO: Counsel for Superb Plaintiffs is hereby ORDERED to serve upon all defendants a copy of this order to their last known address and email address. See [12] Kataev Decl. ¶ 7. Counsel shall submit a report on docket detailing the status of service and all attempts and/or acknowledgements of service no later than 8/27/2023 by 5:00 PM EST. Ordered by Judge Orelia E. Merchant on 8/26/2023. (CS)

| | | |
|---|---|---|
| 16 | *Filed & Entered:* | 08/26/2023 | Motion for Reconsideration |
| | *Terminated:* | 08/27/2023 | |

*Docket Text:* Letter MOTION for Reconsideration re [15] Order on Motion for TRO,,,,, Order on Motion for Preliminary Injunction,,,,, Order on Motion for Permanent Injunction,,,, by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| | | |
|---|---|---|
| 17 | *Filed & Entered:* | 08/26/2023 | Affidavit in Support of Motion |

*Docket Text:* AFFIDAVIT/DECLARATION in Support re [16] Letter MOTION for Reconsideration re [15] Order on Motion for TRO,,,,, Order on Motion for Preliminary Injunction,,,,, Order on Motion for Permanent Injunction,,,, filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| | | |
|---|---|---|
| 18 | *Filed & Entered:* | 08/26/2023 | 1 - Sealed Document CV |

*Docket Text:* AFFIDAVIT/DECLARATION in Support re [16] Letter MOTION for Reconsideration re [15] Order on Motion for TRO,,,,, Order on Motion for Preliminary Injunction,,,,, Order on Motion for Permanent Injunction,,,, *filed under seal* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - Confidential Agreement with NMAC, # (2) Exhibit B - Termination Letter from NMAC) (Kataev, Emanuel)

| | | |
|---|---|---|
| 19 | *Filed & Entered:* | 08/26/2023 | Declaration |

*Docket Text:* DECLARATION *of Emanuel Kataev, Esq. as to Service in accordance with this Court's Order dated August 26, 2023* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel)

| | | |
|---|---|---|
| | *Filed & Entered:* | 08/27/2023 | Order on Motion for Reconsideration |

*Docket Text:* ORDER denying [16] Motion for Reconsideration: "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). The purpose of this strict standard is to "ensure the finality of decisions and to prevent the practice of a losing party [from] examining a decision and then plugging the gaps of a lost motion with additional matters." Parrish v. Sollecito, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003).

Superb Plaintiffs proffer that "[r]econsideration may also be granted to correct clear error, prevent manifest injustice, or review the court's decision in light of the availability of new evidence." ECF [16] at 2 (quoting Mendez-Caton v. Caribbean Fam. Health Ctr., 340 F.R.D. 60, 74 (E.D.N.Y. 2022)) (citation omitted) (emphasis in letter). As to the latter point, Superb Plaintiffs fail to show here that either of the pieces of evidence attached to their motion for reconsideration were somehow unavailable prior to its initial motion for a TRO such that the evidence can be

considered newly available evidence. This itself warrants denial. Indeed, the NMAC letter attached to the reconsideration letter, see ECF [18-2], is dated August 18, 2023, two days before the TRO motion was filed; Superb Plaintiffs neglected to attach this evidence in their follow up letter, ECF [14], filed at 4:40 PM on August 21, 2023 (the day Superb Plaintiffs state they received the August 18 NMAC letter), which attached two other NMAC letters. Further, Superb Plaintiffs did not offer it to the Court as newly available evidence in the days leading up to the TRO decision. Equally, the confidential operating agreement attached to the letter is dated October 29, 2021, long before this dispute began.

Even if the either piece of evidence was properly before the Court, neither provide any reason to alter the Court's prior order. The August 18 NMAC letter (the only piece of evidence relevant to the Court's consideration of imminent and irreparable harm) merely confirms the Court's prior conclusion: that the Nissan floor plan financers will terminate their contract with Superb and require payment of any outstanding amounts at some point in the future, not imminently; NMAC's letter states that termination is "effective September 18, 2023" and it is at that point which any outstanding monies are due (though whether Superb has any outstanding or will pay it is not clear as it reports already repaying $2M to NMAC). ECF 18-2 at 1. The NMAC letter further provides that NMAC's reason for terminating the contract was because NMAC "determined" that termination was in its "best interests." Id. Despite Superb Plaintiffs' assurances that granting the TRO would "avert" these risks, it is entirely unclear and unsupported whether, even if the Court granted Superb Plaintiff's requested injunctive relief, that doing so would cause NMAC would change its position or cause them to reenter or remain in the contract.

Similarly, Superb Plaintiffs discussion about another floor plan financer, Next Gear, rehashes the same arguments about imminent harm but substitutes a new player. Superb Plaintiffs again raise Deo's alleged "absconsion" of the subject vehicles as triggering a default and, in that scenario, Superb's putative inability to pay outstanding balances owed to Next Gear given a lack of operating capital and, consequently, the potential shut down of Superb's business. The Court has already addressed such similar concerns in its TRO and sees no ground to relitigate this point. "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." Shrader, 70 F.3d at 257. Moreover, Superb Plaintiffs provide no further evidence beyond what was included in their initial submission that any such harm is actually imminent.

However, in the interest of justice, the Court advances the preliminary injunction motion briefing and hearing schedule as follows: Opposition briefing is **due by 9/11/2023**; reply, if any, is **due by 9/13/2023**. The hearing is **RESET to 9/14/2023 at 3:30 PM**. Superb Plaintiffs' Counsel shall submit a report on the docket detailing the status of service and all attempts and/or acknowledgements of service of this order on the parties no later than **8/27/2023 by 5:00 PM EST**. Ordered by Judge Orelia E. Merchant on 8/27/2023. (CS)

| 20 | Filed & Entered: | 08/27/2023 | Letter |
|----|------------------|------------|--------|

Docket Text: Letter *in response to Plaintiffs' application for reconsideration* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Thomasson, Harry)

| 21 | Filed & Entered: | 08/27/2023 | Letter |
|----|------------------|------------|--------|

Docket Text: Letter *Regarding status of service of August 27, 2023 Order* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Felsen, Jamie)

| 22 | Filed & Entered: | 08/28/2023 | Declaration |
|----|------------------|------------|-------------|

Docket Text: DECLARATION *of Emanuel Kataev, Esq. as to service in accordance with this Court's Order dated August 27, 2023* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel)

| | | |
|---|---|---|
| | *Filed & Entered:* 09/05/2023 | Scheduling Order |
| | *Docket Text:* **SCHEDULING ORDER**: A telephonic preliminary injunction hearing is set for **September 14, 2023**, at **11:00 AM** before Judge Orelia E. Merchant. The parties are directed to call the toll-free number **646-828-7666** and follow these steps: (1) Enter the meeting ID number: 161 714 0966 and then press #. (2) Press # again. (3) Enter the passcode: 563736. The parties shall dial in five (5) minutes before the conference. Ordered by Judge Orelia E. Merchant on 9/5/2023. (TPL) | |

**23**

| | | |
|---|---|---|
| | *Filed & Entered:* 09/06/2023 | Motion for Hearing |
| | *Terminated:* 09/07/2023 | |
| | *Docket Text:* Letter MOTION for Hearing re Scheduling Order, *to convert from telephonic to in-person hearing to permit live testimony* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | |

| | | |
|---|---|---|
| | *Filed & Entered:* 09/07/2023 | Order on Motion for Hearing |
| | *Docket Text:* ORDER RE: [23]: The Court hereby clarifies that the hearing scheduled for 9/14/2023 is to address the parties' briefing on the preliminary injunction motion (*see* Order dated 8/27/2023) and the issues raised in the various letters to the Court. *Cf. Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 335 (2d Cir. 1999) ("There is, however, a difference between an evidentiary hearing and a hearing at which a subject is allowed to present oral argument.") The Court reserves decision on holding an evidentiary hearing on the preliminary injunction motion at this time.<br><br>Separately, plaintiffs' counsel has failed twice to submit a proper summons to the Clerk (*see* Clerk's docket entry at 8/17 and 8/24), and defendants assert that they have not yet been properly served. Plaintiffs' counsel shall make all attempts to properly serve the defendants and submit a status report to the Court as to the same on 9/13/2023.<br><br>Lastly, all counsel participating in the 9/14/2023 conference must enter a notice of appearance on the docket prior to the hearing. *Telkamp v. Vitas Healthcare Corp. Atl.*, No. 3:15-CV-726 (JCH), 2016 WL 777906, at *6 (D. Conn. Feb. 29, 2016) ("[I]t is a well-settled principle of law in this Circuit that merely appearing before the court does not waive the defense of insufficient service of process.") (citing *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972)).<br><br>Superb Plaintiffs' Counsel shall submit a report on the docket detailing the status of service and all attempts and/or acknowledgements of service of this order on the parties by September 8, 2023. Ordered by Judge Orelia E. Merchant on 9/7/2023. (CS) | |

**24**

| | | |
|---|---|---|
| | *Filed & Entered:* 09/07/2023 | Letter |
| | *Docket Text:* Letter *in Response to Second Request for Reconsideration* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Thomasson, Harry) | |

**25**

| | | |
|---|---|---|
| | *Filed & Entered:* 09/07/2023 | Proposed Summons/Civil Cover Sheet |
| | *Docket Text:* Proposed Summons. by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel) | |

| | | |
|---|---|---|
| | *Filed & Entered:* 09/08/2023 | Quality Control Check - Summons |
| | *Docket Text:* Your proposed summons was not issued for the following reason: **The full case caption must appear on the summons. Granted that the full case caption cannot fit in the space provided, Counsel is directed to put the full case caption on the Rider.** | |

| | | | |
|---|---|---|---|
| | | | Please correct and resubmit using Proposed Summons/Civil Cover Sheet. (EG) |
| 26 | *Filed & Entered:* | 09/08/2023 | Proposed Summons/Civil Cover Sheet |
| | *Docket Text:* Proposed Summons. by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel) | | |
| 27 | *Filed & Entered:* | 09/08/2023 | Declaration |
| | *Docket Text:* DECLARATION *of Service in accordance with this Court's Order dated September 7, 2023* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel) | | |
| 28 | *Filed & Entered:* | 09/11/2023 | Summons Issued |
| | *Docket Text:* Summons Issued as to Dwight Blankenship, Car Buyers NYC Inc., DLA Capital Partners Inc., Anthony Deo, Sarah Deo, Flushing Bank, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Thomas Jones, CPA, Jones, Little & Co., CPA's LLP, Michael Laurie, Libertas Funding LLC, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (EG) | | |
| 29 | *Filed & Entered:* | 09/11/2023 | Notice of Appearance |
| | *Docket Text:* NOTICE of Appearance by Harry R. Thomasson, Jr on behalf of Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (aty to be noticed) (Thomasson, Harry) | | |
| 30 | *Filed & Entered:* | 09/11/2023 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [9] Emergency MOTION for Temporary Restraining Order Emergency MOTION for Preliminary Injunction Emergency MOTION for Permanent Injunction *Declaration of Anthony Deo* filed by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Attachments: # (1) Declaration of Harry Thomasson in further opposition to OSC, # (2) Exhibit A, Deo leases of Syosset and Amityville properties, # (3) Exhibit B, Aaronson email approval of Deo as owner on tax returns, # (4) Exhibit C, Superb Motors 2022 Financial Statement, # (5) Exhibit D, Deo audit inquiry to Superb CFO, # (6) Exhibit E, Superb mid-year 2023 P. & L. Statement, # (7) Exhibit F, NMAC negative review of 2022 Superb Financial Statement, # (8) Exhibit G, Plaintiffs' car list as marked up; Ex. H not uploadable, # (9) Exhibit I, August communications regarding direct contact between parties) (Thomasson, Harry) | | |
| 31 | *Filed & Entered:* | 09/11/2023 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [9] Emergency MOTION for Temporary Restraining Order Emergency MOTION for Preliminary Injunction Emergency MOTION for Permanent Injunction *Missing Exhibit H DMV Regulations Pertaining to NY Auto Dealerships* filed by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Thomasson, Harry) | | |
| 32 | *Filed & Entered:* | 09/12/2023 | Notice of Appearance |
| | *Docket Text:* NOTICE of Appearance by Peter Seiden on behalf of Jones, Little & Co., CPA's LLP (aty to be noticed) (Seiden, Peter) | | |

| 33 | *Filed & Entered:* | 09/12/2023 | Notice of Appearance |
|---|---|---|---|
| | *Docket Text:* NOTICE of Appearance by John Anthony Lentinello on behalf of Jones, Little & Co., CPA's LLP (aty to be noticed) (Lentinello, John) | | |
| 34 | *Filed & Entered:* | 09/12/2023 | Letter |
| | *Docket Text:* Letter *regarding status of service to assist the Court ahead of this week's hearing* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Thomasson, Harry) | | |
| 35 | *Filed & Entered:* | 09/13/2023 | Notice of Appearance |
| | *Docket Text:* NOTICE of Appearance by Thomas Baylis on behalf of Flushing Bank (aty to be noticed) (Baylis, Thomas) (Main Document 35 replaced on 9/13/2023) (JT). | | |
| 36 | *Filed & Entered:* | 09/13/2023 | Notice of Appearance |
| | *Docket Text:* NOTICE of Appearance by Ariel E. Ronneburger on behalf of Flushing Bank (aty to be noticed) (Ronneburger, Ariel) | | |
| 37 | *Filed & Entered:* | 09/13/2023 | Letter |
| | *Docket Text:* Letter *response in opposition to Defendants' objections regarding service* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel) | | |
| 38 | *Filed & Entered:* | 09/13/2023 | Affidavit in Support of Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Support re [9] Emergency MOTION for Temporary Restraining Order Emergency MOTION for Preliminary Injunction Emergency MOTION for Permanent Injunction *of Robert Anthony Urrutia* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - Next Gear Floor Plan Payoff Demand 9/15/2023, # (2) Exhibit B - Text Messages Exchanged Between Urrutia & Deo, # (3) Exhibit C - February 2023 Email Correspondence, # (4) Exhibit D - Shareholder Agreement Excerpts, # (5) Exhibit E - Stock Purchase Agreement Excerpts, # (6) Exhibit F - March 2023 Email Exchanges, # (7) Exhibit G - Redacted July 2023 Superb Statement, # (8) Exhibit H - July & August 2023 Email Exchange with NMAC, # (9) Exhibit I - February 2023 Email Exchange with Deo, # (10) Exhibit J - Titles to Superb's Vehicles, # (11) Exhibit K - Superb June 2023 YTD Financial Statement, # (12) Exhibit L - Gold Coast Motors Automotive Group Documents) (Kataev, Emanuel) | | |
| 39 | *Filed & Entered:* | 09/13/2023 | Reply in Support |
| | *Docket Text:* REPLY in Support re [9] Emergency MOTION for Temporary Restraining Order Emergency MOTION for Preliminary Injunction Emergency MOTION for Permanent Injunction filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| | *Filed & Entered:* | 09/14/2023 | Scheduling Order |
| | *Docket Text:* SCHEDULING ORDER: A Telephone Conference is scheduled for **September 14, 2023 at 3:00 PM** before Magistrate Judge James M. Wicks. The parties should dial 1-866-434-5269 and enter access code 9025281# at the prompt. So Ordered by Magistrate Judge James M. Wicks on 9/14/2023. (DF) | | |
| | *Filed & Entered:* | 09/14/2023 | Motion Hearing |
| | *Docket Text:* **Minute Entry** for proceedings held before Judge Orelia E. Merchant: Preliminary Injunction Hearing held on September 14, 2023. Appearances made by: plaintiffs' attorneys Emanuel Kataev and Jeffrey C. Ruderman and defendants' attorneys Harry R. Thomasson, Peter Seiden, and Ariel E. Ronneburger. Case called. Conference held. At the hearing, defense counsel for responding defendants, Attorney Thomasson, conceded that his clients had received notice of the application for preliminary injunctive relief (the "Application") through him and this notice was | | |

sufficient to proceed to argument on the merits of the application. Oral arguments on the Application were presented by Attorneys Kataev and Thomasson. Counsel for the other parties had an opportunity to be heard. The Court took the Application under advisement and reserved decision on an evidentiary hearing. The parties were also separately referred to Magistrate Judge Wicks to discuss potential settlement. The parties shall file a joint status report on the docket by 5:00 PM tomorrow, September 15, 2023, indicating their progress in that regard, whether the Application remains a live issue and, if so, the specific relief requested. If the parties report a settlement in principle, they should indicate whether they seek more time to draft a stipulation or related documents. (Court Reporter Charleane Heading.) (TPL)

| | | | |
|---|---|---|---|
| 40 | *Filed & Entered:* | 09/14/2023 | Affidavit in Support of Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Support re [9] Emergency MOTION for Temporary Restraining Order Emergency MOTION for Preliminary Injunction Emergency MOTION for Permanent Injunction filed by Superb Motors Inc., TeamAuto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| 41 | *Filed & Entered:* | 09/14/2023 | Telephone Conference |
| | *Docket Text:* Minute Order for proceedings held before Magistrate Judge James M. Wicks: CIVIL CAUSE FOR TELEPHONE CONFERENCE. Counsel for Plaintiff: Jamie Scott Felsen, Emanuel Kataev. Counsel for Defendants (Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC and UEA Premier Motors Corp.): Harry R. Thomasson, Jr.. Counsel for Defendants (Jones, Little & Co., CPA's LLP): Peter Seiden. Telephone Conference held on 9/14/2023 at 3:00 PM. Judge Merchant has directed that parties appear before the undersigned for a settlement conference. The parties advised the Court that the conference would only involve issues related to the Temporary Restraining Order ("TRO") portion of the motion for preliminary injunction (ECF No. [9]). Accordingly, parties are directed to submit concise settlement statements *ex parte* to the Chamber's email by **this evening**. These statements should contain: A recitation of each party's positions as to the cars, A history of settlement discussions, Perceived impediments to settlement, Realistic settlement positions and how they can be resolved, and Identity of client or client representatives with full authority to appear at the conference. A Settlement Conference has been scheduled for **September 15, 2023 at 10:30 AM** at the U.S. District Court, Eastern District of New York, 100 Federal Plaza, Courtroom 1020, Central Islip, New York. Parties shall comply with Judge Wicks Individual Practice Rules regarding Settlement Conferences (Rules §5). As discussed on the record, Jones, Little & Co., CPA's LLP as well as Flushing Bank and each of their respective counsel are excused from attending this conference. THE PARTIES ARE REMINDED that audio or video recording of proceedings by any party other than the Court is strictly prohibited by Local Civil Rule 1.8. Violation of this rule may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed appropriate by the Court. (FTR Log #3:05-3:15 (Telephone).) (DF) | | |
| 42 | *Filed & Entered:* | 09/14/2023 | Letter |
| | *Docket Text:* Letter *to Hon. James W. Wicks, U.S.M.J. re: 9/15/23 10:30 AM settlement conference* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC (Ruderman, Jeffrey) | | |
| 43 | *Filed & Entered:* | 09/15/2023 | Declaration |
| | *Docket Text:* DECLARATION re [40] Affidavit in Support of Motion, *Declaration in Opposition to Emergency Motion* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc | | |

| | | | |
|---|---|---|---|
| | Merckling, Harry Thomasson, UEA Premier Motors Corp. (Attachments: # (1) Declaration in Support, # (2) Exhibit Car List as Marked Up, # (3) Exhibit Proof of Plaintiffs' Knowledge of Dealerships, # (4) Exhibit Proof of Plaintiffs' Knowledge of Bank Account) (Thomasson, Harry) | | |
| 44 | *Filed & Entered:* | 09/15/2023 | Transcript |
| | *Docket Text:* NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 09/15/2023, before Mag. Judge James M. Wicks. Transcriber Transcriptions Plus II, Inc., Telephone number 917-817-2825. Email address: RL.Transcriptions2@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/6/2023. Redacted Transcript Deadline set for 10/16/2023. Release of Transcript Restriction set for 12/14/2023.(CG) | | |
| 45 | *Filed & Entered:* | 09/15/2023 | Settlement Conference |
| | *Docket Text:* Minute Order for proceedings held before Magistrate Judge James M. Wicks: CIVIL CAUSE FOR SETTLEMENT CONFERENCE. Counsel for Plaintiff: Emanuel Kataev, Esq. appearing with Robert Anthony Urrutia and Bruce Novicky. Counsel for Defendants (Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC and UEA Premier Motors Corp.): Harry R. Thomasson, Jr., Esq. appearing with Anthony Deo. Settlement Conference held on 9/15/2023 at 10:30 AM with counsel and their respective parties to attempt to resolve by stipulation a portion of the Temporary Restraining Order ("TRO") relating to the return of cars from defendants to plaintiffs. The parties stipulated on the record to the following relief on the TRO which supplements, and does not in any way impact, prior orders and directives issued by Judge Merchant in connection with the TRO: 1. Defendant will release thirty (30) vehicles to plaintiffs to be kept at plaintiffs' lot. The 30 vehicles consist of the following: two (2) Isuzu flatbed trucks; and twenty-eight (28) cars listed on the list at DE 30-8 ("List") indicated with "YES", with the exception of the 2023 Chevy Suburban with VIN ending "8675". These vehicles are to be returned to Plaintiffs' lot by today, **September 15, 2023**. Parties are to meet and confer as to the method in which the vehicles shall be returned. 2. Plaintiffs will not sell or dispose any of the 30 vehicles during the period of the TRO. 3. Defendants will retain and not sell or dispose of the following vehicles on the List: 2023 Suburban ending in 8675; 2020 Mercedes-Benz ending in 4078; 2019 Land Rover Range Rover ending in 3297; 2017 Rolls Royce ending in 2728; 2016 Audi A6 ending in 9650; 2016 Audi Q5 ending in 0272. 4. This stipulated portion of the TRO remains in effect until the motion for a preliminary injunction is determined by Judge Merchant. 5. Defendants to provide proof of insurance to Plaintiffs for the two (2) "DEMO" cars. 6. Plaintiffs agree to turn over the two dealer plates used by Eugene and Landi in their possession. However, if the plates are *not* in their possession, Plaintiffs are to file an affidavit by the end of the day **today** stating such. 7. All other rights are reserved by the parties. THE PARTIES ARE REMINDED that audio or video recording of proceedings by any party other than the Court is strictly prohibited by Local Civil Rule 1.8. Violation of this rule may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed appropriate by the Court. (FTR Log #11:31-11:41.) (DF) | | |
| 46 | *Filed & Entered:*<br>*Terminated:* | 09/17/2023<br>09/29/2023 | Motion for Leave to Electronically File Document under Seal |
| | *Docket Text:* Notice of MOTION for Leave to Electronically File Document under Seal *ECF Docket Entry 18-1* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| 47 | *Filed & Entered:* | 09/17/2023 | Memorandum in Support |
| | *Docket Text:* MEMORANDUM in Support re [46] Notice of MOTION for Leave to Electronically File Document under Seal *ECF Docket Entry 18-1* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |

| 48 | Filed & Entered: | 09/17/2023 | Motion for Extension of Time to File Document |
| | Terminated: | 09/19/2023 | |

*Docket Text:* Letter MOTION for Extension of Time to File *motion for leave to electronically file document under seal as required by this Court's Order dated September 14, 2023, nunc pro tunc, pursuant to Fed. R. Civ. P. 6(b)(1)(B)* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| | Filed & Entered: | 09/19/2023 | Order on Motion for Extension of Time to File |

*Docket Text:* ORDER granting [48] Motion for Extension of Time to File, *nunc pro tunc*. Ordered by Judge Orelia E. Merchant on 9/18/2023. (GM)

| 49 | Filed & Entered: | 09/19/2023 | Summons Returned Executed |

*Docket Text:* SUMMONS Returned Executed by Joshua Aaronson, Team Auto Sales LLC, Island Auto Management, LLC, Superb Motors Inc., 446 Route 23 Auto LLC, 2519 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, Brian Chabrier, Robert Anthony Urrutia, 1581 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, Jory Baron, 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC. Flushing Bank served on 9/18/2022, answer due 10/9/2022. (Ruderman, Jeffrey)

| 50 | Filed & Entered: | 09/20/2023 | Motion to Strike |
| | Terminated: | 09/25/2023 | |

*Docket Text:* Letter MOTION to Strike [43] Declaration,, , Letter MOTION for Leave to File Document *in response to improperly filed sur-reply declaration in the alternative* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Declaration of Robert Anthony Urruta, # (2) Exhibit A - email exchange with Deo, # (3) Exhibit B - email exchange with Flushing Bank, # (4) Exhibit C - email exchange with Flushing Bank, # (5) Exhibit D - copy of operating agreement) (Kataev, Emanuel)

| | Filed & Entered: | 09/25/2023 | Order on Motion to Strike |

*Docket Text:* ORDER denying [50] Letter MOTION to Strike [43] Declaration. The Court will consider both Defendants 9/15/2023 Declaration [43] and Plaintiffs 9/20/2023 Sur-Reply Declaration [50]. Ordered by Judge Orelia E. Merchant on 9/25/2023. (GM)

| 51 | Filed & Entered: | 09/26/2023 | Waiver of Service Executed |

*Docket Text:* WAIVER OF SERVICE Returned Executed by UEA Premier Motors Corp., DLA Capital Partners Inc., Dwight Blankenship, Gold Coast Cars of Syosset LLC, Anthony Deo, Gold Coast Motors of Roslyn LLC, Car Buyers NYC Inc., Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Harry Thomasson, Gold Coast Motors of Smithtown LLC, Flushing Bank, Marc Merckling, Michael Laurie, Gold Coast Motors of LIC LLC, Sarah Deo. UEA Premier Motors Corp. waiver sent on 9/26/2023, answer due 11/27/2023; Dwight Blankenship waiver sent on 9/26/2023, answer due 11/27/2023; Gold Coast Cars of Syosset LLC waiver sent on 9/26/2023, answer due 11/27/2023; Anthony Deo waiver sent on 9/26/2023, answer due 11/27/2023; Gold Coast Motors of Roslyn LLC waiver sent on 9/26/2023, answer due 11/27/2023; Car Buyers NYC Inc. waiver sent on 9/26/2023, answer due 11/27/2023; Gold Coast Cars of Sunrise LLC waiver sent on 9/26/2023, answer due 11/27/2023; Gold Coast Motors Automotive Group LLC waiver sent on 9/26/2023, answer due 11/27/2023; Harry Thomasson waiver sent on 9/26/2023, answer due 11/27/2023; Gold Coast Motors of Smithtown LLC waiver sent on 9/26/2023, answer due 11/27/2023; Marc Merckling waiver sent on 9/26/2023, answer due 11/27/2023; Michael Laurie waiver sent on 9/26/2023, answer due 11/27/2023; Gold Coast Motors of LIC LLC waiver sent on 9/26/2023, answer due 11/27/2023; Sarah Deo waiver sent on 9/26/2023, answer due 11/27/2023. (Thomasson, Harry)

| 52 | Filed & Entered: | 09/26/2023 | Motion for Pre Motion Conference |
| | Terminated: | 10/11/2023 | |

| | |
|---|---|
| | *Docket Text:* Letter MOTION for pre motion conference by Flushing Bank. (Baylis, Thomas) |
| [53](#) | *Filed & Entered:*             09/26/2023   Waiver of Service Executed |
| | *Docket Text:* WAIVER OF SERVICE Returned Executed by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP. Thomas Jones, CPA waiver sent on 9/19/2023, answer due 11/20/2023; Jones, Little & Co., CPA's LLP waiver sent on 9/19/2023, answer due 11/20/2023. (Seiden, Peter) |
| | *Filed & Entered:*             09/27/2023   Order Reassigning Case |
| | *Docket Text:* ORDER REASSIGNING CASE. Case reassigned to Magistrate Judge James M. Wicks for all further proceedings. Magistrate Judge Steven Tiscione no longer assigned to case Please download and review the Individual Practices of the assigned Judges, located on our [website](#). Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such.Ordered by Chief Judge Margo K. Brodie on 9/27/2023. (AF) |
| [54](#) | *Filed & Entered:*             09/28/2023   Scheduling Order |
| | *Docket Text:* INITIAL CONFERENCE SCHEDULING ORDER: An Initial Conference via Zoom will be held **October 17, 2023 at 12:30 PM** before Magistrate Judge James M. Wicks. The Court will email the Zoom invitation closer to the conference date. All counsel must attend. Counsel are directed to complete the attached Proposed 26(f) Scheduling Order and electronically file same with the Court no later than **October 10, 2023**. Should the parties wish to adopt a plan for discovery different from the structure in the discovery worksheet, they may do so only if they file a letter explaining why such a plan is appropriate in this case. This conference is a public proceeding, and all are welcome to attend via telephone or via video. If you would like to receive the Zoom invitation, please contact Judge Wicks' Courtroom Deputy at (631) 712-5625.THE PARTIES ARE REMINDED that audio or video recording of proceedings by any party other than the Court is strictly prohibited by Local Civil Rule 1.8. Violation of this rule may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed appropriate by the Court. So Ordered by Magistrate Judge James M. Wicks on 9/28/2023. (Attachments: # (1) Proposed Rule 26(f) Scheduling Order, # (2) JMW Individual Practice Rules) (DF) |
| | *Filed & Entered:*             09/29/2023   Order on Motion for Leave to Electronically File Document under Seal |
| | *Docket Text:* ORDER GRANTING in part and DENYING in part [46] Notice of MOTION for Leave to Electronically File Document under Seal ECF Docket Entry 18-1 without prejudice. |

Plaintiff has submitted a 77-page exhibit containing multiple contracts and schedules between Plaintiff and its financier, NMAC, under seal maintaining that they all must be kept under seal.

However, this Circuit demands that sealing of judicial documents, such as this one, be narrowly tailored. *Lugosch v. Pyramid Co.*, 435 F.3d 110, 120 (2d Cir. 2006). A sealing request is "narrowly tailored" when it seeks to seal *only* that information that needs to be sealed in order to preserve higher values. *Susquehanna Int'l Grp. Ltd. v. Hibernia Express (Ireland) Ltd.*, 2021 U.S. Dist. LEXIS 151075, 2021 WL 3540221, at *4 (S.D.N.Y. Aug. 11, 2021). Portions of documents "with no apparent relation" to sensitive material generally should not be redacted or sealed. *Id.* (denying motion to seal where proposed redactions were "extensive" and covered non-commercially sensitive information). *Robinson v. De Niro*, 2022 U.S. Dist. LEXIS 124140, at *4 (S.D.N.Y. July 12, 2022).

Plaintiff maintains broadly that the Exhibit contains trade secrets, confidential business or commercial information, and is subject to a confidentiality agreement signed with NMAC. *See* [47] Superbs Memorandum of Law (describing the material to be sealed as "the information concerning [Superb's] business," "business and financial information," and the "financial information and confidential agreement"). *See* ECF 18-1 at 63-65 (NMAC Confidentiality Agreement).

As an initial matter, the general fact that commercial information may be important to the parties does not in itself automatically warrant sealing. *See In re Lifetrade Litig.*, 2022 WL 974448, at *1 (S.D.N.Y. Mar. 31, 2022) (granting and denying sealing where "[p]laintiffs main concern is that the documents have been designated as confidential between them and S&P and may be commercially sensitive to the parties.").

Equally, the mere presence of a confidentiality agreement is not determinative of higher values requiring sealing of an entire document. *See Alexandria Real Estate Equities, Inc. v. Fair*, 2011 U.S. Dist. LEXIS 138455, 2011 WL 6015646, at *3 (S.D.N.Y. Nov. 30, 2011) ( "[T]he mere existence of a confidentiality agreement covering judicial documents is insufficient to overcome the First Amendment presumption of access.").

Upon the Court's review, much of the information contained in the exhibit is not in itself business or financial information that is beyond the First Amendment's reach. For example, the exhibit contains agreements covering Superb's promises to carry insurance, or use certain invoice presentment and payment systems, and many pages of boilerplate contractual definitions and language. ECF 18-1 at 66-75. Superb has not detailed anywhere in its submissions how such information serves "higher values" such that it should be sealed from the public's eye. Accordingly, Superb fails to carry the burden of narrow tailoring. Lastly, the Court notes that by Superb's own admission, its contracts and relationship with NMAC were ostensibly canceled on 9/18/2023. ECF 18-2; 9/15/23 Hearing Transcript 38:23. It is entirely unclear, then, the enforceability of such contracts, notwithstanding any language in the contracts to the contrary.

Nonetheless, the Court finds that at least certain information implicated by the Confidentiality Agreement should be redacted. Namely the "interest rates, loan amounts, maturity and curtailments, eligible vehicles, advances, capitalization guides, wholesale bonus, floor plan take-out." These items may be redacted wherever they may appear in the Exhibit.

By October 5, 2023, Superb shall file a renewed motion with the proposed redactions in the Exhibit. Should Superb wish to further seal portions of the exhibit it shall file an additional memorandum detailing exactly which portions and why sealing is warranted under the *Lugosch* standard.

Lastly, any motions for a protective order spanning the pendency of this litigation should be addressed to Magistrate Judge Wicks in compliance with his individual practice rules.

So Ordered by Judge Orelia E. Merchant on 9/29/2023. (GM)

| 55 | *Filed & Entered:* | 09/29/2023 | Order on Motion for Preliminary Injunction |
|----|----|----|----|

*Docket Text:* ORDER granting in part and denying in part [9] Motion for Preliminary Injunction; deferring ruling on [9] Motion for Permanent Injunction. See attached ruling for exact details and deadlines. Ordered by Judge Orelia E. Merchant on 9/29/2023. (CS)

| 56 | *Filed & Entered:* | 10/02/2023 | Letter |
|----|----|----|----|

*Docket Text:* Letter *regarding injunctive relief awarded with request for clarification as to remaining vehicles* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Attachments: # (1) Declaration of compliance with this Court's Memorandum and Order on Preliminary Injunction dated September 29, 2023 (ECF Docket Entry 55), # (2) Exhibit A - list of remaining vehicles) (Kataev, Emanuel)

| 57 | *Filed & Entered:* | 10/02/2023 | Letter |
|----|----|----|----|

*Docket Text:* Letter *regarding delay in filing Declaration* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Thomasson, Harry)

| 58 | Filed & Entered: | 10/03/2023 | Declaration |
|---|---|---|---|

Docket Text: DECLARATION *OF COMPLIANCE and REQUESTING CLARIFICATION OF INJUNCTION DATED SEPTEMBER 29, 2023,* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson (Thomasson, Harry)

| 59 | Filed & Entered: | 10/03/2023 | Affidavit |
|---|---|---|---|

Docket Text: AFFIDAVIT/AFFIRMATION re [58] Declaration, *Exhibit A thereto,* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Thomasson, Harry)

| 60 | Filed & Entered: | 10/03/2023 | Response in Opposition to Motion |
|---|---|---|---|

Docket Text: RESPONSE in Opposition re [52] Letter MOTION for pre motion conference filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| 61 | Filed & Entered: | 10/03/2023 | Letter |
|---|---|---|---|

Docket Text: Letter *in response to Flushing Bank's requested Pre-Motion Conference and Plaintiffs' response thereto* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Thomasson, Harry)

| 62 | Filed & Entered: | 10/05/2023 | Motion for Extension of Time to File Document |
|---|---|---|---|
| | Terminated: | 10/10/2023 | |

Docket Text: Letter MOTION for Extension of Time to File *renewed motion to seal as set forth in this Court's Order dated September 29, 2023* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| 63 | Filed & Entered: | 10/08/2023 | Letter |
|---|---|---|---|

Docket Text: Letter *response in opposition to Deo Defendants' procedurally and substantively improper request (ECF Docket Entry 58) to avoid compliance with this Court's preliminary injunction (ECF Docket Entry 55)* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Attachments: # (1) Exhibit A - stipulated temporary restraining Order) (Kataev, Emanuel)

| | Filed & Entered: | 10/10/2023 | Order on Motion for Extension of Time to File |
|---|---|---|---|

Docket Text: ORDER granting [62] Motion for Extension of Time to File. Superb Plaintiffs renewed motion to seal is now due by October 31, 2023. So ordered by Judge Orelia E. Merchant on 10/10/2023. (GM)

| 64 | Filed & Entered: | 10/10/2023 | Letter |
|---|---|---|---|

Docket Text: Letter *enclosing discovery plan pursuant to the Hon. James M. Wicks, U.S.M.J.'s Initial Conference Order dated September 28, 2023 (ECF Docket Entry 54)* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Attachments: # (1) Exhibit A - proposed discovery plan) (Kataev, Emanuel)

| | Filed & Entered: | 10/11/2023 | Order on Motion for Pre Motion Conference |
|---|---|---|---|

Docket Text: ORDER denying without prejudice [52] Motion for Pre Motion Conference by Flushing Bank regarding its anticipated Motion to Dismiss, in light of plaintiffs' anticipated filing of an amended complaint [60]. The parties are directed to address requests related to the timing of amended and/or responsive pleadings to Magistrate

| | | | |
|---|---|---|---|
| | Judge Wicks. Further, matters related to compliance with the Preliminary Injunction [55] are hereby respectfully referred to Magistrate Judge Wicks. So Ordered by Judge Orelia E. Merchant on 10/11/2023. (GM) | | |

| | | | |
|---|---|---|---|
| | *Filed & Entered:* | 10/12/2023 | Order on Motion for Permanent Injunction |
| | *Docket Text:* ORDER denying [9] Emergency MOTION for Permanent Injunction. A permanent injunction is the ultimate relief requested by plaintiffs in their Complaint [1]. *See* Compl. ¶¶ 262, 356, 357, 358. Thus, the Court will consider this request for relief in relation to its adjudication of plaintiffs claims. So Ordered by Judge Orelia E. Merchant on 10/12/2023. (GM) | | |

| | | | |
|---|---|---|---|
| 65 | *Filed & Entered:* | 10/13/2023 | Amended Complaint |
| | *Docket Text:* AMENDED COMPLAINT *pursuant to Fed. R. Civ. P. 15(a)(1)(B)* against Dwight Blankenship, Car Buyers NYC Inc., DLA Capital Partners Inc., Anthony Deo, Sarah Deo, Flushing Bank, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Cars of Smithtown LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Thomas Jones, CPA, Jones, Little & Co., CPA's LLP, Michael Laurie, Libertas Funding LLC, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp., J.P. Morgan Chase Bank, N.A., filed by Joshua Aaronson, Team Auto Sales LLC, Island Auto Management, LLC, Superb Motors Inc., 446 Route 23 Auto LLC, 2519 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, Brian Chabrier, Robert Anthony Urrutia, 1581 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, Jory Baron, 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC. (Attachments: # (1) Exhibit A - May 31, 2023 Transcript) (Kataev, Emanuel) | | |

| | | | |
|---|---|---|---|
| 66 | *Filed & Entered:* | 10/16/2023 | Consent to Jurisdiction by US Magistrate Judge |
| | *Docket Text:* CONSENT to Jurisdiction by US Magistrate Judge by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |

| | | | |
|---|---|---|---|
| 67 | *Filed & Entered:* | 10/16/2023 | Proposed Summons/Civil Cover Sheet |
| | *Docket Text:* Proposed Summons. by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel) | | |

| | | | |
|---|---|---|---|
| | *Filed & Entered:* | 10/17/2023 | Case No Longer Referred |
| | *Docket Text:* Case no longer referred to Magistrate Judge James M. Wicks. (TPL) | | |

| | | | |
|---|---|---|---|
| 68 | *Filed & Entered:* | 10/17/2023 | Summons Issued |
| | *Docket Text:* Summons Issued as to J.P. Morgan Chase Bank, N.A. (JC) | | |

| | | | |
|---|---|---|---|
| 69 | *Filed & Entered:* | 10/17/2023 | Initial Conference Hearing |
| | *Docket Text:* Minute Order for proceedings held before Magistrate Judge James M. Wicks: CIVIL CAUSE FOR INITIAL CONFERENCE. Counsel for Plaintiffs: Emanuel Kataev, Jeffrey C. Ruderman. Counsel for Defendants (Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC and UEA Premier Motors Corp.): No Appearance. Counsel for Defendants (Jones, Little & Co., CPA's LLP): Peter Seiden. Counsel for Defendant (Flushing Bank): Thomas Baylis. Counsel for Defendant (Libertas Funding LLC): Bonnie Golub. Initial Conference Hearing held on 10/17/2023 at 12:30 PM. Following | | |

discussion with counsel, the Court adopted the following Scheduling Order: November 17, 2023: Exchange of Rule 26(a)(1) disclosures; January 5, 2024: Motions to join new parties or amend the pleadings; January 15, 2024: Meet and confer regarding 30(b)(6) depositions; June 30, 2024: Completion of all fact discovery; July 15, 2024: Identification of case in chief experts and service of Rule 26 disclosures; August 15, 2024: Identification of rebuttal experts and service of Rule 26 disclosures; September 30, 2024: Close of all discovery, including experts; and November 1, 2024: Final date for parties to take the first step of summary judgment motion practice. Parties are also directed to bundle file the motion papers regarding the scope or clarification of the preliminary injunction in accordance with the undersigned's Individual Rules. A Status Conference has been scheduled for **May 7, 2024 at 9:00 AM** via the Court's Video Zoom. The Court will email the Zoom invitation closer to the conference date. This conference is a public proceeding, and all are welcome to attend via telephone or via video. If you would like to receive the Zoom invitation, please contact Judge Wicks' Courtroom Deputy at (631) 712-5625. An in-person Final Pretrial Conference has been scheduled for **November 18, 2024 at 9:00 AM** to take place in Courtroom 1020 in the Central Islip Courthouse. A joint proposed pretrial order ("JPTO") in compliance with the Individual Practice Rules of the Hon. James M. Wicks, signed by counsel for each party, must be filed on ECF at least five (5) business days prior to this conference. If a motion for summary judgment is pending, the final pretrial conference will be cancelled and filing of the JPTO will be held in abeyance. THE PARTIES ARE REMINDED that audio or video recording of proceedings by any party other than the Court is strictly prohibited by Local Civil Rule 1.8. Violation of this rule may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed appropriate by the Court. (FTR Log #12:39-12:57 (Video).) (DF)

| 70 | *Filed:* | 10/17/2023 | Consent to Jurisdiction by US Magistrate Judge |
| | *Entered:* | 10/18/2023 | |

*Docket Text:* CONSENT to Jurisdiction by US Magistrate Judge. Case reassigned to Magistrate Judge James M. Wicks for all further proceedings. Judge Orelia E. Merchant no longer assigned to case. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (TPL)

| 71 | *Filed & Entered:* | 10/19/2023 | Letter |

*Docket Text:* Letter *concerning briefing schedule for Plaintiffs' motion to disqualify Harry R. Thomasson, Esq. as counsel for the Deo Defendants* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel)

| 72 | *Filed:* | 10/19/2023 | Motion for Leave to File Document |
| | *Entered:* | 10/20/2023 | |
| | *Terminated:* | 11/09/2023 | |

*Docket Text:* Letter MOTION for Leave to File Document *in accordance with this Court's October 17, 2023 minute Order requiring the parties to bundle file the motion papers regarding the scope or clarification of the preliminary injunction* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - Plaintiffs' October 2, 2023 letter motion for clarification, # (2) Exhibit B - Defendants' October 3, 2023 declaration of "compliance" with accompanying exhibit, # (3) Exhibit C - Plaintiffs' October 8, 2023 letter response in opposition) (Kataev, Emanuel)

| | *Filed & Entered:* | 10/20/2023 | Order |

*Docket Text:* ORDER. The Court is in receipt of Plaintiffs' briefing schedule request regarding their motion to disqualify Defendants' counsel (ECF No. [71]). Since the Plaintiffs have already served the motion upon Defendants' counsel, the briefing schedule is as follows: opposition shall be served on Plaintiffs' counsel on or before

**October 30, 2023** and any reply shall be served upon Defendants' counsel on or before **November 6, 2023**. Parties are to adhere to the undersigned's individual rules with regard to bundle filing the respective motion papers and file the documents on ECF once the last set of papers is served. So Ordered by Magistrate Judge James M. Wicks on 10/20/2023. (HM)

| [73](#) | *Filed & Entered:* | 10/26/2023 | Motion for Pre Motion Conference |
| | *Terminated:* | 10/27/2023 | |

*Docket Text:* Letter MOTION for pre motion conference re [65] Amended Complaint,,,, by Flushing Bank. (Baylis, Thomas)

| | *Filed & Entered:* | 10/27/2023 | Order on Motion for Pre Motion Conference |

*Docket Text:* ORDER granting [73] Motion for Pre-Motion Conference. A Pre-Motion Conference has been scheduled for **November 20, 2023 at 3:00 PM via the Court's Zoom** before the undersigned. A Zoom link will be sent to the parties closer to the conference date. This conference is a public proceeding, and all are welcome to attend via telephone or via video. If you would like to receive the Zoom invitation, please contact Judge Wicks' Courtroom Deputy at (631) 712-5625. So Ordered by Magistrate Judge James M. Wicks on 10/27/2023. (HM)

| [74](#) | *Filed & Entered:* | 10/27/2023 | Proposed Summons/Civil Cover Sheet |

*Docket Text:* Proposed Summons. by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC (Ruderman, Jeffrey)

| [75](#) | *Filed & Entered:* | 10/30/2023 | Letter |

*Docket Text:* Letter *to Magistrate Judge Wicks regarding Briefing Schedule* by Flushing Bank (Baylis, Thomas)

| [76](#) | *Filed & Entered:* | 10/30/2023 | Summons Issued |

*Docket Text:* Summons Issued as to Dwight Blankenship, Car Buyers NYC Inc., DLA Capital Partners Inc., Anthony Deo, Sarah Deo, Flushing Bank, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, J.P. Morgan Chase Bank, N.A., Thomas Jones, CPA, Jones, Little & Co., CPA's LLP, Michael Laurie, Libertas Funding LLC, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (AMF)

| | *Filed & Entered:* | 10/31/2023 | Scheduling Order |

*Docket Text:* ORDER. In light of Flushing Bank's letter (ECF No. [75]) and Flushing Bank's proposed schedule in ECF No. [73], the Court adopts Flushing Bank's briefing schedule. Motion papers must be served on the proposed dates and bundle filed on ECF only once the reply (or last set of papers) has been served. Accordingly, the Pre-Motion Conference scheduled for November 20, 2023 is <u>CANCELLED</u>. Oral Argument on Flushing Bank's motion has been scheduled for **January 25, 2024 at 10:00 AM in Courtroom 1020 in the Central Islip Courthouse** before the undersigned. So Ordered by Magistrate Judge James M. Wicks on 10/31/2023. (HM)

| [77](#) | *Filed & Entered:* | 10/31/2023 | Motion for Leave to Electronically File Document under Seal |
| | *Terminated:* | 11/05/2023 | |

*Docket Text:* Letter MOTION for Leave to Electronically File Document under Seal *with renewed request to seal information solely related to wholesale payoffs and insurance, other than what the Hon. Orelia E. Merchant, U.S.D.J. has already permitted to be sealed in her September 29, 2023 Text Only Order,* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - proposed redacted agreement(s) with NMAC) (Kataev, Emanuel)

| | *Filed & Entered:* | 11/01/2023 | Scheduling Order |

*Docket Text:* ORDER. The Court is in receipt of the parties' bundled motion for scope or clarification on the preliminary injunction (ECF No. [72]). Accordingly, the parties are directed to appear in-person for oral argument on the motion on **November 9, 2023 at 12:30 PM in Courtroom 1020** in the Central Islip Courthouse before the undersigned. In addition, parties should be prepared to discuss whether a bond should be imposed in accordance with Fed. R. Civ. P. 65(c). So Ordered by Magistrate Judge James M. Wicks on 11/1/2023. (HM)

| | | |
|---|---|---|
| *Filed & Entered:* | 11/01/2023 | Order |

*Docket Text:* ORDER. In connection with Plaintiffs' motion to seal (ECF No. [77]), on or before **Friday, November 3, 2023**, Plaintiffs are directed to articulate the purpose of filing the sealed document and whether it is considered a judicial document. *See Lugosch v. Pyramid Co.*, 435 F.3d 110, 119 (2d Cir. 2006) ("Before any such common law right can attach, however, a court must first conclude that the documents at issue are indeed 'judicial documents.'") Defendants shall also file an opposition, if any, by that date. So Ordered by Magistrate Judge James M. Wicks on 11/1/2023. (HM)

| | | | |
|---|---|---|---|
| 78 | *Filed & Entered:* | 11/01/2023 | Waiver of Service Executed |

*Docket Text:* WAIVER OF SERVICE Returned Executed by Libertas Funding LLC. Libertas Funding LLC waiver sent on 10/17/2023, answer due 12/18/2023. (Golub, Bonnie)

| | | | |
|---|---|---|---|
| 79 | *Filed & Entered:*<br>*Terminated:* | 11/02/2023<br>11/10/2023 | Motion for Contempt |

*Docket Text:* Letter MOTION for Contempt by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie)

| | | | |
|---|---|---|---|
| 80 | *Filed & Entered:* | 11/02/2023 | Affidavit in Support of Motion |

*Docket Text:* AFFIDAVIT/DECLARATION in Support re [79] Letter MOTION for Contempt filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A, # (2) Exhibit B, # (3) Exhibit C) (Felsen, Jamie)

| | | | |
|---|---|---|---|
| 81 | *Filed & Entered:* | 11/02/2023 | Letter |

*Docket Text:* Letter *to Magistrate Wicks in opposition to Plaintiffs' letter request for sanctions* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Thomasson, Harry)

| | | |
|---|---|---|
| *Filed & Entered:* | 11/03/2023 | Order |

*Docket Text:* ORDER. In light of the parties' recent filings, counsel should be directed to address the motion to clarify, motion to disqualify, and the motion for contempt at the Oral Argument scheduled for **November 9, 2023**. So Ordered by Magistrate Judge James M. Wicks on 11/3/2023. (HM)

| | | | |
|---|---|---|---|
| 82 | *Filed & Entered:* | 11/03/2023 | Letter |

*Docket Text:* Letter *submitted in accordance with this Court's Order dated November 1, 2023 in connection with the Superb Plaintiffs' renewed letter motion to seal* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel)

| | | | |
|---|---|---|---|
| 83 | *Filed & Entered:*<br>*Terminated:* | 11/04/2023<br>11/05/2023 | Motion to Adjourn Conference |

*Docket Text:* Consent MOTION to Adjourn Conference *from 12:30 PM to 3:00 PM on Thursday, November 9, 2023* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| | | |
|---|---|---|
| *Filed & Entered:* | 11/05/2023 | Order on Motion for Leave to Electronically File Document under Seal |

| | | | |
|---|---|---|---|
| | *Docket Text:* ORDER granting [77] Motion for Leave to Electronically File Document under Seal. Counsel is directed to file the original document under seal as a separate entry. Instructions on filing sealed documents on ECF are located at www.nyed.uscourts.gov. Counsel shall redact the portions of the document already granted by the Hon. Orelia E. Merchant and redact and seal the discrete portions relating to wholesale payoffs and insurance. So Ordered by Magistrate Judge James M. Wicks on 11/5/2023. (HM) | | |
| | *Filed & Entered:* | 11/05/2023 | Order on Motion to Adjourn Conference |
| | *Docket Text:* ORDER denying [83] Motion to Adjourn Conference. In light of the parties' letter to adjourn Oral Argument and the Court's further communications with the parties, the <u>in-person</u> Oral Argument currently scheduled for **November 9, 2023 at 12:30PM** remains as scheduled. Parties should be prepared to discuss the motions as stated in the undersigned's prior order dated November 3, 2023. So Ordered by Magistrate Judge James M. Wicks on 11/5/2023. (HM) | | |
| 85 | *Filed & Entered:* <br> *Terminated:* | 11/06/2023 <br> 12/01/2023 | Motion to Disqualify Counsel |
| | *Docket Text:* MOTION to Disqualify Counsel by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie) | | |
| 86 | *Filed & Entered:* | 11/06/2023 | Affidavit in Support of Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Support re [85] MOTION to Disqualify Counsel *Declaration of Bruce Novicky* filed by All Plaintiffs. (Attachments: # (1) Exhibit A, # (2) Exhibit B, # (3) Exhibit C) (Felsen, Jamie) | | |
| 87 | *Filed & Entered:* | 11/06/2023 | Memorandum in Support |
| | *Docket Text:* MEMORANDUM in Support re [85] MOTION to Disqualify Counsel filed by All Plaintiffs. (Felsen, Jamie) | | |
| 88 | *Filed & Entered:* | 11/06/2023 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [85] MOTION to Disqualify Counsel *Declaration of harry Thomasson, Esq.* filed by All Plaintiffs. (Attachments: # (1) Exhibit A, # (2) Exhibit B, # (3) Exhibit C, # (4) Exhibit D, # (5) Exhibit E) (Felsen, Jamie) | | |
| 89 | *Filed & Entered:* | 11/06/2023 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [85] MOTION to Disqualify Counsel *Declaration of Anthony Deo* filed by All Plaintiffs. (Felsen, Jamie) | | |
| 90 | *Filed & Entered:* | 11/06/2023 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [85] MOTION to Disqualify Counsel *Declaration of Dwight Blankenship* filed by All Plaintiffs. (Felsen, Jamie) | | |
| 91 | *Filed & Entered:* | 11/06/2023 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [85] MOTION to Disqualify Counsel *Declaration of Michael Laurie* filed by All Plaintiffs. (Felsen, Jamie) | | |
| 92 | *Filed & Entered:* | 11/06/2023 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [85] MOTION to Disqualify Counsel *Declaration of Marc Merckling* filed by All Plaintiffs. (Felsen, Jamie) | | |
| 93 | *Filed & Entered:* | 11/06/2023 | Affidavit in Opposition to Motion |

| | | | |
|---|---|---|---|
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [85] MOTION to Disqualify Counsel *Declaration of Sarah Deo* filed by All Plaintiffs. (Felsen, Jamie) | | |
| 94 | *Filed & Entered:* | 11/06/2023 | Memorandum in Opposition |
| | *Docket Text:* MEMORANDUM in Opposition re [85] MOTION to Disqualify Counsel filed by All Plaintiffs. (Felsen, Jamie) | | |
| 95 | *Filed & Entered:* | 11/06/2023 | Affidavit in Support of Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Support re [85] MOTION to Disqualify Counsel *Reply Declaration of Robert Anthony Urrutia* filed by All Plaintiffs. (Attachments: # (1) Exhibit A, # (2) Exhibit B, # (3) Exhibit C, # (4) Exhibit D, # (5) Exhibit E) (Felsen, Jamie) | | |
| 96 | *Filed & Entered:* | 11/06/2023 | Reply in Support |
| | *Docket Text:* REPLY in Support re [85] MOTION to Disqualify Counsel filed by All Plaintiffs. (Felsen, Jamie) | | |
| 97 | *Filed & Entered:* | 11/09/2023 | Order on Motion for Leave to File |
| | *Docket Text:* Minute Order for proceedings held before Magistrate Judge James M. Wicks: CIVIL CAUSE FOR MOTION HEARING. Counsel for Plaintiffs (Superb Motors Inc, TeamAuto Sales LLC and Robert Anthony Urrutia): Emanuel Kataev. Counsel for Plaintiffs (189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian Chabrier, Joshua Aaronson, Jory Baron, 1581 Hyland Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hyland Blvd Auto LLC, 1239 Hyland Blvd Auto LLC, 2519 Hyland Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC and Island Auto Management, LLC): Russell J. Shanks. Counsel for Defendants: (Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC and UEA Premier Motors Corp.): Harry R. Thomasson, Jr. Counsel for Defendants (Jones, Little & Co., CPA's LLP): Peter Seiden. Counsel for Defendant (Flushing Bank): Ariel R. Ronneburger. Counsel for Defendant (Libertas Funding LLC): No Appearance. Motion Hearing/Oral Argument/Oral Ruling held on November 9, 2023 at 12:30 PM regarding Letter Motion for Leave to File Document in accordance with the Court's October 17, 2023 Order (ECF No. [72]); Letter Motion for Contempt (ECF No. [79]) and Motion to Disqualify Counsel (ECF No. [85]). Parties' arguments were heard. Motion for Leave to File Document in accordance with the Court's October 17, 2023 Order (ECF No. 72) is denied without prejudice with leave to renew. The relief sought seeks to modify, not clarify that which was ordered at ECF No. 55. Accordingly, to the extent the parties seek additional preliminary injunctive relief or modification of the existing order, a motion for such modification may be filed. The Court reserves decision on the Letter Motion for Contempt (ECF No. 79) and for disqualification (ECF No. 85). Defendants are directed to move the six (6) "Injuncted Deo Vehicles" identified in the Preliminary Injunction Order (ECF No. 55) to an independent licensed and insured vehicle storage facility on Long Island **on or before 5pm Tuesday, November 14, 2023**. Those six vehicles are: 2023 Chevrolet Suburban with a VIN # ending in "8675"; 2020 Mercedes-Benz GLE with a VIN # ending in "4078"; 2019 Land Rover Range Rover with a VIN # ending in "3297"; 2017 Rolls Royce with a VIN # ending in "2728"; 2016 Audi A6 with a VIN # ending in "9650"; and 2016 Audi Q5 with a VIN # ending in 0272. (ECF No. [55] at 29). Defendants' counsel shall file on ECF proof of storage of same with the Court. Defendants are to bear all expenses related to said storage, and the six Injuncted Deo Vehicles are *not* to be used or driven. The parties are also directed to file letter briefs to supplement the parties' positions on the Motion to Disqualify Counsel (ECF No. [85]), particularly regarding the three cases identified on the record at Oral Argument on or before **November 20, 2023**. THE PARTIES ARE REMINDED that audio or video recording of proceedings by any party other than the Court is strictly prohibited by Local Civil Rule 1.8. Violation of this rule may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed appropriate by the Court. (FTR Log #12:36-1:33 (FTR).) (DF) | | |
| 98 | *Filed & Entered:* | 11/10/2023 | Order on Motion for Contempt |

| | | | |
|---|---|---|---|
| | *Docket Text:* ORDER re [79] Motion for Contempt. As set forth in the attached Order, Plaintiffs' motion for contempt (ECF No. [79]) is denied as is Plaintiffs' request for sanctions. Per this Court's prior Order issued at Oral Argument, all six (6) vehicles, including the two (2) DEMO vehicles are to be placed in an independent, licensed, and insured facility at the expense of the Deo Defendants and none are permitted to be driven or otherwise used, absent a court order to the contrary. (*See* ECF No. [97].) So Ordered by Magistrate Judge James M. Wicks on 11/10/2023. (DF) | | |
| **99** | *Filed & Entered:* | 11/13/2023 | Corporate Disclosure Statement |
| | *Docket Text:* Corporate Disclosure Statement by Flushing Bank identifying Corporate Parent Flushing Financial Corporation for Flushing Bank. (Ronneburger, Ariel) | | |
| **100** | *Filed & Entered:* | 11/13/2023 | Notice of Appearance |
| | *Docket Text:* NOTICE of Appearance by Russell J. Shanks on behalf of 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC (aty to be noticed) (Shanks, Russell) | | |
| | *Filed & Entered:* | 11/15/2023 | Order |
| | *Docket Text:* ORDER. Deo Defendants' counsel was to file a letter with the Court advising whether the six (6) "Injuncted Deo Vehicles" have been moved to an independent licensed and insured vehicle storage facility by November 14, 2023. (ECF No. [97].) However, to date, no such filing has been made. Accordingly, Defendants' counsel is to file a letter **by the end of the day today** certifying whether the 6 cars have been moved to the independent lot. Failure to do so may result in sanctions. So Ordered by Magistrate Judge James M. Wicks on 11/15/2023. (HM) | | |
| **101** | *Filed & Entered:*<br>*Terminated:* | 11/15/2023<br>11/21/2023 | Motion for Pre Motion Conference |
| | *Docket Text:* Letter MOTION for pre motion conference re [65] Amended Complaint,,,, by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP. (Seiden, Peter) | | |
| **102** | *Filed & Entered:* | 11/15/2023 | Letter |
| | *Docket Text:* Letter *Regarding Storage of Automobiles* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Thomasson, Harry) | | |
| **103** | *Filed & Entered:* | 11/15/2023 | Letter |
| | *Docket Text:* Letter *Addendum with additional information regarding insurance* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Thomasson, Harry) | | |
| | *Filed & Entered:* | 11/16/2023 | Order |
| | *Docket Text:* ORDER. The Court is in receipt of the Thomas Jones, CPA and Jones, Little & co., CPAs LLP letter motion for a pre-motion conference (ECF No. [101]). The parties are directed to meet and confer on a proposed briefing schedule, or otherwise confirm that the proposed briefing schedule in ECF No. [101] suits all relevant parties, and file a letter by **November 20, 2023** stating same. So Ordered by Magistrate Judge James M. Wicks on 11/16/2023. (HM) | | |

| [104](#) | *Filed & Entered:* | 11/16/2023 | Transcript |
|---|---|---|---|
| | *Docket Text:* NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 11/09/2023, before Mag. Judge James M. Wicks. Transcriber Transcriptions Plus II, Inc., Telephone number 917-817-2825. Email address: RL.Transcriptions2@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/7/2023. Redacted Transcript Deadline set for 12/18/2023. Release of Transcript Restriction set for 2/14/2024.(CG) | | |
| [105](#) | *Filed & Entered:* | 11/20/2023 | Corporate Disclosure Statement |
| | *Docket Text:* Corporate Disclosure Statement by Jones, Little & Co., CPA's LLP (Seiden, Peter) | | |
| [106](#) | *Filed & Entered:* | 11/20/2023 | Letter |
| | *Docket Text:* Letter *requested by Magistrate Wicks regarding disqualification* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Thomasson, Harry) | | |
| [107](#) | *Filed & Entered:* | 11/20/2023 | Letter |
| | *Docket Text:* Letter *to Judge re compliance with 11-16-23 Order* by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP (Seiden, Peter) | | |
| [108](#) | *Filed & Entered:* | 11/20/2023 | Memorandum in Support |
| | *Docket Text:* MEMORANDUM in Support re [85] MOTION to Disqualify Counsel *with supplemental letter brief in accordance with this Court's Order dated November 9, 2023* filed by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - November 9, 2023 oral argument transcript, # (2) Exhibit B - sampling of 49 of over 180 emails sent to Thomasson with sensitive & confidential information, # (3) Exhibit C - March 2023 correspondence between Thomasson, Deo, Urrutia, and Jones) (Kataev, Emanuel) | | |
| [109](#) | *Filed & Entered:* | 11/21/2023 | Order on Motion for Pre Motion Conference |
| | *Docket Text:* ORDER denying [101] Motion for Pre-Motion Conference. The Court finds no need to hold a pre-motion conference and instead adopts parties' proposed briefing schedule as set forth in ECF No. [107]. Parties shall serve the opposing party on those respective dates but shall file their own set of papers only once the reply papers are served on **January 29, 2024**. An in-person Oral Argument has been scheduled for **February 22, 2024 at 2:00 PM in Courtroom 1020** before the undersigned. Please see attached document for further details. So Ordered by Magistrate Judge James M. Wicks on 11/21/2023. (HM) | | |
| [110](#) | *Filed & Entered:*<br>*Terminated:* | 11/25/2023<br>05/08/2024 | Motion for Order to Show Cause |
| | *Docket Text:* MOTION for Order to Show Cause *to modify the preliminary injunction entered by the Hon. Orelia E. Merchant, U.S.D.J. on September 29, 2023 (ECF Docket Entry 55)* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) Modified on 5/9/2024 (DF). | | |
| [111](#) | *Filed & Entered:* | 11/25/2023 | Memorandum in Support |
| | *Docket Text:* MEMORANDUM in Support re [110] MOTION for Order to Show Cause *to modify the preliminary injunction entered by the Hon. Orelia E. Merchant, U.S.D.J. on September 29, 2023 (ECF Docket Entry 55)* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |

| 112 | Filed & Entered: | 11/25/2023 | Affidavit in Support of Motion |
|---|---|---|---|
| | Docket Text: AFFIDAVIT/DECLARATION in Support re [110] MOTION for Order to Show Cause *to modify the preliminary injunction entered by the Hon. Orelia E. Merchant, U.S.D.J. on September 29, 2023 (ECF Docket Entry 55) of Robert Anthony Urrutia* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - operative list of remaining forty-three (43) vehicles, # (2) Exhibit B - CarFax Report for Missing Vehicle, # (3) Exhibit C - May 2023 Correspondence with Deo regarding Missing Vehicle, # (4) Exhibit D - June 2023 Correspondence with Deo regarding Missing Vehicle, # (5) Exhibit E - Deal Recap for Another Missing Vehicle, # (6) Exhibit F - Proof of Ownership for Defendant Michael Laurie's Vehicle, # (7) Exhibit G - August 4, 2023 Capital Call Letter, # (8) Exhibit H - Twelve (12) Vehicles Owned by Team Auto Sales LLC) (Kataev, Emanuel) | | |
| | Filed & Entered: | 11/26/2023 | Order |
| | Docket Text: ORDER. In light of the Plaintiffs' Motion for Order to Show Cause to modify the preliminary injunction (ECF No. [110]), the opposition shall be filed on or before **December 1, 2023** and the reply (if any) shall be filed on or before **December 5, 2023**. So Ordered by Magistrate Judge James M. Wicks on 11/26/2023. (HM) | | |
| 113 | Filed & Entered: | 11/29/2023 | Notice of Appearance |
| | Docket Text: NOTICE of Appearance by Bonnie Rae Golub on behalf of Libertas Funding LLC (aty to be noticed) (Golub, Bonnie) | | |
| 114 | Filed & Entered: | 11/29/2023 | Letter |
| | Docket Text: Letter *requesting Pre-Motion Conference* by Dwight Blankenship, Car Buyers NYC Inc., DLA Capital Partners Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Attachments: # (1) Proposed Briefing Scheduling Order) (Thomasson, Harry) | | |
| | Filed & Entered: | 11/30/2023 | Scheduling Order |
| | Docket Text: ORDER. Plaintiffs' opposition to Defendants' letter requesting a pre-motion conference (ECF No. [114]) shall be filed on or before **December 8, 2023**. In addition, a Pre-Motion Conference has been scheduled for **December 13, 2023 at 11:00 AM <u>via the Court's Zoom</u>** before the undersigned. The Court will email the Zoom invitation closer to the conference date. This conference is a public proceeding, and all are welcome to attend via telephone or via video. If you would like to receive the Zoom invitation, please contact Judge Wicks's Courtroom Deputy at (631) 712-5625. So Ordered by Magistrate Judge James M. Wicks on 11/30/2023. (HM) | | |
| 115 | Filed & Entered:<br>Terminated: | 11/30/2023<br>12/01/2023 | Motion for Extension of Time to File Document |
| | Docket Text: MOTION for Extension of Time to File: Letter *requesting additional time to oppose pending Order to Show Cause* by Dwight Blankenship, Car Buyers NYC Inc., DLA Capital Partners Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Thomasson, Harry) Modified on 12/1/2023 to change event type to Motion for Extension of Time to File (DF). | | |
| 116 | Filed & Entered: | 11/30/2023 | Letter |
| | Docket Text: Letter *response in opposition to the Deo Defendants' letter motion for an extension of time* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel) | | |
| | Filed & Entered: | 12/01/2023 | Order on Motion for Extension of Time to File |

| | | | |
|---|---|---|---|
| | *Docket Text:* ORDER granting [115] Motion for Extension of Time to File. Deo Defendants shall file the opposition to the motion to modify the preliminary injunction on or before **December 4, 2023** and Plaintiffs shall file their reply on or before **December 6, 2023**. So Ordered by Magistrate Judge James M. Wicks on 12/1/2023. (HM) | | |
| 117 | *Filed & Entered:* | 12/01/2023 | Order on Motion to Disqualify Counsel |
| | *Docket Text:* MEMORANDUM ORDER RE [85] Motion to Disqualify Counsel. As set forth in the attached Memorandum Order, Plaintiffs' motion for disqualification of Harry R. Thomasson, Jr. as counsel for Defendants (ECF No. [85]) is granted. This action is stayed until **January 2, 2024** to enable Defendants previously represented by Thomasson to obtain substitute counsel and file notices of appearances. A status conference will be held on **January 9, 2024 at 3:00 p.m.** in person in courtroom 1020 to address the pre-motion conference letter filed by the Deo Defendants (ECF No. [114]) and the motion to modify the preliminary injunction (ECF No. [110]). So Ordered by Magistrate Judge James M. Wicks on 12/1/2023. (DF) | | |
| | *Filed & Entered:* | 12/05/2023 | Order |
| | *Docket Text:* ORDER. In light of the Order on the Motion to Disqualify Counsel (ECF No. [117]) which stayed the action until January 2, 2024, opposition to the motion to modify the preliminary injunction shall be filed on or before **January 7, 2024** and reply **January 8, 2024**. The Status Conference scheduled for January 9, 2024 remains in place, at which time the parties should be prepared to discuss (1) the motion to modify the preliminary injunction (ECF No. [110]) and (2) the pre-motion letter for Defendants' anticipated motion to dismiss (ECF No. [114]). So Ordered by Magistrate Judge James M. Wicks on 12/5/2023. (HM) | | |
| 118 | *Filed & Entered:*<br>*Terminated:* | 12/07/2023<br>12/08/2023 | Motion to Amend/Correct/Supplement |
| | *Docket Text:* Joint MOTION to Amend/Correct/Supplement [75] Letter, Order on Motion for Pre Motion Conference,, Scheduling Order,, [109] Order on Motion for Pre Motion Conference,,, Scheduling Order,, by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC. (Ruderman, Jeffrey) | | |
| | *Filed & Entered:* | 12/08/2023 | Order on Motion to Amend/Correct/Supplement |
| | *Docket Text:* ORDER. In light of the Motion to Amend (ECF No. [118]) and the stay (ECF No. [117]) the briefing on the anticipated motions is as follows: (1) As to Flushing Bank's motion, since that has already been served on November 13, 2023, the briefing schedule as to Flushing Bank's motion to dismiss shall remain in place. Thus, the parties are still to bundle file the motion on or before **January 5, 2024**. (2) As to the other two anticipated motions from the Jones and Libertas Defendants, those papers need not be served and all briefing shall be held in abeyance until the January 9, 2024 Status Conference. (3) At the January 9 Conference, the Court will address a briefing schedule for the Jones and Libertas motions and the Deo Defendants should be prepared to discuss whether they intend to take a position on the Flushing Bank motion. (4) The Oral Arguments originally scheduled for January 25, 2024 and February 22, 2024 are <u>ADJOURNED</u> *sine die* and will be rescheduled during the January 9 Conference. So Ordered by Magistrate Judge James M. Wicks on 12/8/2023. (HM) | | |
| 119 | *Filed & Entered:* | 12/12/2023 | Notice of Appearance |
| | *Docket Text:* NOTICE of Appearance by Anthony Carmine Valenziano on behalf of J.P. Morgan Chase Bank, N.A. (aty to be noticed) (Valenziano, Anthony) | | |
| 120 | *Filed & Entered:*<br>*Terminated:* | 12/12/2023<br>12/13/2023 | Motion for Extension of Time to File Answer |
| | *Docket Text:* MOTION for Extension of Time to File Answer re [68] Summons Issued *Letter Motion Requesting Extension of Time to Respond to Complaint* by J.P. Morgan Chase Bank, N.A.. (Valenziano, Anthony) | | |

| 121 | Filed & Entered: | 12/12/2023 | Letter |
|---|---|---|---|

*Docket Text:* Letter *to Magistrate Judge James M. Wicks* by Flushing Bank (Baylis, Thomas)

| | Filed & Entered: | 12/13/2023 | Order on Motion for Extension of Time to Answer |
|---|---|---|---|

*Docket Text:* ORDER granting [120] Motion for Extension of Time to Answer. Defendant JP Morgan Chase's time within which to respond to the complaint is hereby extended to and including January 19, 2024. In addition, the briefing schedule of Flushing Bank's anticipated motion to dismiss is held in abeyance and included within the stay issued by the court on 12/8/2023. The briefing schedules of all anticipated motions will be addressed at the January 9, 2024 conference. So Ordered by Magistrate Judge James M. Wicks on this 13th day of December, 2023. (Wicks, James)

| 122 | Filed & Entered: | 12/14/2023 | Motion for Reconsideration |
|---|---|---|---|
| | Terminated: | 12/15/2023 | |

*Docket Text:* Letter MOTION for Reconsideration re Order on Motion for Extension of Time to Answer,, *for Flushing Bank's request to include its motion to dismiss within the ambit of the December 1, 2023 stay* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| 123 | Filed & Entered: | 12/14/2023 | Letter |
|---|---|---|---|

*Docket Text:* Letter *in Opposition to Plaintiffs' Motion for Reconsideration of the Order granting Flushing Bank's request for the motion to dismiss and Plaintiffs' cross-motion to be included in the stay* by Flushing Bank (Ronneburger, Ariel)

| | Filed & Entered: | 12/15/2023 | Order on Motion for Reconsideration |
|---|---|---|---|

*Docket Text:* ORDER denying [122] Motion for Reconsideration. Plaintiffs' motion for reconsideration of this Court's Order staying Briefing on Flushing's motion to dismiss is hereby denied. "Reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Furthermore, reconsideration is appropriate in order to correct "clear error" or "manifest injustice". See Carpac v. Rubin & Rothman LLC, 10 F. Supp.3d 349 (E.D.N.Y. 2013). Such a motion is not simply an opportunity for a litigant to restate its position or present new or alternative theories that were not presented before. See Trans Pro Logistice Inc. v. Coby Elecs. Corp., No. 05 Civ. 1759, 2010 U.S. Dist. LEXIS 109902, 2010 WL 4065603, at *1 (E.D.N.Y. Oct. 15, 2010). It's simply not an opportunity for a "do-over". Volpe v. Ryder, 2022 WL 16553231 (E.D.N.Y. Oct. 31, 2022). Accordingly, since Plaintiffs have not identified any controlling authority or factual matters that the court may have overlooked, or that there was clear error or a manifest injustice, the application for reconsideration is denied. So Ordered by Magistrate Judge James M. Wicks on 12/15/2023. (Wicks, James)

| 124 | Filed & Entered: | 12/22/2023 | Corporate Disclosure Statement |
|---|---|---|---|

*Docket Text:* Corporate Disclosure Statement by Libertas Funding LLC (Golub, Bonnie)

| 125 | Filed & Entered: | 01/02/2024 | Letter |
|---|---|---|---|

*Docket Text:* Letter *requesting additional time for replacement counsel to file Notice(s) of Appearance* by Harry Thomasson (Thomasson, Harry)

| 126 | Filed & Entered: | 01/02/2024 | Letter |
|---|---|---|---|

*Docket Text:* Letter *Pre-Motion Letter to Judge James M. Wicks M. Wicks* by Libertas Funding LLC (Golub, Bonnie)

| | *Filed & Entered:* | 01/04/2024 | Order |
|---|---|---|---|
| | *Docket Text:* ORDER. In light of Defendant's letter (ECF No. [125]), the stay in this case shall continue up to and including **January 5, 2024**. So Ordered by Magistrate Judge James M. Wicks on 1/4/2024. (HM) | | |
| [127](#) | *Filed & Entered:*<br>*Terminated:* | 01/05/2024<br>01/09/2024 | Motion for Pre Motion Conference |
| | *Docket Text:* Letter MOTION for pre motion conference by J.P. Morgan Chase Bank, N.A.. (Valenziano, Anthony) | | |
| [128](#) | *Filed & Entered:* | 01/05/2024 | Proposed Scheduling Order |
| | *Docket Text:* Proposed Scheduling Order *to Pre-Motion Letter to Judge James M. Wicks M. Wicks at ECF No. 126* by Libertas Funding LLC (Golub, Bonnie) | | |
| [129](#) | *Filed & Entered:*<br>*Terminated:* | 01/05/2024<br>01/07/2024 | Motion to Appear by Telephone/Video |
| | *Docket Text:* MOTION to Appear by Telephone/Video *for Status Conference scheduled January 9, 2024 pursuant to Court Order docketed December 8, 2023* by Libertas Funding LLC. (Attachments: # (1) Declaration of Service) (Golub, Bonnie) | | |
| | *Filed & Entered:* | 01/07/2024 | Order on Motion to Appear by Telephone/Video |
| | *Docket Text:* ORDER granting [129] Motion to Appear by Telephone/Video. Counsel for Defendant Libertas Funding LLC is permitted to appear remotely via Zoom for the Status Conference on January 9, 2024. A Zoom link will be emailed to her closer to the conference date. So Ordered by Magistrate Judge James M. Wicks on 1/7/2024. (HM) | | |
| | *Filed & Entered:* | 01/08/2024 | Order |
| | *Docket Text:* ORDER. J.P. Morgan Chase Bank's recently filed pre-motion letter (ECF No. [127]) will be discussed at the status conference on January 9, 2024. So Ordered by Magistrate Judge James M. Wicks on 1/8/2024. (HM) | | |
| | *Filed & Entered:* | 01/08/2024 | Order on Motion to Appear by Telephone/Video |
| | *Docket Text:* ORDER granting [130] Motion to Appear by Telephone/Video. In light of the concerns raised in the recent motion to appear remotely, the in-person status conference scheduled for tomorrow (1/9/24) is <u>CONVERTED</u> to a remote status conference to take place via the Court's Zoom. A Zoom link will be circulated to the parties shortly. So Ordered by Magistrate Judge James M. Wicks on 1/8/2024. (HM) | | |
| [130](#) | *Filed & Entered:*<br>*Terminated:* | 01/08/2024<br>01/08/2024 | Motion to Appear by Telephone/Video |
| | *Docket Text:* Letter MOTION to Appear by Telephone/Video *for the January 9, 2024, conference* by J.P. Morgan Chase Bank, N.A.. (Valenziano, Anthony) | | |
| [131](#) | *Filed:*<br>*Entered:* | 01/09/2024<br>01/10/2024 | Order on Motion for Pre Motion Conference |
| | *Docket Text:* Minute Order for proceedings held before Magistrate Judge James M. Wicks: CIVIL CAUSE FOR STATUS CONFERENCE. Counsel for Plaintiffs: (Superb Motors Inc, Team Auto Sales LLC and Robert Anthony Urrutia): Emanuel Kataev (With Principle Bruce Novicky). Counsel for Plaintiffs: (189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian Chabrier, Joshua Aaronson, Jory Baron, 1581 Hyland Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hyland Blvd Auto LLC, 1239 Hyland Blvd Auto LLC, 2519 Hyland Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC and Island Auto Management, LLC): Jeffrey C. Ruderman. Counsel for Defendants: (Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, | | |

Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC and UEA Premier Motors Corp.): Harry R. Thomasson, Jr. (Terminated Counsel). Counsel for Defendants (Thomas Jones, CPA, Jones, Little & Co., CPA's LLP): Peter Seiden. Counsel for Defendants (Flushing Bank): Ariel E. Ronneburger, Thomas Baylis. Counsel for Defendants (Libertas Funding LLC): Bonnie Rae Golub, David Epstein (Represented Defendant in State Court Matter). Counsel for Defendants (J.P. Morgan Chase Bank, N.A.): Anthony Carmine Valenziano. Status Conference held on January 9, 2024 at 3:00 PM. All Defendants' motions to dismiss shall be served as follows: 1.Defendants shall serve all papers in support of the motions to dismiss the Amended Complaint on or before **February 9, 2024**. 2.Opposition to Defendants' motion to dismiss the Amended Complaint shall be served on or before **March 11, 2024**. 3.Defendants' reply papers, if any, in further support of the motions to dismiss shall be served on or before **April 1, 2024**. 4.Parties are to bundle file their respective papers on ECF on **April 2, 2024**. The parties are to arrange for courtesy copies of the served to be sent to Chambers as they are served upon each opposing party. A Scheduling Conference has been scheduled for <u>**January 26, 2024 at 10:30 AM**</u> via the Court's Video Zoom. The parties should be prepared to discuss an expedited six-month discovery schedule, given the issues raised in this case. The Court will email the Zoom invitation closer to the conference date. This conference is a public proceeding, and all are welcome to attend via telephone or via video. If you would like to receive the Zoom invitation, please contact Judge Wicks' Courtroom Deputy at (631) 712-5625. THE PARTIES ARE REMINDED that audio or video recording of proceedings by any party other than the Court is strictly prohibited by Local Civil Rule 1.8. Violation of this rule may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed appropriate by the Court. (FTR Log #3:03-3:33 (Video).) (DF)

| [132] | *Filed & Entered:* | 01/14/2024 | Request for Certificate of Default |
|---|---|---|---|
| | *Docket Text:* Request for Certificate of Default by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Attachments: # (1) Declaration in Support of Plaintiffs' Request for Certificate of Default, # (2) Proposed Order - Proposed Certificate of Default) (Kataev, Emanuel) | | | |
| [133] | *Filed & Entered:* | 01/15/2024 | Declaration |
| | *Docket Text:* DECLARATION re [132] Request for Certificate of Default,, *with proof of mailing* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Attachments: # (1) Exhibit A - proof of mailing) (Kataev, Emanuel) | | | |
| [134] | *Filed & Entered:* | 01/18/2024 | Order on Motion for Order to Show Cause |
| | *Docket Text:* MEMORANDUM ORDER re [110] Motion for Order to Show Cause. As set forth in the attached Memorandum Order, the Court denies in part and grants in part Plaintiffs' motion for modification of the preliminary injunction (ECF No. [110]). The Court directs the following: *First*, an evidentiary hearing for the 43 Remaining Vehicles is scheduled for **February 20, 2024 at 1:00 p.m.** in courtroom 1020. Proposed witness and exhibit lists shall be filed on ECF on or before **February 15, 2024**. *In addition* on or before **January 31, 2024**, Deo Defendants are to provide to Plaintiffs photographs of the vehicles' odometer readings along with a sworn affidavit, proof that the vehicles are in an enclosed facility, and proof of full vehicle insurance coverage and file proof on ECF. *Finally*, the parties shall meet and confer and file by **January 24, 2024**, a proposed joint schedule for discovery on an expedited six-month track, which will be addressed at the next Status Conference on January 26, 2024. So Ordered by Magistrate Judge James M. Wicks on 1/18/2024. (DF) | | | |

| 135 | Filed & Entered: | 01/19/2024 | Affidavit of Service |
|---|---|---|---|
| | *Docket Text:* AFFIDAVIT of Service for January 18, 2024 Memorandum & Order served on Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Automotive Group LLC, Gold Coast Cars of LIC LLC, Gold Coast Cars of Roslyn LLC, Gold Coast Cars of Smithtown LLC, UEA Premier Motors Corp., DLA Capital Partners Inc. on January 19, 2024, filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie) | | | |

| 136 | Filed & Entered: | 01/22/2024 | Notice of Appearance |
|---|---|---|---|
| | *Docket Text:* NOTICE of Appearance by Brooke Suarez on behalf of J.P. Morgan Chase Bank, N.A. (aty to be noticed) (Suarez, Brooke) | | | |

| 137 | Filed & Entered: | 01/23/2024 | Notice of Appearance |
|---|---|---|---|
| | *Docket Text:* NOTICE of Appearance by Brian M. Levine on behalf of Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (aty to be noticed) (Levine, Brian) | | | |

| 138 | Filed & Entered: | 01/24/2024 | Summons Returned Executed |
|---|---|---|---|
| | *Docket Text:* SUMMONS Returned Executed by Joshua Aaronson, Team Auto Sales LLC, Island Auto Management, LLC, Superb Motors Inc., 446 Route 23 Auto LLC, 2519 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, Brian Chabrier, Robert Anthony Urrutia, 1581 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, Jory Baron, 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC. DLA Capital Partners Inc. served on 10/5/2023, answer due 10/26/2023. (Kataev, Emanuel) | | | |

| 139 | Filed & Entered: | 01/24/2024 | Proposed Scheduling Order |
|---|---|---|---|
| | *Docket Text:* Proposed Scheduling Order *submitted jointly by the parties pursuant to this Court's Orders dated January 9, 2024 and January 18, 2024 (ECF Docket Entries 131 & 134)* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel) | | | |

| 140 | Filed & Entered: | 01/25/2024 | Clerk's Entry of Default |
|---|---|---|---|
| | *Docket Text:* **(VACATED as to all Defendants *except DLA CAPITAL PARTNERS INC.,*)** <br><br>Clerk's ENTRY OF DEFAULT: It appearing from the docket maintained in this action that defendants Dwight Blankenship, Car Buyers NYC Inc., DLA Capital Partners Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, and UEA Premier Motors Corp., have failed to appear or otherwise defend this action, the defaults of defendants Dwight Blankenship, Car Buyers NYC Inc., DLA Capital Partners Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, and UEA Premier Motors Corp., are hereby noted pursuant to Rule 55a of the Federal Rules of Civil Procedure. (JT) Modified on 2/2/2024 to comply with Court Order dated 2/1/2024 (JT). | | | |

| 141 | Filed & Entered: | 01/26/2024 | Scheduling Conference |
|---|---|---|---|

*Docket Text:* Minute Order for proceedings held before Magistrate Judge James M. Wicks: CIVIL CAUSE FOR SCHEDULING CONFERENCE. Counsel for Plaintiffs (Superb Motors Inc, Team Auto Sales LLC and Robert Anthony Urrutia): Emanuel Kataev, Jamie Scott Felsen. Counsel for Plaintiffs (189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian Chabrier, Joshua Aaronson, Jory Baron, 1581 Hyland Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hyland Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hyland Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC and Island Auto Management, LLC): Jeffrey C. Ruderman. Counsel for Defendants (Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC and UEA Premier Motors Corp.): Brian M. Levine. Counsel for Defendants (Thomas Jones, CPA, Jones, Little & Co., CPA's LLP): Peter Seiden. Counsel for Defendants (Flushing Bank): Ariel E. Ronneburger. Counsel for Defendant (Libertas Funding LLC): Bonnie Rae Golub, David Epstein (Represented Defendant in State Court Matter). Counsel for Defendants (J.P. Morgan Chase Bank, N.A.): Anthony Carmine Valenziano. Scheduling Conference held on 1/26/2024 at 10:30 AM. The Court adopted the parties' submitted schedule at ECF No. [139], finalized at ECF No. [142]. In addition to the dates they provided, the Court designated the new final date for the first step of summary judgment motion practice as **September 6, 2024**. On or before **January 31, 2024**, Plaintiffs' counsel shall file a letter with the Court stating whether Plaintiffs agree stipulate to the vacatur of the entry of default (ECF No. [140]) or require the Deo Defendants to move to vacate. Counsel for Defendants Thomas Jones, CPA, Jones, Little & Co., CPA's LLP; Counsel for Defendant Flushing Bank; Counsel for Defendant Libertas Funding LLC; and Counsel for Defendant J.P. Morgan Chase Bank, N.A. all presented oral applications requesting that their appearances be excused at the Evidentiary Hearing on February 20, 2024 at 1:00 PM in Courtroom 1020. The Court granted those Defendants' applications, but to the extent any of those parties become witnesses to the hearing, then their presence is not excused. The Status Conference previously scheduled for **May 7, 2024 at 9:00 AM** will remain in place and will proceed via the Court's Video Zoom. The Court will email the Zoom invitation closer to the conference date. This conference is a public proceeding, and all are welcome to attend via telephone or via video. If you would like to receive the Zoom invitation, please contact Judge Wicks' Courtroom Deputy at (631) 712-5625. The Final Pretrial Conference scheduled for November 18, 2024 at 9:00 AM is **CHANGED** to **September 30, 2024 at 10:00 AM** at the United States District Courthouse, Eastern District of New York, 100 Federal Plaza, Courtroom 1020, Central Islip, New York. A joint proposed pretrial order ("JPTO") in compliance with the undersigned's Individual Practice Rules, signed by counsel for each party, must be filed on ECF at least five (5) business days prior to this conference. If a motion for summary judgment is pending, the final pretrial conference will be cancelled and filing of the JPTO will be held in abeyance. THE PARTIES ARE REMINDED that audio or video recording of proceedings by any party other than the Court is strictly prohibited by Local Civil Rule 1.8. Violation of this rule may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed appropriate by the Court. (FTR Log #10:32-10:48 (Video).) (DF)

| 142 | *Filed & Entered:* | 01/26/2024 | Scheduling Order |
|---|---|---|---|

*Docket Text:* SCHEDULING ORDER: Please See Order for Further Details. So Ordered by Magistrate Judge James M. Wicks on 1/26/2024. (DF)

| 143 | *Filed & Entered:* | 01/29/2024 | Notice of Appearance |
|---|---|---|---|

*Docket Text:* NOTICE of Appearance by Emanuel Kataev on behalf of Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (notification declined or already on case) (Kataev, Emanuel)

| 144 | *Filed & Entered:* | 01/31/2024 | Motion to Withdraw |
|---|---|---|---|
| | *Terminated:* | 02/01/2024 | |

*Docket Text:* MOTION to Withdraw Certificate of Default: Letter *requesting withdrawal of Plaintiffs' certificate of default against the Deo Defendants* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto

LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel) Modified on 2/1/2024 to change event type to Motion to Withdraw (DF).

| 145 | Filed & Entered: | 01/31/2024 | Declaration |
|---|---|---|---|

Docket Text: DECLARATION of Anthony Deo by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Attachments: # (1) Exhibit Exhibit A - Photographs of Odometers, # (2) Exhibit Exhibit B - Photographs of Vehicles in an Enclosed Storage Facility, # (3) Exhibit Exhibit C - Insurance) (Levine, Brian)

| | Filed & Entered: | 02/01/2024 | Order on Motion to Withdraw |
|---|---|---|---|

Docket Text: ORDER granting [144] Motion to Withdraw. The Clerk of the Court is directed to withdraw the certificate of default entered at ECF No. [140], with the exception of Defendant DLA Capital Partners Inc.. So Ordered by Magistrate Judge James M. Wicks on 2/1/2024. (HM) Modified on 2/2/2024 to add additional docket entry text (DF).

| 146 | Filed & Entered: | 02/15/2024 | Notice of Appearance |
|---|---|---|---|

Docket Text: NOTICE of Appearance by Nicole Marie Koster on behalf of Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (aty to be noticed) (Koster, Nicole)

| 147 | Filed & Entered: | 02/15/2024 | Exhibit List |
|---|---|---|---|

Docket Text: Exhibit List for Evidentiary Hearing on the Motion to Modify the Preliminary Injunction by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Koster, Nicole)

| 148 | Filed & Entered: | 02/15/2024 | Witness List |
|---|---|---|---|

Docket Text: Witness List by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Koster, Nicole)

| 149 | Filed & Entered: | 02/15/2024 | Exhibit List |
|---|---|---|---|

Docket Text: Exhibit List for Evidentiary Hearing Scheduled for February 20, 2024 by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Levine, Brian)

| 150 | Filed & Entered: | 02/15/2024 | Witness List |
|---|---|---|---|

Docket Text: Witness List by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Levine, Brian)

| 151 | Filed & Entered: | 02/20/2024 | Evidentiary Hearing |
|---|---|---|---|

Docket Text: Minute Order for proceedings held before Magistrate Judge James M. Wicks: CIVIL CAUSE FOR EVIDENTIARY HEARING. Counsel for Plaintiffs (Superb Motors Inc, Team Auto Sales LLC and Robert Anthony Urrutia): Emanuel Kataev, Jamie Scott Felsen. Counsel for Plaintiffs (189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian Chabrier, Joshua Aaronson, Jory Baron, 1581 Hyland Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hyland Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hyland Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC and Island Auto Management, LLC): **Excused**. Counsel for Defendants (Anthony Deo, Sarah Deo, Harry Thomasson, Dwight

Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC and UEA Premier Motors Corp.): Brian M. Levine. Counsel for Defendants (Thomas Jones, CPA, Jones, Little & Co., CPA's LLP): **Excused**. Counsel For Defendants (Flushing Bank): **Excused** Counsel For Defendant (Libertas Funding LLC): **Excused**. Counsel For Defendants (J.P. Morgan Chase Bank, N.A.): **Excused**. Court Reporter: Paul Lombardi. Evidentiary Hearing held on 2/20/2024 at 1:00 PM. Parties' arguments were heard. Witnesses for both parties were called and sworn; testimony given. Parties rested. Exhibits were entered into evidence. The Court directed the parties to order the transcript from today's Evidentiary Hearing. On or before **March 22, 2024**, the parties are directed to file any post hearing submissions and describe the impact on the preliminary injunction order entered into by Judge Orelia E. Merchant (ECF No. [55]). (Court Reporter Paul Lombardi.) (DF)

| | | | |
|---|---|---|---|
| 163 | *Filed:* | 02/20/2024 | Exhibit List |
| | *Entered:* | 04/01/2024 | |

*Docket Text:* Exhibit and Witness List from Evidentiary Hearing held on February 20, 2024. (DF)

| | | | |
|---|---|---|---|
| 152 | *Filed & Entered:* | 02/28/2024 | Motion for Contempt |
| | *Terminated:* | 05/08/2024 | |

*Docket Text:* Letter MOTION for Contempt by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Attachments: # (1) Declaration of Anthony Deo in Support, # (2) Exhibit A - Photographs of the 215 Northern Boulevard Location, # (3) Exhibit B - Selling Facility Search Results (Peak), # (4) Exhibit C - Selling Facility Search Results (Superb), # (5) Exhibit D - Wholesale License List for Nassau County, # (6) Exhibit E - Retail License List (Letters S & T), # (7) Exhibit F - VerifiNY Pages, # (8) Exhibit G - Superb Injunction Vehicle Search Results, # (9) Exhibit H - Deo Vehicle Search Results) (Levine, Brian)

| | | | |
|---|---|---|---|
| | *Filed & Entered:* | 02/29/2024 | Order |

*Docket Text:* ORDER. The Court is in receipt of the Deo Defendants' motion for contempt against the Superb Plaintiffs (ECF No. [152]). Any opposition to the motion shall be filed on or before **March 8, 2024** and any replies shall be filed on or before **March 15, 2024**. So Ordered by Magistrate Judge James M. Wicks on 2/29/2024. (HM)

| | | | |
|---|---|---|---|
| 153 | *Filed & Entered:* | 03/01/2024 | Motion for Extension of Time to File Response/Reply |
| | *Terminated:* | 03/03/2024 | |

*Docket Text:* Letter MOTION for Extension of Time to File Response/Reply as to Order, by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie)

| | | | |
|---|---|---|---|
| | *Filed & Entered:* | 03/03/2024 | Order on Motion for Extension of Time to File Response/Reply |

*Docket Text:* ORDER granting [153] Motion for Extension of Time to File Response/Reply. In light of the representations made in (ECF No. [153]): (1) Plaintiffs shall have until **March 18, 2024** to meet and confer with Defendants regarding the motion for contempt and file an opposition within that time if necessary. Any replies shall be filed on or before **March 25, 2024**. (2) Plaintiffs shall serve any opposition to the remaining motions to dismiss on or before **March 29, 2024**. Any replies must be served on or before **April 19, 2024**. The parties are to bundle file their respective papers on ECF on April 19, 2024 and are to arrange for courtesy copies of the served papers to be sent to Chambers as they are served upon each opposing party. So Ordered by Magistrate Judge James M. Wicks on 3/3/2024. (HM) Modified on 3/4/2024 to edit docket entry text (DF).

| | | | |
|---|---|---|---|
| 154 | *Filed & Entered:* | 03/18/2024 | Response in Opposition to Motion |

| | | | |
|---|---|---|---|
| | *Docket Text:* RESPONSE in Opposition re [152] Letter MOTION for Contempt filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit - Transcript of Proceedings Held on September 14, 2023) (Kataev, Emanuel) | | |
| 155 | *Filed & Entered:* | 03/18/2024 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [152] Letter MOTION for Contempt *of Bruce Novicky* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - proof that vehicles were returned to Superb) (Kataev, Emanuel) | | |
| 156 | *Filed & Entered:* | 03/22/2024 | Proposed Findings of Fact |
| | *Docket Text:* Proposed Findings of Fact by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Attachments: # (1) Exhibit Ex A - Transcript from February 20, 2024 Evidentiary Hearing) (Levine, Brian) | | |
| 157 | *Filed & Entered:* | 03/22/2024 | Proposed Findings of Fact |
| | *Docket Text:* Proposed Findings of Fact by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Attachments: # (1) Declaration, # (2) Exhibit A, # (3) Exhibit B, # (4) Exhibit C, # (5) Exhibit D, # (6) Exhibit E, # (7) Exhibit F, # (8) Exhibit G, # (9) Exhibit H, # (10) Exhibit I, # (11) Exhibit J, # (12) Exhibit K, # (13) Exhibit L, # (14) Exhibit M, # (15) Declaration) (Felsen, Jamie) | | |
| 158 | *Filed & Entered:* | 03/25/2024 | Reply in Support |
| | *Docket Text:* REPLY in Support *of Letter Motion for Contempt* filed by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Attachments: # (1) Declaration Reply Declaration of Brian M. Levine, Esq., # (2) Exhibit A - Certified DMV Records, # (3) Exhibit B - Organized DMV Records with Plaintiffs' Alleged Supplemental Assignments) (Levine, Brian) | | |
| 159 | *Filed & Entered:* | 03/25/2024 | Response in Opposition to Motion |
| | *Docket Text:* RESPONSE in Opposition re [152] Letter MOTION for Contempt *supplemental response with request for leave to submit same* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| 160 | *Filed & Entered:* *Terminated:* | 03/28/2024 03/29/2024 | Motion for Leave to File Excess Pages |
| | *Docket Text:* MOTION for Leave to File Excess Pages by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie) | | |
| 161 | *Filed & Entered:* | 03/28/2024 | Response in Opposition to Motion |
| | *Docket Text:* RESPONSE in Opposition re [160] MOTION for Leave to File Excess Pages filed by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Levine, Brian) | | |
| | *Filed & Entered:* | 03/29/2024 | Order on Motion for Leave to File Excess Pages |

| | | | |
|---|---|---|---|
| | *Docket Text:* ORDER granting [160] Motion for Leave to File Excess Pages. The Plaintiffs' request to file <u>up to five (5) excess pages</u> for their memorandum of law in opposition to the four (4) sets of motions to dismiss filed by all Defendants is **granted**. So Ordered by Magistrate Judge James M. Wicks on 3/29/2024. (HM) | | |
| 162 | *Filed & Entered:* | 03/29/2024 | Reply in Support |
| | *Docket Text:* REPLY in Support re [160] MOTION for Leave to File Excess Pages filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie) | | |
| 164 | *Filed & Entered:*<br>*Terminated:* | 04/02/2024<br>03/21/2025 | Motion to Dismiss for Failure to State a Claim |
| | *Docket Text:* Fully Briefed MOTION to Dismiss for Failure to State a Claim by Libertas Funding LLC. (Attachments: # (1) Memorandum in Support, # (2) Exhibit 1, # (3) Exhibit 2, # (4) Certification of Bonnie R. Golub, Esquire, # (5) Proposed Order, # (6) Certificate of Service) (Golub, Bonnie) | | |
| | *Filed & Entered:* | 04/03/2024 | Scheduling Order |
| | *Docket Text:* ORDER. In-person Oral Argument on the Defendants' motions to dismiss and the respective oppositions shall take place on **June 10, 2024 at 3:00 PM in Courtroom 1020** before the undersigned in the <u>Central Islip Courthouse</u>. So Ordered by Magistrate Judge James M. Wicks on 4/3/2024. (HM) | | |
| 165 | *Filed & Entered:*<br>*Terminated:* | 04/05/2024<br>04/10/2024 | Motion for Extension of Time to File Response/Reply |
| | *Docket Text:* Letter MOTION for Extension of Time to File Response/Reply *as to Order* by Flushing Bank. (Ronneburger, Ariel) | | |
| 166 | *Filed & Entered:*<br>*Terminated:* | 04/08/2024<br>04/11/2024 | Motion to Adjourn Conference |
| | *Docket Text:* MOTION to Adjourn Conference by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie) | | |
| | *Filed & Entered:* | 04/10/2024 | Order on Motion for Extension of Time to File Response/Reply |
| | *Docket Text:* ORDER granting [165] Motion for Extension of Time to File Response/Reply. The parties' briefing schedule on the motions for leave to amend the Complaint is set forth as follows: (1) Any opposition to the second cross-motion for leave to amend and any replies in support of the motion to dismiss shall be served on or before **April 30, 2024**; (2) Plaintiffs' reply to the first motion for leave to amend shall also be served on **April 30, 2024**; (3) Plaintiffs' reply to the second cross-motion for leave to amend shall be served on or before **May 13, 2024**; and (4) all motion papers shall be electronically bundle filed on or before **May 14, 2024**. So Ordered by Magistrate Judge James M. Wicks on 4/10/2024. (HM) | | |
| | *Filed & Entered:* | 04/11/2024 | Order on Motion to Adjourn Conference |
| | *Docket Text:* ORDER granting [166] Motion to Adjourn Conference. The Oral Argument originally scheduled for June 10, 2024 has been **RESCHEDULED** for **June 21, 2024 at 12:00 PM in Courtroom 1020 in the <u>Central Islip Courthouse</u>** before the undersigned. So Ordered by Magistrate Judge James M. Wicks on 4/11/2024. (HM) Modified on 4/11/2024 (DF). | | |
| 167 | *Filed & Entered:*<br>*Terminated:* | 04/30/2024<br>05/01/2024 | Motion for Leave to File Document |
| | *Docket Text:* Letter MOTION for Leave to File Document *in excess of the word count limit for Plaintiffs' reply in further support of their motion for leave to amend the pleadings vis-a-vis Defendant Flushing Bank's motion to dismiss* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island | | |

| | | | Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) |
|---|---|---|---|
| 168 | *Filed & Entered:*<br>*Terminated:* | 04/30/2024<br>03/21/2025 | Motion to Dismiss for Failure to State a Claim |
| | *Docket Text:* MOTION to Dismiss for Failure to State a Claim by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP. (Lentinello, John) ||||
| 169 | *Filed & Entered:* | 04/30/2024 | Affidavit in Support of Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Support re [168] MOTION to Dismiss for Failure to State a Claim filed by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP. (Attachments: # (1) Exhibit First Amended Complaint, # (2) Exhibit JLC's Notice of Appearance, # (3) Exhibit JLC's Pre Motion Letter, # (4) Exhibit Judge Wick's Order, # (5) Exhibit Declaration of Thomas Jones, CPA) (Lentinello, John) ||||
| 170 | *Filed & Entered:* | 04/30/2024 | Affidavit in Support of Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Support re [168] MOTION to Dismiss for Failure to State a Claim *of Thomas Jones, CPA* filed by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP. (Attachments: # (1) Exhibit Plaintiff's First Amended Complaint, # (2) Exhibit Email from Kendra Kernizant, # (3) Exhibit 7.7.2023 Email from JLC, # (4) Exhibit 7.13.2023 Email chain from JLC, # (5) Exhibit December 2022 financial figures for Superb, # (6) Exhibit Invoices sent to Superb Motors) (Lentinello, John) ||||
| 171 | *Filed & Entered:* | 04/30/2024 | Memorandum in Support |
| | *Docket Text:* MEMORANDUM in Support re [168] MOTION to Dismiss for Failure to State a Claim filed by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP. (Lentinello, John) ||||
| | *Filed & Entered:* | 05/01/2024 | Order on Motion for Leave to File |
| | *Docket Text:* ORDER granting [167] Motion for Leave to File. Plaintiffs' reply shall not exceed 3,600 words. So Ordered by Magistrate Judge James M. Wicks on 5/1/2024. (HM) ||||
| | *Filed & Entered:* | 05/06/2024 | Terminate Deadlines and Hearings |
| | *Docket Text:* ORDER. The Status Conference scheduled for **tomorrow, May 7, 2024** is <u>CANCELLED</u>. On or before **June 1, 2024**, the parties are to submit a joint status report outlining the status of discovery. So Ordered by Magistrate Judge James M. Wicks on 5/6/2024. (HM) ||||
| 172 | *Filed:*<br>*Entered:* | 05/08/2024<br>05/09/2024 | Order on Motion for Order to Show Cause |
| | *Docket Text:* MEMORANDUM AND ORDER re [110] Motion for Order to Show Cause and re [152] Motion for Contempt. As set forth in the attached Memorandum and Order, Plaintiffs' motion for modification of the preliminary injunction (ECF No. [110]) is granted in part and denied in part and Defendants' motion for contempt (ECF No. [152]) is granted in part and denied in part as follows: **1.Plaintiffs' Motion for a Modification of the Preliminary Injunction Order** a. Evidentiary Hearing: Return 43 Vehicles to Superb: *Denied* b. Sell the *Superb* Injuncted Vehicles and Retain Proceeds: *Granted* c. Return Deo Vehicles: *Denied* d. Require Deo's Cooperation in Winding Up: *Granted* e.Lifting the Injunction on the Other Vehicles: *Denied* **2. Defendants' Motion for Contempt** a.Finding Plaintiffs in Contempt: *Denied* b. Returning the Superb Vehicles: *Denied as Moot* c. Delivering Titles of the Superb Vehicles to a Court-Appointed Third-Party: *Denied* d. Directing Plaintiffs to: i.Store the Vehicles in an Independent Storage Unit: *Denied* ii. File Proof of Insurance: *Granted* iii. Provide Date Stamped Odometer Reading Photos: *Granted* e. Awarding Costs, Fees, and Monetary Sanctions: *Denied*. So Ordered by Magistrate Judge James M. Wicks on 5/8/2024. (DF) ||||
| 173 | *Filed & Entered:*<br>*Terminated:* | 05/11/2024<br>05/13/2024 | Motion to Adjourn Conference |

*Docket Text:* Consent MOTION to Adjourn Conference *Oral Argument Scheduled for June 21, 2024* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC. (Ruderman, Jeffrey)

| *Filed & Entered:* | 05/13/2024 | Order on Motion to Adjourn Conference |
|---|---|---|

*Docket Text:* ORDER granting [173] Motion to Adjourn Conference. In light of the representations in ECF No. [173]), the <u>in-person</u> Oral Argument originally set for June 21, 2024 has been <u>RESCHEDULED</u> for **July 10, 2024 at 10:00 AM in Courtroom 1020** before the undersigned. So Ordered by Magistrate Judge James M. Wicks on 5/13/2024. (HM)

| [174] | *Filed & Entered:*<br>*Terminated:* | 05/13/2024<br>05/14/2024 | Motion for Leave to File Document |
|---|---|---|---|

*Docket Text:* Letter MOTION for Leave to File Document *in excess of the word count limit for Plaintiffs' reply memorandum of law in further support of their cross-motion for leave to file amended pleadings vis-a-vis the remaining Defendants' motions to dismiss* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| *Filed & Entered:* | 05/14/2024 | Order on Motion for Leave to File |
|---|---|---|

*Docket Text:* ORDER granting [174] Motion for Leave to File. Plaintiffs' reply memorandum in further support of their cross-motion for leave to amend the pleadings shall not exceed **10,000 words**. So Ordered by Magistrate Judge James M. Wicks on 5/14/2024. (HM)

| [175] | *Filed & Entered:*<br>*Terminated:* | 05/14/2024<br>03/21/2025 | Motion to Dismiss for Failure to State a Claim |
|---|---|---|---|

*Docket Text:* MOTION to Dismiss for Failure to State a Claim by Flushing Bank. (Attachments: # (1) Declaration of Ariel Ronneburger, # (2) Exhibit A - Amended Complaint, # (3) Memorandum in Support) (Ronneburger, Ariel)

| [176] | *Filed & Entered:*<br>*Terminated:* | 05/14/2024<br>03/21/2025 | Motion to Dismiss for Failure to State a Claim |
|---|---|---|---|

*Docket Text:* MOTION to Dismiss for Failure to State a Claim by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Attachments: # (1) Memorandum in Support in Support of Motion to Dismiss, # (2) Declaration of Brian M. Levine, Esq., # (3) Exhibit A) (Levine, Brian)

| [177] | *Filed & Entered:*<br>*Terminated:* | 05/14/2024<br>03/21/2025 | Motion to Dismiss for Failure to State a Claim |
|---|---|---|---|

*Docket Text:* MOTION to Dismiss for Failure to State a Claim by J.P. Morgan Chase Bank, N.A.. (Attachments: # (1) Memorandum in Support, # (2) Declaration of Anthony C. Valenziano, Esq., # (3) Exhibit A to Valenziano Certification (Plaintiff's First Amended Complaint), # (4) Proposed Order) (Valenziano, Anthony)

| [178] | *Filed & Entered:*<br>*Terminated:* | 05/14/2024<br>03/21/2025 | Motion for Leave to File Document |
|---|---|---|---|

*Docket Text:* Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to amend pleadings vis-a-vis Flushing Bank's motion to dismiss* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto

LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| | | | |
|---|---|---|---|
| 179 | *Filed & Entered:* | 05/14/2024 | Memorandum in Opposition |

*Docket Text:* MEMORANDUM in Opposition re [175] MOTION to Dismiss for Failure to State a Claim *by Flushing Bank*, MEMORANDUM in Support re [178] Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to amend pleadings vis-a-vis Flushing Bank's motion to dismiss* filed by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| | | | |
|---|---|---|---|
| 180 | *Filed & Entered:* | 05/14/2024 | Affidavit in Support of Motion |

*Docket Text:* AFFIDAVIT/DECLARATION in Support re [178] Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to amend pleadings vis-a-vis Flushing Bank's motion to dismiss* filed by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - Plaintiffs' Proposed Second Amended Complaint in red-line) (Kataev, Emanuel)

| | | | |
|---|---|---|---|
| 181 | *Filed & Entered:*<br>Terminated: | 05/14/2024<br>03/21/2025 | Motion for Leave to File Document |

*Docket Text:* Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to file amended pleadings vis-a-vis remaining Defendants' motions to dismiss* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| | | | |
|---|---|---|---|
| 182 | *Filed & Entered:* | 05/14/2024 | Memorandum in Opposition |

*Docket Text:* MEMORANDUM in Opposition re [164] Fully Briefed MOTION to Dismiss for Failure to State a Claim , [168] MOTION to Dismiss for Failure to State a Claim , [177] MOTION to Dismiss for Failure to State a Claim , [176] MOTION to Dismiss for Failure to State a Claim *by remaining Defendants*, MEMORANDUM in Support re [181] Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to file amended pleadings vis-a-vis remaining Defendants' motions to dismiss* filed by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| | | | |
|---|---|---|---|
| 183 | *Filed & Entered:* | 05/14/2024 | Affidavit in Opposition to Motion |

*Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [164] Fully Briefed MOTION to Dismiss for Failure to State a Claim , [176] MOTION to Dismiss for Failure to State a Claim , [168] MOTION to Dismiss for Failure to State a Claim , [177] MOTION to Dismiss for Failure to State a Claim *by remaining Defendants*, AFFIDAVIT/DECLARATION in Support re [181] Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to file amended pleadings vis-a-vis remaining Defendants' motions to dismiss* filed by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto

LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., TeamAuto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - Plaintiffs' Proposed Third Amended Complaint ("TAC"), # (2) Exhibit B - Redline of Plaintiffs' First Amended Complaint & TAC, # (3) Exhibit C - Redline of Plaintiffs' Second Amended Complaint & TAC) (Kataev, Emanuel)

| [184](#) | *Filed & Entered:* | 05/14/2024 | Memorandum in Opposition |
|---|---|---|---|

*Docket Text:* MEMORANDUM in Opposition re [178] Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to amend pleadings vis-a-vis Flushing Bank's motion to dismiss* filed by Flushing Bank. (Ronneburger, Ariel)

| [185](#) | *Filed & Entered:* | 05/14/2024 | Affidavit in Opposition to Motion |
|---|---|---|---|

*Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [181] Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to file amended pleadings vis-a-vis remaining Defendants' motions to dismiss* filed by Flushing Bank. (Attachments: # (1) Exhibit A - Flushing Bank's Memorandum of Law in Support of its Motion to Dismiss, # (2) Exhibit B - Flushing Bank's Memorandum of Law in Further Support of its Motion to Dismiss First Amended Complaint and in Opposition to Plaintiff's Cross-Motion to Amended their First Amended Complaint) (Ronneburger, Ariel)

| [186](#) | *Filed & Entered:* | 05/14/2024 | Memorandum in Opposition |
|---|---|---|---|

*Docket Text:* MEMORANDUM in Opposition re [181] Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to file amended pleadings vis-a-vis remaining Defendants' motions to dismiss* filed by Flushing Bank. (Ronneburger, Ariel)

| [187](#) | *Filed & Entered:* | 05/14/2024 | Memorandum in Opposition |
|---|---|---|---|

*Docket Text:* MEMORANDUM in Opposition re [181] Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to file amended pleadings vis-a-vis remaining Defendants' motions to dismiss*, [182] Memorandum in Opposition,,,, Memorandum in Support,,, [164] Fully Briefed MOTION to Dismiss for Failure to State a Claim *Opposition of Defendant Libertas Funding LLC to Plaintiffs' Cross Motion for Leave to Further Amend Complaint* filed by Libertas Funding LLC. (Attachments: # (1) Proposed Order) (Golub, Bonnie)

| [188](#) | *Filed & Entered:* | 05/14/2024 | Memorandum in Opposition |
|---|---|---|---|

*Docket Text:* MEMORANDUM in Opposition re [183] Affidavit in Opposition to Motion,,,,,, Affidavit in Support of Motion,,,,, [181] Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to file amended pleadings vis-a-vis remaining Defendants' motions to dismiss*, [182] Memorandum in Opposition,,,, Memorandum in Support,,, [176] MOTION to Dismiss for Failure to State a Claim , MEMORANDUM in Support re [183] Affidavit in Opposition to Motion,,,,,, Affidavit in Support of Motion,,,,, [181] Notice of MOTION for Leave to File Document *; notice of cross-motion for leave to file amended pleadings vis-a-vis remaining Defendants' motions to dismiss*, [182] Memorandum in Opposition,,,, Memorandum in Support,,, [176] MOTION to Dismiss for Failure to State a Claim filed by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Levine, Brian)

| [189](#) | *Filed & Entered:* | 05/14/2024 | Reply in Support |
|---|---|---|---|

*Docket Text:* REPLY in Support re [177] MOTION to Dismiss for Failure to State a Claim filed by J.P. Morgan Chase Bank, N.A.. (Valenziano, Anthony)

| [190](#) | *Filed & Entered:* | 05/14/2024 | Memorandum in Opposition |
|---|---|---|---|

| | | | |
|---|---|---|---|
| | *Docket Text:* MEMORANDUM in Opposition re [181] Notice of MOTION for Leave to File Document ; *notice of cross-motion for leave to file amended pleadings vis-a-vis remaining Defendants' motions to dismiss* filed by J.P. Morgan Chase Bank, N.A.. (Valenziano, Anthony) | | |
| 191 | *Filed & Entered:* | 05/14/2024 | Memorandum in Opposition |
| | *Docket Text:* MEMORANDUM in Opposition re [181] Notice of MOTION for Leave to File Document ; *notice of cross-motion for leave to file amended pleadings vis-a-vis remaining Defendants' motions to dismiss* filed by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP. (Lentinello, John) | | |
| 192 | *Filed & Entered:* | 05/14/2024 | Reply in Support |
| | *Docket Text:* REPLY in Support re [168] MOTION to Dismiss for Failure to State a Claim filed by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP. (Lentinello, John) | | |
| 193 | *Filed & Entered:* | 05/14/2024 | Reply in Support |
| | *Docket Text:* REPLY in Support re [178] Notice of MOTION for Leave to File Document ; *notice of cross-motion for leave to amend pleadings vis-a-vis Flushing Bank's motion to dismiss* filed by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| 194 | *Filed & Entered:* | 05/14/2024 | Reply in Support |
| | *Docket Text:* REPLY in Support re [181] Notice of MOTION for Leave to File Document ; *notice of cross-motion for leave to file amended pleadings vis-a-vis remaining Defendants' motions to dismiss* filed by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| 195 | *Filed & Entered:*<br>*Terminated:* | 05/20/2024<br>05/21/2024 | Motion to Adjourn Conference |
| | *Docket Text:* MOTION to Adjourn Conference by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie) | | |
| | *Filed & Entered:* | 05/21/2024 | Order on Motion to Adjourn Conference |
| | *Docket Text:* ORDER granting [195] Motion to Adjourn Conference. In light of the representations in ECF No. [195], the oral argument scheduled for July 10, 2024 is **ADJOURNED** *sine die*. So Ordered by Magistrate Judge James M. Wicks on 5/21/2024. (HM) | | |
| 196 | *Filed & Entered:*<br>*Terminated:* | 06/02/2024<br>06/03/2024 | Motion for Protective Order |
| | *Docket Text:* MOTION for Protective Order: STATUS REPORT by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Attachments: # (1) Exhibit 1) (Felsen, Jamie) Modified on 6/3/2024 to change Event Type to Motion for Protective Order (DF). | | |
| 197 | *Filed & Entered:* | 06/03/2024 | Order on Motion for Protective Order |
| | *Docket Text:* ORDER granting [196] Motion for Confidentiality Order. The Confidentiality Order is So Ordered. Please see attachment for further details. So Ordered by Magistrate Judge James M. Wicks on 6/3/2024. (HM) | | |
| 198 | *Filed & Entered:*<br>*Terminated:* | 09/16/2024<br>09/25/2024 | Motion for Extension of Time to Complete Discovery |

| | | |
|---|---|---|
| *Docket Text:* MOTION for Extension of Time to Complete Discovery by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie) | | |

| | | |
|---|---|---|
| *Filed & Entered:* | 09/17/2024 | Scheduling Order |

*Docket Text:* ORDER. In light of the representations in the recently filed motion (ECF No. [198]), a Status Conference has been scheduled for **September 24, 2024 at 2:00 PM via the Court's Zoom** before the undersigned. A Zoom link will be sent to counsel closer to the conference date. So Ordered by Magistrate Judge James M. Wicks on 9/17/2024. (HM)

| | | |
|---|---|---|
| *Filed & Entered:* | 09/18/2024 | Order |

*Docket Text:* ORDER: In light of the pending Motion for Extension of Time to Complete Discovery and the Status Conference scheduled for September 24, 2024 at 2:00 PM before the undersigned, the Final Pretrial Conference scheduled for September 30, 2024 at 10:00 AM is hereby **adjourned** *sine die*. So Ordered by Magistrate Judge James M. Wicks on 9/18/2024. (DF)

| | | | |
|---|---|---|---|
| [199](#) | *Filed:* | 09/24/2024 | Status Conference |
| | *Entered:* | 09/25/2024 | |

*Docket Text:* Minute Order for proceedings held before Magistrate Judge James M. Wicks: CIVIL CAUSE FOR STATUS CONFERENCE: Counsel for Plaintiffs (Superb Motors Inc, Team Auto Sales LLC and Robert Anthony Urrutia): Jamie Scott Felsen, Emanuel Kataev. Counsel for Plaintiffs (189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian Chabrier, Joshua Aaronson, Jory Baron, 1581 Hyland Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hyland Blvd Auto LLC, 1239 Hyland Blvd Auto LLC, 2519 Hyland Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC and Island Auto Management, LLC): Jeffrey C. Ruderman. Counsel for Defendants (Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC and UEA Premier Motors Corp.): Brian M. Levine. Counsel for Defendants (Thomas Jones, CPA, Jones, Little & Co., CPA's LLP): John Anthony Lentinello. Counsel for Defendants (Flushing Bank): Ariel E. Ronneburger. Counsel for Defendant (Libertas Funding LLC): Bonnie Rae Golub. Counsel for Defendants (J.P. Morgan Chase Bank, N.A.): Anthony Carmine Valenziano. Status Conference held on September 24, 2024 at 2:00 PM. All discovery dates and deadlines are held in abeyance pending the next Status Conference. A Status Conference has been scheduled for **November 4, 2024 at 3:00 PM** via the Court's Video Zoom. The Court will email the Zoom invitation closer to the conference date. This conference is a public proceeding, and all are welcome to attend via telephone or via video. If you would like to receive the Zoom invitation, please contact Judge Wicks Courtroom Deputy at (631) 712-5625. **Parties shall comply with Judge Wicks' Individual Rules regarding Expectations for Remote Appearances (Rule §1E)**. THE PARTIES ARE REMINDED that audio or video recording of proceedings by any party other than the Court is strictly prohibited by Local Civil Rule 1.8. Violation of this rule may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed appropriate by the Court. (FTR Log #2:02-2:11 (Video).) (DF)

| | | |
|---|---|---|
| *Filed & Entered:* | 09/25/2024 | Order on Motion for Extension of Time to Complete Discovery |

*Docket Text:* ORDER. In light of the undersigned's holding all dates and deadlines in abeyance pending the next Status Conference (ECF No. [199]), the Motion for Extension of Time to Complete Discovery (ECF No. [198]) is **granted**. So Ordered by Magistrate Judge James M. Wicks on 9/25/2024. (HM)

| | | |
|---|---|---|
| *Filed & Entered:* | 09/27/2024 | Order on Motion to Amend/Correct/Supplement |

*Docket Text:* ORDER denying [200] Motion to Amend/Correct/Supplement. Plaintiffs' motion is denied for the following reasons: (1) the motion is beyond the Court's imposed discovery schedule deadline for motions for leave to amend (*see* ECF No. [142]); (2) the issue raised in the filed motion was never presented in the recent status

| | | |
|---|---|---|
| | conference held on September 24, 2024; (3) the motion does not meet the requirements of Fed R. Civ. P. 15 and 16; and (4) there are pending motions for leave to amend the complaint, so the request is deemed premature. So Ordered by Magistrate Judge James M. Wicks on 9/27/2024. (HM) | |

| 200 | *Filed & Entered:* | 09/27/2024 | Motion to Amend/Correct/Supplement |
|---|---|---|---|
| | *Terminated:* | 09/27/2024 | |
| | *Docket Text:* Letter MOTION to Amend/Correct/Supplement *Plaintiffs' complaint* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit - Plaintiffs' proposed Fourth Amended Complaint) (Kataev, Emanuel) | | |

| 201 | *Filed & Entered:* | 10/01/2024 | Notice of Related Case |
|---|---|---|---|
| | *Docket Text:* Notice of Related Case: **The Civil Cover Sheet filed in civil action 24cv6903(AYS) indicates this is a related case.** (LJ) | | |

| 202 | *Filed & Entered:* | 10/09/2024 | Motion for Contempt |
|---|---|---|---|
| | *Terminated:* | 03/21/2025 | |
| | *Docket Text:* Letter MOTION for Contempt *and Modification of the Preliminary Injunction* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Attachments: # (1) Declaration of Anthony Deo in Support, # (2) Exhibit Exhibit A - Photographs of GCM Lot, # (3) Exhibit Exhibit B - Certificate of Insurance, # (4) Declaration of Brian M. Levine, Esq., # (5) Exhibit Exhibit C - List of Vehicles from So-Ordered Stipulation) (Levine, Brian) | | |

| 203 | *Filed & Entered:* | 10/15/2024 | Response in Opposition to Motion |
|---|---|---|---|
| | *Docket Text:* RESPONSE in Opposition re [202] Letter MOTION for Contempt *and Modification of the Preliminary Injunction with cross-request for consolidation and sanctions against the Deo Defendants for evading the disqualification Order as well as engaging in vexatious litigation* filed by All Plaintiffs. (Kataev, Emanuel) | | |

| 204 | *Filed & Entered:* | 10/15/2024 | Affidavit in Opposition to Motion |
|---|---|---|---|
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [202] Letter MOTION for Contempt *and Modification of the Preliminary Injunction of Robert Anthony Urrutia* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - NMAC UCC Financing Statement, # (2) Exhibit B - Defendant Anthony Deo's fraudulent March 1, 2023 financial statement) (Kataev, Emanuel) | | |

| | *Filed & Entered:* | 10/16/2024 | Scheduling Order |
|---|---|---|---|
| | *Docket Text:* ORDER. The parties are directed to appear before the undersigned for an in-person Oral Argument on the Motion for Contempt at ECF No. [202] on **November 1, 2024 at 1:00 PM** in Courtroom 1020. Defendants are directed to file any Reply to the Response in Opposition at ECF No. [203] on or before **October 25, 2024**. So Ordered by Magistrate Judge James M. Wicks on 10/16/2024. (DN) | | |

| | *Filed & Entered:* | 10/16/2024 | Order |
|---|---|---|---|
| | *Docket Text:* ORDER. Any opposition to the Motion to Consolidate Cases at ECF No. 22 in Case No. 2:24-cv-06903-JMW *Deo et al v. Baron et al* must be filed on or before **October 30, 2024**. So Ordered by Magistrate Judge James M. Wicks on 10/16/2024. (DN) | | |

| 205 | *Filed & Entered:* | 10/22/2024 | Letter |
|---|---|---|---|
| | *Docket Text:* Letter *Requesting Flushing Bank be Excused from Attending the In-Person Oral Argument Scheduled for November 1, 2024* by Flushing Bank (Ronneburger, Ariel) | | |

| 206 | *Filed & Entered:* | 10/22/2024 | Letter |
|---|---|---|---|

| | | | |
|---|---|---|---|
| | *Docket Text:* Letter *Requesting Thomas Jones and JLC be excused from oral argument* by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP (Lentinello, John) | | |
| 207 | *Filed & Entered:* | 10/22/2024 | Letter |
| | *Docket Text:* Letter *Requesting Libertas Funding LLC be Excused from Attending the In-Person Oral Argument Scheduled for November 1, 2024* by Libertas Funding LLC (Golub, Bonnie) | | |
| 208 | *Filed & Entered:* | 10/23/2024 | Letter |
| | *Docket Text:* Letter *Requesting JPMorgan Chase Bank, NA be Excused from Attending In-Person Oral Argument Scheduled for November 1, 2024* by J.P. Morgan Chase Bank, N.A. (Valenziano, Anthony) | | |
| 209 | *Filed & Entered:* | 10/23/2024 | Letter |
| | *Docket Text:* Letter *request excusing appearance at November 1, 2024 oral argument* by 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC, Marc Merckling, 189 Sunrise Auto LLC, Brian Chabrier, Joshua Aaronson, Jory Baron, 1581 Hylan Blvd Auto LLC (Ruderman, Jeffrey) | | |
| | *Filed & Entered:* | 10/25/2024 | Terminate Deadlines and Hearings |
| | *Docket Text:* ORDER. The in-person Oral Argument on the Motion for Contempt at ECF No. [202] on November 1, 2024 at 1:00 PM in Courtroom 1020 is hereby **RESCHEDULED** for **December 13, 2024 at 12:00 PM**. The deadline in which Defendants were directed to file any Reply to the Response in Opposition at ECF No. [203], today, October 25, 2024, otherwise remains in place. The parties are directed to submit courtesy copies of the Motion papers to Chambers by November 8, 2024. So Ordered by Magistrate Judge James M. Wicks on 10/25/2024. (DN) | | |
| | *Filed & Entered:* | 10/25/2024 | Order |
| | *Docket Text:* ORDER re [205], [206], [207], [208], and [209] Letters Requesting to Be Excused. Defendants Flushing Bank, Thomas Jones, CPA, Jones, Little & Co., CPA's, LLP, Libertas Funding LLC, JPMorgan Chase Bank, N.A, and Island Auto Plaintiffs are hereby excused from attending the in-person Oral Argument scheduled for December 13, 2024 at 12:00 PM on the Motion for Contempt at ECF No. 202. So Ordered by Magistrate Judge James M. Wicks on 10/25/2024. (DN) | | |
| 210 | *Filed & Entered:* | 10/25/2024 | Reply to Response to Motion |
| | *Docket Text:* REPLY to Response to Motion re [202] Letter MOTION for Contempt *and Modification of the Preliminary Injunction* , AFFIDAVIT/DECLARATION in Support re [202] Letter MOTION for Contempt *and Modification of the Preliminary Injunction* filed by Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp.. (Attachments: # (1) Declaration of Anthony Deo in Reply) (Levine, Brian) | | |
| 211 | *Filed & Entered:*<br>*Terminated:* | 10/27/2024<br>10/28/2024 | Motion for Leave to File Document |
| | *Docket Text:* Letter MOTION for Leave to File Document *consisting of sur-reply in opposition to the Deo Defendants' letter motion for contempt* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| | *Filed & Entered:* | 10/28/2024 | Order on Motion for Leave to File |
| | *Docket Text:* ORDER denying [211] Motion for Leave to File. The Superb Plaintiffs' request to file a sur-reply to the Deo Defendants' letter reply in further support of their Motion for Contempt is **denied**, as its contents would not change the result in this case. That sur-reply repeats an argument "already present in [the Superb Plaintiffs'] opposition [letter]." *See* ECF No. 203; *Convergen Energy LLC v. Brooks*, 2020 WL 4500184, at *3 (S.D.N.Y. | | |

Aug. 5, 2020), *reconsideration denied*, 2020 WL 5549039 (S.D.N.Y. Sept. 16, 2020); *see also Kapiti v. Kelly*, 2008 WL 754686, at *1 n.1 (S.D.N.Y. Mar. 12, 2008) ("Allowing parties to submit sur-replies is not a regular practice that courts follow, because such a procedure has the potential for placing a court in the position of refereeing an endless volley of briefs."). So Ordered by Magistrate Judge James M. Wicks on 10/28/2024. (DN)

| 212 | *Filed & Entered:* | 10/29/2024 | Reply in Opposition |
|---|---|---|---|

*Docket Text:* REPLY in Opposition re [202] Letter MOTION for Contempt *and Modification of the Preliminary Injunction*, [203] Response in Opposition to Motion, *Opposition to Cross-Letter MOTION for Consolidation* filed by Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp., DLA Capital Partners Inc.. (Levine, Brian)

| | *Filed & Entered:* | 11/01/2024 | Order |
|---|---|---|---|

*Docket Text:* ORDER. The Status Conference scheduled for November 4, 2024 at 3:00 PM via the Court's Video Zoom is hereby **cancelled**. All discovery dates and deadlines are held in abeyance pending the undersigned's issuance of a decision on the pending motions to dismiss in this case. So Ordered by Magistrate Judge James M. Wicks on 11/1/2024. (DN)

| | *Filed & Entered:* | 11/28/2024 | Terminate Deadlines and Hearings |
|---|---|---|---|

*Docket Text:* ORDER. Due to a conflict in the Court's calendar, the in-person Oral Argument on the Motion for Contempt at ECF No. [202] on December 13, 2024 at 12:00 PM in Courtroom 1020 is hereby **RESCHEDULED** for **December 20, 2024 at 12:00 PM**. So Ordered by Magistrate Judge James M. Wicks on 11/28/2024. (DN)

| 213 | *Filed & Entered:*<br>*Terminated:* | 12/03/2024<br>12/06/2024 | Motion to Adjourn Conference |
|---|---|---|---|

*Docket Text:* Consent MOTION to Adjourn Conference *currently scheduled for Friday, December 20, 2024* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| | *Filed & Entered:* | 12/06/2024 | Order on Motion to Adjourn Conference |
|---|---|---|---|

*Docket Text:* ORDER granting [213] Motion to Adjourn Conference. The in-person Oral Argument on the Motion for Contempt at ECF No. [202] is hereby **RESCHEDULED** for **January 10, 2025 at 12:30 PM** in Courtroom 1020 before the undersigned. So Ordered by Magistrate Judge James M. Wicks on 12/6/2024. (DN)

| 214 | *Filed & Entered:* | 01/10/2025 | Motion Hearing |
|---|---|---|---|

*Docket Text:* Minute Order for proceedings held before Magistrate Judge James M. Wicks: CIVIL CAUSE FOR MOTION HEARING: Counsel for Plaintiffs (Superb Motors Inc, Team Auto Sales LLC and Robert Anthony Urrutia): Emanuel Kataev. Counsel for Plaintiffs (189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian Chabrier, Joshua Aaronson, Jory Baron, 1581 Hyland Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hyland Blvd Auto LLC, 1239 Hyland Blvd Auto LLC, 2519 Hyland Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC and Island Auto Management, LLC): Appearance Excused. Counsel for Defendants (Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC and UEA Premier Motors Corp.): Brian M. Levine. Counsel for Defendants (Thomas Jones, CPA, Jones, Little & Co., CPA's LLP): Appearance Excused. Counsel for Defendants (Flushing Bank): Appearance Excused. Counsel for Defendants (Libertas Funding LLC): Appearance Excused. Counsel for Defendants (J.P. Morgan Chase Bank, N.A.): Appearance Excused. Oral Argument held on 01/10/2025 at 12:30 PM regarding Motion for Contempt and Modification of the Preliminary Injunction (ECF No. [202]) and Cross Motion for Consolidation and Sanctions (ECF No. [203]). Parties' arguments were heard. The decision as to the

Motion for Contempt at ECF No. [202] was reserved. The Court will issue a written decision. Interim rulings were made as to the remaining Motions, as specified in the attached Order at ECF No. [215]. (FTR Log #12:35-1:03 (FTR).) (DF)

| 215 | *Filed & Entered:* | 01/10/2025 | Order |
|---|---|---|---|
| | *Docket Text:* ORDER re: Interim Rulings: Please See attached Order for Further Details. So Ordered by Magistrate Judge James M. Wicks on 1/10/2025. (DF) | | |
| 216 | *Filed & Entered:* | 01/13/2025 | Declaration |
| | *Docket Text:* DECLARATION re [215] Order *in compliance with this Court's Order dated January 10, 2025* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Attachments: # (1) Exhibit B - insurance certificates) (Kataev, Emanuel) | | |
| 217 | *Filed & Entered:*<br>*Terminated:* | 01/17/2025<br>01/27/2025 | Motion to Amend/Correct/Supplement |
| | *Docket Text:* Letter MOTION to Amend/Correct/Supplement [215] Order by Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp.. (Levine, Brian) | | |
| | *Filed & Entered:* | 01/20/2025 | Order |
| | *Docket Text:* ORDER re [217] Motion to Amend/Correct/Supplement. The Deo Defendants are directed to provide a Proposed Order to Plaintiff's Counsel regarding the relocation of the Deo Injuncted Vehicles on or before January 22, 2025. The parties are directed to file a Joint Letter, on or before January 24, 2025, with the Proposed Order agreed upon by the parties. So Ordered by Magistrate Judge James M. Wicks on 1/20/2025. (DN) | | |
| 218 | *Filed & Entered:* | 01/23/2025 | Letter |
| | *Docket Text:* Letter *Joint Letter* by Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp. (Attachments: # (1) Proposed Order) (Levine, Brian) | | |
| 219 | *Filed & Entered:* | 01/24/2025 | Response in Opposition to Motion |
| | *Docket Text:* RESPONSE in Opposition re [202] Letter MOTION for Contempt *and Modification of the Preliminary Injunction submitted as a supplemental letter brief in accordance with this Court's Order dated January 10, 2025 (ECF Docket Entry 215)* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| 220 | *Filed & Entered:* | 01/24/2025 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [202] Letter MOTION for Contempt *and Modification of the Preliminary Injunction submitted as a supplemental declaration in accordance with this Court's Order dated January 10, 2025 (ECF Docket Entry 215)* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - First Amended and Restated Cross-Guaranty, Cross-Collateral, and Cross-Default Agreement, # (2) Exhibit B - Superb 2023 Bank Statements, # (3) Exhibit C - Correspondence with Superb and Deo dated December 5, 2022, # (4) Exhibit D - Summary of Financials, # (5) Exhibit E - Correspondence with NMAC and Spreadsheet regarding floored Superb Injuncted Vehicles, # (6) Exhibit F - Team Mitsubishi-Hartford September 2023 Bank Statement, # (7) Exhibit G - Volkswagen of Freehold September 2023 Bank Statement, # (8) Exhibit H - Proof of Payment & Titles for Deo Injuncted Vehicles, # (9) Exhibit I - Summary of Financial Status of Injuncted Vehicles, # (10) Exhibit J - Counterclaim against NMAC, # | | |

(11) Exhibit K - Correspondence with NMAC in April 2024, # (12) Exhibit L - Correspondence with NMAC in April & May 2024, # (13) Exhibit M - Possession and Surrender Agreement with NMAC, # (14) Exhibit N - Proof of Deo's Violations of Justice Gianelli's Injunction, # (15) Exhibit O - Proof of Payment by Superb for Deo Vehicles Sold in Violation of Justice Gianelli's Injunction, # (16) Exhibit P - Proof of Deo's Payment of Double-Floored Rolls Royce, # (17) Exhibit Q - Correspondence with NMAC in April 2023) (Kataev, Emanuel)

| 221 | Filed & Entered: | 01/24/2025 | Letter |
|---|---|---|---|
| | Docket Text: Letter *Brief on Issue of Encumbrances* by Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp. (Levine, Brian) | | |

| 222 | Filed & Entered: | 01/27/2025 | Order on Motion to Amend/Correct/Supplement |
|---|---|---|---|
| | Docket Text: ORDER granting [217] Motion to Amend/Correct/Supplement. See attached Order for further details. So Ordered by Magistrate Judge James M. Wicks on 1/27/2025. (DN) | | |

| 223 | Filed & Entered:<br>Terminated: | 01/28/2025<br>01/29/2025 | Motion for Leave to File Document |
|---|---|---|---|
| | Docket Text: Letter MOTION for Leave to File Document *Supplemental Reply to Superb Plaintiffs' Supplemental Opposition* by Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp.. (Levine, Brian) | | |

| | Filed & Entered: | 01/29/2025 | Order on Motion for Leave to File |
|---|---|---|---|
| | Docket Text: ORDER granting [223] Motion for Leave to File. The Deo Defendants shall file their Supplemental Reply on or before February 5, 2025. So Ordered by Magistrate Judge James M. Wicks on 1/29/2025. (DN) | | |

| 224 | Filed & Entered: | 02/05/2025 | Reply in Support |
|---|---|---|---|
| | Docket Text: REPLY in Support re [219] Response in Opposition to Motion, Order on Motion for Leave to File, [221] Letter, [220] Affidavit in Opposition to Motion,,,,,, filed by Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp.. (Levine, Brian) | | |

| 225 | Filed & Entered:<br>Terminated: | 02/07/2025<br>05/22/2025 | Motion for Contempt |
|---|---|---|---|
| | Docket Text: Third MOTION for Contempt by Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp.. (Attachments: # (1) Declaration of Brian M. Levine, # (2) Exhibit A - Odometer Photographs) (Levine, Brian) | | |

| | Filed & Entered: | 02/09/2025 | Order |
|---|---|---|---|
| | Docket Text: ORDER. Plaintiffs are directed to file any opposition to the Third Motion for Contempt at ECF No. 225 on or before **February 19, 2025**. So Ordered by Magistrate Judge James M. Wicks on 2/9/2025. (DN) | | |

| 226 | Filed & Entered:<br>Terminated: | 02/18/2025<br>02/19/2025 | Motion for Extension of Time to File Document |
|---|---|---|---|
| | Docket Text: Consent MOTION for Extension of Time to File *response in opposition to Deo Defendants' third letter motion for contempt* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, | | |

| | Emanuel) | | |
|---|---|---|---|
| | *Filed & Entered:* | 02/19/2025 | Order on Motion for Extension of Time to File |
| | *Docket Text:* ORDER granting [226] Motion for Extension of Time to File. Plaintiffs are directed to file any opposition to the Third Motion for Contempt at ECF No. 225 on or before **March 5, 2025**. There will be no further extensions. So Ordered by Magistrate Judge James M. Wicks on 2/19/2025. (DN) | | |
| [227](#) | *Filed & Entered:* | 03/02/2025 | Response in Opposition to Motion |
| | *Docket Text:* RESPONSE in Opposition re [225] Third MOTION for Contempt filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| [228](#) | *Filed & Entered:* | 03/02/2025 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [225] Third MOTION for Contempt filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - September and October 2023 email correspondence (business records), # (2) Exhibit B - 2016 Audi A6 documents, # (3) Exhibit C - 2016 Audi Q5 documents, # (4) Exhibit D - 2017 Rolls Royce Dawn documents, # (5) Exhibit E - 2019 Land Rover Range Rover documents, # (6) Exhibit F - 2023 Chevrolet Suburban documents, # (7) Exhibit G - 2020 Mercedes Benz GLE documents) (Kataev, Emanuel) | | |
| [229](#) | *Filed & Entered:* 03/18/2025<br>*Terminated:* 05/20/2025 | | Motion to Intervene |
| | *Docket Text:* MOTION to Intervene *and upon intervention vacating the injunction order dated September 29, 2023 and the order dated May 8, 2024 modifying the injunction and for related relief* by Nissan Motor Acceptance Company LLC. (Attachments: # (1) Declaration of Nicholas A Savino, # (2) Declaration of Gregory Brown (NMAC Declaration), # (3) Declaration of Robert Anthony Urrutia, # (4) Exh. 1 Wholesale Agreement, # (5) Exh. 2 Capital Loan Agreement, # (6) Exh. 3 Cross Collateralization Agreement, # (7) Exh. 4 Surrender Agreement, # (8) Memorandum of law in support of motion to intervene) (Savino, Nicholas) | | |
| | *Filed & Entered:* | 03/19/2025 | Order |
| | *Docket Text:* ORDER. Any opposition to the Motion to Intervene at ECF No. 229 is due on or before **April 2, 2025**. So Ordered by Magistrate Judge James M. Wicks on 3/19/2025. (DN) | | |
| [230](#) | *Filed & Entered:* | 03/21/2025 | Order on Motion to Dismiss for Failure to State a Claim |
| | *Docket Text:* OPINION AND ORDER re [164] Motion to Dismiss for Failure to State a Claim; re [168] Motion to Dismiss for Failure to State a Claim; re [175] Motion to Dismiss for Failure to State a Claim; re [176] Motion to Dismiss for Failure to State a Claim and re [177] Motion to Dismiss for Failure to State a Claim. As set forth in the attached Opinion and Order, the Deo Defendants' Motion to Dismiss (ECF No. [176]) is **GRANTED** *in part* and **DENIED** *in part*. The following claims are dismissed with prejudice: (a) Tortious Interference with Contracts, Business Relations, and Prospective Economic Advantage against the Deo Defendants;(b) Defend Trade Secrets Act Claims, including Misappropriation under the DTSA against the Deo Defendants; (c) Violation of New York Judiciary Law § 487 against Thomasson; (d) Piercing the Corporate Veil against Deo;(e) Violation of New York GBL § 349 against Deo; (f) Permanent Injunction against Deo; Libertas Funding (g) Declaratory Judgment against Deo (h) Contribution and Indemnification for Fraud, Breach of Fiduciary Duty, Breach of Loyalty and Conversion against Deo; and (i) Contribution and Indemnification for Conversion and Aiding and Abetting Conversion, Fraud, Breach of Fiduciary Duty, Bready of Fiduciary Duty against Thomasson. (ii)the Bank Defendants' Motions to Dismiss (ECF Nos. [164], [175] and [177]) are **GRANTED** *in part* and **DENIED** *in part*. The following claims are dismissed with prejudice: (a) Permanent Injunction against Libertas Funding; (b) Plaintiffs' RICO Claims against Bank Defendants; (c) Conversion claims against the Bank Defendants; (d)Negligence and Unauthorized Payments against the Bank Defendants; (e) Drawee Liability against Chase Bank; (f)New York UCC §3-419 against the Bank Defendants; (iii) the CPA Defendants' Motions to Dismiss (ECF No. [168]) is **GRANTED**. The following claims are dismissed with prejudice: (a) Plaintiffs' RICO Claims against CPA Defendants; (b)Plaintiffs' Fraud Claims | | |

against Jones; and (c)Professional Malpractice against the CPA Defendants. (iv) Plaintiffs' Motions for Leave to Amend (ECF Nos. [178] and [181]) are **GRANTED** *in part* and **DENIED** *in part*, consistent with this Order. Plaintiffs are directed to file an Amended Complaint consistent with the rulings in the Order on or before April 4, 2025. So Ordered by Magistrate Judge James M. Wicks on 3/21/2025. (DF)

| 231 | *Filed:* | 03/21/2025 | Order on Motion for Contempt |
|-----|----------|------------|------------------------------|
|     | *Entered:* | 03/24/2025 |                            |

*Docket Text:* MEMORANDUM AND ORDER re [202] Motion for Contempt: As set forth in the attached Memorandum and Order, the Deo Defendants' Motion for Contempt (ECF No. [202]) is **GRANTED**. Accordingly, it is **HEREBY ORDERED** that Superb Plaintiffs are held in civil contempt for failing to comply with an express order of this Court. Based on the finding of civil contempt, the undersigned directs the parties to appear for an evidentiary hearing on **April 25, 2025 at 2:00 p.m.** in courtroom 1020 at 100 Federal Plaza, Central Islip, New York, pursuant to the Local Rule §83.6(b) of the United States District Courts for the Southern and Eastern District of New York, to assess the damages and remedies available to the Defendants for the violation of the preliminary injunction. Both parties are directed to file letter briefs addressing this sole issue on **April 11, 2025**. There will be no oppositions or replies unless ordered by the Court. So Ordered by Magistrate Judge James M. Wicks on 3/21/2025. (DF)

| 232 | *Filed & Entered:* | 03/24/2025 | Motion to Withdraw as Attorney |
|-----|--------------------|------------|---------------------------------|
|     | *Terminated:* | 03/25/2025 |                                 |

*Docket Text:* Letter MOTION to Withdraw as Attorney by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie)

|  | *Filed & Entered:* | 03/25/2025 | Order on Motion to Withdraw as Attorney |
|--|--------------------|------------|------------------------------------------|

*Docket Text:* ORDER: The Motion to Withdraw as Attorney [232] is **denied, *without prejudice and with leave to renew***. Counsel for Plaintiffs' application fails to comply with Local Rule 1.4 of the United States District Court for the Southern and Eastern Districts of New York and, as such, the application is denied without prejudice and with leave to renew. Counsel for Plaintiffs is directed to file a motion conforming to Rule 1.4 on ECF on or before **March 28, 2025**. Opposition papers to this renewed application shall be filed on or before **April 4, 2025**. Counsel for Plaintiffs is directed to serve its client with a copy of this Order and file proof of service on ECF on or before **March 27, 2025**. So Ordered by Magistrate Judge James M. Wicks on 3/25/2025. (JAF)

| 233 | *Filed & Entered:* | 03/25/2025 | Motion to Withdraw as Attorney |
|-----|--------------------|------------|---------------------------------|
|     | *Terminated:* | 04/07/2025 |                                 |

*Docket Text:* MOTION to Withdraw as Attorney by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie)

| 234 | *Filed & Entered:* | 03/25/2025 | Affidavit in Support of Motion |
|-----|--------------------|------------|---------------------------------|

*Docket Text:* AFFIDAVIT/DECLARATION in Support re [233] MOTION to Withdraw as Attorney filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie)

| 235 | *Filed & Entered:* | 03/25/2025 | Memorandum in Support |
|-----|--------------------|------------|------------------------|

*Docket Text:* MEMORANDUM in Support re [233] MOTION to Withdraw as Attorney filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Felsen, Jamie)

| 236 | *Filed & Entered:* | 03/25/2025 | Certificate of Service |
|-----|--------------------|------------|-------------------------|

*Docket Text:* CERTIFICATE OF SERVICE by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia re [235] Memorandum in Support, [233] MOTION to Withdraw as Attorney , [234] Affidavit in Support of Motion, Order on Motion to Withdraw as Attorney,,, (Felsen, Jamie)

| 237 | *Filed & Entered:* | 03/25/2025 | Letter |
|-----|--------------------|------------|--------|

| | | | |
|---|---|---|---|
| | *Docket Text:* Letter *to Honorable James M. Wicks Requesting Flushing Bank Be Excused from Attending the Evidentiary Hearing Scheduled for April 25, 2025* by Flushing Bank (Ronneburger, Ariel) | | |
| | *Filed & Entered:* | 03/26/2025 | Order |
| | *Docket Text:* ORDER granting [237] excusing Defendant Flushing Bank from attending the Evidentiary Hearing on April 25, 2025. So Ordered by Magistrate Judge James M. Wicks on 3/26/2025. (JAF) | | |
| 238 | *Filed & Entered:* | 03/28/2025 | Letter |
| | *Docket Text:* Letter *to the Honorable James M. Wicks Requesting Libertas Funding LLC be Excused from Attending the Hearing scheduled for April 25, 2025* by Libertas Funding LLC (Golub, Bonnie) | | |
| | *Filed & Entered:* | 03/29/2025 | Order |
| | *Docket Text:* ORDER granting [238] excusing Defendant Libertas Funding LLC from attending the Evidentiary Hearing on April 25, 2025. So Ordered by Magistrate Judge James M. Wicks on 3/29/2025. (JAF) | | |
| 239 | *Filed & Entered:* | 04/02/2025 | Memorandum in Opposition |
| | *Docket Text:* MEMORANDUM in Opposition re [229] MOTION to Intervene *and upon intervention vacating the injunction order dated September 29, 2023 and the order dated May 8, 2024 modifying the injunction and for related relief* , AFFIDAVIT/DECLARATION in Opposition re [229] MOTION to Intervene *and upon intervention vacating the injunction order dated September 29, 2023 and the order dated May 8, 2024 modifying the injunction and for related relief* filed by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Attachments: # (1) Declaration of Brian M. Levine) (Levine, Brian) | | |
| 240 | *Filed & Entered:*<br>*Terminated:* | 04/03/2025<br>08/01/2025 | Motion for Reconsideration |
| | *Docket Text:* Letter MOTION for Reconsideration re [230] Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,, *related to causes of action concerning Northshore and Sunrise as well as the dismissal of fraud and malpractice claims against the CPA Defendants*, Letter MOTION for Extension of Time to File *complaint sine die pending the resolution of the instant motion* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| 241 | *Filed & Entered:* | 04/03/2025 | Affidavit in Support of Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Support re [240] Letter MOTION for Reconsideration re [230] Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,, *related to causes of action concerning Northshore and Sunrise as well as the dismissal of f*Letter MOTION for Extension of Time to File *complaint sine die pending the resolution of the instant motion* filed by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - email produced by Deo Defendants, # (2) Exhibit B - financial statement produced by CPA Defendants, # (3) Exhibit C - email produced by CPA Defendants, # (4) Exhibit D - email produced by CPA Defendants, # (5) Exhibit E - email produced by CPA Defendants) (Kataev, Emanuel)* | | |
| | *Filed & Entered:* | 04/04/2025 | Order |

*Docket Text:* ORDER. Any opposition to Plaintiffs' Motion for Reconsideration [240] must be filed **on or before April 11, 2025** . No reply papers are to be submitted unless the Court directs otherwise. So Ordered by Magistrate Judge James M. Wicks on 4/4/2025. (JAF)

| *Filed & Entered:* | 04/07/2025 | Order on Motion to Withdraw as Attorney |
|---|---|---|

*Docket Text:* ORDER granting [233] Motion to Withdraw as Attorney. Jamie Felsen and the firm of Milman Labuda Law Group PLLC is terminated for this matter as counsel for Plaintiffs Superb Motors Inc., Team Auto Sales LLC, and Robert Anthony Urrutia. Courts in this District have granted motions to withdraw under similar circumstances. *See, e.g., Chase Bank USA, N.A. v. Allegro Law, LLC* , No. 08-CV-4039 (DRH) (WDW), 2011 WL 13302729, at *1 (E.D.N.Y. June 23, 2011) (finding that clients failure to pay legal fees constituted a basis for granting motion to withdraw) (collecting cases); *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.* , 464 F. Supp. 2d 164, 166 (E.D.N.Y. 2006) ("Courts have long recognized that a client's continued refusal to pay legal fees constitutes a satisfactory reason for withdrawal under Local Rule 1.4.") (collecting cases). Local Rule 1.4 provides that "[a]n attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the Court" and that "[s]uch an order may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement." Here, counsel for Plaintiffs, the Milman Labuda Law Group PLLC ("MLLG") is requesting withdrawal as counsel of record due to Plaintiffs' inability to continue payment. (ECF No. 235.) MLLG has represented Plaintiffs alongside Sage Legal LLC since the commencement of this action, which remains as counsel of record (*Id.*) No opposition has been filed. In light of these circumstances, there is no likelihood of prejudice to Plaintiffs. Further, this Court finds that Counsel has complied with Local Rule 1.4. Jamie Felsen and MLLG are terminated as counsel of record in this matter. So Ordered by Magistrate Judge James M. Wicks on 4/7/2025. (JAF).

| *Filed & Entered:* | 04/09/2025 | Order on Motion to Stay |
|---|---|---|

*Docket Text:* ORDER denying in part Motion to Stay (ECF No. 243). The parties are directed to file letter briefs as ordered on or before 4/11/2025 (ECF No. 231). The letter briefs are a result of this court's ruling on Defendants' motion to compel filed at ECF No. 202. The Court notes that counsel's application to withdraw is based solely upon non-payment (NY Rule of Prof. Conduct 1.16(c)(5)), and not irreconcilable differences (NY Rule of Prof. Conduct 1.16(c)(7)). Without prejudging the motion to withdraw filed at ECF No. 242, the Court does note however that non-payment or failure to pay alone, without "deliberate disregard" of a fee arrangement, may not be sufficient for permissive withdrawal under the rules. See United States v. Parker, 439 F.3d 81 (2d Cir, 2006). The evidentiary hearing is adjourned sine die and will not take place on 4/25/2025. Furthermore, any opposition to the motion to withdraw filed at ECF No. 242 shall be filed on or before 4/18/2025. Counsel for Deo Defendants shall serve a copy of this Electronic Order upon his clients and file proof of service of same on ECF by 4/11/2025. So Ordered by Magistrate Judge James M. Wicks on 4/9/2025. (Wicks, James)

| 242 | *Filed & Entered:* | 04/09/2025 | Motion to Withdraw as Attorney |
|---|---|---|---|
| | *Terminated:* | 04/22/2025 | |

*Docket Text:* First MOTION to Withdraw as Attorney *of the Deo Defendants* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Attachments: # (1) Memorandum in Support of Motion to be Relieved, # (2) Declaration of Brian M. Levine, # (3) Affidavit of Service of Motion to be Relieved) (Levine, Brian)

| 243 | *Filed & Entered:* | 04/09/2025 | Motion to Stay |
|---|---|---|---|
| | *Terminated:* | 04/09/2025 | |

*Docket Text:* Letter MOTION to Stay *the April 11, 2025 deadlines, and the Evidentiary Hearing scheduled for April 25, 2025,* Letter MOTION for Extension of Time to File *letter briefs on damages and remedies, and opposition to Plaintiffs' motion for reconsideration* by Dwight Blankenship, Car Buyers NYC Inc., Anthony

Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Levine, Brian)

| 244 | Filed & Entered: | 04/09/2025 | Reply in Support |
|---|---|---|---|

*Docket Text:* REPLY in Support re [229] MOTION to Intervene *and upon intervention vacating the injunction order dated September 29, 2023 and the order dated May 8, 2024 modifying the injunction and for related relief /Reply memorandum of law in further support of motion to intervene* filed by Nissan Motor Acceptance Company LLC. (Savino, Nicholas)

| 245 | Filed & Entered: | 04/10/2025 | Affidavit |
|---|---|---|---|

*Docket Text:* AFFIDAVIT/AFFIRMATION *Declaration of Service of 04/09/25 Text Only Order* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Levine, Brian)

| 246 | Filed & Entered: | 04/10/2025 | Motion to Stay |
|---|---|---|---|
| | Terminated: | 04/11/2025 | |

*Docket Text:* Letter MOTION to Stay /*Seeking Clarification of 4/9/25 Text Only Order* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp.. (Attachments: # (1) Affidavit of Service) (Levine, Brian)

| | Filed & Entered: | 04/11/2025 | Order on Motion to Stay |
|---|---|---|---|

*Docket Text:* ORDER granting [246] Motion to Stay. The date for any opposition to the motion for reconsideration filed at ECF No. 230 is adjourned sine die. The Court will set a new opposition date once the motion to withdraw is decided. So Ordered by Magistrate Judge James M. Wicks on 4/11/2025. (Wicks, James)

| 247 | Filed & Entered: | 04/11/2025 | Affidavit in Opposition to Motion |
|---|---|---|---|

*Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [240] Letter MOTION for Reconsideration re [230] Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,, *related to causes of action concerning Northshore and Sunrise as well as the dismissal of fLetter MOTION for Extension of Time to File complaint sine die pending the resolution of the instant motion* filed by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP. (Lentinello, John)

| 248 | Filed & Entered: | 04/11/2025 | Memorandum in Opposition |
|---|---|---|---|

*Docket Text:* MEMORANDUM in Opposition re [247] Affidavit in Opposition to Motion,,, *PLAINTIFFS MOTION FOR REARGUMENT/RECONSIDERATION* filed by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP. (Lentinello, John)

| 249 | Filed & Entered: | 04/11/2025 | Letter |
|---|---|---|---|

*Docket Text:* Letter *Brief on Available Damages and Remedies* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Levine, Brian)

| 250 | Filed & Entered: | 04/11/2025 | Response to Motion |
|---|---|---|---|

| | | | |
|---|---|---|---|
| | *Docket Text:* RESPONSE to Motion re [225] Third MOTION for Contempt *as to contempt sanctions pursuant to this Court's Order dated March 21, 2025 (ECF Docket Entry 231)* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| 251 | *Filed & Entered:* | 04/11/2025 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [225] Third MOTION for Contempt *of Robert Anthony Urrutia* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - NMAC records, # (2) Exhibit B - NMAC subpoena) (Kataev, Emanuel) | | |
| 252 | *Filed & Entered:* | 04/18/2025 | Response in Opposition to Motion |
| | *Docket Text:* RESPONSE in Opposition re [242] First MOTION to Withdraw as Attorney *of the Deo Defendants* filed by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Nissan Motor Acceptance Company LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| | *Filed & Entered:* | 04/22/2025 | Order on Motion to Withdraw as Attorney |
| | *Docket Text:* ORDER: Counsel for Deo Defendants Brian M. Levine's motion to withdraw as counsel of record in this matter (ECF No. [242]) is granted, and Brian M. Levine and the firm of Levine Singh, LLP is terminated for this matter. Courts in this District have granted motions to withdraw under similar circumstances. *See, e.g., Chase Bank USA, N.A. v. Allegro Law, LLC*, No. 08-CV-4039 (DRH) (WDW), 2011 WL 13302729, at *1 (E.D.N.Y. June 23, 2011) (finding that client's failure to pay legal fees constituted a basis for granting motion to withdraw) (collecting cases); *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, 464 F. Supp. 2d 164, 166 (E.D.N.Y. 2006) ("Courts have long recognized that a client's continued refusal to pay legal fees constitutes a satisfactory reason for withdrawal under Local Rule 1.4.") (collecting cases). Local Rule 1.4 provides that "[a]n attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the Court" and that "[s]uch an order may be granted only upon a showing by affidavit or otherwise satisfactory reasons for withdrawal or displacement." Here, counsel for the "Deo" Defendants, Levine Singh, LLP is requesting withdrawal as counsel of record due to Defendants' inability to continue payment. (ECF No. [242].) Plaintiffs do not oppose. Rather Plaintiffs request that this Court condition the withdrawal on waiving any opposition to the pending Motion for Reconsideration. The undersigned rejects Plaintiffs' invitation to impose such conditions. The Court finds that Counsel has complied with Local Rule 1.4 and sufficient grounds exist to grant the motion. Brian M. Levine and the firm of Levine Singh, LLP, are hereby terminated as counsel of record in this matter. The "Deo" Defendants are to retain new counsel on or before **May 9, 2025**, and incoming counsel is to file a Notice of Appearance on or before **May 9, 2025**. Defendants Car Buyers NYC Inc., Gold Coast Cars of Syosset, LLC., Gold Coast Cars of Sunrise, LLC., Gold Coast Motors Automotive Group, LLC, Gold Coast Motors of LIC, LLC., Gold Coast Motors of Roslyn, LLC., Gold Coast Motors of Smithtown, LLC., and UEA Premier Motors Corp., are reminded that they are not permitted to appear *pro se. See La Barbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 348 (E.D.N.Y. 2009) ("Such a failure to obtain counsel constitutes a failure to defend because corporations cannot proceed in federal court pro se.") (citing *Shapiro, Bernstein & Co. v. Contl Record Co.*, 386 F.2d 426, 427 (2d Cir. 1967) (per curiam)). Outgoing counsel is directed to serve a copy of this order upon Defendants and file proof of service on ECF **within two business days**. As a result, all proceedings are stayed until then. Any opposition to the Motion for Reconsideration (ECF No. [240]) is to be filed on or before **June 6, 2025**, and any reply is to be filed on or before **June 20, 2025**. There are to be no sur-replies. So Ordered by Magistrate Judge James M. Wicks on 4/22/2025. (JAF) | | |
| 253 | *Filed & Entered:* | 04/22/2025 | Letter |
| | *Docket Text:* Letter *to the Honorable James M. Wicks, U.S.M.J. Excusing Appearance on April 25, 2025 Hearing* by J.P. Morgan Chase Bank, N.A. (Valenziano, Anthony) | | |

| 254 | Filed & Entered: | 04/22/2025 | Order |
|---|---|---|---|

*Docket Text:* ORDER. Defendant JPMorgan Chase Bank's Application to be excused from attending the Evidentiary Hearing (ECF No. [253]) is denied as *moot*. The Evidentiary Hearing has been adjourned *sine die*. *See* Electronic Order dated 4/9/2025. So Ordered by Magistrate Judge James M. Wicks on 4/22/2025. (JAF)

| 255 | Filed & Entered: | 04/22/2025 | Affidavit |
|---|---|---|---|

*Docket Text:* AFFIDAVIT/AFFIRMATION re Order on Motion to Withdraw as Attorney,,,,,,,,,,,,, *Declaration of Service of Text-Only Order* by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp., DECLARATION by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, Harry Thomasson, UEA Premier Motors Corp. (Levine, Brian)

| | Filed & Entered: | 04/29/2025 | Order |
|---|---|---|---|

*Docket Text:* ORDER: Plaintiffs are directed to file a supplemental declaration in detail as to when and how Plaintiffs learned that their lease at the "Team Mitsubishi-Hartford" Lot would be terminated, **on or before May 2, 2025** . This action remains stayed until May 9, 2025, or when Counsel for Deo Defendants makes a Notice of Appearance, whichever is earlier. An in-person Conference to address the issues on this matter has been scheduled for **May 9, 2025 at 3:00 PM** in Courtroom 1020. So Ordered by Magistrate Judge James M. Wicks on 4/29/2025. (JAF)

| | Filed & Entered: | 04/29/2025 | Scheduling Order |
|---|---|---|---|

*Docket Text:* SCHEDULING ORDER: An in-person Conference to address the issues at ECF No. [256] has been scheduled for **May 9, 2025 at 3:00 PM** to take place in Courtroom 1020 in the Central Islip Courthouse. So Ordered by Magistrate Judge James M. Wicks on 4/29/2025. (JAF)

| 256 | Filed & Entered: | 04/29/2025 | Motion for Order to Show Cause |
|---|---|---|---|
| | Terminated: | 05/09/2025 | |

*Docket Text:* MOTION for Order to Show Cause *to modify preliminary injunction* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| 257 | Filed & Entered: | 04/29/2025 | Memorandum in Support |
|---|---|---|---|

*Docket Text:* MEMORANDUM in Support re [256] MOTION for Order to Show Cause *to modify preliminary injunction* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| 258 | Filed & Entered: | 04/29/2025 | Affidavit in Support of Motion |
|---|---|---|---|

*Docket Text:* AFFIDAVIT/DECLARATION in Support re [256] MOTION for Order to Show Cause *to modify preliminary injunction of Robert Anthony Urrutia* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| 259 | Filed & Entered: | 04/30/2025 | Letter |
|---|---|---|---|

*Docket Text:* Letter *to Honorable James M. Wicks requesting Flushing be excused from attending the May 9, 2025 conference* by Flushing Bank (Ronneburger, Ariel)

| | Filed & Entered: | 05/01/2025 | Order |
|---|---|---|---|

*Docket Text:* ORDER granting [259] excusing Defendant Flushing Bank from attending the Conference on May 9, 2025. So Ordered by Magistrate Judge James M. Wicks on 5/1/2025. (JAF)

| 260 | Filed & Entered: | 05/02/2025 | Letter |
|---|---|---|---|

| | | | |
|---|---|---|---|
| | *Docket Text:* Letter *to the Honorable James M. Wicks requesting Libertas Funding LLC be excused from attending the May 9, 2025 Conference* by Libertas Funding LLC (Golub, Bonnie) | | |
| 261 | *Filed & Entered:* | 05/02/2025 | Affidavit in Support of Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Support re [256] MOTION for Order to Show Cause *to modify preliminary injunction supplemental declaration of Robert Anthony Urrutia* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - copy of lease, # (2) Exhibit B - copy of assignment, # (3) Exhibit C - copy of notice) (Kataev, Emanuel) | | |
| | *Filed & Entered:* | 05/03/2025 | Order |
| | *Docket Text:* ORDER granting ECF No. [260] excusing Defendant Libertas Funding LLC from attending the Conference on May 9, 2025. So Ordered by Magistrate Judge James M. Wicks on 5/3/2025. (JAF) | | |
| 262 | *Filed & Entered:* | 05/03/2025 | Letter |
| | *Docket Text:* Letter *requesting to waive appearance* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC (Ruderman, Jeffrey) | | |
| | *Filed & Entered:* | 05/05/2025 | Order |
| | *Docket Text:* ORDER granting [262] excusing the Island Auto Plaintiffs from attending the Conference on May 9, 2025. So Ordered by Magistrate Judge James M. Wicks on 5/5/2025. (JAF) | | |
| 263 | *Filed & Entered:* | 05/05/2025 | Letter |
| | *Docket Text:* Letter *to U.S. Mag. Judge Wicks to Request Excused Appearance* by Thomas Jones, CPA, Jones, Little & Co., CPA's LLP (Lentinello, John) | | |
| | *Filed & Entered:* | 05/06/2025 | Order |
| | *Docket Text:* ORDER granting [263] excusing Defendants Thomas Jones, CPA and Jones, Little & Co., CPA's, LLP from attending the Conference on May 9, 2025. So Ordered by Magistrate Judge James M. Wicks on 5/6/2025. (JAF) | | |
| 264 | *Filed & Entered:* | 05/07/2025 | Letter |
| | *Docket Text:* Letter *to the Honorable James M. Wicks, U.S.M.J. Excusing Appearance on May 9, 2025 Hearing* by J.P. Morgan Chase Bank, N.A. (Valenziano, Anthony) | | |
| | *Filed & Entered:* | 05/08/2025 | Order |
| | *Docket Text:* ORDER granting [264] excusing Defendant JPMorgan Chase Bank from attending the Conference on May 9, 2025. So Ordered by Magistrate Judge James M. Wicks on 5/8/2025. (JAF) | | |
| 265 | *Filed & Entered:* | 05/08/2025 | Notice of Appearance |
| | *Docket Text:* NOTICE of Appearance by Harry R. Thomasson, Jr on behalf of Harry Thomasson (notification declined or already on case) (Thomasson, Harry) | | |
| 266 | *Filed & Entered:*<br>*Terminated:* | 05/08/2025<br>05/21/2025 | Motion to Stay |
| | *Docket Text:* Letter MOTION to Stay *and other relief requested* by Harry Thomasson. (Attachments: # (1) Exhibit A, letter to EDNY Court dated 4.21.25, # (2) Exhibit B, Affirmation of Emanuel Kataev) (Thomasson, Harry) | | |
| | *Filed & Entered:* | 05/09/2025 | Order |
| | *Docket Text:* ORDER. The parties are directed to file any opposition to Mr. Thomasson's Motion to Stay and Other Relief (ECF No. [266]), **on or before May 16, 2025** . So Ordered by Magistrate Judge James M. Wicks | | |

on 5/9/2025. (JAF)

| | | | |
|---|---|---|---|
| | *Filed & Entered:* | 05/09/2025 | Email Test |
| | *Docket Text:* Email Notification Test - DO NOT REPLY (GO) | | |

| | | | |
|---|---|---|---|
| | *Filed & Entered:* | 05/09/2025 | Order on Motion for Order to Show Cause |

*Docket Text:* ORDER granting *in part* and denying *in part* [256] Motion to Modify the Preliminary Injunction. Oral Argument was held on the unopposed Motion to Modify the Preliminary Injunction (ECF No. [256]). Appearances were as follows: Superb Plaintiffs represented by Emanuel Kataev, Harry Thomasson appearing *pro se*, and Anthony Deo appearing *pro se*. District courts in this Circuit have applied the following standard for modifying preliminary injunctions, namely, the movant must demonstrate "a material change in circumstances justifies the alteration." *New Falls Corp. v. Soni Holdings*, No. 19-CV-0449 (ADS) (AKT), 2020 U.S. Dist. LEXIS 186395, at *30 (E.D.N.Y. Sept. 30, 2020).; *see also Lawsky v. Condor Capital Corp.*, No. 14-cv-2863 (CM), 2014 U.S. Dist. LEXIS 107253, at *15 (S.D.N.Y. Aug. 1, 2014) (stating that parties must show a change in circumstances warranting such relief). "An injunction should be modified only when the changed circumstances demonstrate that continuance of the injunction is no longer justified and/or [] will work oppressively against the enjoined parties." *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, 427 F. Supp. 2d 491, 501 (S.D.N.Y. 2006). Changed circumstances having been shown and stated on the record, the motion is granted in part and denied in part as follows: (i) denied to the extent the application seeks to permit sales of the Injuncted Superb Vehicles and (ii) granted to the extent relocation of the Injuncted Superb Vehicles is sought. The 30 Injuncted Vehicles shall be removed from the Hartford location to the Hicksville location ("Deo Lot") owned by Anthony Deo (108 New South Road, Hicksville, NY 11801) at Plaintiffs' expense. The current conditions of the existing Preliminary Injunction remain in place, and the Deo Defendants are to segregate the Injuncted Superb Vehicles from any other vehicles in the Deo Lot. The relocation to the Deo Lot is to be completed **on or before May 23, 2025**. Deo Defendants are to file proof of insurance **within five (5) business days** of delivery of the Injuncted Superb Vehicles. The time within which the corporate entity Deo Defendants are to retain counsel and have incoming counsel file a Notice of Appearance has been extended to and includes **May 23, 2025**. As a result, all proceedings are stayed until then. Any opposition to the Motion for Reconsideration (ECF No. [240]) is to be filed on or before **June 20, 2025**, and any reply is to be filed on or before **July 3, 2025**. There are to be no sur-replies. So Ordered by Magistrate Judge James M. Wicks on 5/9/2025. (JAF)

| | | | |
|---|---|---|---|
| [267] | *Filed & Entered:* | 05/09/2025 | Status Conference |

*Docket Text:* Minute Order for proceedings held before Magistrate Judge James M. Wicks: CIVIL CAUSE FOR STATUS CONFERENCE: Counsel for Plaintiffs (Superb Motors Inc, TeamAuto Sales LLC and Robert Anthony Urrutia): Emanuel Kataev. Counsel for Plaintiffs (189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian Chabrier, Joshua Aaronson, Jory Baron, 1581 Hyland Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hyland Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hyland Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC and Island Auto Management, LLC): Appearance Excused. Counsel for DefendantsSarah Deo, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC and UEA Premier Motors Corp.): No Appearance. Pro Se Defendant (Anthony Deo): Anthony Deo, appearing Pro Se. Pro Se Defendant (Harry Thomasson): Harry Thomasson, appearing Pro Se. Counsel for Defendants (Thomas Jones, CPA, Jones, Little & Co., CPA's LLP): Appearance Excused. Counsel for Defendants (Flushing Bank): Appearance Excused. Counsel for Defendant (Libertas Funding LLC): Appearance Excused. Counsel for Defendants (J.P. Morgan Chase Bank, N.A.): Appearance Excused. Arguments held on May 9, 2025 at 3:00 PM. For the reasons stated on the record and in the Electronic Order dated May 9, 2025, the Motion for Modifying the Preliminary Injunction (ECF No. [256]) is **granted** *in part* and **denied** *in part*. The relocation of the Injuncted Superb Vehicles to the Deo Lot is to be completed **on or before May 23, 2025**. Deo Defendants are to file proof of insurance **within five business days** of delivery of the Injuncted Superb Vehicles. The time within which the

corporate entity Deo Defendants are to retain counsel and have incoming counsel file a Notice of Appearance has been extended to and includes **May 23, 2025**. As a result, all proceedings are stayed until then. THE PARTIES ARE REMINDED that audio or video recording of proceedings by any party other than the Court is strictly prohibited by Local Civil Rule 1.8. Violation of this rule may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed appropriate by the Court. (FTR Log #3:09-3:41 (FTR).) (DF)

| 268 | *Filed & Entered:* | 05/16/2025 | Response in Opposition to Motion |
|---|---|---|---|

*Docket Text:* RESPONSE in Opposition re [266] Letter MOTION to Stay *and other relief requested* filed by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Nissan Motor Acceptance Company LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| 269 | *Filed & Entered:* | 05/19/2025 | Transcript |
|---|---|---|---|

*Docket Text:* NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on May 9, 2025, for hearing type STATUS CONFERENCE, before Judge JAMES M. WICKS. Court Reporter/Transcriber Transcriptions Plus II, Inc., Telephone number 917-817-2825. Email address: rl.transcriptions2@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 6/9/2025. Redacted Transcript Deadline set for 6/19/2025. Release of Transcript Restriction set for 8/18/2025. (KS)

| 270 | *Filed & Entered:* | 05/20/2025 | Order on Motion to Intervene |
|---|---|---|---|

*Docket Text:* MEMORANDUM AND ORDER re [229] Motion to Intervene: As set forth in the attached Memorandum and Order, Nissan's Motion to Intervene (ECF No. [229]) is **DENIED**. So Ordered by Magistrate Judge James M. Wicks on 5/20/2025. (DF)

| 271 | *Filed & Entered:*<br>Terminated: | 05/20/2025<br>05/21/2025 | Motion for Order to Show Cause |
|---|---|---|---|

*Docket Text:* MOTION for Order to Show Cause *why the Superb Injuncted Vehicles should not remain at the Hartford Lot pending an agreement with the purchaser of the Hartford Lot or an agreement with the landlord of a nearby dealership*, MOTION for Reconsideration re Order on Motion for Order to Show Cause,,,,,,,,,, [267] Status Conference,,,,,,,,,, by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| 272 | *Filed & Entered:* | 05/20/2025 | Memorandum in Support |
|---|---|---|---|

*Docket Text:* MEMORANDUM in Support re [271] MOTION for Order to Show Cause *why the Superb Injuncted Vehicles should not remain at the Hartford Lot pending an agreement with the purchaser of the Hartford Lot or an agreement with the landlord of a nearby dealership* MOTION for Reconsideration re Order on Motion for Order to Show Cause,,,,,,,,,, [267] Status Conference,,,,,,,,,, filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - transcript of proceedings held on May 9, 2025) (Kataev, Emanuel)

| 273 | *Filed & Entered:* | 05/20/2025 | Affidavit in Support of Motion |
|---|---|---|---|

*Docket Text:* AFFIDAVIT/DECLARATION in Support re [271] MOTION for Order to Show Cause *why the Superb Injuncted Vehicles should not remain at the Hartford Lot pending an agreement with the purchaser of the Hartford Lot or an agreement with the landlord of a nearby dealership* MOTION for Reconsideration

re Order on Motion for Order to Show Cause,,,,,,,,,, [267] Status Conference,,,,,,,,,, *of Robert Anthony Urrutia* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| *Filed & Entered:* | 05/21/2025 | Order on Motion for Order to Show Cause |
|---|---|---|

*Docket Text:* ORDER denying [271] Motion for Order to Show Cause regarding the Motion for Reconsideration of the May 9, 2025 Order and the Motion for Reconsideration. Plaintiffs submit this application for reconsideration pursuant to Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. Under Local Rule 6.3, a party has fourteen (14) days following the entry of a court order to serve a notice of motion with an accompanying memorandum, that concisely sets forth the issues, facts, or laws that were overlooked. Loc. Civ. R. 6.3.

"A court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent Rule 6.3 from being used to advance different theories not previously argued, or as a substitute for appealing a final judgment." *R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 509 (S.D.N.Y. 2009). As such, motions for reconsideration "[are] appropriate when the moving party can demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion... and which, had they been considered, might have reasonably altered the result before the court." *Herschaft v. N.Y.C. Campaign Fin. Bd.*, 139 F. Supp. 2d 282, 283 (E.D.N.Y. 2001) (internal quotation marks and citation omitted). Notably, "a party may not advance new facts, issues, or arguments not previously presented to the Court on a motion for reconsideration." *Superior Site Work, Inc. v. NASDI, LLC*, No. 14-cv-01061 (ADS) (SIL), 2017 U.S. Dist. LEXIS 77453, at *4 (E.D.N.Y. May 22, 2017) (internal quotations omitted); *see also Analytical Surveys, Inc. v. Tonga Partners, L.P.* , 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted) (noting that a motion for reconsideration is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple). Reconsideration is warranted when: (i) the moving party points to an intervening change in controlling law, (ii) newly available evidence is identified, (iii) clear error is established, or (iv) reconsideration is necessary to avoid a manifest injustice. *See Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021); *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (same); *T.Z. v. City of New York*, 634 F. Supp. 2d 263, 268 (E.D.N.Y. 2009) (same). It is well-settled that it is within the sound discretion of the district court to decide whether or not to grant a motion for reconsideration. *See Gupta v. Attorney Gen. of United States*, 52 F. Supp. 3d 677, 679-80 (S.D.N.Y. 2014); *Rivas v. Melecio*, No. 23-CV-05718 (JMA), 2024 WL 1096065, at *1 (E.D.N.Y. Feb. 21, 2024).

Here, Plaintiffs seek a "do-over" on the eve of their deadline to deliver the Injuncted Superb Vehicles to the Deo Lot. (*See* ECF No. 267.) Moreover, Plaintiffs assert that the Court overlooked the potential damage that could occur by the Deo Defendants holding the Vehicles. (ECF Nos. 272 at 3, 273 at 5-7.) Contrary to that assertion, the Court provided clear direction and imposed certain conditions to preserve the parties' assets at the last Conference. (*See* Electronic Order dated 05/09/2025.) As to the "newly available evidence" that Plaintiffs submit, this still does not provide a long-term solution. Specifically, Plaintiffs state that they "have negotiated a deal with the landlord of the Hartford Lot for the Superb Injuncted Vehicles to remain there until the closing date, currently scheduled for June 9, 2025, and thereafter to either remain at the Hartford Lot pending a deal with the purchaser of the Hartford Lot, or to be moved less than fifteen (15) miles away to 223 Broad Street, Bristol, CT 06010 (the "New Premises") subject to the Superb Plaintiffs' agreement with the landlord for the New Premises." (ECF No. 272 at 3.) These proposed modifications are not concrete and are subject to the agreements of two third-parties, the New Premises landlord or the new purchaser of the Hartford Lot. Absent here is evidence that would reasonably alter the undersigned's conclusion at the previous Conference. *See Shrader v. CSX Transp. Inc.* , 70 F.3d 255, 257 (2d Cir. 1995) ("The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."); *B & R Supermarket, Inc. v. Visa Inc.*, No. 17-CV-2738 (MKB), 2025 WL 510041, at *2 (E.D.N.Y. Feb. 14, 2025) (same).

Therefore, the Motion for Reconsideration filed at ECF No. [271] is **DENIED**, and the previously ordered date for the relocation of the Injuncted Superb Vehicles to the Deo Lot remains in place, which is this **Friday, May 23, 2025**. So Ordered by Magistrate Judge James M. Wicks on 5/21/2025. (JAF)

| 274 | *Filed & Entered:* | 05/21/2025 | Order on Motion to Stay |
|---|---|---|---|

*Docket Text:* MEMORANDUM AND ORDER re [266] Motion to Stay: As set forth in the attached Memorandum and Order, Mr. Thomasson's motion for reconsideration of the prior disqualification order and other requested relief (ECF No. [266]) is **DENIED**. So Ordered by Magistrate Judge James M. Wicks on 5/21/2025. (DF)

| 275 | *Filed & Entered:* | 05/21/2025 | Response to Motion |
|---|---|---|---|

*Docket Text:* RESPONSE to Motion re [271] MOTION for Order to Show Cause *why the Superb Injuncted Vehicles should not remain at the Hartford Lot pending an agreement with the purchaser of the Hartford Lot or an agreement with the landlord of a nearby dealership* MOTION for Reconsideration re Order on Motion for Order to Show Cause,,,,,,,,,,, [267] Status Conference,,,,,,,,,,, filed by Harry Thomasson. (Thomasson, Harry)

| 276 | *Filed & Entered:* | 05/21/2025 | Notice of Appearance |
|---|---|---|---|

*Docket Text:* NOTICE of Appearance by Jeffrey Benjamin on behalf of Dwight Blankenship, Car Buyers NYC Inc., DLA Capital Partners Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling, UEA Premier Motors Corp. (aty to be noticed) (Benjamin, Jeffrey)

| | *Filed & Entered:* | 05/22/2025 | Order on Motion to Amend/Correct/Supplement |
|---|---|---|---|

*Docket Text:* ORDER granting [277] Motion to Amend/Correct/Supplement. The vehicles to be delivered to the Deo's Hicksville New York lot shall be done so by May 23, 2025 by 6:00 p.m. The keys and all title documents for the vehicles shall be delivered at the time the vehicles are delivered. So Ordered by Magistrate Judge James M. Wicks on 5/22/2025. (Wicks, James)

| 277 | *Filed & Entered:*<br>*Terminated:* | 05/22/2025<br>05/22/2025 | Motion to Amend/Correct/Supplement |
|---|---|---|---|

*Docket Text:* Letter MOTION to Amend/Correct/Supplement *and/or modify this Court's Orders regarding the delivery of 30 automobiles* by Harry Thomasson. (Thomasson, Harry)

| 278 | *Filed & Entered:* | 05/22/2025 | Order |
|---|---|---|---|

*Docket Text:* ORDER re [231] Order on Motion for Contempt: As set forth in the attached Order, the sanctions imposed on Superb Plaintiffs are as follows: Plaintiffs are to file proof of the payment to Nissan that allegedly satisfied the floorplan loan on ECF on or before **June 3, 2025**, and failure to do so, will result in the undersigned imposing a compensatory fine. In the event Plaintiffs fail to file on or before June 3 as ordered, per-diem fine of $500.00 for each day of non-compliance will be imposed. So Ordered by Magistrate Judge James M. Wicks on 5/22/2025. (DF)

| 279 | *Filed & Entered:* | 05/22/2025 | Order on Motion for Contempt |
|---|---|---|---|

*Docket Text:* MEMORANDUM AND ORDER re [225] Motion for Contempt: As set forth in the attached Memorandum and Order, the Deo Defendants' Motion for Contempt (ECF No. [225]) is **GRANTED** *in part* and **DENIED** *in part*. Accordingly, it is **HEREBY ORDERED** that Superb Plaintiffs are held in civil contempt for failing to comply with an express order of this Court. Based on this finding of civil contempt, the undersigned imposes the following sanctions: (i) A fine in the amount of $1,000.00 to be paid to the Deo Defendants on or before **June 2, 2025**; (ii) Attorneys' fees and costs, which are to be awarded upon a formal application submitted by Deo Defendants on or before **June 3, 2025**; and (iii) Per-diem sanctions of $100.00, for each weekday that Plaintiffs are non-compliant with this Court's Order beginning **June 3, 2025**. So Ordered by Magistrate Judge

| | | |
|---|---|---|
| | James M. Wicks on 5/22/2025. (DF) (Main Document 279 replaced on 5/22/2025) (DF). Modified on 5/22/2025 to revise docket entry text. (DF). | |

| | | | |
|---|---|---|---|
| 280 | *Filed & Entered:*<br>*Terminated:* | 05/22/2025<br>05/23/2025 | Motion for Order to Show Cause |
| | *Docket Text:* Emergency MOTION for Order to Show Cause *to permit the sale of the remaining Superb Injuncted Vehicles owned by Team Auto Sales LLC and non-party Team Imports LLC d/b/a Team Mitsubishi-Hartford as previously permitted for vehicles owned by Superb Motors Inc.* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| 281 | *Filed & Entered:* | 05/22/2025 | Memorandum in Support |
| | *Docket Text:* MEMORANDUM in Support re [280] Emergency MOTION for Order to Show Cause *to permit the sale of the remaining Superb Injuncted Vehicles owned by Team Auto Sales LLC and non-party Team Imports LLC d/b/a Team Mitsubishi-Hartford as previously permitted for vehicles owned by Superb Mo* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| 282 | *Filed & Entered:* | 05/22/2025 | Affidavit in Support of Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Support re [280] Emergency MOTION for Order to Show Cause *to permit the sale of the remaining Superb Injuncted Vehicles owned by Team Auto Sales LLC and non-party Team Imports LLC d/b/a Team Mitsubishi-Hartford as previously permitted for vehicles owned by Superb Mo* of Robert Anthony Urrutia filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| 283 | *Filed & Entered:* | 05/22/2025 | Response in Opposition to Motion |
| | *Docket Text:* RESPONSE in Opposition re [280] Emergency MOTION for Order to Show Cause *to permit the sale of the remaining Superb Injuncted Vehicles owned by Team Auto Sales LLC and non-party Team Imports LLC d/b/a Team Mitsubishi-Hartford as previously permitted for vehicles owned by Superb Mo* filed by Harry Thomasson. (Thomasson, Harry) | | |
| 284 | *Filed & Entered:*<br>*Terminated:* | 05/22/2025<br>05/23/2025 | Motion to Strike |
| | *Docket Text:* Letter MOTION to Strike [283] Response in Opposition to Motion, *due to Harry R. Thomasson, Esq.'s willful evasion of the Order disqualifying him from representing the Deo Defendants* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| | *Filed & Entered:* | 05/23/2025 | Scheduling Order |
| | *Docket Text:* SCHEDULING ORDER: In light of the filing at 18:43 yesterday (ECF No. [280]), all interested parties are directed to attend the hearing scheduled for **today at 12:30 PM** via the Court's Video Zoom on the issues raised therein. A Zoom link will be provided via e-mail shortly. So Ordered by Magistrate Judge James M. Wicks on 5/23/2025. (JAF) | | |
| | *Filed & Entered:* | 05/23/2025 | Order on Motion to Strike |
| | *Docket Text:* ORDER denying [284] Motion to Strike. So Ordered by Magistrate Judge James M. Wicks on 5/23/2025. (JAF) | | |
| | *Filed & Entered:* | 05/23/2025 | Order on Motion for Order to Show Cause |
| | *Docket Text:* ORDER denying [280] Emergency Motion for Order to Show Cause. After hearing the parties' arguments, and Plaintiffs having failed to establish irreparable harm, the application is denied for the reasons stated on the record. It is well-settled that "[t]he showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction." *Env't Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F. Supp. 3d 260, 278 (E.D.N.Y. 2014) (quoting *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002)). Likewise "[i]rreparable harm is 'a continuing harm which cannot be adequately redressed by final relief on the merits | | |

and for which money damages cannot provide adequate compensation.'" *Crye Precision LLC v. Concealed Carrier, LLC*, 749 F. Supp. 3d 308, 334 (E.D.N.Y. 2024) (quoting *Kamerling*, 295 F.3d at 214). "Where, by contrast, 'there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances.'" *Id.* (quoting *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005)). Furthermore, the Court finds that Plaintiffs have not met their burden to establish a basis to modify the injunction. The grounds urged to modify the injunction - the cost to move vehicles and the threat that Plaintiffs will be in contempt - does not establish irreparable harm sufficient to modify the Injunction which was modified on May 9, 2025. Therefore, the Injunction as modified on May 9, 2025, remains in place and in effect and the Vehicles are to be delivered to the Deo Lot by 6:00 PM tonight with keys and titles as previously ordered. So Ordered by Magistrate Judge James M. Wicks on 5/23/2025. (JAF)

| 285 | *Filed & Entered:* | 05/23/2025 | Notice of Appeal |
| | *Terminated:* | 07/28/2025 | |

*Docket Text:* NOTICE OF APPEAL as to Order on Motion for Order to Show Cause,,,,,,,,,,, Order on Motion for Order to Show Cause,,,,,,, Order on Motion for Order to Show Cause,,,,,,,,,,,,,,,,,,,,, Order on Motion for Reconsideration,,,,,,,,,,,,,,,,,,, by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. Filing fee $ 605, receipt number ANYEDC-19079027. (Kataev, Emanuel)

| 286 | *Filed & Entered:* | 05/23/2025 | Motion Hearing |

*Docket Text:* Minute Order CIVIL CAUSE FOR STATUS CONFERENCE: Counsel for Plaintiffs (Superb Motors Inc, Team Auto Sales LLC and Robert Anthony Urrutia): Emanuel Kataev. Counsel for Plaintiffs (189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian Chabrier, Joshua Aaronson, Jory Baron, 1581 Hyland Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hyland Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC and Island Auto Management, LLC): Appearance Excused. Counsel for Defendants Anthony Deo, Sarah Deo, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC and UEA Premier Motors Corp.): Jeffrey Benajmin. Pro Se Defendant (Harry Thomasson): Harry Thomasson, appearing Pro Se. Counsel for Defendants (Thomas Jones, CPA, Jones, Little & Co., CPA's LLP): Appearance Excused. Counsel for Defendants (Flushing Bank): Appearance Excused. Counsel for Defendant (Libertas Funding LLC): Appearance Excused. Counsel for Defendants (J.P. Morgan Chase Bank, N.A.): Appearance Excused. Arguments held on May 23, 2025 at 12:30 PM. For the reasons stated on the record, Plaintiffs' Emergency Motion for Order to Show Cause (ECF No. [280]) is **denied**. The Injunction as modified as of May 9, 2025, remains in effect and the Vehicles are to be delivered to the Deo Lot by 6:00 PM today, with keys and titles. THE PARTIES ARE REMINDED that audio or video recording of proceedings by any party other than the Court is strictly prohibited by Local Civil Rule 1.8. Violation of this rule may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed appropriate by the Court. (Time Log #12:36-12:52 (Via Zoom). (DF/JT)

| 287 | *Filed & Entered:* | 05/23/2025 | Letter |

*Docket Text:* Letter *to Hon. James M. Wicks, U.S.M.J., notifying the Court of the sale of two vehicles* by Nissan Motor Acceptance Company LLC (Savino, Nicholas)

| 288 | *Filed & Entered:* | 05/26/2025 | Motion for Contempt |
| | *Terminated:* | 06/23/2025 | |

*Docket Text:* Letter MOTION for Contempt *of Superb Plaintiffs* by Harry Thomasson. (Thomasson, Harry)

| | *Filed & Entered:* | 05/27/2025 | Electronic Index to Record on Appeal |

*Docket Text:* Electronic Index to Record on Appeal sent to US Court of Appeals. [285] Notice of Appeal, Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the

| | | | |
|---|---|---|---|
| | court and we'll arrange for the document(s) to be made available to you. (KS) | | |
| | *Filed & Entered:* | 05/27/2025 | Order |
| | *Docket Text:* ORDER. Any opposition to the Motions for Contempt (ECF Nos. 288-289) is to be filed **on or before May 30, 2025**. So Ordered by Magistrate Judge James M. Wicks on 5/27/2025. (JAF) | | |
| 289 | *Filed & Entered:*<br>*Terminated:* | 05/27/2025<br>06/23/2025 | Motion for Contempt |
| | *Docket Text:* Joint MOTION for Contempt by Dwight Blankenship, Car Buyers NYC Inc., DLA Capital Partners Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling. (Benjamin, Jeffrey) | | |
| 290 | *Filed & Entered:* | 05/28/2025 | Transcript |
| | *Docket Text:* NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on May 23, 2025, for hearing type STATUS CONFERENCE, before Judge JAMES M. WICKS. Court Reporter/Transcriber Transcriptions Plus II, Inc., Telephone number 917-817-2825. Email address: rl.transcriptions2@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 6/18/2025. Redacted Transcript Deadline set for 6/30/2025. Release of Transcript Restriction set for 8/26/2025. (KS) | | |
| 291 | *Filed & Entered:* | 05/28/2025 | Response in Opposition to Motion |
| | *Docket Text:* RESPONSE in Opposition re [288] Letter MOTION for Contempt *of Superb Plaintiffs for the Island Auto Plaintiffs and their counsel to appear for a hearing* filed by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Northshore Motor Leasing, LLC. (Ruderman, Jeffrey) | | |
| 292 | *Filed & Entered:*<br>*Terminated:* | 05/30/2025<br>06/26/2025 | Motion for Reconsideration |
| | *Docket Text:* Notice of MOTION for Reconsideration re Order on Motion for Order to Show Cause,,,,,,,, [286] Motion Hearing,,,,,,,,, *(cross-motion)* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| 293 | *Filed & Entered:* | 05/30/2025 | Memorandum in Opposition |
| | *Docket Text:* MEMORANDUM in Opposition re [288] Letter MOTION for Contempt *of Superb Plaintiffs*, [289] Joint MOTION for Contempt , MEMORANDUM in Support re [292] Notice of MOTION for Reconsideration re Order on Motion for Order to Show Cause,,,,,,, [286] Motion Hearing,,,,,,,, *(cross-motion)* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - proof of payment of $13,995.00 contempt sanction, # (2) Exhibit B - proof of payment of $1,000.00 contempt sanction, # (3) Exhibit C - odometer readings for two (2) Isuzu trucks, # (4) Exhibit D - transcript of proceedings held on May 23, 2025) (Kataev, Emanuel) | | |
| 294 | *Filed & Entered:* | 05/30/2025 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [288] Letter MOTION for Contempt *of Superb Plaintiffs*, [289] Joint MOTION for Contempt *of Robert Anthony Urrutia*, AFFIDAVIT/DECLARATION in Support re [292] Notice of MOTION for Reconsideration re Order on Motion for Order to Show Cause,,,,,,, | | |

| | | | |
|---|---|---|---|
| | [286] Motion Hearing,,,,,,,, *(cross-motion)* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel) | | |
| | *Filed & Entered:* | 06/01/2025 | Order |
| | *Docket Text:* ORDER. Any opposition to the Motion for Reconsideration at ECF No. [292] is to be filed **on or before June 13, 2025**. So Ordered by Magistrate Judge James M. Wicks on 6/1/2025. (JAF) | | |
| 295 | *Filed & Entered:* | 06/02/2025 | FRAP 24 Certificate |
| | *Docket Text:* FRAP 24 CERTIFICATE 25-1330 - A notice of appeal was filed in this case on May 23, 2025. Since at least one motion cited in FRAP 4(a)4 has been filed in the district court this appeal is stayed pending resolution of the motion(s). (KS) | | |
| 296 | *Filed & Entered:*<br>*Terminated:* | 06/03/2025<br>06/26/2025 | Motion for Attorney Fees |
| | *Docket Text:* DECLARATION/MOTION *in Support of Application for Attorney Fees* by Harry Thomasson (Attachments: # (1) Declaration of Brian M. Levine in Support of Application, # (2) Exhibit Redacted Attorney Bill) (Thomasson, Harry) Modified on 6/26/2025 (ELR). | | |
| 297 | *Filed & Entered:*<br>*Terminated:* | 06/10/2025<br>07/01/2025 | Motion to Deposit Funds |
| | *Docket Text:* Letter MOTION *providing proof of the monies in escrow for the sale of vehicles identified in the Superb Plaintiffs' correspondence dated May 30, 2025 (ECF Docket Entry 293) in accordance with this Court's Order dated May 8, 2025 (ECF Docket Entry 172)* by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Attachments: # (1) Exhibit A - proof of the monies in escrow) (Kataev, Emanuel) Modified on 6/11/2025 (ELR). | | |
| | *Filed & Entered:* | 06/11/2025 | Order |
| | *Docket Text:* ORDER. Any opposition to Superb Plaintiff's Motion at ECF No. [297], is to be filed **on or before June 18, 2025**. So Ordered by Magistrate Judge James M. Wicks on 6/11/2025. (JAF) | | |
| 298 | *Filed & Entered:* | 06/12/2025 | Letter |
| | *Docket Text:* Letter by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel) | | |
| 299 | *Filed & Entered:* | 06/13/2025 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [292] Notice of MOTION for Reconsideration re Order on Motion for Order to Show Cause,,,,,,, [286] Motion Hearing,,,,,,,, *(cross-motion)* filed by Harry Thomasson. (Attachments: # (1) Memorandum in Opposition to Superb Plaintiffs' Motion for Reconsideration, # (2) Exhibit A, Vehicle Titles indicating Criminal Fraud, # (3) Exhibit B, NextGear Audit indicating violation of this Court's Injunction, # (4) Exhibit C, CarFax indicating violation of this Court's Injunction) (Thomasson, Harry) | | |
| 300 | *Filed & Entered:* | 06/13/2025 | Affidavit in Opposition to Motion |
| | *Docket Text:* AFFIDAVIT/DECLARATION in Opposition re [292] Notice of MOTION for Reconsideration re Order on Motion for Order to Show Cause,,,,,,, [286] Motion Hearing,,,,,,,, *(cross-motion) by DEO DEFENDANTS:* filed by Dwight Blankenship, Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling. (Benjamin, Jeffrey) | | |
| | *Filed & Entered:* | 06/16/2025 | Order |
| | *Docket Text:* ORDER. Superb Plaintiffs are to file their Reply to the Deo Defendants' Opposition (ECF Nos. [299], [300]) **on or before June 20, 2025**. So Ordered by Magistrate Judge James M. Wicks on 6/16/2025. (JAF) | | |

| 301 | *Filed & Entered:* | 06/17/2025 | Letter |
|---|---|---|---|

*Docket Text:* Letter *in response to Superb Plaintiffs' letter at ECF No. 297* by Harry Thomasson (Thomasson, Harry)

| 302 | *Filed & Entered:*<br>*Terminated:* | 06/19/2025<br>06/23/2025 | Motion to Stay |
|---|---|---|---|

*Docket Text:* Letter MOTION to Stay re [240] Letter MOTION for Reconsideration re [230] Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,, *related to causes of action concerning Northshore and Sunrise as well as the dismissal of fLetter MOTION for Extension of Time to File complaint sine die pending the resolution of the instant motion or, in the Alternative, to extend time to Oppose due to a family emergency by Harry Thomasson. (Thomasson, Harry)*

| | *Filed & Entered:* | 06/20/2025 | Order |
|---|---|---|---|

*Docket Text:* ORDER. Any opposition to Mr. Thomasson's Motion to Stay (ECF No. [302]) is to be filed **on or before June 27, 2025**. So Ordered by Magistrate Judge James M. Wicks on 6/20/2025. (JAF)

| 303 | *Filed & Entered:* | 06/20/2025 | Reply in Support |
|---|---|---|---|

*Docket Text:* REPLY in Support re [292] Notice of MOTION for Reconsideration re Order on Motion for Order to Show Cause,,,,,,, [286] Motion Hearing,,,,,,, *(cross-motion)* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Kataev, Emanuel)

| 304 | *Filed & Entered:* | 06/20/2025 | Affidavit in Support of Motion |
|---|---|---|---|

*Docket Text:* AFFIDAVIT/DECLARATION in Support re [292] Notice of MOTION for Reconsideration re Order on Motion for Order to Show Cause,,,,,,, [286] Motion Hearing,,,,,,, *(cross-motion)* filed by Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. (Attachments: # (1) Exhibit A - text messages between Deo and Kendra Kernizant, # (2) Exhibit B - July 2023 correspondence with NMAC, # (3) Exhibit C - March 2025 correspondence between counsel for the parties) (Kataev, Emanuel)

| | *Filed & Entered:* | 06/23/2025 | Order on Motion for Contempt |
|---|---|---|---|

*Docket Text:* ORDER denying [288] Motion for Contempt. Defendant Harry Thomasson's Motion for Contempt is **denied with *leave to renew*** for failure to comply with the undersigned's Individual Rules and the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. *See Lopez v. Metro & Graham LLC*, No. 22-CV-332 (CBA) (RER), 2022 WL 18809176, at *3 (E.D.N.Y. Dec. 16, 2022), *report and recommendation adopted*, No. 22-CV-332 (CBA) (RER), 2023 WL 2140418 (E.D.N.Y. Feb. 21, 2023) (collecting cases) ("The failure to comply with Local Rule 7.1 is enough on its own for a court to deny the motion.") As such, Mr. Thomasson may refile the Motion for Contempt to ensure it is procedurally proper and complies with the Rules indicated above **on or before June 30, 2025**. So Ordered by Magistrate Judge James M. Wicks on 6/23/2025. (JAF)

| | *Filed & Entered:* | 06/23/2025 | Order on Motion for Contempt |
|---|---|---|---|

*Docket Text:* ORDER denying [289] Motion for Contempt. The Deo Defendants' Motion for Contempt is **denied with *leave to renew*** for failure to comply with the undersigned's Individual Rules and the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. *See Lopez v. Metro & Graham LLC*, No. 22-CV-332 (CBA) (RER), 2022 WL 18809176, at *3 (E.D.N.Y. Dec. 16, 2022), *report and recommendation adopted*, No. 22-CV-332 (CBA) (RER), 2023 WL 2140418 (E.D.N.Y. Feb. 21, 2023) (collecting cases) ("The failure to comply with Local Rule 7.1 is enough on its own for a court to deny the motion.") As such, the Deo Defendants may refile their Motion for Contempt to comply with the Rules indicated above **on or before June 30, 2025**. So Ordered by Magistrate Judge James M. Wicks on 6/23/2025. (JAF)

| | *Filed & Entered:* | 06/23/2025 | Order on Motion to Stay |
|---|---|---|---|

*Docket Text:* ORDER denying [302] Motion to Stay. Mr. Thomasson's request for a stay in connection with the deadlines to oppose the Motion for Reconsideration (ECF No. [240]) is denied. Instead, the Court extends the deadlines to respond to the Motion for Reconsideration at ECF No. [240]. Any further opposition to ECF No. [240] is to be filed **on or before July 8, 2025** and the time to reply for Plaintiffs has likewise been extended to **July 22, 2025**. There are to be no sur-replies. So Ordered by Magistrate Judge James M. Wicks on 6/23/2025. (JAF)

| 305 | *Filed & Entered:* | 06/26/2025 | Order on Motion for Attorney Fees |
|---|---|---|---|

*Docket Text:* ORDER re: [296] Motion for Attorney Fees. For the reasons set forth in the attached Order, Deo Defendants' Application for Fees and Costs is **GRANTED**. Deo Defendants are awarded attorneys' fees in the amount of $1,500.00 tobe paid by Superb Plaintiffs on or before **July 11, 2025**. So Ordered by Magistrate Judge James M. Wicks on 6/26/2025. (ELR)

| 306 | *Filed & Entered:* | 06/26/2025 | Order on Motion for Reconsideration |
|---|---|---|---|

*Docket Text:* ORDER re: [292] Motion for Reconsideration. For the reasons set forth in the attached Order, Superb Plaintiff's Motion for Reconsideration is **DENIED**, and a stay of the May 23, 2025, Order concerning relocation of the Vehicles is granted through and including five days after decision is entered by the Second Circuit. So Ordered by Magistrate Judge James M. Wicks on 6/26/2025. (ELR)

| 307 | *Filed & Entered:*<br>*Terminated:* | 06/30/2025<br>07/02/2025 | Motion for Contempt |
|---|---|---|---|

*Docket Text:* MOTION for Contempt *of the Superb Plaintiffs and/or counsel* by Harry Thomasson. (Attachments: # (1) Memorandum in Support, # (2) Declaration of Harry Thomasson in Support of the Motion for Contempt, # (3) Exhibit A. Washed Titles, # (4) Exhibit B. NextGear Audit, # (5) Exhibit C. CarFax) (Thomasson, Harry)

| 308 | *Filed & Entered:* | 06/30/2025 | Affidavit in Support of Motion |
|---|---|---|---|

*Docket Text:* AFFIDAVIT/DECLARATION in Support re [307] MOTION for Contempt *of the Superb Plaintiffs and/or counsel for Deo Defendants:* filed by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling. (Benjamin, Jeffrey)

| 309 | *Filed & Entered:* | 07/01/2025 | Order on Motion to Deposit Funds |
|---|---|---|---|

*Docket Text:* ORDER re: [297] Motion to Deposit Funds. For the reasons set forth in the attached Order, Superb Plaintiffs' Motion to deposit funds in a separateinterest-bearing account is **GRANTED**. So Ordered by Magistrate Judge James M. Wicks on 7/1/2025. (ELR)

| | *Filed & Entered:* | 07/02/2025 | Order on Motion for Contempt |
|---|---|---|---|

*Docket Text:* ORDER denying [307] Motion for Contempt. The Motion for Contempt is **denied with *leave to renew*** if the issue is still ripe following the Second Circuit's decision regarding the matters currently on appeal. *See Martinez v. Hasper*, No. 15-CV-5724 (EK)(LB), 2022 WL 118720, at *1 (E.D.N.Y. Jan. 12, 2022) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.")). So Ordered by Magistrate Judge James M. Wicks on 7/2/2025. (JAF)

| | *Filed & Entered:* | 07/02/2025 | Scheduling Order |
|---|---|---|---|

*Docket Text:* SCHEDULING ORDER: Upon review of the docket, there is no longer a stay of discovery in place. As such, the following schedule is adopted and is **final** : (i) all discovery, including expert discovery shall be completed **on or before October 31, 2025**, (ii) the first steps in summary judgment motion practice shall be **on or**

before **November 21, 2025**, (iii) an **in-person** Final Pretrial Conference will be held on **December 23, 2025 at 9:30 AM** in Courtroom 1020, and (iv) a proposed Joint Pre-trial Order ("JPTO") shall be filed in accordance with the undersigned's individual's rules **on or before December 18, 2025**. In the event that a summary judgment motion is pending, the Final Pretrial Conference and the requirement for a JPTO will be held in abeyance. So Ordered by Magistrate Judge James M. Wicks on 7/2/2025. (JAF)

| [310] | *Filed & Entered:* | 07/08/2025 | Response in Opposition to Motion |
|---|---|---|---|

*Docket Text:* RESPONSE in Opposition re [240] Letter MOTION for Reconsideration re [230] Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,, *related to causes of action concerning Northshore and Sunrise as well as the dismissal of fLetter MOTION for Extension of Time to File complaint sine die pending the resolution of the instant motion filed by Harry Thomasson. (Thomasson, Harry)*

| [311] | *Filed & Entered:* | 07/08/2025 | Response in Opposition to Motion |
|---|---|---|---|

*Docket Text:* RESPONSE in Opposition re [240] Letter MOTION for Reconsideration re [230] Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,, *related to causes of action concerning Northshore and Sunrise as well as the dismissal of fLetter MOTION for Extension of Time to File complaint sine die pending the resolution of the instant motion filed by Dwight Blankenship, Car Buyers NYC Inc., Anthony Deo, Sarah Deo, Gold Coast Cars of Sunrise LLC, Gold Coast Cars of Syosset LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, Michael Laurie, Marc Merckling. (Benjamin, Jeffrey)*

| [312] | *Filed & Entered:* | 07/22/2025 | Reply in Support |
|---|---|---|---|

*Docket Text:* REPLY in Support re [240] Letter MOTION for Reconsideration re [230] Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,, *related to causes of action concerning Northshore and Sunrise as well as the dismissal of fLetter MOTION for Extension of Time to File complaint sine die pending the resolution of the instant motion filed by All Plaintiffs. (Kataev, Emanuel)*

| [313] | *Filed:* | 07/28/2025 | USCA Order |
|---|---|---|---|
| | *Entered:* | 07/29/2025 | |

*Docket Text:* ORDER of USCA 25-1330 as to [285] Notice of Appeal, filed by Team Auto Sales LLC, Superb Motors Inc., Robert Anthony Urrutia. IT IS HEREBY ORDERED that the motion for a stay pending appeal is DENIED as moot in light of the district court's order dated June 26, 2025, which granted a stay pending resolution of the appeal from the order. It is further ORDERED that the motion to expedite the appeal is DENIED. Appellants must file a Local Rule 31.2 scheduling notification letter within 14 days of the date of this order. (KS)

| [314] | *Filed & Entered:* | 08/01/2025 | Order on Motion for Reconsideration |
|---|---|---|---|

*Docket Text:* ORDER re: [240] Motion for Reconsideration: For the reasons set forth in the attached Order, Plaintiff's Motion for Reconsideration is **GRANTED**, and Plaintiff is to file the Amended Complaint by **August 8, 2025**, consistent with the rulings herein as well as those in the March 21, 2025 Order (ECF No. [230]). So Ordered by Magistrate Judge James M. Wicks on 8/1/2025. (ELR)

| [315] | *Filed & Entered:* | 08/07/2025 | USCA Order |
|---|---|---|---|

*Docket Text:* CERTIFIED ORDER of USCA 25-1330 as to [285] Notice of Appeal, filed by Team Auto Sales LLC, Superb Motors Inc., Robert Anthony Urrutia. IT IS ORDERED that the stay of this appeal is hereby lifted. Within 10 days of the date of this order, Appellees must file a response to Appellants' motion to expedite the appeal and for a stay pending appeal. (KS)

| [316] | *Filed:* | 08/08/2025 | Amended Complaint |
|---|---|---|---|
| | *Entered:* | 08/11/2025 | |

| | | | |
|---|---|---|---|
| | *Docket Text:* AMENDED COMPLAINT *(third) filed pursuant to this Court's Order dated August 1, 2025 (ECF Docket Entry 314)* against All Defendants, filed by Joshua Aaronson, Team Auto Sales LLC, Island Auto Management, LLC, Superb Motors Inc., 446 Route 23 Auto LLC, 2519 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, Asad Khan, Brian Chabrier, Iris Baron, Robert Anthony Urrutia, 1581 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, Jory Baron, 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC. (LJ) | | |
| | *Filed & Entered:* | 08/11/2025 | Incorrect Case/Document/Entry Information. |
| | *Docket Text:* Incorrect Case/Document/Entry Information. Amended Complaint originally entered as DE [316] (AMENDED COMPLAINT (third) filed pursuant to this Court's Order dated August 1, 2025 (ECF Docket Entry 314)) was refiled in order to conform to the caption on the new complaint. Plaintiffs Asad Khan and Iris Baron were added to the docket as well as defendants 189 Sunrise Hwy Auto LLC and Northshore Motor Leasing, LLC. (LJ) | | |
| | *Filed & Entered:* | 08/22/2025 | Order |
| | *Docket Text:* ORDER. In light of the representations made and issues raised in ECF No. [317], the parties are directed to meet and confer to discuss a mutually agreeable schedule. The parties shall file a Joint Status Report by **August 27, 2025** with a proposed amended discovery schedule. So Ordered by Magistrate Judge James M. Wicks on 8/22/2025 (JAF) | | |
| 317 | *Filed & Entered:*<br>*Terminated:* | 08/22/2025<br>08/27/2025 | Motion for Extension of Time to File Answer |
| | *Docket Text:* First MOTION for Extension of Time to File Answer *or other Responsive documents and to Extend the Court's July 2, 2025, scheduling order by Sixty (60) Days* by Harry Thomasson. (Thomasson, Harry) | | |
| | *Filed & Entered:* | 08/27/2025 | Order on Motion for Extension of Time to Answer |
| | *Docket Text:* ORDER granting [317] Motion for Extension of Time to Answer. Upon review of the joint letters filed (ECF Nos. [318], and [319]), the following dates and deadlines are extended: (i) all discovery, including expert discovery shall be completed on or before **December 30, 2025**, (ii) the first steps in summary judgment motion practice shall be on or before **January 20, 2026**, (iii) the Final Pretrial Conference and obligation to file a joint pretrial order is **adjourned** *sine die* pending the Second Circuit ruling, and (iv) the time for Defendants to answer the Amended Complaint (ECF No. 316) is extended to and includes **October 27, 2025**. So Ordered by Magistrate Judge James M. Wicks on 8/27/2025. (JAF) | | |
| 318 | *Filed & Entered:* | 08/27/2025 | Letter |
| | *Docket Text:* Letter *updating Court on the Results of the Scheduling Conference* by Harry Thomasson (Thomasson, Harry) | | |
| 319 | *Filed & Entered:* | 08/27/2025 | Status Report |
| | *Docket Text:* STATUS REPORT *submitted jointly by all parties except the Deo Defendants and Harry R. Thomasson, Esq.* by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Iris Baron, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Asad Khan, Nissan Motor Acceptance Company LLC, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia (Kataev, Emanuel) | | |
| | *Filed & Entered:* | 08/29/2025 | Electronic Index to Record on Appeal |
| | *Docket Text:* Electronic Index to Record on Appeal sent to US Court of Appeals. [320] Notice of Interlocutory Appeal,,, Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (KS) | | |
| 320 | *Filed & Entered:* | 08/29/2025 | Notice of Interlocutory Appeal |

| | | | |
|---|---|---|---|
| | *Docket Text:* NOTICE OF INTERLOCUTORY APPEAL as to 230 Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,, 314 Order on Motion for Reconsideration,, Order on Motion for Extension of Time to File, by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Iris Baron, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Asad Khan, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia. Filing fee $ 605, receipt number ANYEDC-19396671. (Ruderman, Jeffrey) (Entered: 08/29/2025) (KS) | | |
| | *Filed & Entered:* | 09/04/2025 | Electronic Index to Record on Appeal |
| | *Docket Text:* Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. [321] Subsequent Notice of Appeal,, Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (KS) | | |
| 321 | *Filed & Entered:* | 09/04/2025 | Subsequent Notice of Appeal |
| | *Docket Text:* Subsequent NOTICE OF APPEAL as to [230] Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,, [314] Order on Motion for Reconsideration,, Order on Motion for Extension of Time to File, by 1239 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1581 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 189 Sunrise Hwy Auto LLC, 2519 Hylan Blvd Auto LLC, 446 Route 23 Auto LLC, 76 Fisk Street Realty LLC, Joshua Aaronson, Iris Baron, Jory Baron, Brian Chabrier, Island Auto Management, LLC, Asad Khan, Northshore Motor Leasing, LLC, Superb Motors Inc., Team Auto Sales LLC, Robert Anthony Urrutia *Amended Notice of Appeal*. (Ruderman, Jeffrey) | | |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 09/20/2025 17:23:27 | | | |
| **PACER Login:** | ekesq2014 | **Client Code:** | |
| **Description:** | History/Documents | **Search Criteria:** | 2:23-cv-06188-JMW |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

UNITED STATES COURT OF APPEALS
SECOND CIRCUIT
------------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, *individually and derivatively as a member of* NORTHSHORE MOTOR LEASING, LLC, JOSHUA AARONSON, *individually and derivatively as a member of* 189 SUNRISE HWY AUTO, LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

**Case No.: 25-2189**

**ADDENDUM B TO FORM C**

                    Plaintiffs,


          -against-


ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, and J.P. MORGAN CHASE BANK, N.A.,

                    Defendants.
------------------------------------------------------------------X

<u>List of Proposed Issues and Applicable Standard of Review</u>

Issue 1: Whether the lower court erred in dismissing causes of action against Defendants Thomas Jones, CPA ("Jones"), and Jones, Little & Co., CPA's LLP ("JLC CPA") (Jones and JLC CPA collectively hereinafter the "CPA Defendants") for RICO, RICO conspiracy, fraud, and accounting malpractice despite specific detailed allegations of the CPA Defendants' manipulation and falsification of financial records in furtherance of defendants' scheme to gain access to the Appellants' businesses to pillage and plunder them; and denying Appellants' request for reconsideration seeking to supplement the allegations with information garnered during discovery.

Issue 2: Whether the lower court erred in dismissing causes of action against Defendant Flushing Bank ("Flushing") for RICO, RICO conspiracy, negligence, violation of New York Uniform Commercial Code §3-419, conversion, unauthorized payments, and related causes of action despite specific detailed allegations of Flushing Bank's involvement with the remaining defendants in furtherance of their scheme to gain access to the Appellants' businesses to pillage and plunder them, as well as Flushing's negligence in permitting Defendant Anthony Deo ("Deo") to open a bank account for Superb; and denying Appellants' request for reconsideration seeking to supplement the allegations with information garnered during discovery.

Issue 3: Whether the lower court erred in dismissing causes of action against Defendant J.P. Morgan Chase Bank, N.A. ("Chase") for negligence, violation of New York Uniform Commercial Code §3-419, conversion, draweee liability, and related causes of action despite specific detailed allegations of Chase's negligence in, *inter alia*, permitting Deo to draw on checks for an account that he was not a signer for.

2

Issue 4: Whether the lower court erred is dismissing the piercing the corporate veil claim against Deo despite the proposed third amended complaint's alleging factual assertions sufficient to sustain the claim.

Issue 5: Whether the lower court erred in denying Appellants' cross-motions for leave to amend the pleadings.

Issue 6: Whether the lower court erred in denying Appellants' requests for leave to replead causes of action in the event of dismissal.

Issue 7: Whether the lower court erred is dismissing the alternative claims against Northshore Motors LLC and 189 Sunrise Hwy Auto LLC as defendants in the event that the court finds that their owner was defendant Deo, and not plaintiffs, and denying leave to amend the caption correspondingly, all despite the fact that the proposed third amended complaint specified that only Island Auto Group asserted that claim, not Northshore Motors LLC and 189 Sunrise Hwy Auto LLC as plaintiffs, and for denying the motion for reconsideration in this respect.

Standard of review: The granting of a motion to dismiss and the denial of a motion for leave to amend the complaint premised on futility are reviewed under a *de novo* standard. See Inspired Capital, LLC v Condé Nast, 803 Fed. Appx. 436, 438-439 (2d Cir. 2020).

Dated: Jamaica, New York
September 21, 2025

Respectfully submitted,

**SAGE LEGAL LLC**
By: _/s/ Emanuel Kataev, Esq._
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Plaintiff-Appellants*
*Superb Motors Inc.,*
*Team Auto Sales LLC, and*
*Robert Anthony Urrutia*

Dated: New York, New York
September 21, 2025

**CYRULI SHANKS & ZIZMOR LLP**
By : _/s/ Jeffrey C. Ruderman, Esq._
Jeffrey Ruderman, Esq.
420 Lexington Avenue, Suite 2320
New York, NY 10170-0002
(212) 661-6800 (office)
(347) 379-4622 (direct dial)
(212) 661-5350 (facsimile)
jruderman@cszlaw.com

*Attorneys for Plaintiff-Appellants*
*189 Sunrise Hwy Auto LLC,*
*Northshore Motor Leasing, LLC,*
*1581 Hylan Blvd Auto LLC,*
*1580 Hylan Blvd Auto LLC,*
*1591 Hylan Blvd Auto LLC,*
*1632 Hylan Blvd Auto LLC,*
*1239 Hylan Blvd Auto LLC,*
*2519 Hylan Blvd Auto LLC,*
*76 Fisk Street Realty LLC,*
*446 Route 23 Auto LLC,*
*Island Auto Management, LLC,*
*Brian Chabrier,*
*Joshua Aaronson, and*
*Jory Baron*

**VIA ACMS**
All counsel of record

4